*Kaplan/S*

# JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,

                     Plaintiff,

      -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID B. WARFIELD,
And NATIONAL CITY MORTGAGE INC.,

            ·  Defendants.
------------------------------------------------------------X

**08 — CV — 00539**
Docket No.

**ORDER TO SHOW CAUSE
FOR PRELIMINARY
INJUNCTION WITH TEMPORARY
RESTRAINING ORDER**

Upon the Affidavit of Craig Sheinker, sworn to the **22** day of January, 2008, and the Affidavit of Bernard Kobroff, Esq. sworn to January **22**, 2008 and upon the copy of the Complaint hereto annexed, it is,

ORDERED, that the above named defendants, Westwood Design/Build Incorporated and David R. Warfield, show cause before a motion term of this Court, at Room **12 D**, United States Courthouse, 500 Pearl Street, in the City, County and State of New York, on **Feb 25**, **200** at **11** o'clock in the **morning** thereof, or as soon thereafter as counsel may be heard, why an Order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure: (a) enjoining the defendant Westwood Design/Build Incorporated during the pendancy of this action from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to plaintiff as security, or of moneys received in payment of its accounts receivable, or of moneys received from the plaintiff, or of goods and materials paid for by plaintiff; and (b) enjoining the defendant David R. Warfield from, without the written consent of the plaintiff, selling, transferring, assigning or in

anyway conveying or encumbering any monies on property in the name of or received from or belonging to or held for the benefit of defendant Westwood Design/Build Incorporated; and its further;

ORDERED, pending the hearing, and determination of this order to show cause, that (a) defendant Westwood Design/Build Incorporated ~~may~~ *shall* not, without the written consent of the plaintiff, sell, transfer assign or in any way convey or encumber assets pledged by it to plaintiff as security, or of moneys received in payment of its accounts receivable, or of moneys received from the plaintiff, or of goods, and materials paid for by plaintiff; and (b) defendant David R. Warfield ~~may~~ *shall* not, without the written consent of the plaintiff, sell, transfer, assign or in anyway convey or encumber any monies on property in the name of or received from or belonging to or held for the benefit of defendant Westwood Design/Build Incorporated; and it is further;

ORDERED that security in the amount of $ *5,000* ~~be~~ be posted by the plaintiff prior to *4:30 pm on 1/23/08,* ~~at _____ o'clock in the _____ noon of that day;~~ *provided, however, that this order is effective immediately,* and it is further

ORDERED that personal service of a copy of this Order and the annexed Affidavits upon the defendants Westwood Design/Build Incorporated and on David R. Warfield, or their counsel, on or before *1 pm* ~~5 pm~~ *on* o'clock in the ~~_____ noon,~~ *_____* *1/24/08* _____, shall be deemed good and sufficient service thereof.

Dated: New York, New York *1/22/08*

ISSUED: *3:22 pm*

_____
United States District Judge



Kobroff Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

QUANTUM CORPORATE FUNDING, LTD.,

                  Plaintiff,

     -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID B. WARFIELD,
And NATIONAL CITY MORTGAGE INC.,

               Defendants.
-----------------------------------------------------------X

Civil Action  08 CV 00539
Docket No.

**AFFIDAVIT IN SUPPORT
OF TEMPORARY
RESTRAINING ORDER**

BERNARD KOBROFF, being duly sworn deposes and says:

1.     I am associated with the law firm of Goetz Fitzpatrick LLP, attorneys for the plaintiff, Quantum Corporate Funding Ltd. ("Quantum"), in the above captioned matter.

2.     I submit this Affidavit to set forth the efforts plaintiff made to give notice to defendant Westwood Design/Build Incorporated ("Westwood") and to defendant David R. Warfield ("Warfield") of Quantum's intention to apply for a Temporary Restraining Order pending the hearing and determination of plaintiff's Order to Show Cause for a Preliminary injunction: (a) enjoining the defendant Westwood from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to plaintiff as security, or of moneys received in payment of its accounts receivable, or if moneys received from the plaintiff, or of goods and materials paid for by plaintiff; and (b) enjoining the defendant Warfield from, without the written consent of the plaintiff, selling, transferring, assigning or in anyway conveying or encumbering any monies or property in the name of our received from or belonging to or held for the benefit of defendant Westwood.

3.      On Thursday January 17, 2008, I faxed to defendants Warfield and Westwood at Westwood's office, a copy of my letter addressing and giving notice to defendants:

> "that on behalf of Quantum I intend to apply to the Court on Tuesday, January 22, 2008, at 2 P.M. for a Preliminary Injunction and for a Temporary Restraining Order enjoining Westwood from, without written consent of the Quantum, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its account receivable or of money received from Quantum, or of goods and materials paid for by Quantum, and enjoining and restraining yourself from, without the written consent of Quantum, selling, transferring, assigning or in any way conveying or encumbering  any monies or property in the name of or received from or belonging to or held for the benefit of Westwood."

A copy of my letter is annexed hereto as Exhibit "A".

4.      However, Westwood's office fax machines would not accept these fax transmissions.   See copies of "failed" fax confirmation requests annexed hereto as Exhibit "B".

5.      In addition, on Thursday January 17, 2008, I also sent my letter (Exhibit "A" hereto) by overnight Federal Express to defendant Warfield at his home address and to defendant Westwood at its business address.  Copies of the respective Fed Ex Airbills are annexed hereto as Exhibit "C".

6. No prior application has been made for this relief BC

_____
Bernard Kobroff

Sworn to before me on This
20th day of January, 2008

_____
Notary Public

MORDY MANDELL
Notary Public, State of New York
No. 02MA5042487
Qualified In Kings County
Commission Expires June, 13, 2011

Exhibit A

# GF LLP    GOETZ FITZPATRICK LLP
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

**Bernard Koboroff**
bkoboroff@goetzfitz.com

January 17, 2008

**By Fax (410) 813-2828**
**And Fed Ex**
David R. Warfield
Westwood Design/Build Incorporated
12109 Gordon Avenue
Beltsville, Maryland 20705

Re: Quantum Corporate Funding, Ltd., v. Westwood
Design/Build Incorporated, et al.

Dear Mr. Warfield:

We are the attorneys for Quantum Corporate Funding,
Ltd. ("Quantum").

Please Be Advised And Take Notice that Quantum intends
to commence an action against both yourself personally and
Westwood Design/Build Incorporated ("Westwood") in United
States District Court, Southern District of New York, for
breach of contract, fraud and conversion.

Please Be Further Advised And Take Notice that on
behalf of Quantum I intend to apply to the Court on
Tuesday, January 22, 2008, at 2 P.M. for a Preliminary
Injunction and for a Temporary Restraining Order enjoining
Westwood from, without written consent of the Quantum,
selling, transferring, assigning or in any way conveying or
encumbering assets pledged by it to Quantum as security, or
of moneys received in payment of its accounts receivable or
of money received from Quantum, or of goods and materials
paid for by Quantum, and enjoining and restraining yourself
from, without the written consent of Quantum, selling,
transferring, assigning or in any way conveying or
encumbering any monies or property in the name of or
received from or belonging to or held for the benefit of
Westwood.

 **GOETZ FITZPATRICK LLP**

Accordingly, if you or Westwood or your attorneys intend to oppose Quantum's aforesaid application for a Temporary Restraining Order, please arrange to meet me at the Clerk's office of the Court, located at 500 Pearl Street, New York, New York, at 2pm on January 23, 2008. If either your or Westwood's attorney have any questions regarding this matter, my telephone number is (212) 695-8100.

Very truly yours,

GOETZ FITZPATRICK LLP

By: _____
        Bernard Koboroff

BK/am

cc:
    David R. Warfield
    715 East Maple Road
    Linthicum Heights, Maryland 21090
    **Via Federal Express**

W:\bkobroff\Quantum\Westwood\01.17.08 Warfield.doc



**GOETZ FITZPATRICK LLP**
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

**Bernard Koboroff**
bkoboroff@goetzfitz.com

January 17, 2008

**By Fax (410) 813-~~2828~~** 0810
**And Fed Ex**
David R. Warfield
Westwood Design/Build Incorporated
12109 Gordon Avenue
Beltsville, Maryland 20705

> Re: Quantum Corporate Funding, Ltd., v. Westwood
>     Design/Build Incorporated, et al.

Dear Mr. Warfield:

    We are the attorneys for Quantum Corporate Funding,
Ltd. ("Quantum").

    Please Be Advised And Take Notice that Quantum intends
to commence an action against both yourself personally and
Westwood Design/Build Incorporated ("Westwood") in United
States District Court, Southern District of New York, for
breach of contract, fraud and conversion.

    Please Be Further Advised And Take Notice that on
behalf of Quantum I intend to apply to the Court on
Tuesday, January 22, 2008, at 2 P.M. for a Preliminary
Injunction and for a Temporary Restraining Order enjoining
Westwood from, without written consent of the Quantum,
selling, transferring, assigning or in any way conveying or
encumbering assets pledged by it to Quantum as security, or
of moneys received in payment of its accounts receivable or
of money received from Quantum, or of goods and materials
paid for by Quantum, and enjoining and restraining yourself
from, without the written consent of Quantum, selling,
transferring, assigning or in any way conveying or
encumbering any monies or property in the name of or
received from or belonging to or held for the benefit of
Westwood.

 **GOETZ FITZPATRICK LLP**

    Accordingly, if you or Westwood or your attorneys intend to oppose Quantum's aforesaid application for a Temporary Restraining Order, please arrange to meet me at the Clerk's office of the Court, located at 500 Pearl Street, New York, New York, at 2pm on January 23, 2008.  If either your or Westwood's attorney have any questions regarding this matter, my telephone number is (212) 695-8100.

                Very truly yours,

                GOETZ FITZPATRICK LLP

                By: _____
                    Bernard Kobroff

BK/am

cc:
      David R. Warfield
      715 East Maple Road
      Linthicum Heights, Maryland 21090
      **Via Federal Express**

W:\bkobroff\Quantum\Westwood\01.17.08 Warfield.doc

Exhibit B

# Confirmation Report — Memory Send

Date & Time: Jan-17-2008  05:42pm
Tel line  : 212 629 4013
Machine ID : GOETZ FITZPATRICK LLP

| | | |
|---|---|---|
| Job number | : | 541 |
| Date & Time | : | Jan-17 05:37pm |
| To | : | 914108132828 |
| Number of pages | : | 002 |
| Start time | : | Jan-17 05:39pm |
| End time | : | Jan-17 05:42pm (Resend time   :Jan-17 06:42pm) |
| Pages sent | : | 000 |
| Status | : | NG  B0 |

Job number    : 541            *** SEND FAILED ***

---

**GF LLP**  GOETZ FITZPATRICK LLP
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

**Bernard Koboroff**
bkoboroff@goetzfitz.com

January 17, 2008

**By Fax (410) 813-2828
And Fed Ex**
David R. Warfield
Westwood Design/Build Incorporated
12109 Gordon Avenue
Beltsville, Maryland 20705

Re: Quantum Corporate Funding, Ltd., v. Westwood
Design/Build Incorporated, et al.

Dear Mr. Warfield:

We are the attorneys for Quantum Corporate Funding, Ltd. ("Quantum").

Please Be Advised And Take Notice that Quantum intends to commence an action against both yourself personally and Westwood Design/Build Incorporated ("Westwood") in United States District Court, Southern District of New York, for breach of contract, fraud and conversion.

Please Be Further Advised And Take Notice that on behalf of Quantum I intend to apply to the Court on Tuesday, January 22, 2008, at 2 P.M. for a Preliminary Injunction and for a Temporary Restraining Order enjoining Westwood from, without written consent of the Quantum, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable or of money received from Quantum, or of goods and materials paid for by Quantum, and enjoining and restraining yourself from, without the written consent of Quantum, selling, transferring, assigning or in any way conveying or encumbering any monies or property in the name of or received from or belonging to or held for the benefit of Westwood.

55 Harristown Rd. Glen Rock, NJ 07452 | 201-612-4444 (F) 201-612-4455
170 Old Country Rd. Suite 200, Mineola, NY 11501 | 516-741-2162 (F) 516-746-1024
120 Bloomingdale Rd. Suite 104 White Plains, NY 10605 | 914-946-7735 (F) 914- 946-0098

# Confirmation Report — Memory Send

Date & Time: Jan-17-2008  07:12pm
Tel line  : 212 629 4013
Machine ID : GOETZ FITZPATRICK LLP

| | | |
|---|---|---|
| Job number | : | 542 |
| Date & Time | : | Jan-17 07:09pm |
| To | : | 914108130010 |
| Number of pages | : | 002 |
| Start time | : | Jan-17 07:09pm |
| End time | : | Jan-17 07:12pm (Resend time   :Jan-17 08:12pm) |
| Pages sent | : | 000 |
| Status | : | NG  B0 |

Job number    : 542                    *** SEND FAILED ***

---

## GOETZ FITZPATRICK LLP
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

**Bernard Kobroff**
bkobroff@goetzfitz.com

January 17, 2008

By Fax (410) 813-~~2828~~ 0810
And Fed Ex
David R. Warfield
Westwood Design/Build Incorporated
12109 Gordon Avenue
Beltsville, Maryland 20705

    Re: Quantum Corporate Funding, Ltd., v. Westwood
        Design/Build Incorporated, et al.

Dear Mr. Warfield:

    We are the attorneys for Quantum Corporate Funding,
Ltd. ("Quantum").

    Please Be Advised And Take Notice that Quantum intends
to commence an action against both yourself personally and
Westwood Design/Build Incorporated ("Westwood") in United
States District Court, Southern District of New York, for
breach of contract, fraud and conversion.

    Please Be Further Advised And Take Notice that on
behalf of Quantum I intend to apply to the Court on
Tuesday, January 22, 2008, at 2 P.M. for a Preliminary
Injunction and for a Temporary Restraining Order enjoining
Westwood from, without written consent of the Quantum,
selling, transferring, assigning or in any way conveying or
encumbering assets pledged by it to Quantum as security, or
of moneys received in payment of its accounts receivable or
of money received from Quantum, or of goods and materials
paid for by Quantum, and enjoining and restraining yourself
from, without the written consent of Quantum, selling,
transferring, assigning or in any way conveying or
encumbering any monies or property in the name of or
received from or belonging to or held for the benefit of
Westwood.

55 Harristown Rd. Glen Rock, NJ 07452 | 201-612-4444 (F) 201-612-4455
170 Old Country Rd. Suite 200, Mineola, NY 11501 | 516-741-2162 (F) 516-746-1024
120 Bloomingdale Rd. Suite 104 White Plains, NY 10605 | 914-946-7735 (F) 914-946-0098

Exhibit C

**FedEx** Express ® **US Airbill**

fedex.com 1.800.GoFedEx 1.800.463.3339

8624 0098 7740

1 From  Date 01/17/DD8

Sender's FedEx Account Number

Sender's Name Bernard Kobell

Company GOETZ FITZPATRICK

Address 1 PENN PLZ STE 4401

City NEW YORK    State NY    ZIP 10119

Phone ( 212 ) 695-8100

2 Your Internal Billing Reference

3 To
Recipient's Name David B. Warfield    Phone ( )

Company Westwood Design Build Incorporated

Address 12109 Carolun Avenue

City Beltsville    State MD    ZIP 20705

0364410570

**Sender's Copy**

**4a Express Package Service**    *Packages up to 150 lbs.*

☐ FedEx Priority Overnight

☐ FedEx Standard Overnight

☐ FedEx First Overnight

**4b Express Freight Service**    *Packages over 150 lbs.*

☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**
☐ FedEx Envelope
☐ FedEx Pak
☑ FedEx Box
☐ FedEx Tube
☐ Other

**6 Special Handling**
☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday
☐ Dry Ice
☐ Cargo Aircraft Only

**7 Payment** Bill to:
☐ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

**8 Residential Delivery Signature Options**
☐ No Signature Required
☐ Direct Signature
☐ Indirect Signature

Total Packages    Total Weight    Total Declared Value

**FedEx** ® US Airbill
Express

fedex.com 1.800.GoFedEx 1.800.463.3339

Tracking Number: 8624 0098 7865

**1 From**
Date 01/17/2007
Sender's FedEx Account Number 1001-3389-0
Sender's Name Bernard Kobrsky
Company GOETZ FITZPATRICK
Address 1 PENN PLZ STE 4401
City NEW YORK   State NY   ZIP 10119
Phone ( 212 ) 695-8100

**2 Your Internal Billing Reference**
(02187.20229)

**3 To**
Recipient's Name David B. Werfield   Phone ( )
Company
Recipient's Address 715 East Maple Road
Address
City Linthicum Heights   State MD   ZIP 21090
0364410570

**Sender's Copy**

**4a Express Package Service**    Packages up to 150 lbs.
- [ ] FedEx First Overnight
- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx First Overnight

**4b Express Freight Service**    Packages over 150 lbs.
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [ ] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday
- [ ] HOLD Saturday
Does this shipment contain dangerous goods?
- [ ] No
- [ ] Yes
- [ ] Yes
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:
- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

**8 Residential Delivery Signature Options**
- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

Total Packages   Total Weight   Total Declared Value $ .00

519

Sheinker Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,

                             Plaintiff,

                  -against-

WESTWOOD DESIGN/BUILD INCORPORATED,
DAVID R. WARFIELD, and NATIONAL CITY
MORTGAGE INC.,

                          Defendants.
-----------------------------------------------------------------X

Civil Action 08 CV 00539

Docket No.

**AFFIDAVIT IN SUPPORT
OF ORDER TO SHOW
CAUSE AND FOR A
TEMPORARY
RESTRAINING ORDER**

CRAIG SHEINKER, being duly sworn, deposes and says:

1.     I am the President of Quantum Corporate Funding, Ltd. ("Quantum"), the plaintiff herein, have examined Quantum's records and have personal knowledge of the facts and circumstances hereinafter set forth and submit this Affidavit in support of Quantum's motion for a preliminary injunction and a Temporary Restraining Order: (a) enjoining and restraining the defendant Westwood Design/Build Incorporated ("Westwood") from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable or of moneys received from the plaintiff or of goods and materials paid for by Quantum and; (b) enjoining and restraining the defendant David R. Warfield ("Warfield") from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering any monies or property in the name of or received from or belonging to or held for the benefit of defendant Westwood.

1

2.      Quantum seeks in this action to recover from defendants Westwood and Warfield the $242,900.00 of Quantum's monies which said defendants converted by fraudulently inducing Quantum to purchase from them an account receivable by fraudulently representing to Quantum that said receivable, in the amount of $347,000.00, was due and owing to Westwood by defendant National City Mortgage Inc. ("National").

## BACKGROUND

3.      Quantum is in the business of accounts receivable financing and it specializes in factoring construction industry invoices. Headquartered in New York City, Quantum is one of the largest purchasers of contractor receivables in the United States.

4.      In or about January, 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into a contract with defendant Westwood, as contractor, with defendant National as construction lender, pursuant to which Westwood contracted to construct a new home for Mr. and Mrs. Pollydore at 6117 Elm Avenue, Lanham, Maryland (the "Project"). A copy of the Westwood/Pollydore contract together with National's lending commitment are annexed hereto as Exhibit "A".

## THE TRANSACTION

5.      In 2007, defendant Westwood, by defendant Warfield, approached Quantum to obtain cash to continue operating its business by selling Quantum an account receivable. To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum its $347,000.00 invoice for the Project, which it represented were monies due Westwood from defendant National in connection therewith (the "Invoice"). A copy of the Westwood Invoice is

2

annexed hereto as Exhibit "B".

## THE ESTOPPEL CERTIFICATE

6.      Since Quantum has no independent way of knowing if the contractor offering to sell its accounts receivable has, in fact, actually performed work and furnished materials of the value invoiced, Quantum contacts the account debtor, in this case the construction lender, defendant National, and requests from the account debtor, a written acknowledgment of and an estoppel certificate for the debt.

7.      Accordingly, in December 2007, Quantum contacted defendant National's Branch Manager, Christopher Washburn, at National's office in Greenbelt , Maryland, and requested confirmation that the Invoice (Exhibit "B" hereto) was correct, forwarding to defendant National an Estoppel Certificate covering the Invoice.

8.      In response, defendant National, by its Branch Manager, Christopher Washburn, signed the Estoppel Certificate, in the amount of $347,000.00, and returned it to Quantum.  A copy of defendant National's executed Estoppel Certificate, citing Westwood's Invoice, is annexed hereto as Exhibit "C".

9.      The Estoppel Certificate, executed by defendant National states:

> "The undersigned Account Obliger acknowledges to Quantum
> Corporate Funding, Ltd. that the above invoice Amount(s) are
> correct and owing by us; that the work and or merchandise has
> been ordered from and completed by the captioned Client, and
> accepted by us that there are not now, nor will there be, any claims,
> setoffs, or defenses beyond 20% of the Invoice Amount(s).  Neither
> Quantum nor its agents made any representations except as herein
> set forth.  This estoppel is not subject to modification.  New York
> law, jurisdiction and venue shall apply hereto."

10.     In reliance upon defendant National's Estoppel Certificate, Quantum purchased

3

the Invoice and gave value to Westwood for its assignment of this accounts receivable.

## THE PURCHASE AND SALE AGREEMENT

11.    The assignment of the Westwood Invoice to Quantum was made by an agreement,

entitled Purchase & Sale Agreement (the "Agreement"). A copy of the Agreement is annexed

hereto as Exhibit "D".

12.    As regards the Invoice, the Agreement executed by defendant Westwood as

"Seller", stated in pertinent part that:

> "Seller represents, warrants and agrees that:
>
>            *        *        *        *        *
>
> (b) The correct total amount of said account(s) is $347,000.00;
>
> (c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute;
>
> (d) There are not and will not be any set-offs or counterclaims against said account(s)...
>
>            *        *        *        *        *
>
> (h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorneys fees shall be borne by Seller."
>
> (i) Purchaser further agrees that if the amount referred to in (b) above...is not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein. Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.
>
>            *        *        *        *        *
>
> (l) To secure the representations and covenants made by Seller in this agreement...Seller hereby grants to Purchaser a continuing security interest in all personal property..in which Seller has an

4

interest, now or hereafter existing or acquired, and wheresoever located...tangible or intangible, including but not limited to, all present or hereafter existing or acquired...goods...equipment... inventory...cash or cash equivalents...contract rights...money, now or hereafter owned or acquired by Seller...and all proceeds and collections thereof...unshipped goods....Further to this purpose, Seller hereby grants Purchaser and its agents Power of Attorney to sign it's name on any applicable financing statements (UCC'1 and otherwise) in order to effectuate filing(s) on the aforementioned assets of seller. Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

> *     *     *     *     *

(g) This agreement shall be governed by the laws of the State of New York...Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder....

(Emphasis added).

## THE GUARANTEE

13.    In addition, as regard the defendant Seller Westwood's representations and warranties, defendant Warfield executed a "Guarantee" for the sale which stated:

> "The undersigned...hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above."

See Exhibit "D" (2nd Page).

## THE NOTICES AND FILING

14.    Defendant Westwood, as assignor, gave written notice to defendant National of its assignment to Quantum of the Invoice. A copy of Westwood's written notice to National is annexed hereto as Exhibit "E".

15.    Quantum, as assignee, also gave written notice of the assignment to defendant

National. Quantum's notice consisted of sending to National a copy of the Westwood Invoice which bore the following stamped notation thereon:

"This invoice has been sold, assigned and transferred to:

Quantum Corporate Funding, Ltd.

Make all checks payable and mail to:
Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas, 16th Floor
New York, New York 10036"

A copy of the Invoice bearing this stamped notification, is annexed hereto as Exhibit "B"

16.    Further, as regards the transaction and Quantum's perfection of its security interest, Quantum filed a UCC-1 in the State of Maryland as to defendant Westwood. A copy of this filing is annexed hereto as Exhibit "F".

## THE PURCHASE PRICE PAYMENT

17.    Pursuant to the Agreement, on December 21, 2007, Quantum paid defendant Westwood $242,900.00 for the Invoice by wiring, pursuant to defendant Westwood, by defendant Warfield, specific instructions, $130,731.72 to Westwood and $112,168.28 to Penn Lyon Homes Corporation ("Penn Lyon"), a material supplier to Westwood. Copies of defendant Warfield's instructions and Quantum's wire transfers are annexed hereto as Exhibit "G".

## THE FRAUD UNRAVELS

18.    In early January 2008, plaintiff Quantum contacted defendant National's main office in Miamisburg, Ohio to confirm that pursuant to the Assignment and the Agreement that payment of the Invoice would be made by National directly to Quantum, as assignor, rather than to Westwood, the assignee.

19.    Additionally, plaintiff Quantum also attempted to contact defendant Westwood to

6

advise it that if defendant National paid the Invoice to it, instead of Quantum, that the payment was required to be turned over to Quantum.

20.    However, despite several attempts to reach defendant Westwood by telephone, Quantum was unable to make contact, which raised Quantum's concerns.

21.    Quantum then decided to contact the Project owners, the Pollydores' and was advised by Mrs. Pollydore that not only had the house not been constructed, no materials had been delivered, the lot had not even been cleared, and that no road to the lot existed.

22.    After receiving this information, I contacted defendant Westwood's supplier, Penn Lyon, to confirm that it had shipped the material to construct Mr. and Mrs. Pollydore's house to Westwood. I was advised by Penn Lyon that they had never heard of Pollydores and that the $112,168.28 Penn Lyon invoice No. 850 which Quantum had paid, had been altered to reference the Pollydore's residence while Penn Lyon's Invoice No. 850 referenced a different owner's residence. A copy of the fabricated Penn Lyon invoice which Quantum paid at Westwood's direction is annexed hereto as Exhibit "H".

23.    Upon receiving this information, Quantum contacted Mike Conrad, the individual who had executed the Pollydore's contract [Exhibit "A" hereto] on Westwood's behalf and was advised by him that both Mrs. Pollydore's and Penn Lyon's information was incorrect. Mr. Conrad advised me that he would look into the matter and that either he or defendant Warfield would telephone me on Monday January 14, 2008 with the results of their investigation.

24.    Neither I nor anyone else at Quantum has since received any communications from either defendant Westwood or from defendant Warfield or from Mr. Conrad, and all attempts by Quantum to reach any of them by telephone have not been answered.

7

25.    Further, on January 15, 2008, Mr. Timothy Justice, defendant National's Construction Lending Department's Manager, advised Quantum that National had no obligation to Quantum or agreement with Quantum regarding payment of the Invoice. See e-mail annexed hereto as Exhibit "I".

26.    Given defendant Westwood's weak financial position and its inability to secure bank financing, which was the reason that it sought to obtain operating cash from Quantum by selling Quantum the Invoice, the fact that Penn Lyon has advised me that the invoice which Quantum paid had been fabricated, the fact that neither Westwood nor defendant Warfield nor Mr. Conrad have communicated with Quantum, and the fact that Westwood is no longer answering its phone or receiving fax transmissions, all leads me to believe that defendant Westwood is insolvent and that defendants Westwood and Warfield will abscond, if they have not done so already, with the $130,731.32 that Quantum wired on December 21, 2007 and will otherwise dispose of the $112,168.28 of materials that Quantum paid Westwood's supplier, Penn Lyon, for, thus rendering any judgment which may be recovered against defendants Westwood and Warfield ineffectual and unenforceable.

WHEREFORE it is respectfully requested that the Court grant a preliminary injunction and a Temporary Restraining Order, enjoining and restraining the defendant Westwood during the pendency of this action and the hearing and determination of this Order to Show Cause from, without the written consent of Quantum, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable, or of moneys received from Quantum, or of goods and materials paid for by Quantum and enjoining the defendant Warfield from, without the written consent of Quantum,

8

selling, transferring, assigning or in any way conveying or encumbering any monies or property

in the name of or received from or belonging or held for the benefit of defendant Westwood.

_____
CRAIG SHEINKER

Sworn to before me this
2nd day of January, 2008

_____
NOTARY PUBLIC

BERNARD KOBROFF
NOTARY PUBLIC, State of New York
No. 4603478
Qualified in Westchester County
Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\sheinker.aff.wpd

9

Exhibit A



# CONTRACT

THIS AGREEMENT, Made as of **December 18th**, In the Year of **2006,**

| | |
|---|---|
| Between the Owner: | **Mr. & Mrs. Eustace Pollydore**<br>**5300 Gallatin Street**<br>**Hyattsville, MD 20781**<br>**301-277-1455** |
| And the Contractor: | **Westwood Design/Build Incorporated**<br>**License # 16054316**<br>**P.O. Box 105**<br>**Beltsville, MD 20704**<br>**301-813-2626 Office**<br>**301-937-2359 Fax** |
| For the Project: | **New Home Construction**<br>**6117 Elm Street**<br>**Lanham, MD 20706** |
| Construction Lender: | **National City Mortgage** |

## ARTICLE 1.    CONTRACT DOCUMENTS

**1.1**    The contract documents consist of this agreement, general conditions, construction documents, specifications, allowances, finish schedules, construction draw schedule, all addenda issued prior to execution of this agreement and all change orders or modifications issued and agreed to by both parties.  All documents noted herein shall be provided to the Contractor by the Owner.  These contract documents represent the entire agreement of both parties and supersede any prior oral or written agreement.

## ARTICLE 2.    SCOPE OF WORK

**2.1**    The Owner agrees to purchase and the Contractor agrees to construct the above mentioned structure and fixtures attached thereto in **Lanham, county of Prince George's in the state of Maryland** according to the construction documents, allowances, finish schedules, all addenda, change orders, modifications and specifications set forth in the specification booklet.

## ARTICLE 3.    TIME OF COMPLETION

**3.1**    The approximate commencement date of the project shall be **January 1st** , **2007**. The approximate completion date of the project shall be August 31st, 2007, however, building permits and  any change orders and/or unusual weather might delay or otherwise affect the completion date.  Barring inclement weather, factory delays or owner related delays, the Contractor shall complete the home within 3 months upon receipt of the building permit.  The contract execution date shall be **December 19th** , **2006.**

## ARTICLE 4.    THE CONTRACT PRICE

**4.1**    The construction contract shall be calculated on a cost plus coordination basis, with all labor, materials, permits and insurance figured as costs.

1

Initialed by: Owner _____ Contractor _____

**4.2**    Pre-construction estimates for construction costs and coordination are **Three-Hundred-Twelve-Thousand, Eight-Hundred-Fifty ($312,850.00)**, Closing costs shall be paid by the Owner.

## ARTICLE 5.    PROGRESS PAYMENTS

**5.1**    The Owner will make payments to the contractor through four (4) separate draws based on invoices for labor, materials and modular units submitted.

| | | |
|---|---|---|
| Lot Premium | $ 149,000.00 | .26 Acre / 11,200 Sq/Ft Lot Purchase |
| Builder Deposit: | 10% of the Construction Cost is required when Prince Georges County releases permit. | |
| Foundation Draw: | 20% of the Construction Cost is required at foundation completion. | |
| Modular Home Set: | 60% of the Construction Cost is required at Modular Delivery and Set. | |
| Finishing and Closing: | 10% of the Construction Cost is required at punch-out completion. | |

Owner shall make payments to contractor within **5 business days** after approved inspection by owner. Inspection by Owner must correspond with Addendum A attached. Should the owner fail to make payment, contractor may charge a penalty of **18%** annually upon the unpaid amount until paid.

**5.2**    If payment is not received by the Contractor within **10** days after delivery of payment demand for work satisfactorily completed, contractor shall have the right to stop work or terminate the contract at it's option.  Termination by Contractor under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination. Termination by Owner under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination.

## ARTICLE 6.    DUTIES OF THE CONTRACTOR

**6.1**    All work shall be in accordance to the provisions of the plans and specifications.  All systems shall be in good working order.

**6.2**    All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

**6.3**    All work shall be performed by licensed individuals to perform their said work, as outlined by law.

**6.4**    Contractor shall obtain all permits necessary for the work to be completed. The contractor is required to pay any and all impact fees charged by Prince George's County.

**6.5**    Contractor shall remove all construction debris and leave the project in a broom clean condition.

**6.6**    Upon satisfactory payment being made for any portion of the work performed, Contractor shall furnish a full and unconditional release from any claim or mechanics' lien for that portion of the work for which payment has been made.

## ARTICLE 7.    OWNER

**7.1**    The Owner shall communicate with subcontractors only through the Contractor.

**7.2**    The Owner will not assume any liability or responsibility, nor have control over or charge of construction means, methods, techniques, sequences, procedures, or for safety precautions and programs in connection with the project, since these are solely the Contractor's responsibility.

**7.3**    Contractor shall provide all engineering and surveying required by Prince George's County.

| | | |
|---|---|---|
| a. Horizontal and Vertical Control | e. Stormwater Management Plan | i. Limits of Disturbance |
| b. Topography | f. Sediment Control Plan | j. Foundation Stake Out |
| c. Boundary Survey | g. Utility Coordination | k. Wall Check |
| d. Site Grading and Landscape Plan | h. TCP Waiver | l. All Certifications |
| m. Public Water/Sewer Connection | n. Geotechnical Report | |

2

**7.4**    Contractor shall obtain all construction permits necessary for the work to be completed.

**7.5**    Contractor shall build access road, per Prince Georges County specification, to Owner's parcel.

## ARTICLE 8.    CHANGE ORDERS AND FINISH SCHEDULES

**8.1**    A Change Order is any change to the original plans and/or specifications. All change orders need to be agreed upon in writing, including cost, additional time considerations, approximate dates when the work will begin and be completed, a legal description of the location where the work will be done and signed by both parties. 50% of the cost of each change order will be paid prior to the change, with the final 50% paid upon completion of the change order. A 12% fee shall be added to all change orders and overages in excess of initial allowances. Additional time needed to complete change orders shall be taken into consideration in the project completion date. **NO CHANGE ORDERS WILL BE ACCEPTED AFTER FINAL HOME ARCHITECTURAL DRAWINGS HAVE BEEN REVIEWED AND APPROVED BY THE OWNER.**

**8.2**    Completed Finish Selection Schedules shall be submitted to the Contractor as follows:

**8.2.1**    Schedule #1 within four weeks after site clearing begins.

**8.2.2**    Schedule #2 within eight weeks after site clearing begins.

**8.3**    Any delays or changes in finish selection schedules will delay the projected completion date.

## ARTICLE 9.    INSURANCE

**9.1**    The Owner will keep in force a Builder's Risk Insurance Policy on the said property to protect both owner's and contractor's interests until construction is completed. The Owner will maintain property insurance to the full and insurable value of the project, in case of a fire, vandalism, malicious mischief or other instances that may occur.

**9.2**    The Contractor shall purchase and maintain needed Workman's Compensation and Liability insurance coverage as required by law and deemed necessary for his own protection.

## ARTICLE 10.    GENERAL PROVISIONS

**10.1**    If conditions are encountered at the construction site which are subsurface or otherwise concealed physical conditions or unknown physical conditions of an unusual nature, which differ naturally from those ordinarily found to exist and generally recognized as inherent in construction activities, the Owner will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, and/or time required for, performance of any part of the work, will negotiate with the Contractor an equitable adjustment in the contract sum, contract time or both.

## ARTICLE 11.    HAZARDOUS MATERIALS, WASTE AND ASBESTOS

**11.1**    Both parties agree that dealing with hazardous materials, waste or asbestos requires specialized training, processes, precautions and licenses. Therefore, unless the scope of this agreement includes the specific handling, disturbance, removal or transportation of hazardous materials, waste or asbestos, upon discovery of such hazardous materials the Contractor shall notify the Owner immediately and allow the Owner/Contractor to contract with a properly licensed and qualified hazardous material contractor. Any such work shall be treated as a Change Order resulting in additional costs and time considerations.

## ARTICLE 12.    ARBITRATION OF DISPUTES

**12.1**    Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

## ARTICLE 13.    WARRANTY

**13.1**    At the completion of this project, Contractor shall execute an instrument to Owner warranting the project for **10 Years** against defects in workmanship or materials utilized. The manufacturers warranty will prevail. No legal action of any kind relating to the project, project performance or this contract shall be initiated by either party against the other party after **10 Years** beyond the completion of the project or cessation of work.

3

## ARTICLE 14. TERMINATION OF THE CONTRACT

14.1    Should the Owner or Contractor fail to carry out this contract, with all of its provisions, the following options and stipulations shall apply:

14.1.1    If the Owner or the Contractor shall default on the contract, the non-defaulting party may declare the contract is in default and proceed against the defaulting party for the recovery of all damages incurred as a result of said breach of contract, including a reasonable attorney's fee. In the case of a defaulting Owner, the Earnest money herein mentioned shall be applied to the legally ascertained damages.

14.1.2    In the event of a default by the Owner or Contractor, the non-defaulting party may state his intention to comply with the contract and proceed for specific performance.

14.1.3    In the case of a defaulting Owner, the Contractor may accept, at his option the earnest money as shown herein as liquidated damages, should earnest money not cover the expenses to date, the Contractor may make claim to the Owner for all work executed and for proven loss with respect to equipment, materials, tools, construction equipment and machinery, including reasonable overhead, profit and damages applicable to the property less the earnest money.

## ARTICLE 15. ATTORNEY FEES

15.1    In the event of any arbitration or litigation relating to the project, project performance or this contract, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses.

## ARTICLE 16. ACCEPTANCE AND OCCUPANCY

16.1    Upon completion, the project shall be inspected by the Owner and the Contractor, and any repairs necessary to comply with the contract documents shall be made by the Contractor.

16.2    The Owner shall not occupy the property until final payment has been received by the Contractor and a Certificate of Occupancy has been obtained.

16.3    Occupancy of the project by the Owner in violation of Article 16.2, shall constitute unconditional acceptance of the project and a waiver of any defects or uncompleted work.

WITNESS our hand and seal on this ____17th____ day of ____January____, 2007.

Signed in the presence of:

Witness _____

Michael Conrad

Witness _____

Mr. Eustace Pollydore

_____

Mrs. June Pollydore

4

 **National City** Mortgage

### Modular Home (delivered to site)
### Draw Schedule

Owner: Pollydore #0005351534

| | | |
|---|---|---|
| 20% | Foundation complete.  Well is drilled and acceptable. | $ 99,200.00 |

| | | |
|---|---|---|
| 70% | **Payment of modular package, delivery to site. Unit to be removed from truck and/or trailer set on foundation.** | $ 347,200.00 |

Completion of permanent roof, windows set in place, all exterior doors hung, exterior walls complete, interior drywall complete, taped and spackled, all interior carpentry complete, kitchen cabinets and all fixtures have been set, deck complete and insulation installed.

| | | |
|---|---|---|
| 10% | Exterior Siding Complete | $ 49,600.00 |

Final seaming of carpeting and/or flooring walls completed, finishing touches regarding fixtures and kitchen cabinets completed, septic tank installed.  Dwelling complete. Driveway, rough grading and top soil complete.  All owner responsibilities **MUST** be completed.

Builder/Contractor:

(Signature)

Borrower(s):

_____
June Pollydore
Owner

_____
Eustace Pollydore

**Please allow at least 10 business days after closing before contacting NCM's Draw Department for you first draw.**

A Division of National City Bank of Indiana

DS-05 Modular Home Delivery to Site Draw Schedule                                    Revised 3/2005

FMMC a division of
National City Bank

11/08/2007

JUNE A POLLYDORE
EUSTACE A POLLYDORE
5300 GALLATIN STREET
HYATTSVILLE, Maryland 20781

We are pleased to inform you that your application for a
Construction/Permanent first mortgage loan on the property located
at 6117 ELM ST, LANHAM, Maryland 20706                                has
been approved subject to the terms and conditions presented in this
Commitment.

Summary of Terms and Conditions:

You have elected:

[  ] A Fixed Rate Mortgage with interest rate limitations as set
     forth in your Construction/Permanent Capped Floating Rate
     Agreement.

[ ✓ ] A Fixed Rate Mortgage with interest rate lock.

[  ] An Adjustable Rate Mortgage as set forth in the Adjustable
     Rate Mortgage Program Disclosure you were provided.

The term of this loan includes a set period of time to complete
construction of the premises.   You will pay interest only on
principal amounts disbursed during the construction period.
Payments on your permanent loan will not begin until the earlier of
completion of the premises or the set period for construction
completion.

Construction draws will be made in accordance with the Construction
Loan Agreement provided for your signature at the loan closing.
You must deposit with us, at the time of closing, the difference
between the loan funds available and the total cost of the
construction. We estimate your deposit will be $ 9,797.30         .

The following are important terms of your loan.

| Loan Amount | $ 496,000.00 | Loan Type | CVIX |
|---|---|---|---|
| Initial Interest Rate | 7.000 | Loan Sub Type | Fixed |
| Term of Loan | 360 | Discount Points | % |
| Origination Fee | 1.000 % | Construction Fee | % |

Commitment Letter
Page 2

Estimated Principal and Interest due after completion of construction:

Monthly Payment (P&I)  $ 1,993.87
Monthly Taxes              $ _____
Monthly Insurance          $ _____
Monthly PMI                $ __247.50

Estimated Total Monthly Payment $ _____ 4,241.37

If your loan is an Adjustable Rate Mortgage and [  ] if this box is checked, you will have the opportunity to convert your loan to a fixed rate loan for the remainder of your original loan term on the (check as applicable): [  ] first, second, third, fourth and fifth interest rate change date, or [  ] first and second interest change dates if you are not then in default and have not made a payment 30 or more days after the payment due date at any time within the twelve-month period immediately preceding the Change Date.

Additional Conditions of This Commitment to Be Submitted Prior To Closing:

Additional Conditions of This Commitment to Be Presented At Closing:

Other Terms and Conditions of This Commitment:

1.  An escrow account for real estate taxes and insurance premiums will be required. Therefore, one-twelfth of the annual payment for these items is to be included in your monthly payment.

2.  In the event that there is any change in the property to be mortgaged, your financial condition, or your employment status between the date of application and the final closing of this loan, FNMC a division of
National City Bank                    at its option, may withdraw this commitment.

CONSTJ2                                                              (12/04)

Commitment Letter
Page 3

3.  The loan and the closing shall be in compliance with the
    requirements of the federal, state and local governments now
    in effect or hereinafter to be enacted.

4.  All documents, mortgages, and other matters connected with
    this loan shall be subject to our approval in form and in
    substance, and our decision shall be final and conclusive.

5.  The Note, Construction Loan Agreement, Mortgage, Construction/
    Permanent Loan Agreement and all other documents pertaining to
    the loan are to be signed by all the Borrower(s) listed above.
    Therefore, all the Borrower(s) must be present at the time of
    the closing.   Additionally, the seller(s) and/or the
    Contractor must execute certain documents.   If the
    Seller/Contractor will not be present at the closing, please
    notify the Closing Agent when you schedule your closing.

6.  A completed application must be signed at the time of closing.

7.  In order to have a smooth closing of this transaction, the
    Closing Agent must have the following items at least five (5)
    banking days prior to the day you wish to close your loan:

    A.  An ALTA Mortgage Title Insurance Commitment, in form and
        through a company acceptable to us, insuring against loss
        or damage in the amount of your loan, showing the
        mortgage to be a good and valid first lien on the
        property.  The policy must insure, in addition to other
        items, against material and mechanic's liens of record
        and eliminate survey exceptions.  The proposed mortgagee
        should read _____.

    B.  Fire and extended coverage insurance including vandalism
        and malicious mischief (Builder's Risk coverage) and to
        cause to be provided to Lender evidence of workers
        compensation and general liability insurance in the
        amount, form and in companies satisfactory to the Lender,
        which insurance shall be payable to Borrower with
        standard mortgage endorsement attached making loss
        payable to the Lender or its assigns or mortgagee.   A
        policy must be provided to the closing agent along with
        evidence that the first year's premium has been paid in
        full.

Commitment Letter

Lender reserves the right to refuse to make the loan under the terms and conditions set forth in this commitment where it is discovered that any facts represented by applicant(s) are false in any respect, where any credit reporting information is found to be inaccurate, or where bankruptcy or other laws would prevent or inhibit the Lender's ability to make the requested loan.

THIS COMMITMENT EXPIRES BY **March 1, 2008** . YOUR LOAN MUST CLOSE ON OR BEFORE THIS DATE. IF YOUR LOAN DOES NOT CLOSE BY THE COMMITMENT EXPIRATION DATE FOR ANY REASON, EVEN REASON BEYOND YOUR CONTROL, OR YOU REQUEST TO CHANGE THE AMOUNT OR ANY OTHER TERMS OF YOUR LOAN, WE MAY CHANGE ANY OF THE TERMS OF YOUR LOAN, INCLUDING INTEREST RATE, POINTS AND FEES OR WE MAY WITHDRAW YOUR COMMITMENT. IF WE ELECT TO EXTEND YOUR COMMITMENT, WE MAY REQUIRE THAT THE INFORMATION NEEDED FOR YOUR APPLICATION BE UPDATED SINCE SUCH INFORMATION IS ONLY VALID FOR NINETY DAYS.

Sincerely,

By: _____
            (Type Name)

Title: Branch Manager / VP

CONST74 (02/04)

Exhibit B



# INVOICE

| Date | Invoice # |
|------|-----------|
| 12/18/2007 | 10084 |

### BILL TO:
National City Mortgage/National City Bank
Christopher Washburn, Vice President
9852 Walker Drive, Suite 400
Greenbelt, MD 20770

### REMIT TO:
**Westwood Design/Build Inc.**
**P.O. Box 105**
**Beltsville, MD 20704**

| Terms | P.O. No. | PROJECT |
|-------|----------|---------|
| Net 45 | | Pollydore Residence |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Construction Draw | 347,000.00 | 347,000.00 |
| | Pollydore Module Delivery – #0005351534 | 0.00 | 0.00 |
| | Curbside Delivery Completed Amount Due and Owing | | |

This Invoice has been sold,
assigned and transferred to:
Quantum Corporate Funding, Ltd.

Make all checks payable and mail to:

Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas, 16th Floor
New York, New York 10036

| Modules Delivered | **Total** | **$347,000.00** |
|-------------------|-----------|-----------------|

**Exhibit C**

# Quantum Corporate Funding, Ltd.

1140 Avenue of the Americas, 16th Floor
New York, N.Y. 10036
Tel. 212 768-1200
800 352-2585
Fax 212 944-8216

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
7852 Walker Drive, Suite 400
Greebelt, MD 20770

Re: Our Transaction#    25914   Client: Westwood Design Build Incorporated
Our Debtor#:  32772.        Our Client#:    5999

| P.O.#/Contract# | Job# / Project# | Controllers# | Contract/ P.O.Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|---|
| | Project: Pollydora Residence. Construction Draw, Pollydoro module delivery-#0005351534. | | 10094 | | 12/18/07 | 45 | ****$347,000.00 |

---------------
*******$347,000.00

Dear Mr. Washburn:

We are the assignee of payment of the above captioned company. Attached is a
letter from it authorizing all payments on the captioned invoices to be
sent directly and solely to Quantum Corporate Funding, Ltd.

The undersigned Account Obligor acknowledges to Quantum Corporate Funding,
Ltd. that the above invoice Amount(s) are correct and owing by us; that the
work and or merchandise has been ordered from and completed by the
captioned Client, and accepted by us; that there are not now, nor will
there be, any claims, setoffs, or defenses beyond 20% of the Invoice
Amount(s); Neither Quantum nor its agents made any representations except
as herein set forth.  This estoppel is not subject to modification. New
York law, jurisdiction and venue shall apply hereto.

Very truly yours,

*Marivo Luisa de Souza*

Shelley Simmonds
Senior Account Exec.

Agreed & Accepted

Authorized Signature _____    Title _____
   Account Obligor:   National City Mortgage Company
                      Print Name:

Exhibit D

Transaction#____25914____    Client#____5999____ Rebate Class____20FIN____ Adv%___0.7__

### PURCHASE & SALE AGREEMENT → $ 112,168.26 to Penn Lyon Homes Corp.
↳ $ 130,731.72 to Westwood Design

In consideration of the sum of $ ••••••••••••••$242,900.00 _____ paid by purchaser to seller,

receipt of which is hereby acknowledged, the undersigned Westwood Design Build Incorporated
("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd. ("Purchaser"), its
successors and assigns all Seller's right, title and interest in and to Seller's account(s) receivable
(including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors
described in Exhibit "A" attached hereto and made part hereof, together with all rights of action accrued,
or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign,
or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make
said sale, assignment, and transfer, and that said sale transfer or assignment does not conflict with
the terms of any other agreement, or instrument to which Seller is a party.

(b) The correct total amount of said account(s) is $,,,,,,,,,,,,,,,,,,$242,900.00 ,,,,,,,,,

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will
not be in dispute; and the payment of said account(s) are not and will not be contingent upon the
fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said
account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s),
and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the
accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all
checks received from sellers clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping
is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property
improvement upon which it has performed labor or furnished materials, the account for which labor and/or
materials it has assigned to Purchaser. In the event Seller fails to promptly comply with such request,
Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller
a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of
such labor and material. In connection with the filing of such Notice of Mechanic's Lien, the Seller
agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in
connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all
respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a
Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for
Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney
fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) is
not paid by the account debtor(s) thereof for any reason other than a breach of the representations,
warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount
paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement
and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept
payment of less than the full amount, if in its judgement such action is necessary to effect collection,
by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against
Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum
of thirty third and one third (33 1/3%) of clause (b) for Purchaser's attorney's fees therefor.

(l) To secure the representations and covenants made by Seller in this agreement, but not the credit
risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal
property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and
wheresoever located, tangible or intangible, including but not limited to, all present or hereafter
existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture,
receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper,
chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or
lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all
intellectual property including, without limitation patents, trademarks and copyrights (and applications
for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay
money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller
as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security
therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped
goods, together with all of Sellers books of accounts, ledger cards and records, all vehicles, all
computer programs, and systems owned or operated in connection therewith, all of the above securing
present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of
and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its
agentsPower of Attorney to sign it's name on any applicable financing statements (UCC'1 and otherwise)
in order to effectuate filing(s) on the aforementioned assets of seller. Upon any default in Sellers
representations, warranties, and covenants Purchaser may enforce said security agreement in accordance
with the provisions of the Uniform Commercial Code.
(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to
purchaser hereunder shall  constitute a waiver thereof.  No amendment, modification or waiver of, any
provision of this Agreement shall be effective unless the same shall be in writing and signed and
delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), returns(s),
defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other
billing rights purchased by purchaser from Seller or demand reimbursement from Seller based upon
representations made by Seller in this agreement as to the Account and Purchaser shall have such other
rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which
rights and remedies are hereby expressly reserved.

\quancorp\craig\purchase.agt                    PLEASE FAX THIS PAGE BACK ALSO

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any amount(s) thereon should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s), note(s), draft(s), monies or other instruments for the payment of money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 2 days of receipt thereof. SELLER ACKNOWLEDGES THAT FAILURE TO PAY OVER SUCH PAYMENTS WITHIN 5 DAYS TO PURCHASER SHALL BE A DEFAULT HEREUNDER AND FURTHERMORE SHALL CAUSE SELLER TO FORFEIT ANY RIGHTS IT MAY HAVE WITH RESPECT TO ANY OTHER PAYMENTS DUE OR TO BECOME DUE TO SELLER UNDER THIS AGREEMENT.

· (p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder, and hereby waives any and all rights under the Laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL STATE OR FEDERAL PAYROLL AND SALES TAXES.

(S) Seller hereby grants Quantum authority to sign it's name on any forms required by any governmental entities (including but not limited to Blumberg T491's or similarly required government forms) for the purpose of perfecting the notification of an assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (1) above.

Seller (assignor) Covenants that he will receive any moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said contract;

A) Payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

B) Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C) Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D) Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E) Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER'S REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, DEDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                         Dated this day of _____, 20 07

By: _____           By: x _____
     QUANTUM CORPORATE FUNDING LTD.              SIGNATURE AND TITLE

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By: _____           By: _____   (NO TITLE NEEDED)
                                                 SIGNATURE ONLY

Affirmation And Certification:
State of       County of              :SS
Sworn to before me this            day of        20__

Signature of Notary Public _____

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE SPECIFIED ON THE REVERSE SIDE HEREOF. WE ARRIVED AT THE PRICE BY ANALYZING THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT MIGHT ELAPSE BEFORE WE COLLECT THE PROCEEDS OF THOSE ACCOUNTS THAT DO ULTIMATELY PAY US. AS AN INDUCEMENT TO OUR CLIENTS TO SELL US THE "HIGHEST QUALITY" ACCOUNTS, (I.E., THOSE THAT ARE PAID QUICKLY) WE ARE PLEASED TO OFFER REBATES ON THE DISCOUNT THAT WE APPLIED IN ARRIVING AT THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. THE FOLLOWING SCHEDULE SHOWS THAT AMOUNT OF REBATES THAT YOU MAY BE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WHEN WE CALCULATED THE DISCOUNT.  THERE SHALL BE NO REBATE ON INVOICES COLLECTED BEYOND 180 DAYS.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

T# 25914

| | | |
|---|---|---|
| Accounts of The Bulk Paid within   1 to  30 days ....$ | 27. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  31 to  40 days ....$ | 26. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  41 to  50 days ....$ | 25. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  51 to  60 days ....$ | 24. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  61 to  70 days ....$ | 23. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  71 to  80 days ....$ | 22. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  81 to  90 days ....$ | 21. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  91 to 100 days ....$ | 20. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 101 to 110 days ....$ | 19. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 111 to 120 days ....$ | 18. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 121 to 130 days ....$ | 17. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 131 to 140 days ....$ | 16. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 141 to 150 days ....$ | 15. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 151 to 160 days ....$ | 14. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 161 to 170 days ....$ | 13. per Hundred of The Account Amount. |

Transaction#____35611____ Client#___5601___ Rebate Class___35611___ Advt__0.3___

## PURCHASE & SALE AGREEMENT

→ $ 112,166.28 to Penn Lyon Homes Corp.
→ $ 130,731.72 to Westwood Design

In consideration of the sum of $ ***********$242,900.00 *********** paid by purchaser to seller,

Westwood Design Incorporated

receipt of which is hereby acknowledged, the undersigned ("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd. ("Purchaser"), its successors and assigns all Seller's right, title and interest in and to Seller's account(s) receivable (including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors described in Exhibit "A" attached hereto and made part thereof, together with all rights of action accrued, or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign, or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make said sale, assignment, and transfer, and that said sale transfer or assignment does not conflict with the terms of any other agreement, or instrument to which Seller is a party.

(b) The correct total amount of said account(s) is $.............$242,900.00._____

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute; and the payment of said account(s) are not and will not be contingent upon the fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s), and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all checks received from sellers clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property improvement upon which it has performed labor or furnished materials, the account for which labor and/or materials it has assigned to Purchaser. In the event Seller fails to promptly comply with such request, Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of such labor and material. In connection with the filing of such Notice of Mechanic's Lien, the Seller agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) is not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept payment of less than the full amount, if in its judgement such action is necessary to effect collection, by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum of thirty third and one third (33 1/3%) of clause (h) for Purchaser's attorney's fees therefor.

(l) To secure the representations and covenants made by Seller in this agreement, but not the credit risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation patents, trademarks and copyrights (and applications for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped goods, together with all of Sellers books of accounts, ledger cards and records, all vehicles, all computer programs, and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its attorney power of Attorney to sign it's name on any applicable financing statements (UCC'1 and otherwise) in order to effectuate filing(s) on the aforementioned assets of seller. Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to purchaser hereunder shall constitute a waiver thereof. No amendment, modification or waiver of, any provision of this Agreement shall be effective unless the same shall be in writing and signed and delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), returns(s), defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other billing rights purchased by Purchaser from Seller or demand reimbursement from Seller based upon representations made by Seller in this agreement as to the Account and Purchaser shall have such other rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which rights and remedies are hereby expressly reserved.

\quancorp\resin\purchase.agt                 PLEASE FAX THIS PAGE BACK ALSO

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any amount(s) thereon should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s) or other instruments for the payment of money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 3 days of receipt thereof. SELLER ACKNOWLEDGES THAT FAILURE TO PAY OVER SUCH PAYMENTS WITHIN 3 DAYS TO PURCHASER SHALL BE A DEFAULT HEREUNDER AND THEREUNDER SHALL CAUSE SELLER TO FORFEIT ANY RIGHTS IT MAY HAVE WITH RESPECT TO ANY OTHER PAYMENTS NOW OR TO BECOME DUE TO SELLER UNDER THIS AGREEMENT.

(p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) by Purchaser, and hereby waives any and all rights under the laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL SUMS OR SIMILAR PAYMENTS RELATING THERETO.

(S) Seller hereby grants Quantum authority to sign Ab's name on any forms required by any governmental entities (including but not limited to Blumberg T433-s or similarly required government forms) for the purpose of performing the satisfaction of any assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (I) above.

Seller (assignor) Covenants that he will receive such moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said contract:

A) Payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

B) Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C) Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D) Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, or any contract, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E) Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER'S REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, DEDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                                    Dated this day of 20 DEC 2007

By: _____, Sr. Acct. Exec.                 By: _____ President
(QUANTUM CORPORATE FUNDING LTD.)                      (SIGNATURE AND TITLE)

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By: _____                                  By: _____ (NO TITLE NEEDED)
                                                      (SIGNATURE ONLY)

Affirmation And Certification:
State of ____ County of ____
Sworn to before me this ____ day of ____ 20____

Signature of Notary Public _____

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE SPECIFIED ON THE REVERSE SIDE HEREOF. WE ARRIVED AT THE PRICE BY ANALYZING THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT MIGHT ELAPSE BEFORE WE COLLECT THE PROCEEDS OF THOSE ACCOUNTS THAT DO ULTIMATELY PAY US. AS AN INDUCEMENT TO YOU (SELLER) TO SELL US THE "HIGHEST QUALITY" ACCOUNTS, (I.E., THOSE THAT ARE PAID QUICKLY) WE ARE PLEASED TO OFFER REBATES, OR THE DISCOUNT THAT WE APPLIED IN ARRIVING AT THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. IN FOLLOWING SCHEDULE SHOWS THAT AMOUNT OF REBATES THAT YOU MAY BE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WHEN WE CALCULATED OUR DISCOUNT. THERE SHALL BE NO REBATE ON INVOICES COLLECTED BEYOND 180 DAYS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER, NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

## T# 25914

| Accounts of The Bulk Paid within | 1 to 14 days | ....% | 27. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 21 to 48 days | ....% | 26. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 49 to 50 days | ....% | 25. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 51 to 60 days | ....% | 24. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 61 to 70 days | ....% | 23. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 71 to 80 days | ....% | 22. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 81 to 90 days | ....% | 21. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 91 to 100 days | ....% | 20. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 101 to 110 days | ....% | 19. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 111 to 120 days | ....% | 18. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 121 to 130 days | ....% | 17. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 131 to 140 days | ....% | 16. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 141 to 150 days | ....% | 15. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 151 to 160 days | ....% | 14. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 161 to 170 days | ....% | 13. per Hundred of The Account Amount. |

1 /18/07

**EXHIBIT A TO PURCHASE & SALE AGREEMENT
BETWEEN
QUANTUM CORPORATE FUNDING, LTD (PURCHASER)
&
Westwood Design Build Incorporated     (Seller)**

Transaction#   25914   Clitran#:

| Date | Invoice# | Type Acct.Debtor | D&B Debtor# | PublicWorks#/Clidab# Comptroller# | P.O.# | Job# | Contract | Invoice Amount |
|------|----------|------------------|-------------|------------------------------------|-------|------|----------|----------------|
| /10/07 | 10094 | 45 National City Mortgage Company | BK1 32722. | | | Project: Pollydore Residence. Construction DRAW, pollydore module delivery-A80033 $1814. Curbside delivery completed amount due and swing | | $347,000.00 |
| | | | | | | | | $347,000.00 |

Page0:    1 Transaction#:   25914

                                                                    TOTAL INVOICES:      $347,000.00

Seller hereby verifies the accuracy of the above:

By _David R. Warfin___ Title _President_

Westwood Design Build Incorporated
12109 Gordon Avenue
P.O. Box 105       Beltsville MD 20705

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
852 Walker Drive, Suite 400
Greebelt, MD 20770

Re:Transaction#:   25914 Client#:   5999 Debtor#:   32772.

| P.O.#/Contract# | Purchase# / Comptroller's fee# / Project# | | Contract# | P.O. Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|---|---|
| | Project: Pollydore Residence. Construction Draw, Pollydore module delivery-I0008751584. Curbside delivery completed amount due and owing | | | 16094 | 12/10/07 | | 45 | ****$347,000.00 |

****$347,000.00

Dear Mr. Washburn:

We have entered into a factoring agreement with Quantum Corporate Funding, Ltd.
Therefore, this letter serves as your irrevocable authority to send payment for
above captioned invoice(s) directly and solely to Quantum Corporate Funding, Ltd.
1140 Avenue of The Americas 15th Floor New York, NY 10036

Thank you for your cooperation.

David R. Warford

Very truly yours,
Westwood Design Build Incorporated



# INVOICE

| Date | Invoice # |
|------|-----------|
| 12/18/2007 | 10084 |

| BILL TO: |
|----------|
| National City Mortgage/National City Bank |
| Christopher Washburn, Vice President |
| 9852 Walker Drive, Suite 400 |
| Greenbelt, MD 20770 |

| REMIT TO: |
|-----------|
| **Westwood Design/Build Inc.** |
| **P.O. Box 105** |
| **Beltsville, MD 20704** |

| Terms | P.O. No. | PROJECT |
|-------|----------|---------|
| Net 45 | | Pollydore Residence |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Construction Draw | 347,000.00 | 347,000.00 |
| | Pollydore Module Delivery – #0005351534 | 0.00 | 0.00 |
| | Curbside Delivery Completed Amount Due and Owing | | |
| | This invoice has been sold, assigned and transferred to: Quantum Corporate Funding, Ltd. | | |
| | Make all checks payable and mail to: | | |
| | Quantum Corporate Funding, Ltd. 1140 Avenue of the Americas, 16th Floor New York, New York 10036 | | |
| Modules Delivered | | **Total** | **$347,000.00** |

Exhibit F

Lien Online - Confirmation                                    Page 1 of 1



**SHELLEY SIMMONDS**   ORDER DOCUMENTS       MY PORTFOLIO   All Our Power Under Your Control.
10/18/2007 5:10:14 PM ET   SEARCH PUBLIC RECORDS

### Confirmation

**Order Number:** 12441384
**Date Ordered:** 10/18/2007 5:10:10 PM ET
**Delivery Method:** iLien Only
**Expedite:** No

### Special Instructions

### Deliver To:

Shelley Simmonds
Quantum Corporate Funding Ltd
1140 Avenue of the Americas
16th Floor
New York , NY 10036
United States of America
212-768-1200
212-944-8216
shelley@quantumfunding.com

### Bill To:

CRAIG SHEINKER
QUANTUM CORPORATE FUNDING, LTD.
1140 AVE OF THE AMERICAS
16TH FLOOR
NEW YORK, NY 10036
2127681200
2129448216

### Filing Description

| Item | Client # | REF 2 | Debtor | Service | Jurisdiction | UDS# | Service Detail |
|------|----------|-------|--------|---------|--------------|------|----------------|
| 1 | 5999 | | Westwood Design Build, Incorporated | UCC Filing-Original | MD:Dept of Assessments/Taxation | B26434472 | Print final docs |

Brought to you by UCC Direct Services © 2001-2007

# UCC APPROVAL SHEET
## ** KEEP WITH DOCUMENT **

| TRANSACTION TYPE | FEES REMITTED |
|---|---|
| UCO – Original Financing Statement | $25.00 |
| UOA – Original Financing Statement with assignment | $25.00 |
| UOTU – Original Financial Statement Transmitting Utility | $25.00 |
| UMA – Amendment | $25.00 |
| UMDA – Amendment – Debtor Added | $25.00 |
| UMDC – Amendment – Debtor Name Change | $25.00 |
| UMDD – Amendment – Debtor Deleted | $25.00 |
| UMSA – Amendment – Secured Party Added | $25.00 |
| UMSC – Amendment – Secured Party Name Change | $25.00 |
| UMSD – Amendment – Secured Party Deleted | $25.00 |
| UMC – Amendment – Continuation | $25.00 |
| UMT – Amendment – Termination | $25.00 |
| UMZ – Amendment – Assignment | $25.00 |
| UMZP – Amendment – Partial Assignment | $25.00 |
| UMCS – Amendment – Correction Statement | $25.00 |
| UOMH – Manufactured Home– Original Financing Statement | $25.00 |
| UOPF – Public Finance Original Financing Statement | $25.00 |
| Documents Nine (9) Pages or More | $75.00 |
| Certified Copies | |
| Plain Copies | |

**TOTAL FEES:** _2500_

## NO FEE TRANSACTION TYPES

- URC – Copies
- UNCP – Void –Non-Payment
- UCC – Cancellation
- UCR – Reinstatement
- UCO – Departmental Action
- UCREF – Refund Recordation Tax
- UCIS – Incorrect ID Number
- XOVRU – UCC Overrides
- UMFC – Filing Office Correction Statement

**Method of Payment:**

Cash ☐    Check ☑    Credit Card ☐

Number of Checks _____

Comment(s):

---

Affix Barcode Label Here

```
1000361995482938
```

Affix Text Label Here

RECORDED ON 10/10/2007 AT 11:45 AM
IN THE FINANCING RECORDS OF THE MD. ST.
DEPARTMENT OF ASSESSMENTS AND TAXATION.
NO # 0001480527    ACK # 1000361995482938
ORIGINAL FILE NUMBER: 0000000181323153
PAGES: 0002

☐ OTHER CHANGES:

_____

_____

_____

Code _____

Attention: _____

UCC DIRECT SERVICES
P O BOX 29071
GLENDALE                    CA 91209-9071

CUST ID: 0002837460
WORK ORDER: 0001480
DATE:10-23-2007 11:
AMT. PAID:8400.00

# iLien Coverpage

Date Printed: 10/18/2007

Debtor:
Westwood Design Build, Incorporated
12109 Gordon Avenue
Beltsville, MD  20737

Client #: 5999
iLien File #: 26434472
Order Confirmation #: 12441384

UserID: 72104
Number of Collateral Pages Attached: 0

Transaction Type: Original
Jurisdiction: MD, Dept of Assessments/Taxation

CUST ID:8002837489
WORK ORDER:0001400527
DATE:10-23-2007 11:12 AM
AMT. PAID:$400.00

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front a

A. NAME & PHONE OF CONTACT AT FILER
Phone:(800) 331-3282

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)     706712 QUANTUM CORPO

UCC Direct Services     12441384
P.O. Box 29071
Glendale, CA 91209-9071     MDMD

*RECEIVED
DEPARTMENT OF
ASSESSMENTS & TAXATION
2007 OCT 19 A 11:46*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Westwood Design Build, Incorporated | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12109 Gordon Avenue | Beltsville | MD | 20737 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | MD | D11071552 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Quantum Corporate Funding, Ltd. | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1140 Avenue of the Americas 18th Floor | New York | NY | 10036 | USA |

4. This FINANCING STATEMENT covers the following collateral:

EXHIBIT "A"    All assets of the Debtor, including but not limited to, all personal property and fixtures in which Debtor has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including, without limitation, all equipment, inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, deposit accounts, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation, patents, trademarks and copyrights (and all applications for all of the foregoing), contract rights, and all other hypothecation, and premises or duty to pay money, now or hereafter owned or acquired by Debtor (including without limitation all rights of Debtor as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Debtor in any returned, repossessed, rejected or unshipped goods, together with all of Debtors books of account, ledger cards, customer lists and records, all vehicles, all computer programs and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns, additions, accessions and substitutions of and to pay any of the foregoing.    All of the terms used in this Financing Statement are, to the extent defined in the Uniform Commercial Code of the State of New York, used in this Financing Statement as so defined.    NOTICE: PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED THAT IT WILL NOT FURTHER ENCUMBER THE ASSETS DESCRIBED ABOVE OR INCREASE THE INDEBTEDNESS THEREON, OR TRANSFER OR ASSIGN SAID ASSETS EXCEPT IN THE ORDINARY COURSE OF BUSINESS

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
12441384     5999

Prepared by UCC Direct Services, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Exhibit G



# ESTWOOD
Design / Build Inc.

Quantum Corporate Funding, Ltd.                    December 20, 2007
1140 Avenue of the Americas, 16th Floor
New York, NY 10036
Ms. Shelley Simmonds

Ref:   Payment Authorization

Dear Ms. Simmonds,

Pursuant to your request, this letter serves as authorization to forward $112,168.28 ( One
Hundred Twelve Thousand – One Hundred Sixty Eight and twenty – eight cents) on
behalf of Westwood Design/Build Inc., to Penn Lyon Homes Corporation.

Please subtract the above listed amount from advance T #25914.

Thank you for your immediate attention in this matter.

Professionally,

David R. Warfield
President, Westwood Design/Build Inc.

Cc:    M Conrad

12/20/2007  15:46    4108132828                WESTWOOD CUSTOM HOME                PAGE  02

*Inspector Baldwin*

# **WIRING INSTRUCTIONS**

## Bank Name: **Omega Bank, N.A.**
## Wire Name: **Omega State College**
## ABA#: **031316271**

## For further credit of Penn Lyon Homes, Inc. A/C #40224230

P.O 107   195   Airport Rd

Selinsgrove, PA 17870

### Bank Address

## **Omega Bank**
## **366 Walker Drive**
## **State College, PA 16801**

Transactions                                                                 Page 1 of 2

 **STERLING NATIONAL BANK**

Sterling National Bank · 650 Fifth Avenue New York, New York 10019 · (212) 760-2031

**Current Account:** QUANTUM CO S MOSS

**Transactions from 12/21/2007 to 12/21/2007**

View Transactions Since: Last statement      Total Transactions This Page: 36

**NOTE: Click on a column name to sort transactions by that column In ascending (△) or descending (▽) order.**

| Date ▽ | Check# | Description | Debits | Credits | Balance |
|--------|--------|-------------|--------|---------|---------|
| 12/21/2007 | | OT: OMEGA STATE COLLEGE FURTHER CREDIT: PENN LYON HOME | (112,168.28) | | 2,305,012.77 |
| 12/21/2007 | | OT: WESTWOOD DESIGN BUILD INCO | (130,731.72) | | 2,417,181.05 |

Exhibit H

12/20/2007  15:46    4108132828                WESTWOOD CUSTOM HOME                    PAGE   03



PENN LYON
HOMES CORPORATION

P.O. BOX 27, AIRPORT ROAD
SELINSGROVE, PA 17870
(570) 374-4004
FAX: (570) 374-6055
Web: www.pennlyon.com

INVOICE NO.        N⁰ 850

DATE PRINTED
Dec 20, 2007

SOLD TO:   3445
           Westwood Design/Build Inc.
           13400 Baltimore Blvd. 2nd Floor
           Laurel, MD 20707

SHIPPED TO:

| SERIAL NO. | SIZE AND MODEL | EX. COLOR | PP | COD | SALESPERSON |
|------------|----------------|-----------|----|----|-------------|
| 11188      |                |           |    |    | ED C.       |

| OPTION NO. | DESCRIPTION | AMOUNT |
|------------|-------------|--------|
| POLLYDORE RESIDENCE | | $212,168.28 |

212,168.28
-50,000.00  Wire Recv'd 06/28/07
162,168.00
-50,000.00  Wire Recv'd 11/18/07
112,168.28  Balance Due

| | | |
|---|---|---|
| BASE | $ | 189,739.11 |
| OPTIONS | $ | |
| SUBTOTAL | $ | |
| SALES OR USE TAX | $ | 5,692.17 |
| SET UP (SUBCONTRACTED) | $ | |
| FREIGHT | $ | 16,737.00 |
| CARRIER DEPOSIT | $ | |
| INVOICE TOTAL | $ | 212,168.28 |
| LESS DEPOSIT OR CREDIT | $ | 100,000.00 |
| NET DUE | $ | 112,168.28 |

CARRIER NOS.

WHITE - BUILDER
GREEN - A/R
YELLOW - FILE
PINK - SALES FILE
GOLD - ACCOUNTING

Materials contained herein remain the property of Penn Lyon Homes Corporation until this invoice is paid in full with certified U.S. funds.

Exhibit I

## Bernard Kobroff

| | |
|---|---|
| **From:** | Craig Sheinker [cshei1@att.blackberry.net] |
| **Sent:** | Wednesday, January 16, 2008 1:26 PM |
| **To:** | Bernard Kobroff |
| **Subject:** | Fw: Westwood Design |

Sent via BlackBerry by AT&T

-----Original Message-----
From: "Maria DeSouza" <maria@quantumfunding.com>

Date: Tue, 15 Jan 2008 10:56:24
To:"Blackberry -- Craig Sheinker" <cshei1@mycingular.blackberry.net>
Subject: Westwood Design


FYI
-----Original Message-----
From: Justice, Timothy [mailto:Timothy.Justice@NCMC.com]
Sent: Tuesday, January 15, 2008 10:28 AM
To: Maria DeSouza
Subject: RE: Westwood Design


Maria,

Please inform Craig that he must direct all concerns regarding this transaction to Mike
Conrad at Westwood Design. National City Mortgage doesn't have any obligations to a
contact or agreement between your company or Westwood Design. I have informed Mike to
contact Craig regarding his concerns.

Tim Justice
Draw Division - Team Manager
Construction / Rehab Lending Department
National City Mortgage, a division of National City Bank
3232 Newmark Dr, Building 1
Miamisburg, OH 45342
Direct: 937-910-3205
Toll Free: 866-312-2271 ext. 53205
Fax: 937-910-4085
Timothy.Justice@ncmc.com




----------------
  From: Maria DeSouza [mailto:maria@quantumfunding.com]
Sent: Friday, January 11, 2008 5:15 PM
To: Justice, Timothy
Subject: Westwood Design


Hello Mr. Justice,
Per your conversation with Craig Sheinker, attached you will find documents signed by
Christopher Washburn. Please review and get back to Craig on Monday at 800-352-2535 or
212-768-1200 x.20.
If you have any questions, please feel free to contact me.
Maria Luiza De Souza
Jr. Account Executive
1140 Avenue of the Americas, 16th Floor

1

New York, N.Y 10036
Tel: 212-768-1200
Fax: 212-944-8216
<<25914.pdf>> <<25914 B.pdf>> <<Westwood UCC1.pdf>>

--------------------------------------------------------------------------------
- ***The following annotations have been made
--------------------------------------------------------------------------------

- Please be aware that e-mail is NOT a secured communication vehicle, and that others may
in certain circumstances be able to view its contents. As a result, while we are happy to
provide this information by e-mail, we do NOT conduct actual business transactions by e-
mail. Please contact the sender directly if you have any concerns about this message. All
loans subject to credit approval and property appraisal. Equal Housing Lender. This
communication is a confidential and proprietary business communication. It is intended
solely for the use of the designated recipient(s). If this communication is received in
error, please contact the sender and delete this communication.
================================================================================



Complaint

JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

QUANTUM CORPORATE FUNDING, LTD.,                    Civil Action
                                                     Docket No.
                         Plaintiff,

            -against-                                **COMPLAINT**

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
And NATIONAL CITY MORTGAGE INC.,

                         Defendants.
----------------------------------------------------------X

         Plaintiff, Quantum Corporate Funding, Ltd., by its attorneys, Goetz Fitzpatrick,

LLP, as and for its Complaint against the defendants alleges, upon information and belief,

as follows:

## THE PARTIES

         1.      Plaintiff Quantum Corporate Funding, Ltd. ("Quantum") is a corporation

organized and existing under the laws of the State of New York, maintaining its principal

place of business located at 1140 Avenue of the Americas, New York, New York 10036

and is engaged in the business of commercial finance.

         2.      Defendant Westwood Design/Build Incorporated ("Westwood") is a

corporation organized and existing under the laws of the State of Maryland maintaining

its principal place of business located at 12109 Gordon Avenue, Beltsville, Maryland

20705.

         3.      Defendant David R. Warfield ("Warfield") is a natural person, a resident

of the State of Maryland whose address is 715 East Maple Road, Linthicum Heights,

Maryland 21090.

4.     Defendant National City Mortgage Inc. ("National") is a corporation organized and existing under the laws of the State of Ohio, maintaining its principal place of business located at 3232 Newmark Drive, Miamisburg, Ohio 45342.

## JURISDICTION AND VENUE

5.     There is original jurisdiction in this Court pursuant to 28 U.S.C. §1332 since there is diversity of citizenship between plaintiff Quantum and each of the defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6.     Venue lies in this Court pursuant to 28 U.S.C. §1391(a) since a substantial part of the events or omissions giving rise to the claim herein occurred in this district.

## FIRST CAUSE OF ACTION AGAINST
## NATIONAL FOR BREACH OF CONTRACT

7.     On or about January, 2007 Mr. and Mrs. Eustace Pollydore, as owners, entered into a contract with defendant Westwood, as contractor, with defendant National, as construction lender, pursuant to which Westwood contracted to construct a new home at 6117 Elm Street, Lanham, Maryland for the Pollydores ("the Project").

8.     By virtue of the work and materials furnished by defendant Westwood to the Pollydores for the Project there became due to Westwood from defendant National the sum of $347,000.00 for which an invoice was rendered by Westwood to National (the "Invoice").

9.     Defendant Westwood made an assignment to plaintiff Quantum of the moneys due to Westwood from defendant National on account of the Invoice (the "Assignment").

10.    Simultaneously with the Assignment or within a short time thereof, plaintiff Quantum and defendant Westwood each gave notice of the Assignment to defendant National, and National acknowledged receipt of the Assignment.

11.    By virtue of the Assignment, there was assigned by defendant Westwood to plaintiff Quantum, the sum of $347,000.00.

12.    By virtue of the foregoing, there became due and owing to plaintiff Quantum from defendant National, the sum of $347,000.00.

13.    Defendant National has refused to pay the Invoice, leaving due and owing to plaintiff Quantum the amount of $347,000.00 for which demand has been duly made.

## SECOND CAUSE OF ACTION AGAINST
## NATIONAL FOR BREACH OF CONTRACT

14.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "13" of this Complaint with the same force and effect as if fully set forth at length hereat.

15.    Defendant National issued an estoppel certificate to plaintiff Quantum that the Invoice was correct and owing and that the work and materials invoiced had been completed and accepted (the "Estoppel Certificate").

16.    Plaintiff Quantum relied upon the Estoppel Certificate in purchasing the Invoice from Westwood.

17.    The $347,000.00 Invoice amount was acknowledged by defendant National to plaintiff Quantum as being due and owing.

18.    By virtue of the foregoing, there was due and owing to plaintiff Quantum from defendant National $347,000.00.

19.    Defendant National has refused to pay Quantum the $347,000.00 amount due pursuant to the terms of the Estoppel Certificate leaving due and owing to Quantum the amount of $347,000.00 for which demand has been made.

## FIRST CAUSE OF ACTION AGAINST
## WESTWOOD FOR BREACH OF CONTRACT

20.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "19" of this Complaint with the same force and effect as if fully set forth at length hereat.

21.    On December 20, 2007, in conjunction with the Assignment made by defendant Westwood to plaintiff Quantum, a Purchase and Sale Agreement (the "Agreement") was made, executed and delivered between Westwood and Quantum.

22.    The Agreement set forth certain warranties, representations and covenants by defendant Westwood to plaintiff Quantum regarding the Assignment.

23.    Defendant Westwood has breached the warranties, representations and covenants made by it in the Agreement, including those stating that the Invoice was presently due and owing and that were no set-offs or defenses against the assigned Invoice.

24.    Defendant National asserts that the Invoice was not due and owing and that it has set-offs or defenses against the assigned Invoice.

25.    As a result of defendant Westwood's breach of the Agreement, plaintiff Quantum has been damaged in the sum of not less than $347,000.00.

26.    Plaintiff Quantum has incurred and will incur attorneys fees in the prosecution of its claims, the extent of which is not yet known, for which defendant Westwood agreed, pursuant to the Agreement, to pay.

27.    Due to defendant Westwood's breach of the Agreement, plaintiff Quantum has incurred damages, including attorney's fees, the final amount to be determined at trial.

### FIRST CAUSE OF ACTION AGAINST
### WARFIELD FOR BREACH OF CONTRACT

28.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "27" with the same force and effect as if fully set forth at length hereat.

29.    In conjunction with the Assignment and the Agreement, defendant Warfield made, executed and delivered to plaintiff Quantum a guarantee (the "Guarantee") in writing whereby he personally guaranteed defendant Westwood's performance of the Agreement's warranties, representations and covenants.

30.    Defendant Warfield has failed to perform defendant Westwood's Agreement's warranties, representations and covenants.

31.    Defendant Warfield breached his Guarantee of defendant Westwood's Agreements warranties, representations and covenants.

32.    As a result of defendant Warfield's breach of this Guarantee, plaintiff Quantum has been damaged in the sun of not less than $347,000.00.

33.   Plaintiff Quantum has incurred and will incur attorneys fee in the prosecution of its claims against defendants Westwood and Warfield, the extent which are not yet known, but for which Warfield agreed, pursuant to his Guarantee, to pay.

34.   Due to defendant Warfield's breach of his Guarantee, plaintiff Quantum has incurred damages of not less than $347,000.00 exclusive of attorneys' fees, the final amount to be determined at trial.

## SECOND CAUSE OF ACTION AGAINST
## WESTWOOD AND WARFIELD FOR FRAUD

35.   Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "34" of this complaint with the same face and effect as it fully set forth herein at length hereat.

36.   In or about December 2007, defendants Westwood and Warfield fabricated the Invoice to defendant National, falsely stating that defendant Westwood had performed the work required of it pursuant to its contract with the Pollydores.

37.   In or about December 20, 2007, in order to induce plaintiff Quantum to accept from defendant Westwood an assignment of the Invoice, defendants Westwood and Warfield represented to Quantum that the Invoice was presently due and owing and represented an account receivable not subject to any defenses.

38.   The representations made by defendants Westwood and Warfield were false, and in truth, the Invoice was worthless and not in fact a good account receivable.

39.   When the representations were made by defendants Westwood and Warfield, each knew them to be false and made then with the intent to deceive and defraud plaintiff Quantum and to induce Quantum to accept an assignment of the Invoice.

40.    Plaintiff Quantum at the time the representations were made, did not know the truth regarding them but believed them to be true, relied upon them and was, thereby induced to accept an assignment of the Invoice and to pay to or on behalf of defendant Westwood $242,900.00.

41.    Plaintiff Quantum did not know the true facts regarding the Invoice until or about January 11, 2007.

42.    The Invoice is worthless and was so at the time it was assigned to Quantum.

43.    As a result of the false representations made by the defendants Westwood and Warfield, plaintiff Quantum has been damaged in the sum of $242,900.00.

## THIRD CAUSE OF ACTION AGAINST
## WESTWOOD AND WARFIELD FOR CONVERSION

44.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "43" of this Complaint with the same force and effect as if fully set forth at length thereat.

45.    Defendants Westwood and Warfield converted $242,900.00 belonging to plaintiff Quantum.

**WHEREFORE**, the plaintiff, Quantum Corporate Funding Ltd., demand judgment as follows:

1.    On the First Cause of Action against defendant National City Mortgage Inc., in the sum of $347,000.00.

2.    On the Second Cause of Action against defendant National City Mortgage Inc., in the sum of $347,000.00.

3.     On the First Cause of Action against defendant Westwood Design/Build Incorporated not less than the sum of $347,000.00.

4.     On the First Cause of Action against defendant David R. Warfield not less then the sum of $347,000.00.

5.     On the Second Cause of Action against defendant Westwood Design/Build Incorporated and David R. Warfield, jointly and severally, in the sum of $242,900.00 together with punitive and exemplary damages in the sum of $500,000.00.

6.     On the Third Cause of Action against defendants Westwood Design/Build Incorporated and David R. Warfield, jointly and severally, in the sum of $242,900.00 together with punitive and exemplary damages in the sum of $500,000.00.

7.     Pre-judgment and Post-judgment interest.

8.     Costs, disbursements and reasonable attorney's fees in an amount to be determined at trial.

9.     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
     January **22** , 2008

GOETZ FITZPATRICK LLP

By:_____
    Bernard Kobroff (BK 0101)
Attorneys for Plaintiff
Quantum Corporate Funding, Ltd.
One Penn Plaza, 44th Floor
New York, New York 10119
(212) 695-8100

# JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

# 08 CV 00539

QUANTUM CORPORATE FUNDING, LTD.,

<div style="margin-left:2em">Plaintiff,</div>

Docket No.

<div style="margin-left:2em">-against-</div>

WESTWOOD DESIGN/BUILD INCORPORATED,
DAVID R. WARFIELD, and NATIONAL CITY
MORTGAGE INC.,

<div style="margin-left:2em">Defendants.</div>

--------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER**

Bernard Kobroff, Esq.
GOETZ FITZPATRICK LLP
Attorneys for Plaintiff
Quantum Corporate Funding, Ltd.
One Penn Plaza, Suite 4401
New York, New York 10119
(212) 695-8100

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of plaintiff Quantum Corporate Funding, Ltd. ("Quantum") and in support of its motion for a preliminary injunction and Temporary Restraining Order ("TRO") pursuant to F.R.C.P. Rule 65. Upon the proofs submitted, plaintiff Quantum is entitled to a TRO and a preliminary injunction during the pendency of this action and pending the hearing and determination of Quantum's motion: (a) enjoining and restraining the defendant Westwood Design/Build Incorporated ("Westwood") from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable, or of moneys received from Quantum, or of goods and materials paid for by Quantum; and (b) enjoining and restraining the defendant David R. Warfield ("Warfield") from, without the written consent of the plaintiff, selling, transferring, assigning or in anyway conveying or encumbering any monies or property in the name of or received from or belonging to or held for the benefit of defendant Westwood.

## STATEMENT OF FACTS

The facts underlying plaintiff's motion are set forth in the Affidavit of Craig Sheinker, sworn to January 22, 2008. These facts undisputedly evidence that defendants Westwood and Warfield converted $242,900.00 of Quantum's monies by fraudulently inducing Quantum to purchase from them an account receivable by fraudulently representing to Quantum that this receivable was due and owing to Westwood by defendant National City Mortgage Inc. ("National").

## PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE
## RELIEF AND A TEMPORARY RESTRAINING ORDER

To be entitled to a preliminary injunction and a Temporary Restraining Order a party

must show: (1) a probability of success on the merits in the underlying action; (2) a danger of

irreparable injury without such relief and (3) a balance of the equities in its favor.  Aetna Ins. Co.

v. Capasso, 75 N.Y.2d 860, 862, 552 N.Y.S.2d 918 (1990).

## IT IS PROBABLE THAT PLAINTIFF WILL PREVAIL ON THE MERITS

Given the account debtor National's disavowance of payment of the defendant

Westwood's account receivable, there can be no dispute that defendant Westwood breached the

warranties, representations and covenants set forth in its sale agreement with Quantum and

defendant Warfield breached his guarantee of Westwood's warranties, representations and

covenants.

### A. Westwood's Breach of its Express Warranties of Sale Make
### it Liable in Damages for the Injury Caused Quantum

The "basis of the bargain" between defendant-seller Westwood and plaintiff-purchaser

Quantum was that the account receivable invoice amount was as stated and was payable without

dispute, set-off or counterclaim.  In reliance upon those express warranties, Quantum purchased

the invoice.  The Court of Appeals in CBS, Inc. v. Ziff-Davis Pub. Co., 75 N.Y.2d 496, 503, 555

N.Y.S.2d 449, 452 (1990) favorably quoted Judge Learned Hand's definition of "warranty", i.e.:

> "an assurance by one party to a contract of the existence of a fact
> upon which the other party may rely.  It is intended precisely to
> relieve the promisee of any duty to ascertain the fact for himself; it
> amounts to a promise to indemnify the promisee for any loss if the
> fact warranted proves untrue. . ." Metropolitan Coal Co. v.
> Howard, 155 F.2d 780, 784 (2d Cir. 1946).

The Court, then citing Ainger v. Michigan Gen. Corp., 476 F.Supp. 1209, 1225 (S.D.N.Y.

1979) aff'd 632 F.2d (2d Cir. 1980), stated:

> "The decisive question is whether [the purchaser] purchased the express warranties as bargained-for contractual terms that were part of the purchaser agreement." Ziff, *supra* at 502.

If these express warranties were "bargained-for contractual terms", the Court concluded:

> "The express warranty is as much apart of the contract as any other term. <u>Once the express warranty is shown to have been relied on as part of the contract...The right to indemnification depends only on establishing that the warranty was breached.</u>" Ziff, *supra* at 503. (Emphasis Added).

As evidenced by account-debtor National's e-mail denying liability for the invoice, Westwood's warranty that the invoice amount was payable without dispute has been breached. *See* Danna Metro Heating v. Mobile Oil Corp., 203 A.D.2d 231, 609 N.Y.S.2d 658, 660 (2d Dept. 1994) (difference between number of customers promised and number actually delivered established seller's breach of warranty).

In purchasing Westwood's account, Quantum was not buying a "chose-in-action" against defendant National for breach of contract. Rather, it was buying, as Westwood expressly promised, an undisputed account payable. Quantum did not buy the risk that National would not pay because Westwood had not performed. The purpose of a warranty, as Judge Hand noted, is "to relieve the promisee of any duty to ascertain the fact for himself". Herein that "fact" was that the "account(s) are presently due and owing to seller and the amounts thereof are not and will not be in dispute."

Westwood's breach of its express warranties gave rise to a duty to indemnify Quantum for the damages caused thereby. Ziff, *supra*. at 502. The damages suffered by Quantum as a result of

-4-

Westwood's breach is the invoice amount, interest thereon, court costs and disbursements, and the attorneys fees incurred in having to prosecute this action. *See* 93 Jur.2d, <u>Sales</u> sec. 235, Measure of Damages for Breach of Warranty.

### B. Westwood's Breach and Warfield's Failure to Perform Westwood's Obligations Pursuant to His Guarantee Makes <u>Him Liable For the Damages The Injury Caused.</u>

A contract of guaranty is a promise by a guarantor to answer on the default of the performance of an obligation by the person liable in the first instance to perform. <u>Coburn Corp. of America v. Orr</u>, 60 Misc.2d 912, 304 N.Y.S.2d 345, 348 (Civil Ct. Kings Co. 1969). Accordingly, after Westwood's warranty that the invoiced amount was payable without dispute, set-off or counterclaim was breached by National's disavowance of the invoice, the contingency underlying Warfield's collateral liability to indemnify Quantum, occurred. <u>Michaels v. Chemical Bank</u>, 110 Misc.2d 74, 441, N.Y.S.2d 638, 640 (Sup. Ct. N.Y. Co. 1981) (guaranty "binds the guarantor to a relationship under which he may become indebted in the future, if and, when the debtor defaults").

### PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF THE TRO <u>AND PRELIMINARY INJUNCTION ARE NOT GRANTED</u>

Pursuant to New York law, the application of which defendants Westwood and Warfield both agreed to pursuant to the terms of the Purchase and Sale Agreement (paragraph [g] thereof):

> "A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual…" CPLR Sec. 6301.

Herein, the evidence demonstrates that unless injunctive relief is granted, that by the time

a money judgment is recovered against defendants Westwood and Warfield, there will be no

assets remaining to enforce it against, thus rendering the judgment ineffectual.

Further, evidence also demonstrates that defendants Westwood and Warfield fabricated

an invoice, regarding Mr. and Mrs. Pollydore's contract, for a receivable they had not earned and

then fraudently represented its value to Quantum. In addition, defendants Westwood and

Warfield fabricated a false invoice from Westwood supplier, Penn Lyon Homes Construction,

which Quantum paid on Westwood's behalf. Their fraud resulted in Quantum wiring a total of

$242,900.00 to Westwood and/or for Westwood's benefit, for a worthless account receivable.

The fraudulently obtaining possession of another property constitutes a conversion. Schaffner v.

Pierce, 75 Misc.2d 21, 347 N.Y.S. 2d 411, 414-415 (Dist. Ct. Nassau Co. 1973).

The evidence also demonstrates that defendants Westwood and Warfield have ceased

business operations, i.e. after being confronted with their fraud they stopped answering their

telephones and turned off their fax machines. Accordingly, in such a case the court's injunctive

powers are properly invoked. *See* Amity Loans, Inc. v. Sterling National Bank & Trust Co., 177

A.D.2d 277, 575 N.Y.S.2d 854, 855 (1st Dept. 1991) (Court "properly recognized that injunctive

relief is appropriate to remedy the conversion of identifiable proceeds as sought in the underlying

action").

Therefore, given the evidence, Quantum has demonstrated that it will suffer irreparable

injury if injunctive relief is not granted.

## A BALANCING OF THE EQUITIES FAVORS PLAINTIFF

As regards the third element: that a balancing of the equities favor the plaintiff, there can

also be no doubt. Plaintiff seeks simply to maintain the status quo, i.e., the maintenance of the

security pledged to it as collateral by defendant Westwood pending the determination of the lawfulness of defendants' Westwood and Warfield's actions.

Herein, the imposition of a Preliminary injunction and a Temporary Restraining Order upon defendants Westwood and Warfield simply requires that they do what they have already represented, warranted and covenanted to Quantum that they will do. Yet, the denial of injunctive relief to Quantum makes it likely that defendants will completely dissipate the proceeds of their tortious conduct. *See* Amity, *supra*.

## CONCLUSION

Based upon the foregoing, the Court should grant plaintiff preliminary injunctive relief and a Temporary Restraining Order pending the determination of its motion, thus maintaining the status quo pending the resolution of the action.

Dated: New York, New York
      January 22, 2009

Respectfully submitted,

GOETZ FITZPATRICK LLP

By:_____
     Bernard Kobroff, Esq.

Attorneys for Plaintiff
QUANTUM CORPORATE FUNDING, LTD.
One Penn Plaza, Suite 4401
New York, New York  10119
(212) 695-8100

W:\bkobroff\Quantum\Westwood\brief.doc