UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,

                Plaintiff,

   -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

                Defendants.
-------------------------------------------------------X

Civil Action
Docket No. 08 CV00539 (LAK) (HBP)

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that upon the annexed Affidavit of Craig Sheinker sworn to on July 3, 2008 and the exhibits attached thereto, the Statement Pursuant to Local Rule 56.1, the accompanying Memorandum of Law in support of this motion, and the pleadings herein, plaintiff Quantum Corporate Funding, Ltd. will move this Court before Honorable Lewis A. Kaplan, United States District Judge, for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment against defendant Penn Lyon Homes Corporation in the amount of $112,168.28 together with interest thereon from January 15, 2008, and for such other and further relief as this Court deems just and proper.

    **I declare under penalty of perjury that the foregoing is true and correct.**

Dated: New York, New York
      July 3, 2008

                        GOETZ FITZPATRICK LLP

                        By:_____
                            Bernard Kobroff (BK 0101)
                        Attorneys for Plaintiff
                        Quantum Corporate Funding, Ltd.
                        One Penn Plaza, 44th Floor
                        New York, New York 10119
                        Tel. (212) 695-8100
                        Fax (212) 629-4013

Rule 56.1
Statment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,     Civil Action
                                           Docket No. 08 CV00539(LAK)(HBP)

               Plaintiff,

    -against-                           **STATEMENT PURSUANT
                                                TO LOCAL RULE 56.1**

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID B. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

               Defendants.
-------------------------------------------------------X
NATIONAL CITY MORTGAGE,

               Third-Party Plaintiff,

    -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

               Third-Party Defendant.
-------------------------------------------------------X

Plaintiff, Quantum Corporate Funding, Ltd ("Quantum"), contends that there is no genuine issue to be tried as to the following material facts:

1.     Plaintiff Quantum is a corporation organized and existing under the laws of the State of New York, maintaining its principal place of business at 1140 Avenue of the Americas, New York, New York 10036 and is engaged in the business of commercial finance. Affidavit of Craig Sheinker, sworn to July 3, 2008 (hereafter "Sheinker Affidavit"), para. 3 and Exhibit J, para. 1.

2.     Defendant Westwood Design/Build Incorporated ("Westwood") is a corporation organized and existing under the laws of the State of Maryland maintaining its principal place of business at 12109 Gordon Avenue, Beltsville, Maryland 20705. Sheinker Affid. Exs. A and J, para. 2.

3.    Defendant National City Mortgage Inc. ("National") is a corporation organized and existing under the laws of the State of Ohio, maintaining is principal place of business at 3232 Newmark Drive, Miamisburg, Ohio 45342. Sheikner Affid. Ex. J, para. 4.

4.    Defendant Penn Lyon Homes Corporation ("Penn") is a corporation organized and existing under the laws of the State of Pennsylvania, maintaining its principal place of business at 195 Airport Road, Selinsgrove, Pennsylvania 17870. Sheinker Affid. Ex. J, para. 5 and Ex. K, para. 5.

5.    In or about January, 2007 Mr. and Mrs. Eustace Pollydore, as owners, entered into contracts with defendant Westwood, as contractor, and with defendant National, as construction lender, pursuant to which Westwood contracted to construct a new home at 6117 Elm Street, Lanham, Maryland for the Pollydores (the "Pollydore Residence"). Sheinker Affid. para. 4 and Exhibits A and B.

6.    By virtue of the work and materials allegedly furnished by Westwood for the Pollydore Residence there became due to Westwood from National pursuant to the second draw-down on the Pollydore construction loan the sum of $347,000.00 for which an invoice was rendered by Westwood to National (the "Invoice"). Sheinker Affid. para. 5 and Exhibits B and C.

7.    In or about December, 2007, in order to induce Quantum to purchase the Invoice and in payment thereof to wire $130,731.72 to Westwood and $112,168.28 to Penn, Westwood forged an invoice allegedly from Penn in the amount of $112,168.28, allegedly in payment for the construction of the modular Pollydore Residence. Sheinker Affid. paras. 11 and 17 and Ex. G and Ex. K, paras. 37-44.

8.      Westwood made an assignment to Quantum of the moneys due it from National on account of the Invoice (the "Assignment"). Sheinker Affid. para. 10 and Exhibit E.

9.      Pursuant to Westwood's Assignment on December 21, 2007, Quantum wired from its account at Sterling National Bank to Penn's account No. 40224230 at Omega Bank, $112,168.28 in payment for the "Pollydore Residence." Sheinker Affid. para. 11 and Exs. E, F, G, H and K para. 41.

10.     Penn's Account No. 40224230 received the $112,168.28 wire transfer from Quantum on or about December 24, 2007. Sheinker Affid. Exs. H and K para. 41.

11.     Penn had no contract with Westwood to supply the Pollydore Residence. Sheinker Affid. para. 17 and Ex. K, para. 39.

12.     Penn did not credit the $112,168.28 received from Quantum against the Pollydore Residence. Sheinker Affid. Ex. K, para. 43.

13.     Notwithstanding Penn's receipt of the $112,168.28 from Quantum in payment for the Pollydore Residence, Penn never shipped the Pollydore Residence. Sheinker Affid. paras. 17 and 19 and Ex. K, paras. 39, 43 and 44.

14.     Notwithstanding Penn's receipt of the $112,168.28 from Quantum in payment for the Pollydore Residence, Penn credited the $112,168.28 against monies owed it by Westwood for the "Harris Residence". Sheinker Affid. paras. 11, 16 and 17 and Ex. K, paras. 42-44.

15.     On January 15, 2008, Quantum demanded that Penn return the $112,168.28 it had received in payment for the Pollydore Residence. Sheinker Affid. para. 18 and Ex. I.

16.     Penn refused and continues to refuse to uncredit the $112,168.28 received from Quantum which it credited to the Harris Residence and to return the $112,168.28 to

Quantum. Sheinker Affid. para. 20 and Ex. J.

Dated: New York, New York
      July 3, 2008

                     GOETZ FITZPATRICK LLP

                By:_____
                      Bernard Kobroff (BK 0101)
                      Attorneys for Plaintiff
                      Quantum Corporate Funding, Ltd.
                      One Penn Plaza, Suite 4401
                      New York, New York 10119
                      (212) 695-8100

W:\bkobroff\Quantum\Westwood\Statement Pursuant to Local Rule 56.1.doc

Sheinker
Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,    Civil Action
    Docket No. 08 CV00539(LAK)(HBP)

              Plaintiff,

    -against-             **AFFIDAVIT IN SUPPORT**
                           **OF MOTION FOR**
WESTWOOD DESIGN/BUILD         **SUMMARY JUDGMENT**
INCORPORATED, DAVID B. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

              Defendants.
-------------------------------------------------------X
NATIONAL CITY MORTGAGE,

              Third-Party Plaintiff,

    -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

              Third-Party Defendant.
-------------------------------------------------------X

CRAIG SHEINKER, being duly sworn, deposes and says:

1.      I am the President of Quantum Corporate Funding, Ltd. ("Quantum"), the
plaintiff herein, have examined Quantum's records and have personal knowledge of the
facts and circumstances hereinafter set forth and submit this Affidavit in support of
Quantum's motion for summary judgment against defendant Penn Lyon Homes
Corporation ("Penn") in the amount of $112,168.28 together with interest from January
15, 2008.

2.      Quantum seeks in this action to recover from defendant Penn the sum of
$112,168.28 of Quantum's monies which Penn either converted and/or was unjustly
enriched by, when Quantum wired said sum in payment for the Pollydore's Residence

and Penn neither applied the monies to that purpose, nor shipped the goods, nor returned the monies to Quantum.

## BACKGROUND

3.    Quantum is in the business of accounts receivable factoring. Headquartered in New York City, New York. Quantum is one of the largest purchasers of contractor receivables in the United States.

4.    On or about January, 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into contracts with defendant Westwood Design/Build Incorporated ("Westwood"), as contractor, and with defendant National City Mortgage Inc. ("National") as construction lender, pursuant to which Westwood contracted to construct a new home for Mr. and Mrs. Pollydore at 6117 Elm Avenue, Lanham, Maryland (the "Pollydore Residence"). A copy of the Westwood/Pollydore contract is annexed hereto as Exhibit "A". A copy of National/Pollydore construct loan agreement is annexed hereto as Exhibit "B".

## THE TRANSACTION

5.    In 2007, defendant Westwood, by defendant David R. Warfield ("Warfield") approached Quantum to obtain cash by selling Quantum an account receivable. To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum a $347,000.00 invoice (the "Invoice") which it represented was monies due it from defendant National pursuant to its second draw-down of the Pollydore's construction loan. A copy of the Westwood Invoice to National is annexed hererto as Exhibit "C". The construction loan draw-down schedule is annexed as part of Exhibit "B".

2

6.      Since Quantum has no independent way of knowing if the contractor offering to sell its accounts receivable has, in fact, performed work and furnished materials of the amount invoiced, Quantum contacts the account debtor, in this case the construction lender, defendant National, and requests from the account debtor, a written acknowledgment of and an estoppel certificate for the debt.

7.      Accordingly, in December 2007, Quantum contacted defendant National's Branch Manager, Christopher Washburn, at National's office in Greenbelt, Maryland, and requested confirmation that the Invoice (Exhibit "C" hereto) was correct, forwarding to defendant National an estoppel certificate covering the Invoice.

8.      In response, defendant National, by its Mr. Washburn, signed the estoppel certificate in the amount of the $347,000.00 second draw-down of the Pollydore construction loan and returned it to Quantum. A copy of the estoppel certificate executed by defendant National, citing Westwood's Invoice, is annexed hereto as Exhibit "D".

9.      In reliance upon defendant National's estoppel certificate, Quantum agreed to purchase the Invoice.

10.     The assignment of the Invoice by Westwood to Quantum was made by an agreement entitled Purchase & Sale Agreement (the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit "E".

11.     Pursuant to the Agreement, on December 21, 2007, Quantum paid defendant Westwood $242,900.00 for the Invoice pursuant to Westwood's, by defendant Warfield's, specific instructions, by wiring: (a) $130,731.72 to Westwood and; (b) wiring $112,168.28 to defendant Penn, in payment of Penn's invoice No. 850 representing the balance outstanding on its shipment of the "Pollydore Residence". A copy of Westwood's wiring instructions to Quantum is annexed hereto as Exhibit "F". A copy of

3

the Penn "Pollydore Residence" Invoice No. 850 is annexed hereto as Exhibit "G". A copy of Quantum's wire transfers to Westwood and to Penn are annexed hereto as Exhibit "H".

12.    In early January 2008, Quantum contacted defendant National's main office in Miamisburg, Ohio to confirm that pursuant to the assignment payment of the Invoice would be made by National directly to Quantum, as assignor, rather than to assignee Westwood.

13.    Additionally, Quantum attempted to contact defendant Westwood to advise it that if defendant National paid the Invoice to it, instead of to Quantum, that the payment was required to be turned over to Quantum.

14.    However, despite several attempts to reach Westwood by telephone, Quantum was unable to made contact with Westwood and this raised concerns.

## THE FRAUD AND PENN REFUSES TO RETURN THE PAYMENT OR SHIP THE POLLYDORE RESIDENCE

15.    Quantum then contacted the Pollydores' and was advised by Mrs. Pollydore that not only had the residence not been set on the foundation, but that there was no foundation and that no materials had been delivered to the site.

16.    After receiving this information, I contacted defendant Westwood's supplier, defendant Penn, to confirm that it had in fact shipped Mr. and Mrs. Pollydore's modular home for which Quantum had paid it.

17.    Defendant Penn advised me on January 11, 2008 that: (a) it had never heard of Pollydores; (b) had not shipped the Pollydore Residence, and; (c) that the $112,168.28 Penn invoice No. 850 (Exhibit "G") which Quantum had paid was ficticious.

18.    On January 15, 2008, by e-mail, I demanded that defendant Penn return to Quantum the $112,168.28 which Quantum had wired in payment for the Pollydore

4

Residence. A copy of my January 15, 2008 e-mail to Penn's President, David Reed,

demanding the immediate return of the $112,168.28 is annexed hereto as Exhibit "I".

19.     Notwithstanding my aforesaid demand and further conversations between

defendant Penn and Quantum's attorney, Charles A. Shea, III, Esq., of Wetzel, Caverly,

Shea, Phillips & Rodriguez, Penn refused to either return the $112,168.28 to Quantum or

to ship the Pollydore Residence.

20.     As a result, Quantum amended its Complaint herein to add Penn as a

defendant asserting against it claims for conversion and unjust enrichment. A copy of

Quantum's Corrected Amended Complaint is annexed hereto as Exhibit "J".

21.     A copy of defendant Penn's Answer, wherein it admits in pertinent part

that:

> (a)     "Penn Lyon has never entered into any contracts or transactions
> with Westwood or Warfield for the production and manufacture of
> modular custom-built home units to be delivered to 6117 Elm
> Street, Lanham, Maryland on property owned by Mr. and Mrs.
> Eustace Pollydore (the "Pollydore Project")" (para. 39); and
>
> (b)     On or about December 24, 2007, Penn Lyon received a wire
> transfer in the amount of $112,168.12 (sic)..." (para. 41);

but denies that it either converted Quantum's $112,168.28 transfer to it and/or was

unjustly enriched by that transfer (paras. 16 and 18), is annexed hereto as Exhibit "K".

22.     Notwithstanding defendant Penn's denials, the undisputed facts evidence

that Quantum on December 21, 2007 wired $112.168.28 from its account at Sterling

National Bank to Penn Lyon's account at Omega Bank in payment for the "Pollydore

Residence" and that at no time did Penn either credit that payment to the "Pollydore

Project" (Exhibit "K" para. 39) or ship the Pollydore Residence or return Quantum's

$112,168.28, despite Quantum's demand for its return.

**WHEREFORE,** I respectfully request that the Court grant this motion, as well as such other and further relief as may be just and proper.

_____
CRAIG SHEINKER

Sworn to before me this
__3rd__ day of _July_____, 2008

_____
Notary Public

BERNARD KOBROFF
NOTARY PUBLIC, State of New York
No. 4603478
Qualified in Westchester County
Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\Aff. in Sup. of Motion for Summary Judgment.doc

**A**



# CONTRACT

**THIS AGREEMENT**, Made as of **December 18th**, In the Year of **2006,**

Between the Owner:  **Mr. & Mrs. Eustace Pollydore**
**5300 Gallatin Street**
**Hyattsville, MD 20781**
**301-277-1455**

And the Contractor:  **Westwood Design/Build Incorporated**
**License # 16054316**
**P.O. Box 105**
**Beltsville, MD 20704**
**301-813-2626 Office**
**301-937-2359 Fax**

For the Project:  **New Home Construction**
**6117 Elm Street**
**Lanham, MD 20706**

Construction Lender:  **National City Mortgage**

## ARTICLE 1.    CONTRACT DOCUMENTS

**1.1**    The contract documents consist of this agreement, general conditions, construction documents, specifications, allowances, finish schedules, construction draw schedule, all addenda issued prior to execution of this agreement and all change orders or modifications issued and agreed to by both parties. All documents noted herein shall be provided to the Contractor by the Owner. These contract documents represent the entire agreement of both parties and supersede any prior oral or written agreement.

## ARTICLE 2.    SCOPE OF WORK

**2.1**    The Owner agrees to purchase and the Contractor agrees to construct the above mentioned structure and fixtures attached thereto in **Lanham, county of Prince George's in the state of Maryland** according to the construction documents, allowances, finish schedules, all addenda, change orders, modifications and specifications set forth in the specification booklet.

## ARTICLE 3.    TIME OF COMPLETION

**3.1**    The approximate commencement date of the project shall be **January 1st , 2007**. The approximate completion date of the project shall be August 31st, 2007, however, building permits and any change orders and/or unusual weather might delay or otherwise affect the completion date. Barring inclement weather, factory delays or owner related delays, the Contractor shall complete the home within 3 months upon receipt of the building permit. The contract execution date shall be **December 19th , 2006.**

## ARTICLE 4.    THE CONTRACT PRICE

**4.1**    The construction contract shall be calculated on a cost plus coordination basis, with all labor, materials, permits and insurance figured as costs.

Initialed by: Owner _____  Contractor _____  1

**4.2**    Pre-construction estimates for construction costs and coordination are **Three-Hundred-Twelve-Thousand, Eight-Hundred-Fifty ($312,850.00)**, Closing costs shall be paid by the Owner.

## ARTICLE 5.    PROGRESS PAYMENTS

**5.1**    The Owner will make payments to the contractor through four (4) separate draws based on invoices for labor, materials and modular units submitted.

| | | |
|---|---|---|
| Lot Premium | $ 149,000.00 | .26 Acre / 11,200 Sq/Ft Lot Purchase |
| Builder Deposit: | 10% of the Construction Cost is required when Prince Georges County releases permit. | |
| Foundation Draw: | 20% of the Construction Cost is required at foundation completion. | |
| Modular Home Set: | 60% of the Construction Cost is required at Modular Delivery and Set. | |
| Finishing and Closing: | 10% of the Construction Cost is required at punch-out completion. | |

Owner shall make payments to contractor within **5 business days** after approved inspection by owner.  Inspection by Owner must correspond with Addendum A attached. Should the owner fail to make payment, contractor may charge a penalty of **18%** annually upon the unpaid amount until paid.

**5.2**    If payment is not received by the Contractor within **10 days** after delivery of payment demand for work satisfactorily completed, contractor shall have the right to stop work or terminate the contract at it's option.  Termination by Contractor under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination.  Termination by Owner under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination.

## ARTICLE 6.    DUTIES OF THE CONTRACTOR

**6.1**    All work shall be in accordance to the provisions of the plans and specifications.  All systems shall be in good working order.

**6.2**    All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

**6.3**    All work shall be performed by licensed individuals to perform their said work, as outlined by law.

**6.4**    Contractor shall obtain all permits necessary for the work to be completed. The contractor is required to pay any and all impact fees charged by Prince George's County.

**6.5**    Contractor shall remove all construction debris and leave the project in a broom clean condition.

**6.6**    Upon satisfactory payment being made for any portion of the work performed, Contractor shall furnish a full and unconditional release from any claim or mechanics' lien for that portion of the work for which payment has been made.

## ARTICLE 7.    OWNER

**7.1**    The Owner shall communicate with subcontractors only through the Contractor.

**7.2**    The Owner will not assume any liability or responsibility, nor have control over or charge of construction means, methods, techniques, sequences, procedures, or for safety precautions and programs in connection with the project, since these are solely the Contractor's responsibility.

**7.3**    Contractor shall provide all engineering and surveying required by Prince George's County.

| | | |
|---|---|---|
| a. Horizontal and Vertical Control | e. Stormwater Management Plan | i.Limits of Disturbance |
| b. Topography | f.  Sediment Control Plan | j.Foundation Stake Out |
| c. Boundary Survey | g. Utility Coordination | k. Wall Check |
| d. Site Grading and Landscape Plan | h. TCP Waiver | l.All Certifications |
| m. Public Water/Sewer Connection | n. Geotechnical Report | |

2

**7.4**       Contractor shall obtain all construction permits necessary for the work to be completed.

**7.5**       Contractor shall build access road, per Prince Georges County specification, to Owner's parcel.

## ARTICLE 8.    CHANGE ORDERS AND FINISH SCHEDULES

**8.1**       A Change Order is any change to the original plans and/or specifications. All change orders need to be agreed upon in writing, including cost, additional time considerations, approximate dates when the work will begin and be completed, a legal description of the location where the work will be done and signed by both parties. 50% of the cost of each change order will be paid prior to the change, with the final 50% paid upon completion of the change order. A 12% fee shall be added to all change orders and overages in excess of initial allowances. Additional time needed to complete change orders shall be taken into consideration in the project completion date. **NO CHANGE ORDERS WILL BE ACCEPTED AFTER FINAL HOME ARCHITECTURAL DRAWINGS HAVE BEEN REVIEWED AND APPROVED BY THE OWNER.**

**8.2**       Completed Finish Selection Schedules shall be submitted to the Contractor as follows:

**8.2.1**     Schedule #1 within four weeks after site clearing begins.

**8.2.2**     Schedule #2 within eight weeks after site clearing begins.

**8.3**       Any delays or changes in finish selection schedules will delay the projected completion date.

## ARTICLE 9.    INSURANCE

**9.1**       The Owner will keep in force a Builder's Risk Insurance Policy on the said property to protect both owner's and contractor's interests until construction is completed. The Owner will maintain property insurance to the full and insurable value of the project, in case of a fire, vandalism, malicious mischief or other instances that may occur.

**9.2**       The Contractor shall purchase and maintain needed Workman's Compensation and Liability insurance coverage as required by law and deemed necessary for his own protection.

## ARTICLE 10.    GENERAL PROVISIONS

**10.1**      If conditions are encountered at the construction site which are subsurface or otherwise concealed physical conditions or unknown physical conditions of an unusual nature, which differ naturally from those ordinarily found to exist and generally recognized as inherent in construction activities, the Owner will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, and/or time required for, performance of any part of the work, will negotiate with the Contractor an equitable adjustment in the contract sum, contract time or both.

## ARTICLE 11.    HAZARDOUS MATERIALS, WASTE AND ASBESTOS

**11.1**      Both parties agree that dealing with hazardous materials, waste or asbestos requires specialized training, processes, precautions and licenses. Therefore, unless the scope of this agreement includes the specific handling, disturbance, removal or transportation of hazardous materials, waste or asbestos, upon discovery of such hazardous materials the Contractor shall notify the Owner immediately and allow the Owner/Contractor to contract with a properly licensed and qualified hazardous material contractor. Any such work shall be treated as a Change Order resulting in additional costs and time considerations.

## ARTICLE 12.    ARBITRATION OF DISPUTES

**12.1**      Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

## ARTICLE 13.    WARRANTY

**13.1**      At the completion of this project, Contractor shall execute an instrument to Owner warranting the project for **10 Years** against defects in workmanship or materials utilized. The manufacturers warranty will prevail. No legal action of any kind relating to the project, project performance or this contract shall be initiated by either party against the other party after **10 Years** beyond the completion of the project or cessation of work.

## ARTICLE 14.    TERMINATION OF THE CONTRACT

14.1    Should the Owner or Contractor fail to carry out this contract, with all of its provisions, the following options and stipulations shall apply:

14.1.1    If the Owner or the Contractor shall default on the contract, the non-defaulting party may declare the contract is in default and proceed against the defaulting party for the recovery of all damages incurred as a result of said breach of contract, including a reasonable attorney's fee. In the case of a defaulting Owner, the Earnest money herein mentioned shall be applied to the legally ascertained damages.

14.1.2    In the event of a default by the Owner or Contractor, the non-defaulting party may state his intention to comply with the contract and proceed for specific performance.

14.1.3    In the case of a defaulting Owner, the Contractor may accept, at his option the earnest money as shown herein as liquidated damages, should earnest money not cover the expenses to date, the Contractor may make claim to the Owner for all work executed and for proven loss with respect to equipment, materials, tools, construction equipment and machinery, including reasonable overhead, profit and damages applicable to the property less the earnest money.

## ARTICLE 15.    ATTORNEY FEES

15.1    In the event of any arbitration or litigation relating to the project, project performance or this contract, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses.

## ARTICLE 16.    ACCEPTANCE AND OCCUPANCY

16.1    Upon completion, the project shall be inspected by the Owner and the Contractor, and any repairs necessary to comply with the contract documents shall be made by the Contractor.

16.2    The Owner shall not occupy the property until final payment has been received by the Contractor and a Certificate of Occupancy has been obtained.

16.3    Occupancy of the project by the Owner in violation of Article 16.2, shall constitute unconditional acceptance of the project and a waiver of any defects or uncompleted work.

WITNESS our hand and seal on this _____17th_____ day of _____January_____, 2007.

Signed in the presence of:

Witness _____

Michael Conrad _____

Witness _____

Mr. Eustace Pollydore

_____

Mrs. June Pollydore

4

**B**

# National City Mortgage

## Modular Home (delivered to site)
## Draw Schedule

Owner: Pollydore #0005351534

| | | |
|---|---|---|
| 20% | Foundation complete. Well is drilled and acceptable. | $ 99,200.00 |
| 70% | **Payment of modular package, delivery to site.** **Unit to be removed from truck and/or trailer** **set on foundation.** | $ 347,200.00 |
| | Completion of permanent roof, windows set in place, all exterior doors hung, exterior walls complete, interior drywall complete, taped and spackled, all interior carpentry complete, kitchen cabinets and all fixtures have been set, deck complete and insulation installed. | |
| 10% | Exterior Siding Complete | $ 49,600.00 |
| | Final seaming of carpeting and/or flooring walls completed, finishing touches regarding fixtures and kitchen cabinets completed, septic tank installed. Dwelling complete. Driveway, rough grading and top soil complete. All owner responsibilities **MUST** be completed. | |

Builder/Contractor:

(Signature)

Borrower(s):

_June A Pollydore_
June Pollydore
Owner

_Eustace A Pollydore_
Eustace Pollydore

**Please allow at least 10 business days after closing before contacting**
**NCM's Draw Department for you first draw.**

A Division of National City Bank of Indiana

DS-05 Modular Home Delivery to Site Draw Schedule                                    Revised 3/2005

NOV-08-2007 12:22 P.10

FNMC a division of
National City Bank

11/08/2007

JUNE A POLLYDORE
EUSTACE A POLLYDORE
5300 GALLATIN STREET
HYATTSVILLE, Maryland 20781

We are pleased to inform you that your application for a
Construction/Permanent first mortgage loan on the property located
at 6117 ELM ST, LANHAM, Maryland 20706 has
been approved subject to the terms and conditions presented in this
Commitment.

Summary of Terms and Conditions:

You have elected:

[ ] A Fixed Rate Mortgage with interest rate limitations as set
    forth in your Construction/Permanent Capped Floating Rate
    Agreement,

[✓] A Fixed Rate Mortgage with interest rate lock.

[ ] An Adjustable Rate Mortgage as set forth in the Adjustable
    Rate Mortgage Program Disclosure you were provided.

The term of this loan includes a set period of time to complete
construction of the premises. You will pay interest only on
principal amounts disbursed during the construction period.
Payments on your permanent loan will not begin until the earlier of
completion of the premises or the set period for construction
completion.

Construction draws will be made in accordance with the Construction
Loan Agreement provided for your signature at the loan closing.
You must deposit with us, at the time of closing, the difference
between the loan funds available and the total cost of the
construction. We estimate your deposit will be $ 9,797.30 .

The following are important terms of your loan.

| | | | |
|---|---|---|---|
| Loan Amount | $ 496,000.00 | Loan Type | CVIN |
| Initial Interest Rate | 7.000 | Loan Sub Type | Fixed |
| Term of Loan | 360 | Discount Points | % |
| Origination Fee | 1.000 % | Construction Fee | % |

Commitment Letter
Page 2


Estimated Principal and Interest due after completion of construction:

Monthly Payment (P&I)  $ 1,993.87
Monthly Taxes          $ _____
Monthly Insurance      $ _____
Monthly PMI            $  247.50

Estimated Total Monthly Payment $     4,241.37

If your loan is an Adjustable Rate Mortgage and [  ] if this box is checked, you will have the
opportunity to convert your loan to a fixed rate loan for the remainder of your original loan term on
the (check as applicable): [  ] first, second, third, fourth and fifth interest rate change date, or [  ]
first and second interest change dates if you are not then in default and have not made a payment 30
or more days after the payment due date at any time within the twelve-month period immediately
preceding the Change Date.

Additional Conditions of This Commitment to Be Submitted Prior To Closing:




Additional Conditions of This Commitment to Be Presented At
Closing:




Other Terms and Conditions of This Commitment:

1.      An escrow account for real estate taxes and insurance premiums will be required.
        Therefore, one-twelfth of the annual payment for these items is to be included in your
        monthly payment.

2.      In the event that there is any change in the property to be mortgaged, your financial
        condition, or your employment status between the date of application and the final closing
        of this loan, FMMC a division of
        National City Bank
                                            at its option, may withdraw this commitment.

CONSTJ2

                                                              (12/04)

Commitment Letter
Page 3

3.  The loan and the closing shall be in compliance with the
    requirements of the federal, state and local governments now
    in effect or hereinafter to be enacted.

4.  All documents, mortgages, and other matters connected with
    this loan shall be subject to our approval in form and in
    substance, and our decision shall be final and conclusive.

5.  The Note, Construction Loan Agreement, Mortgage, Construction/
    Permanent Loan Agreement and all other documents pertaining to
    the loan are to be signed by all the Borrower(s) listed above.
    Therefore, all the Borrower(s) must be present at the time of
    the closing.     Additionally,  the  seller(s)  and/or  the
    Contractor  must  execute  certain  documents.    If   the
    Seller/Contractor will not be present at the closing, please
    notify the Closing Agent when you schedule your closing.

6.  A completed application must be signed at the time of closing.

7.  In order to have a smooth closing of this transaction, the
    Closing Agent must have the following items at least five (5)
    banking days prior to the day you wish to close your loan:

    A.   An ALTA Mortgage Title Insurance Commitment, in form and
         through a company acceptable to us, insuring against loss
         or damage in the amount of your loan, showing the
         mortgage to be a good and valid first lien on the
         property.  The policy must insure, in addition to other
         items, against material and mechanic's liens of record
         and eliminate survey exceptions.  The proposed mortgagee
         should read _____.

    B.   Fire and extended coverage insurance including vandalism
         and malicious mischief (Builder's Risk coverage) and to
         cause to be provided to Lender evidence of workers
         compensation and general liability insurance in the
         amount, form and in companies satisfactory to the Lender,
         which insurance shall be payable to Borrower with
         standard mortgage endorsement attached making loss
         payable to the Lender or its assigns or mortgagee.  A
         policy must be provided to the closing agent along with
         evidence that the first year's premium has been paid in
         full.

Commitment Letter

Lender reserves the right to refuse to make the loan under the terms and conditions set forth in this commitment where it is discovered that any facts represented by applicant(s) are false in any respect, where any credit reporting information is found to be inaccurate, or where bankruptcy or other laws would prevent or inhibit the Lender's ability to make the requested loan.

THIS COMMITMENT EXPIRES BY ~March 1, 2008~ . YOUR LOAN MUST CLOSE ON OR BEFORE THIS DATE. IF YOUR LOAN DOES NOT CLOSE BY THE COMMITMENT EXPIRATION DATE FOR ANY REASON, EVEN REASON BEYOND YOUR CONTROL, OR YOU REQUEST TO CHANGE THE AMOUNT OR ANY OTHER TERMS OF YOUR LOAN, WE MAY CHANGE ANY OF THE TERMS OF YOUR LOAN, INCLUDING INTEREST RATE, POINTS AND FEES OR WE MAY WITHDRAW YOUR COMMITMENT. IF WE ELECT TO EXTEND YOUR COMMITMENT, WE MAY REQUIRE THAT THE INFORMATION NEEDED FOR YOUR APPLICATION BE UPDATED SINCE SUCH INFORMATION IS ONLY VALID FOR NINETY DAYS.

Sincerely,

By: _____
              (Type Name)

Title: ___Branch Manager / VP___

CONST74 (02/04)

C



# INVOICE

| Date | Invoice # |
|------|-----------|
| 12/18/2007 | 10084 |

### BILL TO:
National City Mortgage/National City Bank
Christopher Washburn, Vice President
9852 Walker Drive, Suite 400
Greenbelt, MD 20770

### REMIT TO:
Westwood Design/Build Inc.
P.O. Box 105
Beltsville, MD 20704

| Terms | P.O. No. | PROJECT |
|-------|----------|---------|
| Net 45 | | Pollydore Residence |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Construction Draw<br>Pollydore Module Delivery – #0005351534<br>Curbside Delivery Completed Amount Due and Owing | 347,000.00<br>0.00 | 347,000.00<br>0.00 |
| | This invoice has been sold, assigned and transferred to Quantum Corporate Funding, Ltd.<br><br>Make all checks payable and mail to:<br><br>Quantum Corporate Funding, Ltd.<br>1140 Avenue of the Americas, 16th Floor<br>New York, New York 10036 | | |
| Modules Delivered | | **Total** | **$347,000.00** |

**D**

# Quantum Corporate Funding, Ltd.

1140 Avenue of the Americas, 16th Floor
New York, N.Y. 10036
Tel. 212 768-1200
800 352-2585
Fax 212 944-8216

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
7852 Walker Drive, Suite 400
Greebelt, MD 20770

Re: Our Transaction#     25914   Client: Westwood Design Build Incorporated
Our Debtor#:  32772.        Our Client#:     5999

| P.O.#/Contract# | Job# / Project# | Controllers# | Contract/ P.O.Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|---|
| | Project: Pollydora Residence. Construction Draw. Pollydora module delivery-#0005351534. | | | 10094 | 12/18/07 | 45 | ****$347,000.00 |

-----------------
*******$347,000.00

Dear Mr. Washburn:

We are the assignee of payment of the above captioned company. Attached is a letter from it authorizing all payments on the captioned invoices to be sent directly and solely to Quantum Corporate Funding, Ltd.

The undersigned Account Obligor acknowledges to Quantum Corporate Funding, Ltd. that the above invoice Amount(s) are correct and owing by us; that the work and or merchandise has been ordered from and completed by the captioned Client, and accepted by us; that there are not now, nor will there be, any claims, setoffs, or defenses beyond 20% of the Invoice Amount(s); Neither Quantum nor its agents made any representations except as herein set forth.  This estoppel is not subject to modification. New York law, jurisdiction and venue shall apply hereto.

Very truly yours,

Shelley Simmonds
Senior Account Exec.

Agreed & Accepted

Authorized Signature_____     Title_____
Account Obligor:   National City Mortgage Company
                   Print Name:

**E**

Transaction#_____ Client#_____ Rebate Class_____ Advt___:___

## PURCHASE & SALE AGREEMENT

→ $ 112,168.28 to Penn Lyan Homes Corp.
→ $ 130,731.72 to Westwood Design

In consideration of the sum of $ _____$242,900.00 _____ paid by purchaser to seller,

_Westwood Design Build Incorporated_

receipt of which is hereby acknowledged, the undersigned ("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd. ("Purchaser"), its successors and assigns all Seller's right, title and interest in and to Seller's account(s) receivable (including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors described in Exhibit "A" attached hereto and made part hereof, together with all rights of action accrued, or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign, or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make said sale, assignment, and transfer, and that said sale transfer or assignment does not conflict with the terms of any other agreement, or instrument to which Seller is a party.

(b) The correct total amount of said account(s) is $ _____$242,900.00 __.

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute; and the payment of said account(s) are not and will not be contingent upon the fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s), and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all checks received from sellers clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property improvement upon which it has performed labor or furnished materials, the account for which labor and/or materials it has assigned to Purchaser. In the event Seller fails to promptly comply with such request, Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of such labor and material. In connection with the filing of such Notice of Mechanic's Lien, the Seller agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) it not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept payment of less than the full amount, if in its judgement such action is necessary to effect collection, by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum of thirty third and one third (33 1/3%) of clause (b) for Purchaser's attorney's fees therefor.

(l) To secure the representations and covenants made by Seller in this agreement, but not the credit risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation patents, trademarks and copyrights (and applications for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped goods, together with all of Sellers books of accounts, ledger cards and records, all vehicles, all computer programs, and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its agentsPower of Attorney to sign it's name on any applicable financing statements (UCC-1 and otherwise) in order to effectuate filing(s) on the aforementioned assets of seller. Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to purchaser hereunder shall constitute a waiver thereof. No amendment, modification or waiver of, any provision of this Agreement shall be effective unless the same shall be in writing and signed and delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), returns(s), defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other billing rights purchased by purchaser from Seller or demand reimbursement from Seller based upon representations made by Seller in this agreement as to the Account and Purchaser shall have such other rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which rights and remedies are hereby expressly reserved.

\quancorp\resale\purchase.agt

**PLEASE FAX THIS PAGE BACK ALSO**

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any amount(s) thereon should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s), note(s), draft(s), copies or other instruments for the payment of money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 2 days of receipt thereof. SELLER ACKNOWLEDGES THAT FAILURE TO PAY OVER SUCH PAYMENT WITHIN 2 DAYS OF PURCHASER SHALL BE A DEFAULT HEREUNDER AND PURCHASER SHALL CANCEL SELLER TO FORFEIT ANY RIGHTS IT MAY HAVE WITH RESPECT TO ANY OTHER PAYMENTS DUE OR TO BECOME DUE TO SELLER UNDER THIS AGREEMENT.

(p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder, and hereby waives any and all rights under the laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL SUMS ON EITHER PAYROLL OR SALES TAXES.

(S) Seller hereby grants Quantum authority to sign AR's name on any forms required by any governmental entities (including but not limited to Blumberg T431's or similarly required government forms) for the purpose of perfecting the notification of an assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (Z) above.

Seller (assignor) covenants that he will receive any moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said contract:

A) Payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

B) Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C) Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D) Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E) Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER'S REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, DEDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                        Dated this day of 20 DEC 200_

By: S. Simmonds, Jr. Asst Exec      By: David R. Wa___  President
    QUANTUM CORPORATE FUNDING LTD.        SIGNATURE AND TITLE

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By: _____             By: X David R. Wa___  (NO TITLE NEEDED)
                                        SIGNATURE ONLY

Affirmation And Certification:
State of _____ County of _____ )ss
Sworn to before me this _____ day of _____ 20___

Signature of Notary Public

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE SPECIFIED ON THE REVERSE SIDE HEREOF. WE ARRIVED AT THE PRICE BY ANALYZING THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT WITH _____ RESULT IN _____ PROCESSING THE ACCOUNTS DUE TO LIQUIDATION PAY US. AS AN INDUCEMENT TO OUR CLIENTS TO PAY US THE "HIGHEST QUALITY" ACCOUNTS, (I.E. THOSE THAT ARE PAID QUICKLY) WE ARE PREPARED TO OFFER REBATES ON THE DISCOUNT THAT WE APPLIED IN ARRIVING AT THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. THE FOLLOWING SCHEDULE SHOWS THAT AMOUNT OF REBATES THAT YOU MAY BE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WHEN WE CALCULATED THE DISCOUNT. THERE SHALL BE NO REBATE OF INVOICES COLLECTED BEYOND 180 DAYS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

T# 25914

| | |
|---|---|
| Accounts of The Bulk Paid within   1 to  30 days ....$ | 31. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  31 to  40 days ..., $ | 30. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  41 to  50 days ....$ | 29. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  51 to  60 days ....$ | 28. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  61 to  70 days ....$ | 27. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  71 to  80 days ....$ | 26. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  81 to  90 days ....$ | 25. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within  91 to 100 days ....$ | 20. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 101 to 110 days ....$ | 19. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 111 to 120 days ....$ | 18. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 121 to 130 days ....$ | 17. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 131 to 140 days ....$ | 16. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 141 to 170 days ....$ | 15. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 151 to 160 days ....$ | 14. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 163 to 170 days ....$ | 13. per Hundred of The Account Amount. |

12/18/2007  17:33    4108132828          WESTWOOD CUSTOM HOME          PAGE  03
   12/18/2007  16:27    4108591196                                                          PAGE  02/02
      12/18/2007  17:21    4108132828              WESTWOOD CUSTOM HOME        PAGE  01
       12/18/2007 17:11 FAX 212 768 1224        QUANTUM FUNDING                     ☒002

1 /18/07

EXHIBIT A TO PURCHASE & SALE AGREEMENT
BETWEEN
QUANTUM CORPORATE FUNDING, LTD (PURCHASER)
&
Westwood Design Build Incorporated        (Seller)

Transaction#    25914    Clitran#:

| Date | Invoice# | Inv Acct.Debtor | H&R Debtor | Cildebtor | PublicWorks#/ Comptrollers# P.O.# | Job# | ContrDat | Invoice Amount |
|---|---|---|---|---|---|---|---|---|
| /10/07 | 10094 | 48 National City Mortgage Company | SK1 | 32772 | | Project: Pollydore Residence. Construction DT&M, Pollydore module delivery-#80093 51834. Curbside delivery completed amount due and owing | | ~~~~$347,000.00 |

&1&#####$347,000.00

Page0:  ) Transaction#:  25914

TOTAL INVOICE:        $347,000.00

Seller hereby verifies the accuracy of the above:

By _____David R. Watson_____  Title _President_

**F**



# WESTWOOD
## Design / Build Inc.

Quantum Corporate Funding, Ltd.                                    December 20, 2007
1140 Avenue of the Americas, 16th Floor
New York, NY 10036
Ms. Shelley Simmonds

Ref:    Payment Authorization

Dear Ms. Simmonds,

Pursuant to your request, this letter serves as authorization to forward $112,168.28 ( One Hundred Twelve Thousand – One Hundred Sixty Eight and twenty – eight cents) on behalf of Westwood Design/Build Inc., to Penn Lyon Homes Corporation.

Please subtract the above listed amount from advance T #25914.

Thank you for your immediate attention in this matter.

Professionally,

David R. Warfield
President, Westwood Design/Build Inc.

Cc:    M Conrad

12/20/2007  15:46    4108132828                  WESTWOOD CUSTOM HOME                    PAGE  02

*Inspector Brown*

# WIRING INSTRUCTIONS

## Bank Name: Omega Bank, N.A.
## Wire Name: Omega State College
## ABA#: 031316271

## For further credit of Penn Lyon Homes, Inc. A/C
## #40224230

P.O 107   195  Airport Rd

Selinsgrove, PA 17870

### Bank Address

## Omega Bank
## 366 Walker Drive
## State College, PA 16801

**G**

12/20/2007   15:46    4108132828                 WESTWOOD CUSTOM HOME                PAGE   03



**PENN LYON**

HOMES CORPORATION

P.O. BOX 27, AIRPORT ROAD
SELINSGROVE, PA 17870
(570) 374-4004
FAX: (570) 374-8055
Web: www.pennlyon.com

INVOICE NO.      **Nº 850**

DATE PRINTED
Dec 20, 2007

SOLD TO:   3445
Westwood Design/Build Inc.
13400 Baltimore Blvd. 2nd Floor
Laurel, MD 20707

SHIPPED TO:

| SERIAL NO. | SIZE AND MODEL | EX. COLOR | PP | COD | SALESPERSON |
|------------|----------------|-----------|----|----|-------------|
| 11188 | | | | | ED C. |

| OPTION NO. | DESCRIPTION | AMOUNT |
|------------|-------------|--------|
| POLLYDORE RESIDENCE | | $212,168.28 |
| 212,168.28 | | |
| -50,000.00  Wire Recv'd 06/28/07 | | |
| 162,168.00 | | |
| -50,000.00  Wire Recv'd 11/19/07 | | |
| 112,168.28  Balance Due | | |

| | | |
|---|---|---|
| BASE | $ | 189,739.11 |
| OPTIONS | $ | |
| SUBTOTAL | $ | |
| SALES OR USE TAX | $ | 5,692.17 |
| SET UP (SUBCONTRACTED) | $ | |
| FREIGHT | $ | 16,737.00 |
| CARRIER DEPOSIT | $ | |
| INVOICE TOTAL | $ | 212,168.28 |
| LESS DEPOSIT OR CREDIT | $ | 100,000.00 |
| NET DUE | $ | 112,168.28 |
| CARRIER NOS. | | |

WHITE - BUILDER
GREEN - A/R
YELLOW - FILE
PINK - SALES FILE
GOLD - ACCOUNTING

Materials contained herein remain the property of Penn Lyon Homes Corporation until this invoice is paid in full with certified U.S. funds.

**H**

 STERLING NATIONAL BANK

                                                    Contact    Help    Exit

**Home Banking    Bill Payment    Options**
Main | Transactions | Download | Statements | Stop Payments | Prior Day

Sterling National Bank · 650 Fifth Avenue New York, New York 10019 · (212) 760-2031

**Current Account:** QUANTUM CO S MOSS    

**Transactions from 12/21/2007 to 12/21/2007**

View Transactions Since: Last statement    Total Transactions This Page: 36

**NOTE: Click on a column name to sort transactions by that column in ascending (△) or descending (▽) order.**

| Date ▽ | Check# | Description | Debits | Credits | Balance |
|---|---|---|---|---|---|
| 12/21/2007 | | OT: OMEGA STATE COLLEGE FURTHER CREDIT: PENN LYON HOME | (112,168.28) | | 2,305,012.77 |
| 12/21/2007 | | OT: WESTWOOD DESIGN BUILD INCO | (130,731.72) | | 2,417,181.05 |

**I**

**From:** Craig Sheinker
**Sent:** Tuesday, January 15, 2008 1:35 PM
**To:** 'dreed@pennlyon.com'
**Cc:** Shelley Simmonds; Maria DeSouza
**Subject:**


Dear Mr. Reed:

Pursuant to our conversation on Friday, I am attaching hereto a scanned copy of an invoice purported to be invoice #850 from Penn Lyon to Westwood.  As you will recall, you have advised me that such invoice is bogus, and that your records indicate your actual invoice #850 is for a completely different project then the one we intended to pay you for (i.e. Pollydore residence)

As you also know, we wired your company $112,168.28 on December 21, 2007 for erection services at the Pollydore Residence.  Therefore, inasmuch as it now appears that we have been defrauded, we must demand that you immediately return the payment we made to your firm due to a total lack of consideration for such payment.

I invite you or your legal consel to call me to further discuss any questions you may have.


Craig Sheinker
President
Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas
16th Floor
New York, NY 10036
800-352-2535 X..20
Fax: 212-944-8216
craigs@quantumfunding.com

**J**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,

                     Plaintiff,

      -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

                   Defendants.
--------------------------------------------------------X

Civil Action
Docket No. 08 CV00539 (LAK) (HP)

**CORRECTED AMENDED
COMPLAINT**

      Plaintiff, Quantum Corporate Funding, Ltd., by its attorneys, Goetz Fitzpatrick,

LLP, as and for its Complaint against the defendants alleges, upon information and belief,

as follows:

## THE PARTIES

      1.    Plaintiff Quantum Corporate Funding, Ltd. ("Quantum") is a corporation

organized and existing under the laws of the State of New York, maintaining its principal

place of business located at 1140 Avenue of the Americas, New York, New York 10036

and is engaged in the business of commercial finance.

      2.    Defendant Westwood Design/Build Incorporated ("Westwood") is a

corporation organized and existing under the laws of the State of Maryland maintaining

its principal place of business located at 12109 Gordon Avenue, Beltsville, Maryland

20705.

      3.    Defendant David R. Warfield ("Warfield") is a natural person, a citizen of

the State of Maryland whose address is 715 East Maple Road, Linthicum Heights,

Maryland 21090.

4.    Defendant National City Mortgage Inc. ("National") is a corporation organized and existing under the laws of the State of Ohio, maintaining its principal place of business located at 3232 Newmark Drive, Miamisburg, Ohio 45342.

5.    Penn Lyon Homes Corporation ("Penn") is a corporation organized and existing under the laws of the State of Pennsylvania maintaining its principal place of business at 195 Airport Road, Selinsgrove, Pennsylvania 17870.

## JURISDICTION AND VENUE

6.    There is original jurisdiction in this Court pursuant to 28 U.S.C. §1332 since there is diversity of citizenship between plaintiff Quantum and each of the defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

7.    Venue lies in this Court pursuant to 28 U.S.C. §1391(a) since a substantial part of the events or omissions giving rise to the claim herein occurred in this district.

## FIRST CAUSE OF ACTION AGAINST
## NATIONAL FOR BREACH OF CONTRACT

8.    On or about January, 2007 Mr. and Mrs. Eustace Pollydore, as owners, entered into a contract with defendant Westwood, as contractor, with defendant National, as construction lender, pursuant to which Westwood contracted to construct a new home at 6117 Elm Street, Lanham, Maryland for the Pollydores ("the Project").

9.    By virtue of the work and materials furnished by defendant Westwood to the Pollydores for the Project there became due to Westwood from defendant National the sum of $347,000.00 for which an invoice was rendered by Westwood to National (the "Invoice").

10.    Defendant Westwood made an assignment to plaintiff Quantum of the moneys due to Westwood from defendant National on account of the Invoice (the "Assignment").

11.    Simultaneously with the Assignment or within a short time thereof, plaintiff Quantum and defendant Westwood each gave notice of the Assignment to defendant National, and National acknowledged receipt of the Assignment.

12.    By virtue of the Assignment, there was assigned by defendant Westwood to plaintiff Quantum, the sum of $347,000.00.

13.    By virtue of the foregoing, there became due and owing to plaintiff Quantum from defendant National, the sum of $347,000.00.

14.    Defendant National has refused to pay the Invoice, leaving due and owing to plaintiff Quantum the amount of $347,000.00 for which demand has been duly made.

## SECOND CAUSE OF ACTION AGAINST
## NATIONAL FOR BREACH OF CONTRACT

15.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "14" of this Complaint with the same force and effect as if fully set forth at length hereat.

16.    Defendant National issued an estoppel certificate to plaintiff Quantum that the Invoice was correct and owing and that the work and materials invoiced had been completed and accepted (the "Estoppel Certificate").

17.    Plaintiff Quantum relied upon the Estoppel Certificate in purchasing the Invoice from Westwood.

18.    The $347,000.00 Invoice amount was acknowledged by defendant National to plaintiff Quantum as being due and owing.

19.     By virtue of the foregoing, there was due and owing to plaintiff Quantum from defendant National $347,000.00.

20.     Defendant National has refused to pay Quantum the $347,000.00 amount due pursuant to the terms of the Estoppel Certificate leaving due and owing to Quantum the amount of $347,000.00 for which demand has been made.

### FIRST CAUSE OF ACTION AGAINST
### WESTWOOD FOR BREACH OF CONTRACT

21.     Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "20" of this Complaint with the same force and effect as if fully set forth at length hereat.

22.     On December 20, 2007, in conjunction with the Assignment made by defendant Westwood to plaintiff Quantum, a Purchase and Sale Agreement (the "Agreement") was made, executed and delivered between Westwood and Quantum.

23.     The Agreement set forth certain warranties, representations and covenants by defendant Westwood to plaintiff Quantum regarding the Assignment.

24.     Defendant Westwood has breached the warranties, representations and covenants made by it in the Agreement, including those stating that the Invoice was presently due and owing and that were no set-offs or defenses against the assigned Invoice.

25.     Defendant National asserts that the Invoice was not due and owing and that it has set-offs or defenses against the assigned Invoice.

26.     As a result of defendant Westwood's breach of the Agreement, plaintiff Quantum has been damaged in the sum of not less than $347,000.00.

27.    Plaintiff Quantum has incurred and will incur attorneys fees in the prosecution of its claims, the extent of which is not yet known, for which defendant Westwood agreed, pursuant to the Agreement, to pay.

28.    Due to defendant Westwood's breach of the Agreement, plaintiff Quantum has incurred damages, including attorney's fees, the final amount to be determined at trial.

## FIRST CAUSE OF ACTION AGAINST
## WARFIELD FOR BREACH OF CONTRACT

29.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "28" with the same force and effect as if fully set forth at length hereat.

30.    In conjunction with the Assignment and the Agreement, defendant Warfield made, executed and delivered to plaintiff Quantum a guarantee (the "Guarantee") in writing whereby he personally guaranteed defendant Westwood's performance of the Agreement's warranties, representations and covenants.

31.    Defendant Warfield has failed to perform defendant Westwood's Agreement's warranties, representations and covenants.

32.    Defendant Warfield breached his Guarantee of defendant Westwood's Agreements warranties, representations and covenants.

33.    As a result of defendant Warfield's breach of this Guarantee, plaintiff Quantum has been damaged in the sun of not less than $347,000.00.

34.     Plaintiff Quantum has incurred and will incur attorneys fee in the prosecution of its claims against defendants Westwood and Warfield, the extent which are not yet known, but for which Warfield agreed, pursuant to his Guarantee, to pay.

35.     Due to defendant Warfield's breach of his Guarantee, plaintiff Quantum has incurred damages of not less than $347,000.00 exclusive of attorneys' fees, the final amount to be determined at trial.

## SECOND CAUSE OF ACTION AGAINST
## WESTWOOD AND WARFIELD FOR FRAUD

36.     Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "35" of this complaint with the same face and effect as it fully set forth herein at length hereat.

37.     In or about December 2007, defendants Westwood and Warfield fabricated the Invoice to defendant National, falsely stating that defendant Westwood had performed the work required of it pursuant to its contract with the Pollydores.

38.     In or about December 20, 2007, in order to induce plaintiff Quantum to accept from defendant Westwood an assignment of the Invoice and in payment to wire transfer $130,731.72 to Westwood and $112,168.28 to defendant Penn allegedly in payment for supplies and materials used in the construction of the Project, defendants Westwood and Warfield represented to Quantum that Penn had supplied materials for the Project and that the Invoice was presently due and owing and represented an account receivable not subject to any defenses.

39.     The representations made by defendants Westwood and Warfield were false, and in truth, the Invoice was worthless and not, in fact a good account receivable and defendant Penn had not delivered supplies and materials for the Project.

40.     When the representations were made by defendants Westwood and Warfield, each knew them to be false and made then with the intent to deceive and defraud plaintiff Quantum and to induce Quantum to accept and to pay for the assignment of the Invoice.

41.     Plaintiff Quantum at the time the representations were made, did not know the truth regarding them but believed them to be true, relied upon them and was, thereby induced to accept an assignment of the Invoice and to pay to or on behalf of defendant Westwood $242,900.00.

42.     Plaintiff Quantum did not know the true facts regarding the Invoice until or about January 11, 2007.

43.     The Invoice is worthless and was so at the time it was assigned to Quantum.

44.     As a result of the false representations made by the defendants Westwood and Warfield, plaintiff Quantum has been damaged in the sum of $242,900.00.

## THIRD CAUSE OF ACTION AGAINST
## WESTWOOD AND WARFIELD FOR CONVERSION

45.     Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "44" of this Complaint with the same force and effect as if fully set forth at length hereat.

46.     Defendants Westwood and Warfield converted $242,900.00 belonging to plaintiff Quantum.

## FIRST CAUSE OF ACTION AGASINST PENN FOR CONVERSION

47.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "46" of this Complaint with the same force and effect as if set forth at length hereat.

48.    On December 21, 2007, defendants Westwood and Warfield unlawfully took $112,168.28 of plaintiff Quantum's monies, converted it to their own use, and transferred it to defendant Penn allegedly in payment for supplies and materials used in the construction of the Project.

49.    In truth and in fact defendant Penn had not supplied materials to the Project.

50.    In January, 2008, plaintiff Quantum demanded that defendant Penn return the $112,168.28 to Quantum, but Penn has refused and still refuses to return the $112,168.28 to Quantum.

51.    Defendant Penn has retained the $112,168.28 and has converted it to its own use.

52.    By reason of the foregoing, plaintiff Quantum has sustained damages in the amount of $112,168.28, plus interest from the date of conversion.

## SECOND CAUSE OF ACTION AGAINST PENN FOR UNJUST ENRICHMENT

53.    Plaintiff Quantum repeats and realleges each and every allegation set forth in paragraphs "1" through "52" of this Complaint with the same force and effect as if set forth at length hereat.

54.    Defendant Penn has been unjustly enriched as a result of the $112,168.28 of plaintiff's Quantum's monies transferred to it.

55.    By reason of the foregoing, plaintiff Quantum has sustained damages in the amount of $112.168.28.

**WHEREFORE**, the plaintiff, Quantum Corporate Funding Ltd., demand judgment as follows:

1.    On the First Cause of Action against defendant National City Mortgage Inc., in the sum of $347,000.00.

2.    On the Second Cause of Action against defendant National City Mortgage Inc., in the sum of $347,000.00.

3.    On the First Cause of Action against defendant Westwood Design/Build Incorporated not less than the sum of $347,000.00.

4.    On the First Cause of Action against defendant David R. Warfield not less then the sum of $347,000.00.

5.    On the Second Cause of Action against defendant Westwood Design/Build Incorporated and David R. Warfield, jointly and severally, in the sum of $242,900.00 together with punitive and exemplary damages in the sum of $500,000.00.

6.    On the Third Cause of Action against defendants Westwood Design/Build Incorporated and David R. Warfield, jointly and severally, in the sum of $242,900.00 together with punitive and exemplary damages in the sum of $500,000.00.

7.    On the First Cause of Action against defendant Penn Lyon Home Corporation in the sum of $112,168.28.

8.    On the Second Cause of Action against defendant Penn Lyon Homes Corporation in the sum of $112,168.28.

9.    Pre-judgment and Post-judgment interest.

10.    Costs, disbursements and reasonable attorney's fees in an amount to be determined at trial.

11.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
         February 15, 2008

                                          GOETZ FITZPATRICK LLP

                                          By:_____
                                                Bernard Kobroff (BK 0101)
                                          Attorneys for Plaintiff
                                          Quantum Corporate Funding, Ltd.
                                          One Penn Plaza, 44th Floor
                                          New York, New York 10119
                                          (212) 695-8100

**K**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

                    Plaintiff,                          Docket No. 08 CV 00539(LAK) (HP)
                                                        **ANSWER TO COMPLAINT**

            -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                    Defendants.

Defendant Penn Lyon Homes Corporation ("Penn Lyon"), by and through its attorneys, Bonner Kiernan Trebach & Crociata, LLP as and for its Verified Answer to Plaintiff's Corrected Amended Complaint, sets forth upon information and belief as follows:

### RESPONSE TO THE PARTIES

1.      Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 1-4 of the Corrected Amended Complaint.

2.      Defendant Penn Lyon admits the allegations contained in paragraph 5 of the Corrected Amended Complaint.

### RESPONSE TO JURISDICTION/VENUE

3.      Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 6-7 of the Corrected Amended Complaint.

### RESPONSE TO FIRST CAUSE OF ACTION AGAINST NATIONAL

4.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 8-14 of the Corrected Amended Complaint.

### RESPONSE TO SECOND CAUSE OF ACTION AGAINST NATIONAL

5.    Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 14 of this Complaint with the same force and effect as if fully set forth at length herein.

6.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 16-20 of the Corrected Amended Complaint.

### RESPONSE TO FIRST CAUSE OF ACTION AGAINST WESTWOOD

7.    Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 20 of this Complaint with the same force and effect as if fully set forth at length herein.

8.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 22-28 of the Corrected Amended Complaint.

### RESPONSE TO FIRST CAUSE OF ACTION AGAINST WARFIELD

9.    Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 28 of this Complaint with the same force and effect as if fully set forth at length herein.

10.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 30-35 of the Corrected Amended Complaint.

## RESPONSE TO SECOND CAUSE OF ACTION AGAINST WARFIELD

11.    Defendant Penn Lyon Penn repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 35 of this Complaint with the same force and effect as if fully set forth at length herein.

12.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 37-44 of the Corrected Amended Complaint.

## RESPONSE TO THIRD CAUSE OF ACTION AGAINST WARFIELD

13.    Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 44 of this Complaint with the same force and effect as if fully set forth at length herein.

14.    Defendant Penn Lyon denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 46 of the Corrected Amended Complaint.

## RESPONSE TO FIRST CAUSE OF ACTION AGAINST PENN

15.    Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth at length herein.

16.    Defendant Penn Lyon denies the allegations contained in paragraphs 48-52 of the Corrected Amended Complaint.

## RESPONSE TO SECOND CAUSE OF ACTION AGAINST PENN

17.     Defendant Penn Lyon repeats and realleges its responses to each and every allegation set forth in paragraphs 1 through 52 of this Complaint with the same force and effect as if fully set forth at length herein.

18.     Defendant Penn Lyon denies the allegations contained in paragraph 54 of the Corrected Amended Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSES

19.     Recovery is barred in this action by the failure of the Complaint to state claim upon which relief can be granted against Defendant Penn Lyon.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSES

20.     Plaintiff has no privity of contract with Defendant Penn Lyon.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

21.     Plaintiff has not sustained any damage by virtue of any act or omission of Defendant Penn Lyon or any of its agents or employees.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

22.     Plaintiff has failed to mitigate damages reasonably as a matter of law.

### AS AND FOR AN FIFTH AFFIRMATIVE DEFENSE

23.     Any damage sustained by the Plaintiff which was not caused by the culpable conduct of Plaintiff was caused by the culpable conduct of persons and entities over which Defendant Penn Lyon had no control.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

24.     Pursuant to the provisions of Article 16 of CPLR, should Defendant Penn Lyon be found liable to Plaintiff for damages, such liability being fifty percent or less of

the total liability assigned to all persons liable, the liability of Defendant Penn Lyon for non-economic loss shall not exceed its equitable share determined in accordance with the relative culpability of all persons liable.

### AS AND FOR AN SEVENTH AFFIRMATIVE DEFENSE

25.    In the event that the Plaintiff has settled or should in the future settle any portion of their claim arising from the allegations contained in the Plaintiff's Complaint with any currently named or to be named Defendants, the respective rights of the remaining parties should be determined pursuant to Section 15-108 of the General Obligations Law.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

26.    Any funds obtained by Defendant Penn Lyon were received as part of a bona fide good faith transaction.

### AS AND FOR AN NINTH AFFIRMATIVE DEFENSE

27.    Defendant Penn Lyon was authorized by co-defendant Westwood to assume ownership of the funds at issue in this litigation.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

28.    Plaintiffs' claims are barred due to the insufficiency of service of process.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

29.    Recovery is barred in this action as to this Defendant by reason of the applicable Statute of Limitations.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

30.    Defendant Penn Lyon has not been unjustly enriched.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

31.    Any recovery by Plaintiff is subject to the doctrine of set-off.

### AS AND FOR AN FOURTEENTH AFFIRMATIVE DEFENSE

32.    The plaintiff lacks standing to bring these claims.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

33.    These defendants adopt and incorporate by reference as if the same were set forth at length herein, all other affirmative defenses which have been or will be asserted by any other parties in this action, except those which may contain allegations of liability against these defendants, to the extent that such defenses are applicable to these defendants.

### AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

34.    This party reserves the right to supplement these affirmative defenses up to an including time of trial.

### AS AND FOR A FIRST CROSS-CLAIM AGAINST CO-DEFENDANTS WESTWOOD, NATIONAL AND WARFIELD, DEFENDANT PENN ALLEGES AS FOLLOWS:

35.    That if the Plaintiff sustained the injuries and damages in the manner and at the time and place alleged in the complaint, all of which are specifically denied, such damages were sustained by reason of the acts, conduct, negligence, misfeasance or nonfeasance of co-defendants Westwood, National and Warfield, their agents, servants and/or employees, and not by defendant Penn Lyon, and if it is found that defendant Penn Lyon is liable to Plaintiff herein, all of which is specifically denied, then defendant Penn Lyon, on the basis of apportionment of responsibility, is entitled to contribution from co-defendants Westwood, National and Warfield to pay for all or part of any verdict or judgment that Plaintiff may recover against Defendant Penn Lyon proportionate to the co-

defendants' actual liability, together with attorneys' fees and the costs and disbursements of this action.

## AS AND FOR A SECOND CROSS-CLAIM AGAINST CO-DEFENDANTS WESTWOOD, NATIONAL AND WARFIELD, DEFENDANT PENN LYON ALLEGES AS FOLLOWS:

36.    That if the Plaintiff sustained the injuries and damages in the manner and at the time and place alleged in the Complaint, and if it is found that Defendant Penn Lyon is liable to Plaintiff herein, all of which is specifically denied, then Defendant Penn Lyon, on the basis of common-law indemnification, is entitled to recovery from the co-defendants, Westwood, National and Warfield to pay for all or part of any verdict or judgment that Plaintiff may recover against Defendant Penn, together with attorneys fees and the costs and disbursements of this action.

## AS AND FOR A THIRD CROSS-CLAIM AGAINST CO-DEFENDANTS WESTWOOD AND WARFIELD, DEFENDANT PENN ALLEGES AS FOLLOWS:

37.    Assuming, arguendo, that plaintiff establishes that the funds it sent to Penn Lyon were intended as payment for the "Pollydore Project" Penn Lyon is not liable to plaintiff and should not be required to return the funds to plaintiff because it was fraudulently induced by Westwood and Warfield to accept the funds in payment for the "Harris Transaction."

38.    Defendants Westwood and Warfield represented and warranted to Defendant Penn Lyon that it would be receiving a sum of $112,168.12 in connection with a transaction between and among Penn Lyon and Westwood for the production and manufacture of modular custom-built home units to be delivered to 14101 Old Stage Road, Bowie, Maryland owned by Samuel J. Harris. (the "Harris Transaction").

39.    Penn Lyon has never entered into any contracts or transactions with Westwood or Warfield for the production and manufacture of modular custom-built home units to be delivered to 6117 Elm Street, Lanham, Maryland on property owned by Mr. and Mrs. Eustace Pollydore (the "Pollydore Project").

40.    Prior to December 24, 2007, Westwood informed Penn Lyon that it would soon be sending a wire transfer payment to Penn Lyon to be applied to the Harris Transaction.

41.    On or about December 24, 2007, Penn Lyon received a wire transfer in the amount of $112,168.12 as promised by Westwood.

42.    On or about December 26, 2007, Westwood contacted Penn Lyon to confirm that its wire transfer in the amount of $112,168.12 for the Harris Transaction was received and appropriately applied to reduce the balance due on that transaction

43.    In accordance with Westwood and Warfield's representations and warranties, Penn Lyon applied the funds it received on December 26, 2007 to the Harris Transaction.

44    Westwood and Warfield's false representations were material to Penn Lyon's acceptance of the funds and application of the funds to the Harris Transaction for which Penn Lyon had already provided modular custom-built home units.

45.    Westwood and Warfield's false representations to Penn were made with the knowledge that Penn Lyon would rely on it, which it did to Plaintiff Quantum and Penn Lyon's detriment, and as a result thereof, Quantum and Penn Lyon have been damaged.

WHEREFORE, Defendant PENN LYON demands judgment dismissing Plaintiff's Complaint and all Cross-Claims and/or other claims which may be deemed to exist against this Defendant and further demand judgment over and against Plaintiff for the amount of any judgment obtained against this Defendant by Plaintiff, or on the basis of apportionment of responsibility, and further demands that in the event that PENN LYON is found liable to Plaintiff herein, then PENN LYON, on the basis of apportionment of responsibility and indemnity as well as common law fraud/fraudulent inducement, has judgment over and against co-defendants WESTWOOD, WARFIELD AND NATIONAL for all or part of any verdict or judgment that Plaintiff may recover against said answering Defendant, in such amounts as a jury or the Court may direct, together with attorneys' fees and the costs and disbursements of this action. PENN LYON also seeks punitive damages against defendants WESTWOOD AND WARFIELD in connection with its cross-claim for fraudulent inducement.

Dated: New York, New York
       April 10, 2008

Yours etc.,

By: _____
       Scott H. Goldstein, Esq.
       BONNER KIERNAN TREBACH
       & CROCIATA, LLP
       Attorneys for Defendant,
       Penn Lyon Homes Corporation
       State Building, Suite 3304
       New York, New York 10118
       (212) 268-7535

TO:    Bernard Kobroff, Esq.
       Goetz Fitzpatrick, LLP
       Attorneys for Plaintiff
       One Penn Plaza
       Suite 4401
       New York, New York 10119

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,   Civil Action
                                     Docket No. 08 CV00539(LAK)(HBP)

                        Plaintiff,

    -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID B. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

                        Defendants.
--------------------------------------------------------X
NATIONAL CITY MORTGAGE,

                   Third-Party Plaintiff,

    -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

                   Third-Party Defendant.
--------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF SUMMARY
JUDGMENT AGAINST DEFENDANT
<u>PENN LYON HOMES CORPORATION</u>**

                         GOETZ FITZPATRICK LLP
                         Attorneys for Plaintiff
                         Quantum Corporate Funding, Ltd.
                         One Penn Plaza, 44th Floor
                         New York, New York 10119
                         (212) 695-8100

Bernard Kobroff, Esq.
Of Counsel

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of plaintiff Quantum Corporate Funding, Ltd. ("Quantum") in support of its motion for summary judgment against defendant Penn Lyon Homes Corporation ("Penn") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon the proofs submitted, there is no genuine triable issue of fact or any meritorious legal defense to preclude granting judgment to plaintiff Quantum against defendant Penn for conversion and unjust enrichment.

## STATEMENT OF FACT

The facts underlying Quantum's claims against defendant Penn are set forth in the Affidavit of Craig Sheinker, sworn to July 3, 2008, and in the Statement Pursuant to Local Rule 56.1, and are incorporated herein.

## ARGUMENT

The undisputed facts establish as a matter of law that defendant Penn has been unjustly enriched and/or has converted $112,168.28 belonging to plaintiff Quantum.

**Standard of Review:**

To obtain summary judgment, the movant must demonstrate that, under the undisputed material facts, movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 202 (1986); Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The substantive law underlying a claim determines if a fact is material and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Dervin Corp. v. Banco Bilbao

2

<u>Vizcaya Argentina</u>, 2004 WL 1933621 (S.D.N.Y. 2004) citing <u>Anderson</u>, 477 U.S. <u>supra</u> at 248.

**<u>As Regards Unjust Enrichment:</u>**

"In order to state a claim for unjust enrichment under New York laws[*] plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to made restitution![**] <u>Weisberg</u> v. <u>Smith</u>, 401 F. Supp. 2d 359, 362 (S.D.N.Y. 2005) citing <u>Harger</u> v. <u>Price</u>, 204 F. Supp. 2d 669, 710 (S.D.N.Y. 2002) quoting <u>Violette</u> v. <u>Armonk Associates, L. C.</u>, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995).

Herein the undisputed facts evidence that: (1) defendant Penn was enriched-since it received $112,168.28 transferred into its account at Omega bank; (2) defendant Penn's enrichment was at plaintiff's Quantum's expense – since the wire transfer came from Quantum's account at Sterling National Bank; and (3) the circumstances are such that equity and good conscience require defendant Penn to make restitution – since Penn received the transfer from Quantum in payment for a modular residence that Penn had allegedly supplied to Mr. and Mrs. Pollydore when, in fact, Penn had not and never did supply any such residence.

The controlling legal principle was discussed in <u>Manufactures Hanover</u> v. <u>Chemical Bank</u>, 160 A.D.2d 113, 559 N.Y.S.2d 704, 707 (1st Dept 1990):

> "The principal that a party who pays money, under a mistake of fact, to one who is not entitled to it should, in equity and good conscience, be permitted to recover it back is longstanding and well recognized (<u>Ball</u> v. <u>Shepard</u>, 202 N.Y. 247, 253, 95 N.E. 719) and applies even if the mistake is due to the negligence of the payor (see, e.g., <u>Manufacturers Trust Co.</u> v. <u>Diamond</u>, 17 Misc.2d 909, 186 N.Y.S.2d 917 [App.Term, 1st Dep't]; <u>Mutual Life Insurance Co. of New York</u> v. <u>William B. Kessler, Inc.</u>, 25 Misc.2d 242, 242-243, 202 N.Y.S.2d 92). The rule has its

> underpinnings in unjust enrichment (see, <u>Miller</u> v. <u>Schloss</u>, 218 N.Y. 400, 113 N.E. 337) and rests 'upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. * * * 'It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money * * * under such circumstances that in equity and good conscience he ought not to retain it * * *.' (Id. at 407, 113 N.E. 337.) Noting its equitable origins, the court in <u>Byxbie</u> v. <u>Wood</u>, 24 N.Y. 607 stated, 'Having money that rightfully belongs to another, creates a debt; and wherever a debt exists without an express promise to pay, the law implies a promise * * *.' (Id. at 610.)"

Accordingly, the law in New York is clear:

> "a party who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment unless the payee has changed his position to his detriment in reliance upon the mistaken payment." <u>Bank Saderat Iran</u> v. <u>Amin Beydoun</u>, Inc., 555 F.Supp. 770, 774 (S.D.N.Y.1983).

Herein, it is undisputed that defendant Penn did not change its position to its detriment in reliance upon Quantum's mistaken payment, i.e. unlike in <u>Bank Saderat</u>, 555 F.Supp. <u>supra</u> at 774 or in <u>Swiss Bank Corporation</u> v. <u>JLM International</u>, 1995 WL 517183 (S.D.N.Y. 1995), no goods were shipped by the recipient of the mistaken payment in reliance thereon.

Rather, herein, as in <u>Manufacturer Hanover</u> (559 N.Y.S.2d <u>supra</u> at 712) the funds always remained in the recipient's hands and have been used by the recipient to reduce it customer's, the thief's, obligation to it arising from other transactions. However, the thief is not entitled to receive such credit to its account. CF. <u>Schaffner</u> v. <u>Pierce</u>, 75 Misc. 2d 21, 347 N.Y.S.2d 411, 414 (Dist. Ct. Nassau 1973) ("To take possession of personal property where the consent of the owner is induced by a fraudulent misrepresentation is a conversion").

Therefore, since Penn did not change its position to its detriment in reliance on Quantum's $112,168.28 mistaken payment to it, equity and good conscience requires that Penn make restitution.

Accordingly, the undisputed facts establish as a matter of law that defendant Penn has been unjustly enriched at plaintiff Quantum's expense in the amount of $112,168.28.

**As Regards Conversion:**

In <u>Republic of Haiti</u> v. <u>Duvalier</u>, 211 A.D.2d 379, 626 N.Y.S.2d 472, 475 (1st Dept. 1995), the Court stated:

> "The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner (<u>Payne</u> v. <u>White</u>, 101 A.D.2d 975, 976, 477 N.Y.S.2d 456; <u>Peters Griffin Woodward, Inc.</u> v. <u>WCSC, Inc.</u>, 88 A.D.2d 883, 452, N.Y.S.2d 599). Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner (<u>Manufacturers Hanover Trust Co.</u> v. <u>Chemical Bank</u>, 160 A.D.2d 113, 124-25, 559 N.Y.S.2d 704)."

In addition; (a) the "negligence of an owner facilitating a common-law larceny of tangible personal property is no defense to an action for conversion of the stolen goods against the vendee of the thief, even though he has bought in good faith from the thief" (<u>Harford Accident & Ind. Co.</u> v. <u>Walston Co.</u>, 21 N.Y.2d 219, 221, 287 N.Y.S.2d 58 (1967) reaffirmed on reargument, 22 N.Y.2d 672, 291N.Y.S.2d (1968)); and (b) "if possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand". <u>White</u> v. <u>City of Mount Vernon</u>, 221 A.D.2d 345, 633 N.Y.S.2d 369, 370 (2nd Dept. 1995).

In <u>Manufacturers Hanover</u>, 559 N.Y.S.2d <u>supra</u> at 712, the Court concluded that plaintiff's wire transfer of a specific sum satisfied the requirement that the money be

specifically identifiable. See also <u>Payne</u> v. <u>White</u>, 101 A.D.2d 975, 477 N.Y.S.2d 456, 458 (3d Dept. 1984) ("the funds in question were clearly identifiable as the proceeds of a specific named bank account"). Herein it is undisputed that the specific sum of $112,168.28, the amount which Quantum claims in its conversion cause of action, was wired from Quantum's account at Sterling National Bank to defendant Penn's account No. 40224230 at Omega Bank.

In <u>Manufacturers Hanover</u>, 559 N.Y.S.2d <u>supra</u> at 712, the Court concluded that the wiring of the specific sum to be credited for a specific purpose, created an obligation on the part of the defendant recipient to either "treat the transfer in the specified manner or return the funds". Herein it is undisputed that the $112,168.28 was wired by Quantum in payment for the Pollydore Residence and that Penn neither credited that payment to the Pollydore Residence nor returned the payment to Quantum. See <u>Meese</u> v. <u>Miller</u>, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dept. 1981) ("Any use of such property beyond the authority which an owner confers upon a user or in violation of instructions given is a conversion").

It is also undisputed that on January 15, 2008 Quantum demanded that Penn return the $112,168.28 it had received in payment of the Pollydore Residence and that Penn refused to return this property to the funds' owner, Quantum.

Accordingly, the undisputed facts establish as a matter of law that defendant Penn on January 15, 2008 converted $112,168.28 of Quantum's property and, accordingly, that Quantum is entitled to the return of its property together with interest at the statutory rate from that date. <u>Robert R. Gibbs, Inc.</u> v. <u>State</u>. 70 A.D.2d 750, 417 N.Y.S.2d 24, 25 (3rd Dept. 1979) ("Measure of damages in conversion action is value of property at time of conversion plus interest").

## CONCLUSION

Based upon the foregoing the Court should grant summary judgment to plaintiff Quantum Corporate Funding, Ltd. against defendant Penn Lyon Homes Corporation and award Quantum the sum of $112,168.28 together with interest thereon from January 15, 2008.

Dated: New York, New York
      July 3, 2008

Respectfully submitted,

GOETZ FITZPATRICK LLP

By:_____
      Bernard Kobroff (BK 0101)
Attorneys for Plaintiff
Quantum Corporate Funding, Ltd.
One Penn Plaza, 44th Floor
New York, New York 10119
(212) 695-8100

W:\bkobroff\Quantum\Westwood\Memo of Law.doc

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                   ) ss.:
COUNTY OF NEW YORK  )

        Jessica Bejarano, being duly sworn, deposes and says, deponent is not a party to the action, is over the age of 18 years and reside in Kings County, New York and on the 3rd day of July, 2008, served the within **NOTICE OF MOTION, STATEMENT PURSUANT TO LOCAL RULE 56.1, AFFIDAVIT OF CRAIG SHEINKER, AND MEMORANDUM OF LAW**, upon:

        Scott H. Goldstein, Esq.
        Bonner Kiernan Treback & Crociata, LLP
        Empire State Building, Suite 3304
        New York, New York 10118

        Thomas F. Doherty, Esq.
        Four Gateway Center
        100 Mulberry Street
        Newark, New Jersey 07102

by depositing a true copy of same in a properly addressed, postpaid envelope in an official depository of the United States Post Office within the State of New York.

                                     _____
                                       Jessica Bejarano

Sworn to before me on this
3rd day of July, 2008

_____
        Notary Public

                   BERNARD KOBROFF
           NOTARY PUBLIC, State of New York
                    No. 4503478
           Qualified in Westchester County
          Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\AOS- Notice of Motion, Statement Local Rule 56.1, Aff. of C. Sheinker, MOL.wpd