Sheinker Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,   Civil Action
                                   Docket No. 08 CV00539(LAK)(HBP)
                Plaintiff,

        -against-                  **AFFIDAVIT IN SUPPORT
                                   OF MOTION FOR
WESTWOOD DESIGN/BUILD              SUMMARY JUDGMENT**
INCORPORATED, DAVID B. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

                Defendants.
----------------------------------------------------------X
NATIONAL CITY MORTGAGE,

                Third-Party Plaintiff,

        -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

                Third-Party Defendant.
----------------------------------------------------------X

CRAIG SHEINKER, being duly sworn, deposes and says:

1.   I am the President of Quantum Corporate Funding, Ltd. ("Quantum"), the plaintiff herein, have examined Quantum's records and have personal knowledge of the facts and circumstances hereinafter set forth and submit this Affidavit in support of Quantum's motion for summary judgment against defendant Penn Lyon Homes Corporation ("Penn") in the amount of $112,168.28 together with interest from January 15, 2008.

2.   Quantum seeks in this action to recover from defendant Penn the sum of $112,168.28 of Quantum's monies which Penn either converted and/or was unjustly enriched by, when Quantum wired said sum in payment for the Pollydore's Residence

and Penn neither applied the monies to that purpose, nor shipped the goods, nor returned the monies to Quantum.

## BACKGROUND

3. Quantum is in the business of accounts receivable factoring. Headquartered in New York City, New York. Quantum is one of the largest purchasers of contractor receivables in the United States.

4. On or about January, 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into contracts with defendant Westwood Design/Build Incorporated ("Westwood"), as contractor, and with defendant National City Mortgage Inc. ("National") as construction lender, pursuant to which Westwood contracted to construct a new home for Mr. and Mrs. Pollydore at 6117 Elm Avenue, Lanham, Maryland (the "Pollydore Residence"). A copy of the Westwood/Pollydore contract is annexed hereto as Exhibit "A". A copy of National/Pollydore construct loan agreement is annexed hereto as Exhibit "B".

## THE TRANSACTION

5. In 2007, defendant Westwood, by defendant David R. Warfield ("Warfield") approached Quantum to obtain cash by selling Quantum an account receivable. To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum a $347,000.00 invoice (the "Invoice") which it represented was monies due it from defendant National pursuant to its second draw-down of the Pollydore's construction loan. A copy of the Westwood Invoice to National is annexed hererto as Exhibit "C". The construction loan draw-down schedule is annexed as part of Exhibit "B".

2

6. Since Quantum has no independent way of knowing if the contractor offering to sell its accounts receivable has, in fact, performed work and furnished materials of the amount invoiced, Quantum contacts the account debtor, in this case the construction lender, defendant National, and requests from the account debtor, a written acknowledgment of and an estoppel certificate for the debt.

7. Accordingly, in December 2007, Quantum contacted defendant National's Branch Manager, Christopher Washburn, at National's office in Greenbelt, Maryland, and requested confirmation that the Invoice (Exhibit "C" hereto) was correct, forwarding to defendant National an estoppel certificate covering the Invoice.

8. In response, defendant National, by its Mr. Washburn, signed the estoppel certificate in the amount of the $347,000.00 second draw-down of the Pollydore construction loan and returned it to Quantum. A copy of the estoppel certificate executed by defendant National, citing Westwood's Invoice, is annexed hereto as Exhibit "D".

9. In reliance upon defendant National's estoppel certificate, Quantum agreed to purchase the Invoice.

10. The assignment of the Invoice by Westwood to Quantum was made by an agreement entitled Purchase & Sale Agreement (the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit "E".

11. Pursuant to the Agreement, on December 21, 2007, Quantum paid defendant Westwood $242,900.00 for the Invoice pursuant to Westwood's, by defendant Warfield's, specific instructions, by wiring: (a) $130,731.72 to Westwood and; (b) wiring $112,168.28 to defendant Penn, in payment of Penn's invoice No. 850 representing the balance outstanding on its shipment of the "Pollydore Residence". A copy of Westwood's wiring instructions to Quantum is annexed hereto as Exhibit "F". A copy of

3

the Penn "Pollydore Residence" Invoice No. 850 is annexed hereto as Exhibit "G". A copy of Quantum's wire transfers to Westwood and to Penn are annexed hereto as Exhibit "H".

12. In early January 2008, Quantum contacted defendant National's main office in Miamisburg, Ohio to confirm that pursuant to the assignment payment of the Invoice would be made by National directly to Quantum, as assignor, rather than to assignee Westwood.

13. Additionally, Quantum attempted to contact defendant Westwood to advise it that if defendant National paid the Invoice to it, instead of to Quantum, that the payment was required to be turned over to Quantum.

14. However, despite several attempts to reach Westwood by telephone, Quantum was unable to made contact with Westwood and this raised concerns.

**THE FRAUD AND PENN REFUSES TO RETURN THE PAYMENT OR SHIP THE POLLYDORE RESIDENCE**

15. Quantum then contacted the Pollydores' and was advised by Mrs. Pollydore that not only had the residence not been set on the foundation, but that there was no foundation and that no materials had been delivered to the site.

16. After receiving this information, I contacted defendant Westwood's supplier, defendant Penn, to confirm that it had in fact shipped Mr. and Mrs. Pollydore's modular home for which Quantum had paid it.

17. Defendant Penn advised me on January 11, 2008 that: (a) it had never heard of Pollydores; (b) had not shipped the Pollydore Residence, and; (c) that the $112,168.28 Penn invoice No. 850 (Exhibit "G") which Quantum had paid was ficticious.

18. On January 15, 2008, by e-mail, I demanded that defendant Penn return to Quantum the $112,168.28 which Quantum had wired in payment for the Pollydore

4

Residence. A copy of my January 15, 2008 e-mail to Penn's President, David Reed, demanding the immediate return of the $112,168.28 is annexed hereto as Exhibit "I".

19. Notwithstanding my aforesaid demand and further conversations between defendant Penn and Quantum's attorney, Charles A. Shea, III, Esq., of Wetzel, Caverly, Shea, Phillips & Rodriguez, Penn refused to either return the $112,168.28 to Quantum or to ship the Pollydore Residence.

20. As a result, Quantum amended its Complaint herein to add Penn as a defendant asserting against it claims for conversion and unjust enrichment. A copy of Quantum's Corrected Amended Complaint is annexed hereto as Exhibit "J".

21. A copy of defendant Penn's Answer, wherein it admits in pertinent part that:

(a) "Penn Lyon has never entered into any contracts or transactions with Westwood or Warfield for the production and manufacture of modular custom-built home units to be delivered to 6117 Elm Street, Lanham, Maryland on property owned by Mr. and Mrs. Eustace Pollydore (the "Pollydore Project")" (para. 39); and

(b) On or about December 24, 2007, Penn Lyon received a wire transfer in the amount of $112,168.12 (sic)..." (para. 41);

but denies that it either converted Quantum's $112,168.28 transfer to it and/or was unjustly enriched by that transfer (paras. 16 and 18), is annexed hereto as Exhibit "K".

22. Notwithstanding defendant Penn's denials, the undisputed facts evidence that Quantum on December 21, 2007 wired $112.168.28 from its account at Sterling National Bank to Penn Lyon's account at Omega Bank in payment for the "Pollydore Residence" and that at no time did Penn either credit that payment to the "Pollydore Project" (Exhibit "K" para. 39) or ship the Pollydore Residence or return Quantum's $112,168.28, despite Quantum's demand for its return.

5

**WHEREFORE,** I respectfully request that the Court grant this motion, as well as such other and further relief as may be just and proper.

_____
CRAIG SHEINKER

Sworn to before me this
**3rd** day of **July**, 200**8**

_____
Notary Public

BERNARD KOBROFF
NOTARY PUBLIC, State of New York
No. 4603478
Qualified in Westchester County
Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\Aff. in Sup. of Motion for Summary Judgment.doc

6