G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

QUANTUM CORPORATE FUNDING, LTD.,

                              Plaintiff,

-against-

WESTWOOD DESIGN/BUILD INCORPORATED,
DAVID R. WARFIELD, and NATIONAL CITY
MORTGAGE INC.,

                              Defendants.

-----------------------------------------------------------------X

Civil Action O૪ Cv 00539
Docket No.

**AFFIDAVIT IN SUPPORT
OF ORDER TO SHOW
CAUSE AND FOR A
TEMPORARY
RESTRAINING ORDER**

CRAIG SHEINKER, being duly sworn, deposes and says:

1.     I am the President of Quantum Corporate Funding, Ltd. ("Quantum"), the plaintiff herein, have examined Quantum's records and have personal knowledge of the facts and circumstances hereinafter set forth and submit this Affidavit in support of Quantum's motion for a preliminary injunction and a Temporary Restraining Order: (a) enjoining and restraining the defendant Westwood Design/Build Incorporated ("Westwood") from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable or of moneys received from the plaintiff or of goods and materials paid for by Quantum and; (b) enjoining and restraining the defendant David R. Warfield ("Warfield") from, without the written consent of the plaintiff, selling, transferring, assigning or in any way conveying or encumbering any monies or property in the name of or received from or belonging to or held for the benefit of defendant Westwood.

1

2.      Quantum seeks in this action to recover from defendants Westwood and Warfield the $242,900.00 of Quantum's monies which said defendants converted by fraudulently inducing Quantum to purchase from them an account receivable by fraudulently representing to Quantum that said receivable, in the amount of $347,000.00, was due and owing to Westwood by defendant National City Mortgage Inc. ("National").

## BACKGROUND

3.      Quantum is in the business of accounts receivable financing and it specializes in factoring construction industry invoices.  Headquartered in New York City, Quantum is one of the largest purchasers of contractor receivables in the United States.

4.      In or about January, 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into a contract with defendant Westwood, as contractor, with defendant National as construction lender, pursuant to which Westwood contracted to construct a new home for Mr. and Mrs. Pollydore at 6117 Elm Avenue, Lanham, Maryland (the "Project").  A copy of the Westwood/Pollydore contract together with National's lending commitment are annexed hereto as Exhibit "A".

## THE TRANSACTION

5.      In 2007, defendant Westwood, by defendant Warfield, approached Quantum to obtain cash to continue operating its business by selling Quantum an account receivable.  To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum its $347,000.00 invoice for the Project, which it represented were monies due Westwood from defendant National in connection therewith (the "Invoice").  A copy of the Westwood Invoice is

2

annexed hereto as Exhibit "B".

## THE ESTOPPEL CERTIFICATE

6.     Since Quantum has no independent way of knowing if the contractor offering to sell its accounts receivable has, in fact, actually performed work and furnished materials of the value invoiced, Quantum contacts the account debtor, in this case the construction lender, defendant National, and requests from the account debtor, a written acknowledgment of and an estoppel certificate for the debt.

7.     Accordingly, in December 2007, Quantum contacted defendant National's Branch Manager, Christopher Washburn, at National's office in Greenbelt , Maryland, and requested confirmation that the Invoice (Exhibit "B" hereto) was correct, forwarding to defendant National an Estoppel Certificate covering the Invoice.

8.     In response, defendant National, by its Branch Manager, Christopher Washburn, signed the Estoppel Certificate, in the amount of $347,000.00, and returned it to Quantum.  A copy of defendant National's executed Estoppel Certificate, citing Westwood's Invoice, is annexed hereto as Exhibit "C".

9.     The Estoppel Certificate, executed by defendant National states:

> "The undersigned Account Obliger acknowledges to Quantum
> Corporate Funding, Ltd. that the above invoice Amount(s) are
> correct and owing by us; that the work and or merchandise has
> been ordered from and completed by the captioned Client, and
> accepted by us that there are not now, nor will there be, any claims,
> setoffs, or defenses beyond 20% of the Invoice Amount(s).  Neither
> Quantum nor its agents made any representations except as herein
> set forth.  This estoppel is not subject to modification.  New York
> law, jurisdiction and venue shall apply hereto."

10.     In reliance upon defendant National's Estoppel Certificate, Quantum purchased

3

the Invoice and gave value to Westwood for its assignment of this accounts receivable.

## THE PURCHASE AND SALE AGREEMENT

11.     The assignment of the Westwood Invoice to Quantum was made by an agreement,

entitled Purchase & Sale Agreement (the "Agreement").  A copy of the Agreement is annexed

hereto as Exhibit "D".

12.     As regards the Invoice, the Agreement executed by defendant Westwood as

"Seller", stated in pertinent part that:

> "Seller represents, warrants and agrees that:
>
> *     *     *     *     *
>
> (b) The correct total amount of said account(s) is $347,000.00;
>
> (c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute;
>
> (d) There are not and will not be any set-offs or counterclaims against said account(s)...
>
> *     *     *     *     *
>
> (h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorneys fees shall be borne by Seller."
>
> (i) Purchaser further agrees that if the amount referred to in (b) above...is not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein.  Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.
>
> *     *     *     *     *
>
> (l) To secure the representations and covenants made by Seller in this agreement...Seller hereby grants to Purchaser a continuing security interest in all personal property..in which Seller has an

4

interest, now or hereafter existing or acquired, and wheresoever located...tangible or intangible, including but not limited to, all present or hereafter existing or  acquired...goods...equipment... inventory...cash or cash equivalents...contract rights...money, now or hereafter owned or acquired by Seller...and all proceeds and collections thereof...unshipped goods....Further to this purpose, Seller hereby grants Purchaser and its agents Power of Attorney to sign it's name on any applicable financing statements (UCC'1 and otherwise) in order to effectuate filing(s) on the aforementioned assets of seller.  Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

*    *    *    *    *

(g) This agreement shall be governed by the laws of the State of New York...Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder....

(Emphasis added).

## THE GUARANTEE

13.    In addition, as regard the defendant Seller Westwood's representations and warranties, defendant Warfield executed a "Guarantee" for the sale which stated:

"The undersigned...hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above."

See Exhibit "D" (2nd Page).

## THE NOTICES AND FILING

14.    Defendant Westwood, as assignor, gave written notice to defendant National of its assignment to Quantum of the Invoice.  A copy of Westwood's written notice to National is annexed hereto as Exhibit "E".

15.    Quantum, as assignee, also gave written notice of the assignment to defendant

5

National.  Quantum's notice consisted of sending to National a copy of the Westwood Invoice

which bore the following stamped notation thereon:

"This invoice has been sold, assigned and transferred to:

Quantum Corporate Funding, Ltd.

Make all checks payable and mail to:
Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas, 16th Floor
New York, New York 10036"

A copy of the Invoice bearing this stamped notification, is annexed hereto as Exhibit "B"

16.    Further, as regards the transaction and Quantum's perfection of its security

interest, Quantum filed a UCC-1 in the State of Maryland as to defendant Westwood.  A copy of

this filing is annexed hereto as Exhibit "F".

## THE PURCHASE PRICE PAYMENT

17.    Pursuant to the Agreement, on December 21, 2007, Quantum paid defendant

Westwood $242,900.00 for the Invoice by wiring, pursuant to defendant Westwood, by

defendant Warfield, specific instructions, $130,731.72 to Westwood and $112,168.28 to Penn

Lyon Homes Corporation ("Penn Lyon"), a material supplier to Westwood.  Copies of defendant

Warfield's instructions and Quantum's wire transfers are annexed hereto as Exhibit "G".

## THE FRAUD UNRAVELS

18.    In early January 2008, plaintiff Quantum contacted defendant National's main

office in Miamisburg, Ohio to confirm that pursuant to the Assignment and the Agreement that

payment of the Invoice would be made by National directly to Quantum, as assignor, rather than

to Westwood, the assignee.

19.    Additionally, plaintiff Quantum also attempted to contact defendant Westwood to

advise it that if defendant National paid the Invoice to it, instead of Quantum, that the payment was required to be turned over to Quantum.

20.    However, despite several attempts to reach defendant Westwood by telephone, Quantum was unable to make contact, which raised Quantum's concerns.

21.    Quantum then decided to contact the Project owners, the Pollydores' and was advised by Mrs. Pollydore that not only had the house not been constructed, no materials had been delivered, the lot had not even been cleared, and that no road to the lot existed.

22.    After receiving this information, I contacted defendant Westwood's supplier, Penn Lyon, to confirm that it had shipped the material to construct Mr. and Mrs. Pollydore's house to Westwood.  I was advised by Penn Lyon that they had never heard of Pollydores and that the $112,168.28 Penn Lyon invoice No. 850 which Quantum had paid, had been altered to reference the Pollydore's residence while Penn Lyon's Invoice No. 850 referenced a different owner's residence. A copy of the fabricated Penn Lyon invoice which Quantum paid at Westwood's direction is annexed hereto as Exhibit "H".

23.    Upon receiving this information, Quantum contacted Mike Conrad, the individual who had executed the Pollydore's contract [Exhibit "A" hereto] on Westwood's behalf and was advised by him that both Mrs. Pollydore's and Penn Lyon's information was incorrect.  Mr. Conrad advised me that he would look into the matter and that either he or defendant Warfield would telephone me on Monday January 14, 2008 with the results of their investigation.

24.    Neither I nor anyone else at Quantum has since received any communications from either defendant Westwood or from defendant Warfield or from Mr. Conrad, and all attempts by Quantum to reach any of them by telephone have not been answered.

7

25.     Further, on January 15, 2008, Mr. Timothy Justice, defendant National's Construction Lending Department's Manager, advised Quantum that National had no obligation to Quantum or agreement with Quantum regarding payment of the Invoice. See e-mail annexed hereto as Exhibit "I".

26.     Given defendant Westwood's weak financial position and its inability to secure bank financing, which was the reason that it sought to obtain operating cash from Quantum by selling Quantum the Invoice, the fact that Penn Lyon has advised me that the invoice which Quantum paid had been fabricated, the fact that neither Westwood nor defendant Warfield nor Mr. Conrad have communicated with Quantum, and the fact that Westwood is no longer answering its phone or receiving fax transmissions, all leads me to believe that defendant Westwood is insolvent and that defendants Westwood and Warfield will abscond, if they have not done so already, with the $130,731.32 that Quantum wired on December 21, 2007 and will otherwise dispose of the $112,168.28 of materials that Quantum paid Westwood's supplier, Penn Lyon, for, thus rendering any judgment which may be recovered against defendants Westwood and Warfield ineffectual and unenforceable.

WHEREFORE it is respectfully requested that the Court grant a preliminary injunction and a Temporary Restraining Order, enjoining and restraining the defendant Westwood during the pendency of this action and the hearing and determination of this Order to Show Cause from, without the written consent of Quantum, selling, transferring, assigning or in any way conveying or encumbering assets pledged by it to Quantum as security, or of moneys received in payment of its accounts receivable, or of moneys received from Quantum, or of goods and materials paid for by Quantum and enjoining the defendant Warfield from, without the written consent of Quantum,

8

selling, transferring, assigning or in any way conveying or encumbering any monies or property

in the name of or received from or belonging or held for the benefit of defendant Westwood.

_____
CRAIG SHEINKER

Sworn to before me this
2nd day of January, 2008

_____
NOTARY PUBLIC

BERNARD KOBROFF
NOTARY PUBLIC, State of New York
No. 4803478
Qualified in Westchester County
Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\sheinker.aff.wpd

9

Exhibit A



# CONTRACT

**THIS AGREEMENT**, Made as of December 18th, In the Year of 2006,

Between the Owner:    **Mr. & Mrs. Eustace Pollydore**
**5300 Gallatin Street**
**Hyattsville, MD 20781**
**301-277-1455**

And the Contractor:    **Westwood Design/Build Incorporated**
**License # 16054316**
**P.O. Box 105**
**Beltsville, MD 20704**
**301-813-2626 Office**
**301-937-2359 Fax**

For the Project:    **New Home Construction**
**6117 Elm Street**
**Lanham, MD 20706**

Construction Lender:    **National City Mortgage**

## ARTICLE 1.    CONTRACT DOCUMENTS

1.1    The contract documents consist of this agreement, general conditions, construction documents, specifications, allowances, finish schedules, construction draw schedule, all addenda issued prior to execution of this agreement and all change orders or modifications issued and agreed to by both parties. All documents noted herein shall be provided to the Contractor by the Owner. These contract documents represent the entire agreement of both parties and supersede any prior oral or written agreement.

## ARTICLE 2.    SCOPE OF WORK

2.1    The Owner agrees to purchase and the Contractor agrees to construct the above mentioned structure and fixtures attached thereto in **Lanham, county of Prince George's in the state of Maryland** according to the construction documents, allowances, finish schedules, all addenda, change orders, modifications and specifications set forth in the specification booklet.

## ARTICLE 3.    TIME OF COMPLETION

3.1    The approximate commencement date of the project shall be **January 1st , 2007**. The approximate completion date of the project shall be August 31st, 2007, however, building permits and any change orders and/or unusual weather might delay or otherwise affect the completion date. Barring inclement weather, factory delays or owner related delays, the Contractor shall complete the home within 3 months upon receipt of the building permit. The contract execution date shall be December 19th , 2006.

## ARTICLE 4.    THE CONTRACT PRICE

4.1    The construction contract shall be calculated on a cost plus coordination basis, with all labor, materials, permits and insurance figured as costs.

Initialed by: Owner _____ Contractor _____

4.2     Pre-construction estimates for construction costs and coordination are **Three-Hundred-Twelve-Thousand, Eight-Hundred-Fifty ($312,850.00)**, Closing costs shall be paid by the Owner.

## ARTICLE 5.    PROGRESS PAYMENTS

5.1     The Owner will make payments to the contractor through four (4) separate draws based on invoices for labor, materials and modular units submitted.

| | | |
|---|---|---|
| Lot Premium | $ 149,000.00 | .26 Acre / 11,200 Sq/Ft Lot Purchase |
| Builder Deposit: | 10% of the Construction Cost is required when Prince Georges County releases permit. | |
| Foundation Draw: | 20% of the Construction Cost is required at foundation completion. | |
| Modular Home Set: | 60% of the Construction Cost is required at Modular Delivery and Set. | |
| Finishing and Closing: | 10% of the Construction Cost is required at punch-out completion. | |

Owner shall make payments to contractor within **5 business days** after approved inspection by owner.  Inspection by Owner must correspond with Addendum A attached. Should the owner fail to make payment, contractor may charge a penalty of **18%** annually upon the unpaid amount until paid.

5.2     If payment is not received by the Contractor within **10 days** after delivery of payment demand for work satisfactorily completed, contractor shall have the right to stop work or terminate the contract at it's option.  Termination by Contractor under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination.  Termination by Owner under the provisions of this paragraph shall not relieve the Owner of the obligations of payments to Contractor for that part of the work performed prior to such termination.

## ARTICLE 6.    DUTIES OF THE CONTRACTOR

6.1     All work shall be in accordance to the provisions of the plans and specifications.  All systems shall be in good working order.

6.2     All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

6.3     All work shall be performed by licensed individuals to perform their said work, as outlined by law.

6.4     Contractor shall obtain all permits necessary for the work to be completed. The contractor is required to pay any and all impact fees charged by Prince George's County.

6.5     Contractor shall remove all construction debris and leave the project in a broom clean condition.

6.6     Upon satisfactory payment being made for any portion of the work performed, Contractor shall furnish a full and unconditional release from any claim or mechanics' lien for that portion of the work for which payment has been made.

## ARTICLE 7.    OWNER

7.1     The Owner shall communicate with subcontractors only through the Contractor.

7.2     The Owner will not assume any liability or responsibility, nor have control over or charge of construction means, methods, techniques, sequences, procedures, or for safety precautions and programs in connection with the project, since these are solely the Contractor's responsibility.

7.3     Contractor shall provide all engineering and surveying required by Prince George's County.

| | | |
|---|---|---|
| a. Horizontal and Vertical Control | e. Stormwater Management Plan | i. Limits of Disturbance |
| b. Topography | f. Sediment Control Plan | j. Foundation Stake Out |
| c. Boundary Survey | g. Utility Coordination | k. Wall Check |
| d. Site Grading and Landscape Plan | h. TCP Waiver | l. All Certifications |
| m. Public Water/Sewer Connection | n. Geotechnical Report | |

2

7.4    Contractor shall obtain all construction permits necessary for the work to be completed.

7.5    Contractor shall build access road, per Prince Georges County specification, to Owner's parcel.

## ARTICLE 8.    CHANGE ORDERS AND FINISH SCHEDULES

8.1    A Change Order is any change to the original plans and/or specifications. All change orders need to be agreed upon in writing, including cost, additional time considerations, approximate dates when the work will begin and be completed, a legal description of the location where the work will be done and signed by both parties. 50% of the cost of each change order will be paid prior to the change, with the final 50% paid upon completion of the change order. A 12% fee shall be added to all change orders and overages in excess of initial allowances. Additional time needed to complete change orders shall be taken into consideration in the project completion date. NO CHANGE ORDERS WILL BE ACCEPTED AFTER FINAL HOME ARCHITECTURAL DRAWINGS HAVE BEEN REVIEWED AND APPROVED BY THE OWNER.

8.2    Completed Finish Selection Schedules shall be submitted to the Contractor as follows:

    8.2.1    Schedule #1 within four weeks after site clearing begins.

    8.2.2    Schedule #2 within eight weeks after site clearing begins.

8.3    Any delays or changes in finish selection schedules will delay the projected completion date.

## ARTICLE 9.    INSURANCE

9.1    The Owner will keep in force a Builder's Risk Insurance Policy on the said property to protect both owner's and contractor's interests until construction is completed. The Owner will maintain property insurance to the full and insurable value of the project, in case of a fire, vandalism, malicious mischief or other instances that may occur.

9.2    The Contractor shall purchase and maintain needed Workman's Compensation and Liability insurance coverage as required by law and deemed necessary for his own protection.

## ARTICLE 10.    GENERAL PROVISIONS

10.1    If conditions are encountered at the construction site which are subsurface or otherwise concealed physical conditions or unknown physical conditions of an unusual nature, which differ naturally from those ordinarily found to exist and generally recognized as inherent in construction activities, the Owner will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, and/or time required for, performance of any part of the work, will negotiate with the Contractor an equitable adjustment in the contract sum, contract time or both.

## ARTICLE 11.    HAZARDOUS MATERIALS, WASTE AND ASBESTOS

11.1    Both parties agree that dealing with hazardous materials, waste or asbestos requires specialized training, processes, precautions and licenses. Therefore, unless the scope of this agreement includes the specific handling, disturbance, removal or transportation of hazardous materials, waste or asbestos, upon discovery of such hazardous materials the Contractor shall notify the Owner immediately and allow the Owner/Contractor to contract with a properly licensed and qualified hazardous material contractor. Any such work shall be treated as a Change Order resulting in additional costs and time considerations.

## ARTICLE 12.    ARBITRATION OF DISPUTES

12.1    Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

## ARTICLE 13.    WARRANTY

13.1    At the completion of this project, Contractor shall execute an instrument to Owner warranting the project for 10 Years against defects in workmanship or materials utilized. The manufacturers warranty will prevail. No legal action of any kind relating to the project, project performance or this contract shall be initiated by either party against the other party after 10 Years beyond the completion of the project or cessation of work.

3

## ARTICLE 14.    TERMINATION OF THE CONTRACT

14.1    Should the Owner or Contractor fail to carry out this contract, with all of its provisions, the following options and stipulations shall apply:

14.1.1    If the Owner or the Contractor shall default on the contract, the non-defaulting party may declare the contract is in default and proceed against the defaulting party for the recovery of all damages incurred as a result of said breach of contract, including a reasonable attorney's fee.  In the case of a defaulting Owner, the Earnest money herein mentioned shall be applied to the legally ascertained damages.

14.1.2    In the event of a default by the Owner or Contractor, the non-defaulting party may state his intention to comply with the contract and proceed for specific performance.

14.1.3    In the case of a defaulting Owner, the Contractor may accept, at his option the earnest money as shown herein as liquidated damages, should earnest money not cover the expenses to date, the Contractor may make claim to the Owner for all work executed and for proven loss with respect to equipment, materials, tools, construction equipment and machinery, including reasonable overhead, profit and damages applicable to the property less the earnest money.

## ARTICLE 15.    ATTORNEY FEES

15.1    In the event of any arbitration or litigation relating to the project, project performance or this contract, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses.

## ARTICLE 16.    ACCEPTANCE AND OCCUPANCY

16.1    Upon completion, the project shall be inspected by the Owner and the Contractor, and any repairs necessary to comply with the contract documents shall be made by the Contractor.

16.2    The Owner shall not occupy the property until final payment has been received by the Contractor and a Certificate of Occupancy has been obtained.

16.3    Occupancy of the project by the Owner in violation of Article 16.2, shall constitute unconditional acceptance of the project and a waiver of any defects or uncompleted work.

WITNESS our hand and seal on this _____ day of _____, 2007.

Signed in the presence of:

Witness _____        Witness _____
Michael Conrad                                 Mr. Eustace Pollydore

                                               _____
                                               Mrs. June Pollydore

4

# National City Mortgage

## Modular Home (delivered to site)
## Draw Schedule

Owner: Pollydore #0005351534

| | | |
|---|---|---|
| 20% | Foundation complete. Well is drilled and acceptable. | $ 99,200.00 |
| 70% | Payment of modular package, delivery to site. Unit to be removed from truck and/or trailer set on foundation. | $ 347,200.00 |
| | Completion of permanent roof, windows set in place, all exterior doors hung, exterior walls complete, interior drywall complete, taped and spackled, all interior carpentry complete, kitchen cabinets and all fixtures have been set, deck complete and insulation installed. | |
| 10% | Exterior Siding Complete | $ 49,600.00 |
| | Final seaming of carpeting and/or flooring walls completed, finishing touches regarding fixtures and kitchen cabinets completed, septic tank installed. Dwelling complete. Driveway, rough grading and top soil complete. All owner responsibilities MUST be completed. | |

Builder/Contractor:

(Signature

Borrower(s):

_June B Pollydore_
June Pollydore
Owner

_Eustace B Pollydore_
Eustace Pollydore

**Please allow at least 10 business days after closing before contacting NCM's Draw Department for you first draw.**

A Division of National City Bank of Indiana

DS-05 Modular Home Delivery to Site Draw Schedule                    Revised 3/2005

FNMC a division of
National City Bank

11/08/2007


JUNE A POLLIDORE
EUSTACE A POLLIDORE
5300 GALLATIN STREET
HYATTSVILLE, Maryland 20781



We are pleased to inform you that your application for a
Construction/Permanent first mortgage loan on the property located
at __6117 KIM ST, LANHAM, Maryland 20706__                        has
been approved subject to the terms and conditions presented in this
Commitment.

Summary of Terms and Conditions:

You have elected:

[  ]  A Fixed Rate Mortgage with interest rate limitations as set
      forth in your Construction/Permanent Capped Floating Rate
      Agreement.

[ ✓ ]  A Fixed Rate Mortgage with interest rate lock.

[  ]  An Adjustable Rate Mortgage as set forth in the Adjustable
      Rate Mortgage Program Disclosure you were provided.

The term of this loan includes a set period of time to complete
construction of the premises.   You will pay interest only on
principal amounts disbursed during the construction period.
Payments on your permanent loan will not begin until the earlier of
completion of the premises or the set period for construction
completion.

Construction draws will be made in accordance with the Construction
Loan Agreement provided for your signature at the loan closing.
You must deposit with us, at the time of closing, the difference
between the loan funds available and the total cost of the
construction.  We estimate your deposit will be $ _4,797.30_____ .

The following are important terms of your loan.

| | | | | |
|---|---|---|---|---|
| Loan Amount | $ 496,000.00 | Loan Type | CVIN | |
| Initial Interest Rate | 7.000 | Loan Sub Type | Fixed | |
| Term of Loan | 360 | Discount Points | | % |
| Origination Fee | 1.000 % | Construction Fee | | % |

Commitment Letter
Page 2

Estimated Principal and Interest due after completion of construction:

Monthly Payment (P&I)  $ 3,993.87
Monthly Taxes          $ _____
Monthly Insurance      $ _____
Monthly PMI            $ ___247.50

Estimated Total Monthly Payment $ ___4,241.37

If your loan is an Adjustable Rate Mortgage and [ ] if this box is checked, you will have the
opportunity to convert your loan to a fixed rate loan for the remainder of your original loan term on
the (check as applicable): [ ] first, second, third, fourth and fifth interest rate change date, or [ ]
first and second interest change dates if you are not then in default and have not made a payment 30
or more days after the payment due date at any time within the twelve-month period immediately
preceding the Change Date.

Additional Conditions of This Commitment to Be Submitted Prior To Closing:

Additional Conditions of This Commitment to Be Presented At
Closing:

Other Terms and Conditions of This Commitment:

1.    An escrow account for real estate taxes and insurance premiums will be required.
      Therefore, one-twelfth of the annual payment for these items is to be included in your
      monthly payment.

2.    In the event that there is any change in the property to be mortgaged, your financial
      condition, or your employment status between the date of application and the final closing
      of this loan, FNMC a division of
      National City Bank                        at its option, may withdraw this commitment.

CONSTJ2                                                        (12/04)

12/21/2007  13:17   4108132828              WESTWOOD CUSTOM HOME          PAGE  08
NOV-08-2007  12:22                                                    P.12

Commitment Letter
Page 3

3.   The loan and the closing shall be in compliance with the
     requirements of the federal, state and local governments now
     in effect or hereinafter to be enacted.

4.   All documents, mortgages, and other matters connected with
     this loan shall be subject to our approval in form and in
     substance, and our decision shall be final and conclusive.

5.   The Note, Construction Loan Agreement, Mortgage, Construction/
     Permanent Loan Agreement and all other documents pertaining to
     the loan are to be signed by all the Borrower(s) listed above.
     Therefore, all the Borrower(s) must be present at the time of
     the closing.  Additionally, the seller(s) and/or the
     Contractor must execute certain documents.  If the
     Seller/Contractor will not be present at the closing, please
     notify the Closing Agent when you schedule your closing.

6.   A completed application must be signed at the time of closing.

7.   In order to have a smooth closing of this transaction, the
     Closing Agent must have the following items at least five (5)
     banking days prior to the day you wish to close your loan:

     A.   An ALTA Mortgage Title Insurance Commitment, in form and
          through a company acceptable to us, insuring against loss
          or damage in the amount of your loan, showing the
          mortgage to be a good and valid first lien on the
          property.  The policy must insure, in addition to other
          items, against material and mechanic's liens of record
          and eliminate survey exceptions.  The proposed mortgagee
          should read _____.

     B.   Fire and extended coverage insurance including vandalism
          and malicious mischief (Builder's Risk coverage) and to
          cause to be provided to Lender evidence of workers
          compensation and general liability insurance in the
          amount, form and in companies satisfactory to the Lender,
          which insurance shall be payable to Borrower with
          standard mortgage endorsement attached making loss
          payable to the Lender or its assigns or mortgagee.  A
          policy must be provided to the closing agent along with
          evidence that the first year's premium has been paid in
          full.

12/21/2007  13:17    4188132828                                              P.13
NOV-08-2007  12:23

Commitment Letter

Lender reserves the right to refuse to make the loan under the terms and conditions set forth in this commitment where it is discovered that any facts represented by applicant(s) are false in any respect, where any credit reporting information is found to be inaccurate, or where bankruptcy or other laws would prevent or inhibit the Lender's ability to make the requested loan.

**THIS COMMITMENT EXPIRES BY MARCH 1, 2008 . YOUR LOAN MUST CLOSE ON OR BEFORE THIS DATE. IF YOUR LOAN DOES NOT CLOSE BY THE COMMITMENT EXPIRATION DATE FOR ANY REASON, EVEN REASON BEYOND YOUR CONTROL, OR YOU REQUEST TO CHANGE THE AMOUNT OR ANY OTHER TERMS OF YOUR LOAN, WE MAY CHANGE ANY OF THE TERMS OF YOUR LOAN, INCLUDING INTEREST RATE, POINTS AND FEES OR WE MAY WITHDRAW YOUR COMMITMENT. IF WE ELECT TO EXTEND YOUR COMMITMENT, WE MAY REQUIRE THAT THE INFORMATION NEEDED FOR YOUR APPLICATION BE UPDATED SINCE SUCH INFORMATION IS ONLY VALID FOR NINETY DAYS.**

Sincerely,

By: _____
    (Type Name)

Title: _Branch Manager / VP_

CONST74 (02/04)

Exhibit B

12/18/2007  13:42    4108132828    WESTWOOD CUSTOM HOME    PAGE  02



# INVOICE

| Date | Invoice # |
|------|-----------|
| 12/18/2007 | 10084 |

### BILL TO:

National City Mortgage/National City Bank
Christopher Washburn, Vice President
9852 Walker Drive, Suite 400
Greenbelt, MD 20770

### REMIT TO:

Westwood Design/Build Inc.
P.O. Box 105
Beltsville, MD 20704

| Terms | P.O. No. | PROJECT |
|-------|----------|---------|
| Net 45 | | Pollydore Residence |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Construction Draw | 347,000.00 | 347,000.00 |
| | Pollydore Module Delivery - #0005351534 | 0.00 | 0.00 |
| | Curbside Delivery Completed Amount Due and Owing | | |
| | This Invoice has been sold, assigned and transferred to: Quantum Corporate Funding, Ltd. Make all checks payable and mail to: Quantum Corporate Funding, Ltd. 1140 Avenue of the Americas, 16th Floor New York, New York 10036 | | |

| Modules Delivered | **Total** | **$347,000.00** |
|-------------------|-----------|-----------------|

Exhibit C

## Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas, 16th Floor
New York, N.Y. 10036
Tel. 212 768-1200
800 352-2585
Fax 212 944-8216

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
7852 Walker Drive, Suite 400
Greebelt, MD 20770

Re: Our Transaction#    25914   Client: Westwood Design Build Incorporated
Our Debtor#:  32772.      Our Client#:    5999

| P.O.#/Contract# | Job# / Project# | Controllers# | Contract/ P.O.Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|---|
| | Project: Pollydore Residence. Construction Draw, Pollydore module delivery-#0005351534. | | | 10084 | 12/10/07 | 45 | ****$347,000.00 |
| | | | | | | | -------------- |
| | | | | | | | ******$347,000.00 |

Dear Mr. Washburn:

We are the assignee of payment of the above captioned company. Attached is a letter from it authorizing all payments on the captioned invoices to be sent directly and solely to Quantum Corporate Funding, Ltd.

The undersigned Account Obligor acknowledges to Quantum Corporate Funding, Ltd. that the above invoice Amount(s) are correct and owing by us; that the work and or merchandise has been ordered from and completed by the captioned Client, and accepted by us; that there are not now, nor will there be, any claims, setoffs, or defenses beyond 20% of the Invoice Amount(s); Neither Quantum nor its agents made any representations except as herein set forth.  This estoppel is not subject to modification. New York law, jurisdiction and venue shall apply hereto.

Very truly yours,

*Maria Luiza deSouza*

Shelley Simmonds
Senior Account Exec.

Agreed & Accepted

Authorized Signature_____ Title _____
Account Obligor:   National City Mortgage Company
Print Name:

Exhibit D

12/21/2007  13:17   4108132828        WESTWOOD CUSTOM HOME              PAGE  02
    12/20/2007 17:26 FAX 212 398 5619        CORPORATE OFFICE                    ☒002

Transaction#  _____  Client#  _____  Rebate Class  _____  Advt  ____

## PURCHASE & SALE AGREEMENT

→ $112,168.28 to Penn Lyon Homes Corp.
→ $130,931.72 to Westwood Design
paid by purchaser to Seller.

In consideration of the sum of $_____ $243,100.00 _____

Westwood Design Build Incorporated

receipt of which is hereby acknowledged, the undersigned ("Purchaser"), its
("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd.
successors and assigns all Seller's right, title and interest in and to Seller's account(s) receivable
(including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors
described in Exhibit "A" attached hereto and made part hereof, together with all rights of action accrued,
or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign,
or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make
said sale, assignment, and transfer, and that said sale transfer or assignment does not conflict with
the terms of any other agreement, or instrument to which Seller is a party.

(b) The correct total amount of said account(s) is $_____ $243,100.00 _____

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will
not be in dispute; and the payment of said account(s) are not and will not be contingent upon the
fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said
account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s),
and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the
accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all
checks received from said clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping
is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property
improvement upon which it has performed labor or furnished materials, the account for which labor and/or
materials it has assigned to Purchaser. In the event Seller has an interest, now or hereafter existing or accrued,
Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller
a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of
such labor and material. In connection with the filing of such Notice of Mechanic's Lien, the Seller
agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in
connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all
respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a
Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for
Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney
fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) is
not paid by the account debtor(s) thereof for any reason other than a breach of the representations,
warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount
paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement
and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept
payment of less than the full amount, if in its judgment such action is necessary to effect collection,
by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against
Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum
of thirty third and one third (33 1/3%) of clause (b) for Purchaser's attorney's fees therefor.

(l) To secure the representations and covenants made by Seller in this agreement, but not the credit
risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal
property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and
wheresoever located, tangible or intangible, including but not limited to, all present or hereafter
existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture,
receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper,
chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or
lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all
intellectual property including, without limitation patents, trademarks and copyrights (and applications
for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay
money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller
as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security
therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped
goods, together with all of Sellers books of account, ledger cards and records, all vehicles, all
computer programs, and systems owned or operated in connection therewith, all of the above securing
present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of
and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its
agentsPower of Attorney to sign it's name on any applicable financing statements (UCC-1 and otherwise)
in order to effectuate filing(s) on the aforementioned assets of Seller. Upon any default in Sellers
representations, warranties and covenants Purchaser may enforce said security agreement in accordance
with the provisions of the Uniform Commercial Code.

(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to
purchaser hereunder shall constitute a waiver thereof. No amendment, modification or waiver of, any
provision of this Agreement shall be effective unless the same shall be in writing and signed and
delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), return(s),
defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other
billing rights purchased by purchaser from Seller or demand reimbursement from Seller based upon
representations made by Seller in this agreement as to the Account and Purchaser shall have such other
rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which
rights and remedies are hereby expressly reserved.

\quancorp\crsls\purchase.agt

PLEASE FAX THIS PAGE BACK ALSO

12/20/2007 17:30 FAX 311 398 8519        CORPORATE OFFICE                     ☐003

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any account(s) thereon should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s), note(s), draft(s), monies or other instruments for the payment and money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 2 days of receipt thereof. Seller acknowledging that failure to pay over such payments within 5 days to Purchaser shall be a default hereunder and Purchaser may elect to forfeit any rights it may have with respect to any other payments due or to become due to Seller under this Agreement.

(p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder, and hereby waives any and all rights under the laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL STATE OR FEDERAL PAYROLL TAX WITHHOLDINGS.

(S) Seller hereby grants Quantum authority to sign Ab's name on any forms required by any governmental entities (including but not limited to Bluebook W4) 's or similarly required government forms) for the purpose of perfecting the manifestation of an assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (2) above.

Seller (assignor) Covenants that he will receive any moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said covenant;

A) Payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

B) Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C) Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D) Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E) Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER'S REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, DEDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                        )Dated this day of  20 DEC  2007

By: X _J. Simmonds, Sr. Acct. Exec_     ) By: X _David R. Wolf_  President
    QUANTUM CORPORATE FUNDING LTD.        )      (SIGNATURE AND TITLE)

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By) _____          By: X _Nana R. Wafor_  (NO TITLE NEEDED)
                                              (SIGNATURE ONLY)

Affirmation And Certification:
State of _____ County of _____
Sworn to before me this _____ day of _____ 20___.

Signature of Notary Public _____

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE SPECIFIED ON THE REVERSE SIDE HEREOF. WE ARE BUYING AT THE PRICE BY ASSUMING THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT MIGHT ELAPSE BEFORE WE COLLECT THE PROCEEDS ON THOSE ACCOUNT THAT DO ULTIMATELY PAY US. AS AN INDUCEMENT TO OUR CLIENTS TO SELL US THE HIGHEST QUALITY ACCOUNTS, (I.E., THOSE THAT ARE PAID QUICKLY) WE HAVE AGREED TO OFFER REBATES ON THE DISCOUNT THAT WE APPLIED IN ACQUIRING AN THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. THE FOLLOWING SCHEDULE SHOWS WHAT AMOUNT OR REBATES THAT YOU WILL BE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WHEN WE CALCULATED THE DISCOUNT. THERE SHALL BE NO REBATE ON INVOICES COLLECTED BEYOND 180 DAYS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

T# 25914

| Accounts of The Bulk Paid within 1 to 10 days .....2 | 31. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 11 to 20 days ....3 | 30. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 21 to 30 days ....4 | 29. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 31 to 40 days ....5 | 28. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 41 to 50 days ....6 | 27. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 51 to 60 days ....7 | 26. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 61 to 70 days ....8 | 25. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 71 to 80 days ....8 | 24. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 81 to 90 days ....9 | 23. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 91 to 100 days ...1 | 22. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 101 to 110 days ..2 | 21. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 111 to 120 days ..3 | 20. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 121 to 130 days ..4 | 19. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 131 to 140 days ..5 | 18. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 141 to 150 days ..6 | 17. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 151 to 160 days ..7 | 16. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 161 to 170 days ..8 | 15. per Hundred of The Account Amount. |

12/18/2007  17:33    4108132828                  WESTWOOD CUSTOM HOME                 PAGE  03

  12/18/2007  16:27    4108591196                                                     PAGE  02/02

    12/18/2007  17:21    4108132828              WESTWOOD CUSTOM HOME                  PAGE  01

      12/18/2007 17:11 FAX 212 768 1224        QUANTUM FUNDING                        ☒002

1 /18/07

EXHIBIT A TO PURCHASE & SALE AGREEMENT
BETWEEN
QUANTUM CORPORATE FUNDING, LTD (PURCHASER)
&
Westwood Design Build Incorporated          (Seller)

Transaction#    25914    Clitran#:

Seller hereby verifies the accuracy of the above:

By _David R. Way____  Title _President_

Transaction#___25014___ Client#___5999___ Rebate Class___20EIR___ Adv$___0.2___

## PURCHASE & SALE AGREEMENT

*[handwritten: → $112,168.28 to Penn Lyon Homes Corp.*
*↳ $130,731.72 to Westwood Design]*

In consideration of the sum of $..............$242,900.00............ paid by purchaser to seller,

*[handwritten: Westwood Design Build Incorporated]*

receipt of which is hereby acknowledged, the undersigned
("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd. ("Purchaser"), its successors and assigns all of Seller's right, title and interest in and to Seller's account(s) receivable (including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors described in Exhibit "A" attached hereto and made part hereof, together with all rights of action accrued, or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign, or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make said sale, assignment, and transfer, and that said sale transfer or assignment does not conflict with the terms of any other agreement, or instrument to which Seller is a party.

(b) The correct total amount of said account(s) is $..............$242,000.00............

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute: and the payment of said account(s) are not and will not be contingent upon the fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s), and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all checks received from sellers clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property improvement upon which it has performed labor or furnished materials, the account for which labor and/or materials it has assigned to Purchaser. In the event Seller fails to promptly comply with such request, Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of such labor and material. In connection with the filing of such Notice of Mechanic's Lien, the Seller agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) is not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept payment of less than the full amount, if in its judgement such action is necessary to effect collection, by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum of thirty third and one third (33 1/3%) of clause (b) for Purchaser's attorney's fees therefor.

(l) To secure the representations and covenants made by Seller in this agreement, but not the credit risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation patents, trademarks and copyrights (and applications for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller as an unpaid vendor), and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped goods, together with all of Sellers books of accounts, ledger cards and records, all vehicles, all computer programs, and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its agentsPower of Attorney to sign it's name on any applicable financing statements (UCC'1 and otherwise) in order to effectuate filing(s) on the aforementioned assets of seller. Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to purchaser hereunder shall constitute a waiver thereof. No amendment, modification or waiver of, any provision of this Agreement shall be effective unless the same shall be in writing and signed and delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), returns(s), defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other billing rights purchased by purchaser from Seller or demand reimbursement from Seller based upon representations made by Seller in this agreement as to the Account and Purchaser shall have such other rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which rights and remedies are hereby expressly reserved.

\quancorp\craig\purchase.agt

PLEASE FAX THIS PAGE BACK ALSO

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any amount(s) thereon should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s), note(s), draft(s), monies or other instruments for the payment of money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 2 days of receipt thereof. SELLER ACKNOWLEDGES THAT FAILURE TO PAY OVER SUCH PAYMENTS WITHIN 5 DAYS TO PURCHASER SHALL BE A DEFAULT HEREUNDER AND FURTHERMORE SHALL CAUSE SELLER TO FORFEIT ANY RIGHTS IT MAY HAVE WITH RESPECT TO ANY OTHER PAYMENTS DUE OR TO BECOME DUE TO SELLER UNDER THIS AGREEMENT.

(p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to personal jurisdiction in the State of New York for the enforcement of this agreement or any claim(s) hereunder, and hereby waives any and all rights under the Laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL STATE OR FEDERAL PAYROLL AND SALES TAXES.

(S) Seller hereby grants Quantum authority to sign it's name on any forms required by any governmental entities (including but not limited to Blumberg T491's or similarly required government forms) for the purpose of perfecting the notification of an assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (1) above.

Seller (assignor) Covenants that he will receive any moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said contract:

A)Payment of claims of subcontractors, architects, engineers, surveyors,laborers and materialmen;

B)Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C)Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D)Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E)Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER'S REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, DEDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                    Dated this day of _____, 20 07

By:_____              By:x_____
   QUANTUM CORPORATE FUNDING LTD.            SIGNATURE AND TITLE

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By:_____              By:_____ (NO TITLE NEEDED)
                                             SIGNATURE ONLY

Affirmation And Certification:
State of _____ County of _____ :SS
Sworn to before me this _____ day of _____ 20__

Signature of Notary Public_____

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE SPECIFIED ON THE REVERSE SIDE HEREOF. WE ARRIVED AT THE PRICE BY ANALYZING THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT MIGHT ELAPSE BEFORE WE COLLECT THE PROCEEDS OF THOSE ACCOUNTS THAT DO ULTIMATELY PAY US. AS AN INDUCEMENT TO OUR CLIENTS TO SELL US THE "HIGHEST QUALITY" ACCOUNTS, (I.E., THOSE THAT ARE PAID QUICKLY) WE ARE PLEASED TO OFFER REBATES ON THE DISCOUNT THAT WE APPLIED IN ARRIVING AT THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. THE FOLLOWING SCHEDULE SHOWS THAT AMOUNT OF REBATES THAT YOU MAY BE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WHEN WE CALCULATED THE DISCOUNT. THERE SHALL BE NO REBATE ON INVOICES COLLECTED BEYOND 180 DAYS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

T# 25914

| | | |
|---|---|---|
| Accounts of The Bulk Paid within 1 to 30 days ....$ | 27. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 31 to 40 days ....$ | 26. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 41 to 50 days ....$ | 25. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 51 to 60 days ....$ | 24. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 61 to 70 days ....$ | 23. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 71 to 80 days ....$ | 22. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 81 to 90 days ....$ | 21. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 91 to 100 days ....$ | 20. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 101 to 110 days ....$ | 19. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 111 to 120 days ....$ | 18. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 121 to 130 days ....$ | 17. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 131 to 140 days ....$ | 16. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 141 to 150 days ....$ | 15. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 151 to 160 days ....$ | 14. per Hundred of The Account Amount. |
| Accounts of The Bulk Paid within 161 to 170 days ....$ | 13. per Hundred of The Account Amount. |

Exhibit E

12/18/2007  17:33   4108132828                 WESTWOOD CUSTOM HOME                    PAGE  01/02
   12/18/2007  16:27   4108591196                                                        PAGE  82
      12/18/2007  17:21   4108132828              WESTWOOD CUSTOM HOME
         12/18/2007  17:11  FAX 212 768 1224       QUANTUM FUNDING                        ☒008

Westwood Design Build Incorporated
12109 Gordon Avenue
P.O. Box 105          Beltsville MD 20705

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
852 Walker Drive, Suite 400
Greebalt, MD 20770

R:Transaction#:    25914 Client#:    5999 Debtor#:    32772.

| P.O.#/Contract# | Publisher/ Comptroller# Job# / Project# | Contract P.O. Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|
| | Project: Dollydora Residence. | 10084 | | 12/18/07 | 48 | ***$347,000.00 |
| | Construction Draw, Pollycort | | | | | |
| | module delivery-#0008751584. | | | | | |
| | Curbside delivery completed | | | | | |
| | amounts due and owing | | | | | |

***$347,000.00

Dear Mr. Washburn:

We have entered into a factoring agreement with Quantum Corporate Funding, Ltd.
Therefore, this letter serves as your irrevocable authority to send payment for
above captioned invoice(s) directly and solely to Quantum Corporate Funding, Ltd.
1140 Avenue of The Americas 15th Floor, New York, NY 10036

Thank you for your cooperation.

*David R. Warfield*

Very truly yours,
Westwood Design Build Incorporated

Exhibit F

.ien Online - Confirmation                                             Page 1 of 1



**SHELLEY SIMMONDS**  ORDER DOCUMENTS
10/18/2007 5:10:14 PM ET   SEARCH PUBLIC RECORDS   MY PORTFOLIO   All Our Power Under Your Control

**Confirmation**

Order Number: 12441384
Date Ordered: 10/18/2007 5:10:10 PM ET
Delivery Method: iLien Only
Expedite: No

**Special Instructions**

**Deliver To:**

Shelley Simmonds
Quantum Corporate Funding Ltd
1140 Avenue of the Americas
16th Floor
New York , NY 10036
United States of America
212-768-1200
212-944-8216
shelley@quantumfunding.com

**Bill To:**

CRAIG SHEINKER
QUANTUM CORPORATE FUNDING, LTD.
1140 AVE OF THE AMERICAS
16TH FLOOR
NEW YORK, NY 10036
2127681200
2129448216

**Filing Description**

| Item | Client # | REF 2 | Debtor | Service | Jurisdiction | UDS# | Service Detail |
|------|----------|-------|--------|---------|--------------|------|----------------|
| 1 | 5999 | | Westwood Design Build, Incorporated | UCC Filing-Original | MD:Dept of Assessments/Taxation | B26434472 | Print final docs |

Brought to you by UCC Direct Services © 2001-2007

# UCC APPROVAL SHEET
## ** KEEP WITH DOCUMENT **

| TRANSACTION TYPE | FEES REMITTED |
|---|---|
| UO – Original Financing Statement | $25.00 |
| UOA – Original Financing Statement with assignment | $25.00 |
| UOTU – Original Financial Statement Transmitting Utility | $25.00 |
| UMA – Amendment | $25.00 |
| UMDA – Amendment – Debtor Added | $25.00 |
| UMDC – Amendment – Debtor Name Change | $25.00 |
| UMDD – Amendment – Debtor Deleted | $25.00 |
| UMSA – Amendment – Secured Party Added | $25.00 |
| UMSC – Amendment – Secured Party Name Change | $25.00 |
| UMSD – Amendment – Secured Party Deleted | $25.00 |
| UMC – Amendment – Continuation | $25.00 |
| UMT – Amendment – Termination | $25.00 |
| UMZ – Amendment – Assignment | $25.00 |
| UMZP – Amendment – Partial Assignment | $25.00 |
| UMCS – Amendment – Correction Statement | $25.00 |
| UOMH – Manufactured Home– Original Financing Statement | $25.00 |
| UOPF – Public Finance Original Financing Statement | $25.00 |
| Documents Nine (9) Pages or More | $75.00 |
| Certified Copies | |
| Plain Copies | |
| **TOTAL FEES:** | _2500_ |

## NO FEE TRANSACTION TYPES

- ___ URC – Copies
- ___ UNCP – Void –Non-Payment
- ___ UCC – Cancellation
- ___ UCR – Reinstatement
- ___ UCO – Departmental Action
- ___ UCREF – Refund Recordation Tax
- ___ UCIS – Incorrect ID Number
- ___ XOVRU – UCC Overrides
- ___ UMPC – Filing Office Correction Statement

**Method of Payment:**

Cash ☐    Check ☑    Credit Card ☐

Number of Checks ☐

Comment(s):

---

**Affix Barcode Label Here**

1000381995482938

**Affix Text Label Here**

RECORDED ON 10/19/2007 AT 11:45 AM
IN THE FINANCING RECORDS OF THE MD. ST.
DEPARTMENT OF ASSESSMENTS AND TAXATION.
WD # 0001482527  ACK # 1000381995482938
ORIGINAL FILE NUMBER: 0000000181323153
PAGES: 0002

☐ **OTHER CHANGES:**

_____

_____

Code: _____

Attention: _____

UCC DIRECT SERVICES
P O BOX 29071
GLENDALE          CA 91209-9071

CUST ID:0002037450
WORK ORDER:0001440
DATE:10-23-2007 11:
AMT: PAID:$400.00

# iLien Coverpage

Date Printed: 10/18/2007

Debtor:
Westwood Design Build, Incorporated
12109 Gordon Avenue
Beltsville, MD  20737

Client #: 5999
iLien File #: 26434472
Order Confirmation #: 12441384

UserID: 72104
Number of Collateral Pages Attached: 0

Transaction Type: Original
Jurisdiction: MD, Dept of Assessments/Taxation

```
CUST ID:9002037489
WORK ORDER:0001400527
DATE:10-23-2007 11:12 AM
AMT. PAID:$400.00
```

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front a

A. NAME & PHONE OF CONTACT AT FILE
Phone:(800) 331-3282

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)    706712 QUANTUM CORPO

UCC Direct Services          12441384
P.O. Box 29071
Glendale, CA 91209-9071      MDMD

DEPARTMENT OF
ASSESSMENTS & TAXATION
FILED
2007 OCT 19 A II: 48

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Westwood Design Build, Incorporated | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12109 Gordon Avenue | Beltsville | MD | 20737 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION MD | 1g. ORGANIZATIONAL ID #, if any D11071552 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |

3. SECURED PARTY'S NAME (or NAME OF TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Quantum Corporate Funding, Ltd. | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1140 Avenue of the Americas 15th Floor | New York | NY | 10036 | USA |

4. This FINANCING STATEMENT covers the following collateral:

EXHIBIT "A"    All assets of the Debtor, including but not limited to, all personal property and fixtures in which Debtor has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including, without limitation, all equipment, inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, deposit accounts, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation, patents, trademarks and copyrights (and applications for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay money, now or hereafter owned or acquired by Debtor (including without limitation all rights of Debtor as an unpaid vendor), and all proceeds and unreduced goods, together with all of Debtors and other security therefor, and all right, title and interest of Debtor in any returned, repossessed, rejected or unreduced goods, together with all of Debtors books of account, ledger cards, customer lists and records, all vehicles, all computer programs and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns, additions, accessions and substitutions of said to pay any of the foregoing.    All of the terms used in this Financing Statement are, to the extent defined in the Uniform Commercial Code of the State of New York, used in this Financing Statement as so defined.    NOTICE:  PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED THAT IT WILL NOT FURTHER ENCUMBER THE ASSETS DESCRIBED ABOVE OR INCREASE THE INDEBTEDNESS THEREON, OR TRANSFER OR ASSIGN SAID ASSETS EXCEPT IN THE ORDINARY COURSE OF BUSINESS

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] ADDITIONAL FEE | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 12441384 | | | 5699 | | | |

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Exhibit G

12/21/2007  13:17    4108132828                    WESTWOOD CUSTOM HOME              PAGE  05
   12/20/2007  16:53    4108591196                                                      PAGE  01/01
   12/20/2007  17:53    4108132828                WESTWOOD CUSTOM HOME             PAGE  81



# WESTWOOD
### Design / Build Inc.

Quantum Corporate Funding, Ltd.                          December 20, 2007
1140 Avenue of the Americas, 16th Floor
New York, NY 10036
Ms. Shelley Simmonds

Ref:    Payment Authorization

Dear Ms. Simmonds,

Pursuant to your request, this letter serves as authorization to forward $112,168.28 ( One Hundred Twelve Thousand – One Hundred Sixty Eight and twenty – eight cents) on behalf of Westwood Design/Build Inc., to Penn Lyon Homes Corporation.

Please subtract the above listed amount from advance T #25914.

Thank you for your immediate attention in this matter.

Professionally,

David R. Warfield
President, Westwood Design/Build Inc.

Cc:    M Conrad

12/20/2007  15:46   4108132828          WESTWOOD CUSTOM HOME          PAGE  02

*Inspector Baldwin*

# **WIRING INSTRUCTIONS**

## Bank Name: **Omega Bank, N.A.**
## Wire Name: **Omega State College**
## ABA#: **031316271**

## For further credit of Penn Lyon Homes, Inc. A/C
## #40224230

P.O 107  195  Airport Rd

Selinsgrove, PA 17870

## Bank Address

## **Omega Bank**
## **366 Walker Drive**
## **State College, PA 16801**

 **STERLING NATIONAL BANK**

Contact    Help    Exit

**Home Banking    Bill Payment    Options**
**Main | Transactions | Download | Statements | Stop Payments | Prior Day**
Sterling National Bank · 650 Fifth Avenue New York, New York 10019 · (212) 760-2031

**Current Account:** QUANTUM CO S MOSS

**Transactions from 12/21/2007 to 12/21/2007**
View Transactions Since: Last statement       Total Transactions This Page: 36
**NOTE: Click on a column name to sort transactions by that column in ascending (△) or descending (▽) order.**

| Date ▽ | Check# | Description | Debits | Credits | Balance |
|--------|--------|-------------|--------|---------|---------|
| 12/21/2007 | | OT: OMEGA STATE COLLEGE FURTHER CREDIT: PENN LYON HOME | (112,168.28) | | 2,305,012.77 |
| 12/21/2007 | | OT: WESTWOOD DESIGN BUILD INCO | (130,731.72) | | 2,417,181.05 |

Exhibit H

12/20/2007  15:46    4108132828                    WESTWOOD CUSTOM HOME                    PAGE  03



PENN LYON
HOMES CORPORATION

P.O. BOX 27, AIRPORT ROAD
SELINSGROVE, PA 17870
(570) 374-4004
FAX: (570) 374-8055
Web: www.pennlyon.com

INVOICE NO.    № 850

DATE PRINTED
Dec 20, 2007

SOLD TO:    3445
Westwood Design/Build Inc.
13400 Baltimore Blvd. 2nd Floor
Laurel MD 20707

SHIPPED TO:

| SERIAL NO. | SIZE AND MODEL | EX. COLOR | PP | COD | SALESPERSON |
|---|---|---|---|---|---|
| 11188 | | | | | ED C. |

| OPTION NO. | DESCRIPTION | AMOUNT |
|---|---|---|
| POLLYDORE RESIDENCE | | $212,168.28 |
| 212,168.28 | | |
| -50,000.00 Wra Recv'd 06/28/07 | | |
| 162,168.00 | | |
| -50,000.00 Wra Recv'd 11/18/07 | | |
| 112,168.28 Balance Due | | |

BASE              $  189,739.11

OPTIONS           $  _____

SUBTOTAL          $  _____

SALES OR USE
TAX               $  5,692.17

SET UP
(SUBCONTRACTED)  $  _____

FREIGHT           $  16,737.00

CARRIER
DEPOSIT           $  _____

INVOICE TOTAL     $  212,168.28

LESS DEPOSIT
OR CREDIT         $  100,000.00

NET DUE           $  112,168.28

CARRIER NOS.      _____

WHITE - BUILDER
GREEN - A/R
YELLOW - FILE
PINK - SALES FILE
GOLD - ACCOUNTING

Materials contained herein remain the property of Penn Lyon Homes Corporation until this invoice is paid in full with certified U.S. funds.

Exhibit I

## Bernard Kobroff

**From:**       Craig Sheinker [cshei1@att.blackberry.net]
**Sent:**       Wednesday, January 16, 2008 1:26 PM
**To:**         Bernard Kobroff
**Subject:**    Fw: Westwood Design

Sent via BlackBerry by AT&T

-----Original Message-----
From: "Maria DeSouza" <maria@quantumfunding.com>

Date: Tue, 15 Jan 2008 10:56:24
To:"Blackberry -- Craig Sheinker" <cshei1@mycingular.blackberry.net>
Subject:  Westwood Design


FYI
-----Original Message-----
From: Justice, Timothy [mailto:Timothy.Justice@NCMC.com]
Sent: Tuesday, January 15, 2008 10:28 AM
To: Maria DeSouza
Subject: RE: Westwood Design


Maria,

Please inform Craig that he must direct all concerns regarding this transaction to Mike
Conrad at Westwood Design. National City Mortgage doesn't have any obligations to a
contact or agreement between your company or Westwood Design. I have informed Mike to
contact Craig regarding his concerns.

Tim Justice
Draw Division - Team Manager
Construction / Rehab Lending Department
National City Mortgage, a division of National City Bank
3232 Newmark Dr, Building 1
Miamisburg, OH 45342
Direct: 937-910-3205
Toll Free: 866-312-2271 ext. 53205
Fax: 937-910-4085
Timothy.Justice@ncmc.com




    ----------------
  From: Maria DeSouza [mailto:maria@quantumfunding.com]
Sent: Friday, January 11, 2008 5:15 PM
To: Justice, Timothy
Subject: Westwood Design



Hello Mr. Justice,
Per your conversation with Craig Sheinker, attached you will find documents signed by
Christopher Washburn. Please review and get back to Craig on Monday at 800-352-2535 or
212-768-1200 x.20.
If you have any questions, please feel free to contact me.
Maria Luiza De Souza
Jr. Account Executive
1140 Avenue of the Americas, 16th Floor

1

New York, N.Y 10036
Tel: 212-768-1200
Fax: 212-944-8216
<<25914.pdf>> <<25914 B.pdf>> <<Westwood UCC1.pdf>>

---------------------------------------------------------------------
- ***The following annotations have been made
---------------------------------------------------------------------
- Please be aware that e-mail is NOT a secured communication vehicle, and that others may
in certain circumstances be able to view its contents. As a result, while we are happy to
provide this information by e-mail, we do NOT conduct actual business transactions by e-
mail. Please contact the sender directly if you have any concerns about this message. All
loans subject to credit approval and property appraisal. Equal Housing Lender. This
communication is a confidential and proprietary business communication. It is intended
solely for the use of the designated recipient(s). If this communication is received in
error, please contact the sender and delete this communication.
=====================================================================

**H**

Page 1 of 1

Request for Military Status

MAY-12-2008 15:14:54

Department of Defense Manpower Data Center



Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| WARFIELD | david richard | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:XTACUKALAR*