UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

                Plaintiff,

-against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                Defendants.

Docket No. 08 CV 00539(LAK) (HP)

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Scott H. Goldstein, Esq. affirmed on August 5, 2008 and the exhibits attached thereto, the accompanying Memorandum of Law in support of this Motion, and the pleadings herein, plaintiff/defendant will move this Court, before Honorable Lewis A. Kaplan, J.S.C. United States District Judge, for an Order pursuant to Rules 6(b)(2), 56(f), 59(e), 60 (b)(1)and (6) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 granting the following relief:

      1)     Vacatur of the final judgment entered against defendant PLH on plaintiff Quantum Corporate Funding, Ltd's ("Quantum") motion for summary judgment which was heard and decided before PLH filed its opposition thereto;and

      2)     Upon vacatur of final judgment, denial of plaintiff's summary judgment motion on the merits;

      3)     Reconsideration of the Court's Order granting summary judgment against PLH and in favor of Quantum, and upon reconsideration, denial of Quantum's motion for summary judgment;

3)    Reconsideration of the Court's Order granting summary judgment against

PLH and in favor of Quantum, and upon reconsideration, denial of Quantum's motion for

summary judgment;

4)    In the alternative, PLH requests an extension of time to file opposition to

plaintiff's summary judgment motion out of time pursuant to Fed. R. Civ. P. 6(b)(2);

and/or;

5)    an adjournment of plaintiff's motion for summary judgment to allow the

parties to engage in discovery before PLH has to file its substantive opposition to the

motion pursuant to Fed. R. Civ. P. 56(f); and

6)    such other and further relief as this Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: New York, New York
     August 5, 2008

                           _____
                           Scott H. Goldstein, Esq.
                           BONNER KIERNAN TREBACH
                           & CROCIATA, LLP
                           Attorneys for Defendant
                           Penn Lyon Homes Corporation
                           Empire State Building – Suite 3304
                           New York, New York 10118
                           Tel # (212) 268-7535
                           Fax # (212) 268-4965

# EXHIBIT A

Transaction#_____ ____   Client#_____ ____   Rebate Class____ ____   Advt___ __
→ ♦ 112,168.28 to Penn Lyon Homes Corp.
→ ♦ 130,731.72 to Westwood Design

## PURCHASE & SALE AGREEMENT

In consideration of the sum of $ ................$243,900.00 _____ paid by purchaser to seller,

Westwood Design Build Incorporated

receipt of which is hereby acknowledged, the undersigned ("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd. ("Purchaser"), its successors and assigns all Seller's right, title and interest in and to Seller's account(s) receivable (including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors described in Exhibit "A" attached hereto and made part hereof, together with all rights of action accrued, or to accrue thereon, including, without limitation, full power to collect, sue for, compromise, assign, or in any other manner enforce collection thereof in Purchaser's name or otherwise.

Seller represents, warrants and agrees that:

(a) The Seller is the sole and absolute owner of said account(s), and has full legal right to make said sale, assignment and transfer, and that said sale transfer or assignment does not conflict with the terms of any other agreement, or instrument to which Seller is a party.

(b) The current total amount of said account(s) is $...........................................

(c) Said account(s) are presently due and owing to Seller and the amount(s) thereof are not and will not be in dispute; and the payment of said account(s) are not and will not be contingent upon the fulfillment of this, or any other contract(s), past or future.

(d) There are not and will not be any set-offs or counterclaims against said account(s), and said account(s) have not been previously assigned or encumbered by Seller in any manner whatsoever.

(e) Purchaser has right of endorsement on all payments received in connection with said account(s), and Seller hereby appoints Purchaser its attorney in fact for said purpose. In order to accommodate the accounting needs of its clients, Seller hereby directs purchaser, as agent, to accept and deposit all checks received from sellers clients whether or not they represent assigned accounts.

(f) Seller will promptly advise Purchaser, in writing, if Seller's place of business and record keeping is changed or a new place is added.

(g) At Purchasers request, Seller hereby agrees to file a Notice of Mechanics Lien on any real property improvement upon which it has performed labor or furnished materials, the account for which labor and/or materials it has assigned to Purchaser. In the event Seller fails to promptly comply with such request, Seller does hereby constitute and appoint Purchaser as its agent to execute and file in the name of Seller a Notice of Mechanic's Lien to the extent of the debt due from the account debtor for and on account of such labor and material. In connection with the filing of said Notice of Mechanic's Lien, the Seller agrees to periodically advise the Purchaser of the amount or amounts owed by the account debtor in connection with each real improvement so that the Notice of Mechanic's Lien will be accurate in all respects. Seller further agrees not to provide the account debtor with a "Waiver of Right to File a Notice of Mechanic's Lien" without the prior written consent of Purchaser.

(h) Should any of the warranties expressed by Seller be inaccurate and it becomes necessary for Purchaser to utilize an attorney to enforce its rights against Seller, Seller agrees that such attorney fees shall be borne by Seller.

(i) Purchaser further agrees that if the amount referred to in (b) above (or any portion thereof) is not paid by the account debtor(s) thereof for any reason other than a breach of the representations, warranties and covenants contained herein, Seller shall not be liable to repay to Purchaser any amount paid by Purchaser to Seller in consideration of the sale, transfer and assignment herein contained.

(j) Purchaser warrants that it will use its best efforts to collect the amounts due under this agreement and Seller agrees that Purchaser may, in its sole discretion, settle, compromise, or otherwise accept payment of less than the full amount, if in its judgment such action is necessary to effect collection, by reason of a violation of any of the representations and warranties contained in this agreement.

(k) In the event it should become necessary for the Purchaser to enforce its rights hereunder against Seller, the Guarantor(s) or the Account Debtor(s), Seller agrees that Purchaser may apply up to maximum of thirty third and one third (33 1/3%) of clause (b) for Purchaser's attorney's fees therefor.

(L) To secure the representations and covenants made by Seller in this agreement, but not the credit risk of the Account(s), Seller hereby grants to Purchaser a continuing security interest in all personal property and fixtures in which Seller has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to, all present or hereafter existing or acquired tools, goods, (including without limitation, all equipment), inventory, furniture, receivables, accounts, security agreements, notes, bills, acceptances, instruments, installment paper, chattel paper, documents, certificates of deposit, tax refunds, insurance proceeds, conditional sale or lease contracts, cash or cash equivalents, chattel mortgages or deeds of trust, general intangibles, all intellectual property including, without limitation patents, trademarks and copyrights (and applications for all of the foregoing), contract rights, and all other hypothecation, and promises or duty to pay money, now or hereafter owned or acquired by Seller (including without limitation all rights of Seller as an unpaid vendor); and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Seller in any returned repossessed, rejected or un-shipped goods, together with all of Sellers books of accounts, ledger cards and records, all vehicles, all computer programs, and systems owned or operated in connection therewith, all of the above securing present and future advances and all proceeds, products, returns add-ons, accessions and substitutions of and to pay any of the foregoing. Further to this purpose, Seller hereby grants Purchaser and its agentsPower of Attorney to sign it in it's name on any applicable financing statements (UCC-1) or otherwise) in order to effectuate filing(s) on the aforementioned assets of Seller. Upon any default in Sellers representations, warranties, and covenants Purchaser may enforce said security agreement in accordance with the provisions of the Uniform Commercial Code.

(m) No failure or delay on the part of Purchaser in exercising any right power or remedy granted to purchaser hereunder shall constitute a waiver thereof. No amendment, modification or waiver of, any provision of this Agreement shall be effective unless the same shall be in writing and signed and delivered by Purchaser.

(n) Purchaser shall have the right to deduct the amount of any allowance(s), discount(s), returns(s), defense(s), or offset(s) taken by the Account Debtor(s) from any other accounts receivable or other billing rights purchased by purchaser from Seller or demand reimbursement from Seller based upon representations made by Seller in this agreement as to the Account and Purchaser shall have such other rights and remedies against Seller as shall be available to Purchaser at law or in equity, all of which rights and remedies are hereby expressly reserved.

\quantcorp\sale\purchase.agt

PLEASE FAX THIS PAGE BACK ALSO

Case 1:08-cv-00539-LAK-HBP   Document 54   Filed 08/05/2008   Page 5 of 67

12/21/200 Case 1:08-cv-00539-LAK   Document 37   Filed 07/08/2008   Page 19 of 50   PAGE   04

12/20/2007  16:45      4108591196

12/20/2007  17:30      4108132828                          .WESTWOOD CUSTOM HOME          PAGE  01/02
                                                                                          PAGE  01

12/20/2007 17:30 FAX 313 398 8510        CORPORATE OFFICE                    @005

(o) The Account(s) shall be the property of Purchaser, solely and shall be collected by Purchaser, but if for any reason any account(s), thereto should be paid to Seller, Seller shall notify Purchaser immediately of such payment(s), shall hold any check(s), note(s), draft(s), monies or other instruments for the payment of money so received in trust for the benefit of Purchaser, and shall pay over such monies and transmit such check(s) or draft(s) to Purchaser in kind, at its office within 2 days of receipt thereof. SELLER ACKNOWLEDGES THAT FAILURE TO PAY OVER SUCH PAYMENTS WITHIN 2 DAYS TO PURCHASER SHALL CAUSE SELLER TO FORFEIT ANY RIGHTS IT MAY HAVE WITH RESPECT TO ANY OTHER AMOUNTS DUE OR TO BECOME DUE TO SELLER UNDER THIS AGREEMENT.

(p) The paragraphs of this Agreement are severable, and in the event that any paragraph or portion of this Agreement is declared illegal or unenforceable, the remainder of this Agreement will be effective and binding upon the parties.

(q) This agreement shall be governed by the laws of the State of New York applicable to contracts executed in and to be performed solely within the State of New York. Seller hereby submits, at the election of Purchaser, to exclusive jurisdiction in the State of New York for the enforcement of this Agreement or any claim(s) thereunder, and hereby waives any and all rights under any laws of any foreign jurisdiction to object to such jurisdiction. Any claim by Seller against Purchaser shall be brought in the State of New York only. In any suit or proceeding relating to this Agreement, the parties mutually waive trial by jury.

(R) SELLER IRREVOCABLY & UNCONDITIONALLY WARRANTS THAT IT WILL AT ALL TIMES REMAIN CURRENT ON ANY AND ALL STATE OR FEDERAL PAYROLL WITHHOLDING TAXES.

(S) Seller hereby grants Quantum authority to sign its name on any forms required by any governmental entities (including but not limited to Blumberg T231's or similarly required Government forms) for the purpose of performing the certificates of an assignment and transfer of payment to Purchaser and/or to recover from a breach of the security agreement provided for in (I) above.

Seller (assignor) Covenants that he will receive any moneys advanced hereunder as trust funds to be first applied to the following expenditures arising out of the improvement of real property and incurred in the performance of said contract:

A) Payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

B) Payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

C) Payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

D) Payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnished such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

E) Payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement.

Nothing in this covenant shall be considered as imposing upon the Purchaser (assignee) any obligation to see to the proper application of moneys advanced under such assignment by the assignee.

SELLER AGREES TO HOLD PURCHASER HARMLESS FROM ANY BREACH OF SELLER's REPRESENTATIONS, WARRANTIES, AND AGREEMENTS CONTAINED HEREIN WITHOUT ANY EFFECT WHATSOEVER FOR SETOFFS, REDUCTIONS OR COUNTERCLAIMS.

ACCEPTED AND AGREED                 /Dated this day of 20 DEC         2007/
By: [signature]  & Acct Exec          By: [signature] R Wafer   President
    QUANTUM CORPORATE FUNDING LTD.           SIGNATURE AND TITLE

Guarantee: The undersigned (not including the Seller) hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Seller set forth above.

By: _____                By: [signature]  Name R Wafer  (NO TITLE REQUIRED)
                                             SIGNATURE ONLY

Affirmation And Certification:
State of _____
County of _____                      19__
Sworn to before me this          day of _____ 20__

Signature of Notary Public _____

WE ARE PURCHASING OUTRIGHT THE GROUP OF ACCOUNTS ANNEXED HERETO FOR THE PRICE ASCRIBED ON THE REVERSE SIDE HEREOF. WE ASSUME AT THE RISK OF NONPAYMENT THE CREDIT RISK THAT WE ARE ASSUMING AS WELL AS THE TIME THAT MIGHT ELAPSE BEFORE WE COLLECT THE PROCEEDS OF THOSE ACCOUNTS THAT DO ULTIMATELY PAY US. AS AN INDUCEMENT TO OUR CLIENT TO SELL US THE "HIGHEST QUALITY" ACCOUNTS, (I.E., THOSE THAT PAY MOST QUICKLY) WE ARE FORCED TO OFFER REWARDS, IN THE DISCOUNT THAT WE APPLYING TO THE PURCHASE PRICE, PROVIDED THAT WE SHALL HAVE FIRST RECOVERED OUR PURCHASE PRICE IN FULL WITHIN 180 DAYS OF THE DATE OF THE PURCHASE. THE FOLLOWING SCHEDULE SHOWS THAT EACH OF THE DAYS THAT WE ARE ENTITLED TO IN THOSE CASES WHERE THE ACCOUNTS SHOULD BE PAID TO US MORE QUICKLY THAN WE HAD ANTICIPATED WORK WE CALCULATED THE DISCOUNT. THERE SHALL BE NO REBATE OF INVOICES COLLECTED BEYOND 180 DAYS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN UNDER NO CIRCUMSTANCES SHALL THE DISCOUNT EARNED BY PURCHASER AMOUNT TO LESS THAN $250.00.

T# 25914

| Accounts of The Bulk Paid within | 1 to 10 days | .....0 | 1%, per hundred of The Account Amount. |
|---|---|---|---|
| Accounts of The Bulk Paid within | 11 to 40 days | .....1 | 2%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 41 to 50 days | .....2 | 1%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 51 to 60 days | .....3 | 2%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 61 to 70 days | .....4 | 3%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 71 to 80 days | .....5 | 3%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 81 to 90 days | .....6 | 1%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 91 to 100 days | .....8 | 9%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 101 to 110 days | .....9 | 10%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 111 to 120 days | .....10 | 11%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 121 to 130 days | .....5 | 12%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 131 to 140 days | .....11 | 13%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 141 to 150 days | .....15 | 14%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 151 to 160 days | .....6 | 14%, per hundred of The Account Amount. |
| Accounts of The Bulk Paid within | 161 to 170 days | .....18 | 15%, per hundred of The Account Amount. |

12/18/2007  17:33    4108132828                    WESTWOOD CUSTOM HOME                    PAGE  03

12/18/2007  16:27    4108591196                                                           PAGE  02/02

   12/18/2007  17:21    4108132828                        WESTWOOD CUSTOM HOME            PAGE  01

       12/18/2007 17:11 FAX 212 768 1224          QUANTUM FUNDING                         ☑002

1 /18/07

# EXHIBIT A TO PURCHASE & SALE AGREEMENT
## BETWEEN
QUANTUM CORPORATE FUNDING, LTD (PURCHASER)
&
Westwood Design Build Incorporated        (Seller).

Transaction#    25914    Clitran#:

| Date Invoice | Invt Acct.Debtor | Deb Debtor# Clidate# Comptrolltype# P.O.# | Job# | Contract Invoice Amount |
|---|---|---|---|---|
| /10/07 1008 | 48 National City Mortgage Company | EX1 32772 | Project: Pollydare remodel/c. Construction DRAW, pollydare module delivery-#80931 51034. Curbside delivery complete10 amount due 3rd swing | ~***$347,000.00 |
| | | | | $347,000.00 |

Page: 1 Transaction#: 25914

TOTAL INVOICES:    $347,000.00

Seller hereby verifies the accuracy of the above:

By _David R. Waylin_    Title _President_

# EXHIBIT B



# INVOICE

| Date | Invoice # |
|------|-----------|
| 12/18/2007 | 10084 |

### BILL TO:

National City Mortgage/National City Bank
Christopher Washburn, Vice President
9852 Walker Drive, Suite 400
Greenbelt, MD 20770

### REMIT TO:

Westwood Design/Build Inc.
P.O. Box 105
Beltsville, MD 20704

| Terms | P.O. No. | PROJECT | |
|-------|----------|---------|---|
| Net 45 | | Pollydore Residence | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Construction Draw<br>Pollydore Module Delivery – #0005351534<br>Curbside Delivery Completed Amount Due and Owing | 347,000.00<br>0.00 | 347,000.00<br>0.00 |

This Invoice has been sold, assigned and transferred to: Quantum Corporate Funding, Ltd.

Make all checks payable and mail to:

Quantum Corporate Funding, Ltd.
1140 Avenue of the Americas, 16th Floor
New York, New York 10036

| | | | |
|---|---|---|---|
| Modules Delivered | | **Total** | **$347,000.00** |

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
QUANTUM CORPORATE FUNDING, LTD.,                    Civil Action
                                                    Docket No. 08 CV00539(LAK)(HBP)
                            Plaintiff,

          -against-                                 **AFFIDAVIT IN SUPPORT
                                                    OF MOTION FOR
WESTWOOD DESIGN/BUILD                               SUMMARY JUDGMENT**
INCORPORATED, DAVID B. WARFIELD,
NATIONAL CITY MORTGAGE INC., and
PENN LYON HOMES CORPORATION,

                            Defendants.
----------------------------------------------------------X
NATIONAL CITY MORTGAGE,

                    Third-Party Plaintiff,

          -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

                    Third-Party Defendant.
----------------------------------------------------------X

          CRAIG SHEINKER, being duly sworn, deposes and says:

          1.      I am the President of Quantum Corporate Funding, Ltd. ("Quantum"), the

plaintiff herein, have examined Quantum's records and have personal knowledge of the

facts and circumstances hereinafter set forth and submit this Affidavit in support of

Quantum's motion for summary judgment against defendant Penn Lyon Homes

Corporation ("Penn") in the amount of $112,168.28 together with interest from January

15, 2008.

          2.      Quantum seeks in this action to recover from defendant Penn the sum of

$112,168.28 of Quantum's monies which Penn either converted and/or was unjustly

enriched by, when Quantum wired said sum in payment for the Pollydore's Residence

and Penn neither applied the monies to that purpose, nor shipped the goods, nor returned the monies to Quantum.

## BACKGROUND

3.    Quantum is in the business of accounts receivable factoring.

Headquartered in New York City, New York. Quantum is one of the largest purchasers of contractor receivables in the United States.

4.    On or about January, 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into contracts with defendant Westwood Design/Build Incorporated ("Westwood"), as contractor, and with defendant National City Mortgage Inc. ("National") as construction lender, pursuant to which Westwood contracted to construct a new home for Mr. and Mrs. Pollydore at 6117 Elm Avenue, Lanham, Maryland (the "Pollydore Residence"). A copy of the Westwood/Pollydore contract is annexed hereto as Exhibit "A". A copy of National/Pollydore construct loan agreement is annexed hereto as Exhibit "B".

## THE TRANSACTION

5.    In 2007, defendant Westwood, by defendant David R. Warfield ("Warfield") approached Quantum to obtain cash by selling Quantum an account receivable. To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum a $347,000.00 invoice (the "Invoice") which it represented was monies due it from defendant National pursuant to its second draw-down of the Pollydore's construction loan. A copy of the Westwood Invoice to National is annexed hererto as Exhibit "C". The construction loan draw-down schedule is annexed as part of Exhibit "B".

2

6.    Since Quantum has no independent way of knowing if the contractor offering to sell its accounts receivable has, in fact, performed work and furnished materials of the amount invoiced, Quantum contacts the account debtor, in this case the construction lender, defendant National, and requests from the account debtor, a written acknowledgment of and an estoppel certificate for the debt.

7.    Accordingly, in December 2007, Quantum contacted defendant National's Branch Manager, Christopher Washburn, at National's office in Greenbelt, Maryland, and requested confirmation that the Invoice (Exhibit "C" hereto) was correct, forwarding to defendant National an estoppel certificate covering the Invoice.

8.    In response, defendant National, by its Mr. Washburn, signed the estoppel certificate in the amount of the $347,000.00 second draw-down of the Pollydore construction loan and returned it to Quantum. A copy of the estoppel certificate executed by defendant National, citing Westwood's Invoice, is annexed hereto as Exhibit "D".

9.    In reliance upon defendant National's estoppel certificate, Quantum agreed to purchase the Invoice.

10.    The assignment of the Invoice by Westwood to Quantum was made by an agreement entitled Purchase & Sale Agreement (the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit "E".

11.    Pursuant to the Agreement, on December 21, 2007, Quantum paid defendant Westwood $242,900.00 for the Invoice pursuant to Westwood's, by defendant Warfield's, specific instructions, by wiring: (a) $130,731.72 to Westwood and; (b) wiring $112,168.28 to defendant Penn, in payment of Penn's invoice No. 850 representing the balance outstanding on its shipment of the "Pollydore Residence". A copy of Westwood's wiring instructions to Quantum is annexed hereto as Exhibit "F". A copy of

3

the Penn "Pollydore Residence" Invoice No. 850 is annexed hereto as Exhibit "G". A copy of Quantum's wire transfers to Westwood and to Penn are annexed hereto as Exhibit "H".

12.     In early January 2008, Quantum contacted defendant National's main office in Miamisburg, Ohio to confirm that pursuant to the assignment payment of the Invoice would be made by National directly to Quantum, as assignor, rather than to assignee Westwood.

13.     Additionally, Quantum attempted to contact defendant Westwood to advise it that if defendant National paid the Invoice to it, instead of to Quantum, that the payment was required to be turned over to Quantum.

14.     However, despite several attempts to reach Westwood by telephone, Quantum was unable to made contact with Westwood and this raised concerns.

## THE FRAUD AND PENN REFUSES TO RETURN THE PAYMENT OR SHIP THE POLLYDORE RESIDENCE

15.     Quantum then contacted the Pollydores' and was advised by Mrs. Pollydore that not only had the residence not been set on the foundation, but that there was no foundation and that no materials had been delivered to the site.

16.     After receiving this information, I contacted defendant Westwood's supplier, defendant Penn, to confirm that it had in fact shipped Mr. and Mrs. Pollydore's modular home for which Quantum had paid it.

17.     Defendant Penn advised me on January 11, 2008 that: (a) it had never heard of Pollydores; (b) had not shipped the Pollydore Residence, and; (c) that the $112,168.28 Penn invoice No. 850 (Exhibit "G") which Quantum had paid was ficticious.

18.     On January 15, 2008, by e-mail, I demanded that defendant Penn return to Quantum the $112,168.28 which Quantum had wired in payment for the Pollydore

4

Residence. A copy of my January 15, 2008 e-mail to Penn's President, David Reed, demanding the immediate return of the $112,168.28 is annexed hereto as Exhibit "I".

19.    Notwithstanding my aforesaid demand and further conversations between defendant Penn and Quantum's attorney, Charles A. Shea, III, Esq., of Wetzel, Caverly, Shea, Phillips & Rodriguez, Penn refused to either return the $112,168.28 to Quantum or to ship the Pollydore Residence.

20.    As a result, Quantum amended its Complaint herein to add Penn as a defendant asserting against it claims for conversion and unjust enrichment. A copy of Quantum's Corrected Amended Complaint is annexed hereto as Exhibit "J".

21.    A copy of defendant Penn's Answer, wherein it admits in pertinent part that:

    (a)    "Penn Lyon has never entered into any contracts or transactions with Westwood or Warfield for the production and manufacture of modular custom-built home units to be delivered to 6117 Elm Street, Lanham, Maryland on property owned by Mr. and Mrs. Eustace Pollydore (the "Pollydore Project")" (para. 39); and

    (b)    On or about December 24, 2007, Penn Lyon received a wire transfer in the amount of $112,168.12 (sic)..." (para. 41);

but denies that it either converted Quantum's $112,168.28 transfer to it and/or was unjustly enriched by that transfer (paras. 16 and 18), is annexed hereto as Exhibit "K".

22.    Notwithstanding defendant Penn's denials, the undisputed facts evidence that Quantum on December 21, 2007 wired $112.168.28 from its account at Sterling National Bank to Penn Lyon's account at Omega Bank in payment for the "Pollydore Residence" and that at no time did Penn either credit that payment to the "Pollydore Project" (Exhibit "K" para. 39) or ship the Pollydore Residence or return Quantum's $112,168.28, despite Quantum's demand for its return.

5

**WHEREFORE,** I respectfully request that the Court grant this motion, as well as such other and further relief as may be just and proper.

CRAIG SHEINKER

Sworn to before me this
3rd day of July, 2008

Notary Public

BERNARD KOBROFF
NOTARY PUBLIC, State of New York
No. 4603476
Qualified in Westchester County
Commission Expires May 31, 2010

W:\bkobroff\Quantum\Westwood\Aff. in Sup. of Motion for Summary Judgment.doc

6

# EXHIBIT D

# Quantum Corporate Funding, Ltd.

1140 Avenue of the Americas, 16th Floor
New York, N.Y. 10036
Tel. 212 768-1200
800 352-2585
Fax 212 944-8216

12/18/07

Mr. Christopher Washburn
Branch Manager
National City Mortgage Company
7852 Walker Drive, Suite 400
Greebelt, MD 20770

Re: Our Transaction#    25914   Client: Westwood Design Build Incorporated
Our Debtor#: 32772.      Our Client#:    5999

| P.O.#/Contract# | Job# / Project# | Controllers# | Contract/<br>P.O.Date | Invoice# | Inv.Date | Terms | Invoice Amount |
|---|---|---|---|---|---|---|---|
| | Project: Pollydora Residence.<br>Construction Draw, Pollydoro<br>module delivery-#0005351534. | | | 10084 | 12/18/07 | 45 | ****$347,000.00 |
| | | | | | | | -------------- |
| | | | | | | | ******$347,000.00 |

Dear Mr. Washburn:

We are the assignee of payment of the above captioned company. Attached is a letter from it authorizing all payments on the captioned invoices to be sent directly and solely to Quantum Corporate Funding, Ltd.

The undersigned Account Obligor acknowledges to Quantum Corporate Funding, Ltd. that the above invoice Amount(s) are correct and owing by us; that the work and or merchandise has been ordered from and completed by the captioned Client, and accepted by us; that there are not now, nor will there be, any claims, setoffs, or defenses beyond 20% of the Invoice Amount(s); Neither Quantum nor its agents made any representations except as herein set forth. This estoppel is not subject to modification. New York law, jurisdiction and venue shall apply hereto.

Very truly yours,

Shelley Simmonds
Senior Account Exec.

Agreed & Accepted

Authorized Signature_____        Title_____
   Account Obligor:    National City Mortgage Company
                       Print Name:

TOTAL P.02

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

                    Plaintiff,                    Docket No. 08 CV 00539(LAK) (HP)

            -against-                              **DEFENDANT'S FIRST SET OF**
                                                  **INTERROGATORIES TO**
WESTWOOD DESIGN/BUILD                              **PLAINTIFF QUANTUM**
INCORPORATED, DAVID R. WARFIELD,                  **CORPORATE FUNDING, LTD.**
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                    Defendants.

---

TO:    Bernard Kobroff, Esq.
       Goetz Fitzpatrick, LLP
       One Penn Plaza, 44th Floor
       New York, New York 10119
       Attorney for Plaintiff
       Quantum Corporate Funding, Ltd.

PLEASE TAKE NOTICE that defendant Penn Lyon Homes Corporation by and

through its undersigned counsel, hereby requests that plaintiff Quantum Corporate

Funding, Ltd. answer the following interrogatories under oath and in the manner and time

prescribed by Rule 33 of the Federal Rules of Civil Procedure and the Local Civil Rules

of the United States District Court for the Southern District of New York.

PLEASE TAKE FURTHER NOTICE that these interrogatories are deemed to be

continuing in nature so as to require supplemental answers within thirty days if the

responding party becomes aware of new responsive information up to and including the

time of trial of this action.  These interrogatories are without prejudice to Penn Lyon

Homes Corporation's right to serve supplemental interrogatories in accordance with

Local Civil Rule 33.3.

9       With regarding to each person whom Quantum Corporate Funding expects to call as an expert witness at trial, please state the qualifications of the expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions on which the expert is expected to testify, and a summary of the grounds for each opinion.

10.      Set forth in detail all specific facts, not legal conclusions, upon which Quantum Corporate Funding relies to prove its allegations contained in paragraph 48 of Quantum's Corrected Amended Complaint that On December 21, 2007, defendants Westwood and Warfield unlawfully took $112,168.28 of plaintiff Quantum's money, converted it to their own use and transferred it to defendant Penn allegedly in payment for supplies and materials used in the construction of the Project."

11.      Set forth in detail all specific facts, not legal conclusions, upon which Quantum Corporate Funding relies to prove its allegation in paragraph 50 of its Corrected Amended Complaint that "In January 2008, plaintiff Quantum demanded that defendant Penn return the $112,168.12 to Quantum, but Penn has refused and still refuses to return the $112,168.12 to Quantum."

12.      Set forth in detail all specific facts, not legal conclusions, upon which Quantum Corporate Funding relies to prove its allegation in paragraph 52 of Quantum's Corrected Amended Complaint that ". . . Quantum has sustained damages in the amount of $112,168.28.

13.      Set forth in detail all specific facts, not legal conclusions, upon which Quantum Corporate Funding relies to prove its allegation in paragraph 54 of Quantum's Corrected Amended Complaint that "Defendant Penn has been unjustly enriched as a result of the $112,168.28 of plaintiff's Quantum monies transferred to it."

14.      Describe in detail all steps taken by Quantum Corporate Funding to investigate Westwood Design/Build Incorporated and the status of Westwood's work in connection with the Pollydore project at 6117 Elm Street in Lanham, Maryland, prior to forwarding payment to Penn Lyon in the amount if $112,168.28.

15.      Describe in detail all documents received by Quantum from Westwood, Mr. Conrad, Mr. Warfield or the Pollydores referencing purported invoices from Penn Lyon regarding the Pollydore project.

16.      As to each of these interrogatories, (a) state the names and titles, if any, of all individuals who participated or assisted in preparing or supplying any information given in answer to these interrogatories, or who prepared or supplied any answer, indicating the case of each such individual the specific interrogatory number for which he prepared or supplied any information or answer; and (b) unless described or identified elsewhere in the answers to these interrogatories, describe by means sufficient for identification, (i) all sources, documentary or human, consulted for purpose of preparing each answer; and (ii) all other sources of information, if any, used in preparing each such answer.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

               Plaintiff,

         -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

              Defendants.

Docket No. 08 CV 00539(LAK) (HP)

**DEFENDANT'S FIRST SET OF
DOCUMENT REQUESTS TO
PLAINTIFF QUANTUM
CORPORATE FUNDING, LTD.**

TO:   Bernard Kobroff, Esq.
       Goetz Fitzpatrick, LLP
       One Penn Plaza, 44th Floor
       New York, New York 10119
       Attorney for Plaintiff
       Quantum Corporate Funding, Ltd.

PLEASE TAKE NOTICE that defendant Penn Lyon Homes Corporation by and

through its undersigned counsel, hereby requests that plaintiff Quantum Corporate

Funding, Ltd. serve a written response to this First Set of Document Requests and

produce the documents and items described below for discovery and inspection in the

manner and time prescribed by Rule 34 of the Federal Rules of Civil Procedure and the

Local Civil Rules of the United States District Court for the Southern District of New

York, at the offices of Bonner Kiernan Trebach & Crociata, LLP, Empire State Building,

Suite 3304, New York, New York, 10018

PLEASE TAKE FURTHER NOTICE that these Document Requests are deemed to be continuing in nature so as to require supplemental responses up to and including the time of trial of this action.

Dated:  New York, New York
       July 16, 2008

Yours etc.,

By: _____

Scott H. Goldstein, Esq.
BONNER KIERNAN TREBACH
& CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
State Building, Suite 3304
New York, New York 10118
(212) 268-7535

## DEFINITIONS AND INSTRUCTIONS

1.    Please refer to Rule 26.3(c) and (d) of the Local Civil Rules of the United States District Court for the Southern District of New York for uniform definitions applicable to the requests below.

2.    Please refer to Rule 26.2 of the Local Civil Rules of the United States District Court for the Southern District of New York for the information to be provided where a claim of privilege is asserted.

3.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Quantum Corporate Funding, Ltd., has a continuing duty to furnish additional and supplemental documents and responses as and where such further documents and responses become known or available between the time of the initial response thereunder and the time of hearing or trial in this proceeding.

4.    "Plaintiff" of "Quantum" refers to plaintiff Quantum Corporate Funding, Ltd., together with all predecessors, affiliates, subsidiaries, parents and related entities.

5.    "Defendant" of "Penn Lyon" refers to defendant Penn Lyon Homes Corporation, together with all predecessors, affiliates, subsidiaries, parents and related entities

6.    "NCM" refers to defendant National City Mortgage, together with all predecessors, affiliates, subsidiaries, parents and related entities.

7.    "Westwood" refers to defendant Westwood Design/Build Incorporated together with all predecessors, affiliates, subsidiaries, parents and related entities

8.    "Warfield" refers to defendant David R. Warfield, together with his agents, servants and any employees authorized to act on his behalf.

9.    "Conrad" refers to third-party defendant Michael Conrad a/k/a Michael Conrad Brown, together with all agents, servants and any employees authorized to act on his behalf.

## DOCUMENT REQUESTS

1.    All documents reflecting or concerning communications (whether oral or written) between Quantum and Penn Lyon.

2.    All documents reflecting or concerning communications (whether oral or written) between Quantum and Westwood.

3.    All documents reflecting or concerning communications (whether oral or written) between Quantum and NCM.

4.    All documents reflecting or concerning communications (whether oral or written) between Quantum and Conrad.

5.    All documents reflecting or concerning communications (whether oral or written) between Quantum and Warfield.

6.    All documents reflecting or concerning communications (whether oral or written) between Quantum and June Pollydore or Eustace Pollydore.

7.    Any and all documents reflecting or concerning communications (whether oral or written) between Quantum and any non-party to this litigation.

8.    Any and all notes, memoranda, e-mail or other writings that record, summarize or otherwise reflect oral or written communications among employees of Quantum relating in any way to the subject matter of this litigation.

9.    All documents concerning any, prayer for relief or defense in this action or upon which Quantum may rely in support of its claims in this action.

10    Any and all documents that Quantum contends establishes liability, responsibility or fault on the part of Penn Lyon.

11.    All documents concerning Quantum's claims for damages against Penn Lyon as well as all documents relating to the method of calculation of damages.

12.    Any and all documents referred to in Quantum's Corrected Amended Complaint.

13.    Any and all documents identified in Quantum's responses to Penn Lyon's interrogatories.

14.    Any and all documents referred to by Quantum in preparing its Answers to Penn Lyon's interrogatories.

15.    All documents Quantum intends to use as evidence or exhibits at the trial of this case.

16.    All reports and documents prepared by each expert which Quantum intends to use at the trial of this case, together with a current resume or curriculum vitae for each such expert.

17.    Any and all documents provided by Quantum or its counsel to any and all experts expected to testify at trial on Quantum's behalf.

18.    All documents that memorialize, reflect, relate or refer to any admissions and/or declarations against interests made by any party or witness.

19.    All written or recorded statements (or notes of oral statements) by any party or non-party which refer or relate to the subject matter of this litigation.

20.    All photographs, motion pictures, or video tapes which depict any object, site or thing relevant to this litigation.

21. All sound recordings that record any conversation or voice of any party to this litigation (or the representative of such party) or any conversation involving any non-party which is relevant in any way to this litigation.

22. All documents that Quantum has received or will receive pursuant to any subpoena or authorizations in connection with this litigation.

23. All documents that relate or refer to the allegation in paragraph 48 of Quantum's Corrected Amended Complaint that On December 21, 2007, defendants Westwood and Warfield unlawfully took $112,168.28 of plaintiff Quantum's money, converted it to their own use and transferred it to defendant Penn allegedly in payment for supplies and materials used in the construction of the Project."

24. All documents that relate or refer to the allegation in paragraph 50 of Quantum's Corrected Amended Complaint that "In January 2008, plaintiff Quantum demand that defendant Penn return the $112,168.12 to Quantum, but Penn has refused and still refuses to return the $112,168.12 to Quantum."

25. All documents that relate or refer to any work and materials that Quantum contends to have been furnished by Westwood to the Pollydores.

26. All documents that relate or refer to the allegation in paragraph 52 of Quantum's Corrected Amended Complaint that ". . . Quantum has sustained damages in the amount of $112,168.28.

27. All documents that relate or refer to the allegation in paragraph 54 of Quantum's Corrected Amended Complaint that "Defendant Penn has been unjustly enriched as a result of the $112,168.28 of plaintiff's Quantum monies transferred to it."

28.    Any and all documents that relates or refers to any steps taken by Quantum to investigate Westwood and that status of Westwood's work in connection with the Pollydore project at 6117 Elm Street in Lanham, Maryland prior to forwarding payment to Penn Lyon in the amount if $112,168.28.

29.    All documents provided to Quantum from Westwood referencing invoices from Penn Lyon with respect to the Pollydore project.

30.    Any and all documents that relates or refers to any steps taken by Quantum to investigate the materials that Westwood was using in connection with the Pollydore project at 6117 Elm Street in Lanham, Maryland prior to forwarding payment to Penn Lyon in the amount if $112,168.28.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

                Plaintiff,

           -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                Defendants.

NATIONAL CITY MORTGAGE,

           Third Party Plaintiff,

           -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

           Third Party Defendant.

Docket No. 08 CV 00539(LAK) (HP)

**NOTICE OF DEPOSITION OF
WILMER RUSSELL**

TO:    Bernard Kobroff, Esq.
        Goetz Fitzpatrick, LLP
        Attorneys for Plaintiff
        One Penn Plaza
        Suite 4401
        New York, New York 10119

      **PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, attorneys for defendant Penn Lyon Homes Corporation shall take the

deposition upon oral examination of **Wilmer Russell of Quantum Corporate Funding,**

before a person authorized to administer oaths, at Veritext, LLC, 1350 Broadway, Suite

1407, New York, New York 10018 on July 18, 2008 commencing at 10:00 a.m.   The

deposition will be recorded by stenographic means.

Dated:  New York, New York
        July 3, 2008

Yours etc.,

By: _____

Scott H. Goldstein, Esq.
BONNER KIERNAN TREBACH
& CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
State Building, Suite 3304
New York, New York 10118
(212) 268-7535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

Plaintiff,

-against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

Defendants.

Docket No. 08 CV 00539(LAK) (HP)

NOTICE OF DEPOSITION OF
CRAIG SHEINKER

NATIONAL CITY MORTGAGE,

Third Party Plaintiff,

-against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

Third Party Defendant.

TO:   Bernard Kobroff, Esq.
      Goetz Fitzpatrick, LLP
      Attorneys for Plaintiff
      One Penn Plaza
      Suite 4401
      New York, New York 10119

**PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil Procedure, attorneys for defendant Penn Lyon Homes Corporatoin shall take the deposition upon oral examination of **Craig Sheinker, President of plaintiff Quantum Corporate Funding**, before a person authorized to administer oaths, at the Veritext, LLC, 1350 Broadway New York, New York 10018 on July 30, 2008 commencing at 10:00 a.m. The deposition will be recorded by stenographic means.

Dated:  New York, New York
      July 7, 2008

Yours etc.,

By: _____

     Scott H. Goldstein, Esq.
     BONNER KIERNAN TREBACH
     & CROCIATA, LLP
     Attorneys for Defendant
     Penn Lyon Homes Corporation
     State Building, Suite 3304
     New York, New York 10118
     (212) 268-7535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

               Plaintiff,

         -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

               Defendants.

NATIONAL CITY MORTGAGE,

         Third Party Plaintiff,

         -against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

              Defendants

Docket No. 08 CV 00539(LAK) (HP)

**NOTICE OF DEPOSITION OF
MARIA DESOUZA**

TO:   Bernard Kobroff, Esq.
       Goetz Fitzpatrick, LLP
       Attorneys for Plaintiff
       One Penn Plaza
       Suite 4401
       New York, New York 10119

    **PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, attorneys for defendant Penn Lyon Homes Corporation shall take the

deposition upon oral examination of **Maria DeSouza, Account Executive of Quantum**

**Corporate Funding,** before a person authorized to administer oaths, at Veritext, LLC,

1350 Broadway, Suite 1407, New York, New York 10018 on July 18, 2008 commencing

at 10:00 a.m. The deposition will be recorded by stenographic means.

Dated:  New York, New York
        July 3, 2008

Yours etc.,

By: _____

Scott H. Goldstein, Esq.
BONNER KIERNAN TREBACH
& CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
State Building, Suite 3304
New York, New York 10118
(212) 268-7535

**EXHIBIT F**



"Bernard Kobroff"
<bkobroff@GoetzFitz.com>
07/11/2008 11:29 AM

To   <TDoherty@McCarter.com>, <sgoldstein@bktc.net>

cc

bcc

Subject   Quantum v NCM, Penn Lyon

History:     📩 This message has been replied to.

**G F**
**LLP**
    **Bernard Kobroff**
**Goetz Fitzpatrick**
**One Penn Plaza, Suite 4401**
**New York, NY 10119**
**Phone: 212.695.8100**
**Fax: 212.629.4013**
**www.goetzfitz.com**

I am in receipt of you respective deposition notices for Ms. DeSouza and Rudolph and Mr. Sheinker as well as NCM's interrogatories and document demands. The dates you have selected for the depositions do not work for either myself or for the Quantum people. Instead I propose that the depositions be conducted during the first week in August. In this context, given the Scheduling Order's 8/9/08 discovery cut-off date, I propose that we stipulate to extend that and all succeeding dates by 30 days.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

**EXHIBIT G**

**Scott Goldstein/BKTC**
07/14/2008 08:05 PM

To  "Bernard Kobroff" <bkobroff@GoetzFitz.com>

cc  TDoherty@McCarter.com

bcc  Melissa Thompkins/BKTC/BKTC

Subject  Re: Quantum v NCM, Penn Lyon

I have no objection to adjourning the depositions and I am available the first week in August. However, we need to work out a schedule for us to oppose your summary judgment motion a sufficient time after we have completed the depositions and/or paper discovery which I will be serving tomorrow. Let me know how you want to proceed.

Very truly yours,


Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net

"Bernard Kobroff" <bkobroff@GoetzFitz.com>



"Bernard Kobroff"
<bkobroff@GoetzFitz.com>
07/11/2008 11:29 AM

To  <TDoherty@McCarter.com>, <sgoldstein@bktc.net>

cc

Subject  Quantum v NCM, Penn Lyon


**G F**
**LLP** Bernard Kobroff
Goetz Fitzpatrick
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com


I am in receipt of you respective deposition notices for Ms. DeSouza and Rudolph and Mr. Sheinker as well as NCM's interrogatories and document demands. The dates you have selected for the depositions do not work for either myself or for the Quantum people. Instead I propose that the depositions be conducted during the first week in August. In this context, given the Scheduling Order's 8/9/08 discovery cut-off date, I propose that we stipulate to extend that and

all succeeding dates by 30 days.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

# EXHIBIT H

Scott Goldstein/BKTC
07/21/2008 05:37 PM

To   "Bernard Kobroff" <bkobroff@GoetzFitz.com>

cc

bcc

Subject   Re: Quantum v NCM, Penn Lyon

Dear Bernard:

Just by way of follow up, we need an extension of time to file opposition to the motion for summary judgment. I again respectfully request that it be adjourned until after the depositions take place so that we have the benefit of having conducted some discovery to oppose the motion. Please let me know at your earliest convenience. Thanks!!

Very truly yours,

Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net

# EXHIBIT I



| | "Bernard Kobroff" <bkobroff@GoetzFitz.com> 07/22/2008 03:12 PM | To | "Doherty, Thomas F." <TDoherty@McCarter.com>, <sgoldstein@bktc.net> |
|---|---|---|---|
| | | cc | |
| | | bcc | |
| | | Subject | RE: Quantum v NCM, Penn Lyon |

History:    ⏎ This message has been replied to.

**G F LLP** Bernard Kobroff
Goetz Fitzpatrick
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com

I am amenable to your requests. However, Quantum recently moved and the documents
regarding this action have been packed and now must be unpacked and this will probably not be
done until next week, at which time it will respond to your respective demands and
interrogatories.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

**From:** Doherty, Thomas F. [mailto:TDoherty@McCarter.com]
**Sent:** Friday, July 18, 2008 10:08 AM
**To:** Bernard Kobroff
**Cc:** SGoldstein@bktc.net
**Subject:** RE: Quantum v NCM, Penn Lyon

Bernard,

I tried reaching you by phone the other day, but I understand from your message on Wednesday afternoon
that you would be out of the office yesterday and today. I have no objection to adjourning the scheduled
depositions of the Quantum witnesses until the first week of August, although I am still expecting plaintiff's
responses to the written discovery demands in a timely fashion next week. I also have no objection to a
joint request to the Court for an Amended Scheduling Order granting a 30-day extension of the August 9th
discovery end date and a corresponding extension of the September 9th due date for s.j. motions, the
pretrial order, jury instructions and requested voir dire questions.

Regarding your deposition notice for Christopher Washburn, I have a scheduling conflict on July 29th. Since the Quantum witness depositions were noticed first and would have been conducted today and Monday, I propose that Mr. Washburn's deposition be rescheduled for late in the first week of August, after the Quantum witness depositions are completed.

Perhaps we all should have a brief conference call on Monday to discuss these scheduling issues and approaching the Court for an extension.

--Tom Doherty

-----Original Message-----
**From:** SGoldstein@bktc.net [mailto:SGoldstein@bktc.net]
**Sent:** Monday, July 14, 2008 8:06 PM
**To:** Bernard Kobroff
**Cc:** Doherty, Thomas F.
**Subject:** Re: Quantum v NCM, Penn Lyon

I have no objection to adjourning the depositions and I am available the first week in August. However, we need to work out a schedule for us to oppose your summary judgment motion a sufficient time after we have completed the depositions and/or paper discovery which I will be serving tomorrow. Let me know how you want to proceed.

Very truly yours,


Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net


"Bernard Kobroff" <bkobroff@GoetzFitz.com>

07/11/2008 11:29 AM

To <TDoherty@McCarter.com>, <sgoldstein@bktc.net>
cc
Subject Quantum v NCM, Penn Lyon



Bernard Kobroff
**Goetz Fitzpatrick**
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100

Fax: 212.629.4013

www.goetzfitz.com

I am in receipt of you respective deposition notices for Ms. DeSouza and Rudolph and Mr . Sheinker as well as NCM's interrogatories and document demands. The dates you have selected for the depositions do not work for either myself or for the Quantum people. Instead I propose that the depositions be conducted during the first week in August. In this context, given the Scheduling Order's 8/9/08 discovery cut-off date, I propose that we stipulate to extend that and all succeeding dates by 30 days.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT J



"Doherty, Thomas F."
<TDoherty@McCarter.com>

07/24/2008 04:27 PM

To    "Bernard Kobroff" <bkobroff@GoetzFitz.com>,
     sgoldstein@bktc.net

cc

bcc

Subject    RE: Quantum v NCM, Penn Lyon

History:        🖅 This message has been replied to.

Pursuant to my separate discussions with Bernard and Scott, I am attaching a proposed form of Amended
Scheduling Order to which the parties would be stipulating. Please let me know if this form is acceptable
or if you have any changes. If the form is acceptable to everyone, Scott and I should sign and forward it to
Bernard so that he may sign and submit the proposed Order to Judge Kaplan for the Court's
consideration.

-----Original Message-----
**From:** Bernard Kobroff [mailto:bkobroff@GoetzFitz.com]
**Sent:** Tuesday, July 22, 2008 3:12 PM
**To:** Doherty, Thomas F.; sgoldstein@bktc.net
**Subject:** RE: Quantum v NCM, Penn Lyon

**G F**
**LLP**

**Bernard Kobroff**
**Goetz Fitzpatrick**
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com

I am amenable to your requests. However, Quantum recently moved and the documents
regarding this action have been packed and now must be unpacked and this will probably
not be done until next week, at which time it will respond to your respective demands and
interrogatories.

The information contained in this transmission may contain privileged and confidential information. It is intended only for
the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient,
please contact the sender by reply email and destroy all copies of the original message. To reply to our email
administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

**From:** Doherty, Thomas F. [mailto:TDoherty@McCarter.com]
**Sent:** Friday, July 18, 2008 10:08 AM

**To:** Bernard Kobroff
**Cc:** SGoldstein@bktc.net
**Subject:** RE: Quantum v NCM, Penn Lyon


Bernard,

I tried reaching you by phone the other day, but I understand from your message on Wednesday afternoon that you would be out of the office yesterday and today. I have no objection to adjourning the scheduled depositions of the Quantum witnesses until the first week of August, although I am still expecting plaintiff's responses to the written discovery demands in a timely fashion next week. I also have no objection to a joint request to the Court for an Amended Scheduling Order granting a 30-day extension of the August 9th discovery end date and a corresponding extension of the September 9th due date for s.j. motions, the pretrial order, jury instructions and requested voir dire questions.

Regarding your deposition notice for Christopher Washburn, I have a scheduling conflict on July 29th. Since the Quantum witness depositions were noticed first and would have been conducted today and Monday, I propose that Mr. Washburn's deposition be rescheduled for late in the first week of August, after the Quantum witness depositions are completed.

Perhaps we all should have a brief conference call on Monday to discuss these scheduling issues and approaching the Court for an extension.

--Tom Doherty


-----Original Message-----
**From:** SGoldstein@bktc.net [mailto:SGoldstein@bktc.net]
**Sent:** Monday, July 14, 2008 8:06 PM
**To:** Bernard Kobroff
**Cc:** Doherty, Thomas F.
**Subject:** Re: Quantum v NCM, Penn Lyon

I have no objection to adjourning the depositions and I am available the first week in August. However, we need to work out a schedule for us to oppose your summary judgment motion a sufficient time after we have completed the depositions and/or paper discovery which I will be serving tomorrow. Let me know how you want to proceed.

Very truly yours,


Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net

"Bernard Kobroff" <bkobroff@GoetzFitz.com>

07/11/2008 11:29 AM

To<TDoherty@McCarter.com>, <sgoldstein@bktc.net>

cc

SubjectQuantum v NCM, Penn Lyon



Bernard Kobroff
Goetz Fitzpatrick
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com

I am in receipt of you respective deposition notices for Ms. DeSouza and Rudolph and Mr. Sheinker as well as NCM's interrogatories and document demands. The dates you have selected for the depositions do not work for either myself or for the Quantum people. Instead I propose that the depositions be conducted during the first week in August. In this context, given the Scheduling Order's 8/9/08 discovery cut-off date, I propose that we stipulate to extend that and all succeeding dates by 30 days.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski ( jkowalski@goetzfitz.com).

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original



message.  Quantum-Nat City - Amended Scheduling Order.DOC

# EXHIBIT K

Scott Goldstein/BKTC
07/24/2008 06:21 PM

To    "Doherty, Thomas F." <TDoherty@McCarter.com>

cc    "Bernard Kobroff" <bkobroff@GoetzFitz.com>

bcc

Subject    RE: Quantum v NCM, Penn Lyon

Shouldn't we have something in there specifically addressing the currently pending SJ motion or does the paragraph dealing with SJ motions pertain to it?

Very truly yours,

Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net

"Doherty, Thomas F." <TDoherty@McCarter.com>



"Doherty, Thomas F."
<TDoherty@McCarter.com>
07/24/2008 04:27 PM

To    "Bernard Kobroff" <bkobroff@GoetzFitz.com>,
sgoldstein@bktc.net

cc

Subject    RE: Quantum v NCM, Penn Lyon

Pursuant to my separate discussions with Bernard and Scott, I am attaching a proposed form of Amended Scheduling Order to which the parties would be stipulating. Please let me know if this form is acceptable or if you have any changes. If the form is acceptable to everyone, Scott and I should sign and forward it to Bernard so that he may sign and submit the proposed Order to Judge Kaplan for the Court's consideration.

-----Original Message-----
**From:** Bernard Kobroff [mailto:bkobroff@GoetzFitz.com]
**Sent:** Tuesday, July 22, 2008 3:12 PM
**To:** Doherty, Thomas F.; sgoldstein@bktc.net
**Subject:** RE: Quantum v NCM, Penn Lyon

**G F**
**L L P**  Bernard Kobroff
**Goetz Fitzpatrick**
**One Penn Plaza, Suite 4401**
**New York, NY 10119**
**Phone: 212.695.8100**
**Fax: 212.629.4013**
www.goetzfitz.com

I am amenable to your requests. However, Quantum recently moved and the documents regarding this action have been packed and now must be unpacked and this will probably not be done until next week, at which time it will respond to your respective demands and interrogatories.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

**From:** Doherty, Thomas F. [mailto:TDoherty@McCarter.com]
**Sent:** Friday, July 18, 2008 10:08 AM
**To:** Bernard Kobroff
**Cc:** SGoldstein@bktc.net
**Subject:** RE: Quantum v NCM, Penn Lyon

Bernard,

I tried reaching you by phone the other day, but I understand from your message on Wednesday afternoon that you would be out of the office yesterday and today. I have no objection to adjourning the scheduled depositions of the Quantum witnesses until the first week of August, although I am still expecting plaintiff's responses to the written discovery demands in a timely fashion next week. I also have no objection to a joint request to the Court for an Amended Scheduling Order granting a 30-day extension of the August 9th discovery end date and a corresponding extension of the September 9th due date for s.j. motions, the pretrial order, jury instructions and requested voir dire questions.

Regarding your deposition notice for Christopher Washburn, I have a scheduling conflict on July 29th. Since the Quantum witness depositions were noticed first and would have been conducted today and Monday, I propose that Mr. Washburn's deposition be rescheduled for late in the first week of August, after the Quantum witness depositions are completed.

Perhaps we all should have a brief conference call on Monday to discuss these scheduling issues and approaching the Court for an extension.

--Tom Doherty

-----Original Message-----
**From:** SGoldstein@bktc.net [mailto:SGoldstein@bktc.net]
**Sent:** Monday, July 14, 2008 8:06 PM
**To:** Bernard Kobroff
**Cc:** Doherty, Thomas F.
**Subject:** Re: Quantum v NCM, Penn Lyon

I have no objection to adjourning the depositions and I am available the first week in August. However, we need to work out a schedule for us to oppose your summary judgment motion a sufficient time after we have completed the depositions and/or paper discovery which I will be serving tomorrow. Let me know how you want to proceed.

Very truly yours,


Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net


"Bernard Kobroff" <bkobroff@GoetzFitz.com>

07/11/2008 11:29 AM                          To<TDoherty@McCarter.com>, <sgoldstein@bktc.net>
                                             cc
                                             SubjectQuantum v NCM, Penn Lyon




Bernard Kobroff
Goetz Fitzpatrick
One Penn Plaza, Suite 4401

New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com

I am in receipt of you respective deposition notices for Ms. DeSouza and Rudolph and Mr. Sheinker as well as NCM's interrogatories and document demands. The dates you have selected for the depositions do not work for either myself or for the Quantum people. Instead I propose that the depositions be conducted during the first week in August. In this context, given the Scheduling Order's 8/9/08 discovery cut-off date, I propose that we stipulate to extend that and all succeeding dates by 30 days.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to Jon Kowalski ( jkowalski@goetzfitz.com).

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  Quantum-Nat City - Amended Scheduling Order.DOC

# EXHIBIT L

Empire State Building
Suite 3304
New York, NY 10118
Telephone: (212) 268-7535
Facsimile: (212) 268-4965
bktc@bktc.net
www.bktc.net

# BONNER
# KIERNAN
# TREBACH &
# CROCIATA, LLP

Connecticut
Maryland
Massachusetts
New Jersey
New York
Pennsylvania
Rhode Island
Virginia
Washington, DC

July 29, 2008

**By Facsimile (212) 629-4013 and Regular Mail**
Bernard Kobroff, Esq.
Goetz Fitzpatrick, LLP
One Penn Plaza, Suite 4401
New York, New York 10119

> Re:    Quantum v. Penn Lyon Homes Corporation, et al
> Docket No.: 08 CV 00539 (LAK) (HP)
> BKT&C No.: 0899.0006

Dear Mr. Kobroff:

We represent defendant Penn Lyon Homes Corporation ("Penn Lyon") in the above matter.

On July 21, 2008, we sent you an e-mail correspondence requesting that we first conduct discovery (respond to document demands and conduct depositions) before we responded to your motion for summary judgment. We received an e-mail response from you vaguely stating that you were amenable to our request to conduct discovery prior to filing our response to your motion for summary judgment.

In that regard, we should include something in the Amended Scheduling Order addressing the pending summary judgment motion. Please contact me at your earliest convenience to discuss.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Scott H. Goldstein
SHG/mt
cc:    Thomas F. Doherty, Esq. *via facsimile (973) 297-6612 and regular mail*

Scott Goldstein/BKTC
07/29/2008 04:51 PM

To "Bernard Kobroff" <bkobroff@GoetzFitz.com>

cc "Doherty, Thomas F." <TDoherty@McCarter.com>

bcc Melissa Thompkins/BKTC@BKTC

Subject RE: Quantum v NCM, Penn Lyon - status of Amended Scheduling Order 🗎

Dear Bernard:

In furtherance of Tom's request to address the Amended Scheduling Order, I just faxed a letter to you to see if we can discuss putting anything in the Scheduling Order regarding a briefing schedule for your pending SJ motion or however you want to deal with it vis a vis the upcoming depositions and discovery responses.

I'll be available all morning tomorrow to discuss.

Very truly yours,

Scott H. Goldstein, Esq.
Bonner Kiernan Trebach & Crociata, LLP
Empire State Building, Suite 3304
New York, NY 10118
Phone: (212) 268-7535
Fax: (212)268-4965
E-mail: sgoldstein@bktc.net

# EXHIBIT M



"Bernard Kobroff"
<bkobroff@GoetzFitz.com>
07/30/2008 04:43 PM

To  <SGoldstein@bktc.net>

cc  "Doherty, Thomas F." <TDoherty@McCarter.com>

bcc

Subject  FW: Scanned document from Administrator/ PLH

| History: | ⇦ This message has been replied to. |
| --- | --- |


**Bernard Kobroff**
**Goetz Fitzpatrick**
One Penn Plaza, Suite 4401
New York, NY 10119
Phone: 212.695.8100
Fax: 212.629.4013
www.goetzfitz.com

Herewith is the Stipulation

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above.  If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  To reply to our email administrator directly, please send an email to Jon Kowalski (jkowalski@goetzfitz.com).

**From:** Administrator
**Sent:** Wednesday, July 30, 2008 4:41 PM
**To:** Bernard Kobroff
**Subject:** Scanned document from Administrator


STIPULATION.pdf

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

QUANTUM CORPORATE FUNDING, LTD.,

                                    Plaintiff,

                vs.

WESTWOOD DESIGN/BUILD INCORPORATED,
DAVID R. WARFIELD, NATIONAL CITY
MORTGAGE INC., and PENN LYON HOMES
CORPORATION,

                                    Defendants.
-------------------------------------------------------------

NATIONAL CITY MORTGAGE,

                        Third-Party Plaintiff,

                vs.

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

                        Third-Party Defendant.
-------------------------------------------------------------X

Civil Action No. 08-cv-0539
(LAK) (HBP)

**STIPULATION EXTENDING
TIME TO OPPOSE MOTION
FOR SUMMARY JUDGMENT**

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned attorneys

for the Plaintiff Quantum Corporate Funding, Ltd and Defendant Penn Lyon Homes Corporation

("PLH"), that the time within which the said Defendant PLH may file opposition to plaintiff's

summary judgment is extended until September 5, 2008 to allow for sufficient discovery to be

completed.

Dated: New York, New York
        July 30, 2008

SO STIPULATED & AGREED:

GOETZ FITZPATRICK, LLP

By: _____
Bernard Kobroff, Esq.
Attorneys for Plaintiff

McCARTER & ENGLISH, LLP

By: _____
Thomas F. Doherty, Esq.
Attorney for Defendant/
Third-Party Plaintiff
National City Mortgage

BONNER KIERNAN TREBACH
& CROCIATA LLP

By: _____
Scott H. Goldstein, Esq.
Attorney for Defendant
Penn Lyon Homes Corp.

ME1 7569641v.1

2

# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
QUANTUM CORPORATE FUNDING, LTD.,

Plaintiff,

-against-                                                  08 Civ. 0539 (LAK)

WESTWOOD DESIGN/BUILD, INC., et ano,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

> Plaintiff moves for summary judgment awarding it the sum of $112,168.28 together with interest thereon from January 25, 2008 as against defendant Penn Lyon Homes Corporation ("Penn"). Penn has not responded to the motion although the time within which to do so has expired.

> In these circumstances, the well supported averments of plaintiff's Rule 56.1 Statement are deemed admitted. S.D.N.Y. CIV. R. 56.1(c). It therefore is plain that there is no disputed issue as to any material fact and that plaintiff is entitled to judgment as a matter of law. Accordingly, plaintiff's motion [DI 37] is granted in all respects.

> As this resolves all of plaintiff's claims against Penn and any delay in the finality and enforceability of its judgment against Penn would work an undue hardship, the Court hereby determines that there is no just reason for delay and directs the Clerk to enter final judgment in favor of plaintiff and against Penn in accordance with this order.

> SO ORDERED.

Dated:       July 30, 2008

_____
Lewis A. Kaplan
United States District Judge

# EXHIBIT O

Empire State Building
Suite 3304
New York, NY 10118
Telephone: (212) 268-7535
Facsimile: (212) 268-4965
bktc@bktc.net
www.bktc.net

# BONNER KIERNAN TREBACH & CROCIATA, LLP

Connecticut
Maryland
Massachusetts
New Jersey
New York
Pennsylvania
Rhode Island
Virginia
Washington, DC

Via hand delivery

July 31, 2008

Hon, Lewis A. Kaplan, USDJ
Daniel P, Moynihan U.S. Courthouse, Rm. 1310
500 Pearl Street
New York, New York 10007-1312

> Re:     Quantum v. Penn Lyon Homes Corporation, et al
>         Docket No.:  08 CV 00539 (LAK) (HP)

Dear Judge Kaplan:

We represent Penn Lyon Homes Corporation in the above matter.

We recently filed a fully executed Stipulation dated July 30, 2008 extending Penn Lyon's time to file opposition to plaintiff Quantum Corporate Funding, Ltd's summary judgment motion until September 5, 2008, so that the parties could complete some needed discovery. However, before we had an opportunity to file the Stipulation with the Court, we received notification that plaintiff's motion was granted on default. We respectfully request that the Court So Order the submitted Stipulation and that the Court's order be vacated on the grounds that the parties had already agreed to an extension of time for Penn Lyon to file opposition to the motion and that there was excusable neglect for the slight delay in filing the Stipulation for the reasons set forth below. In the alternative, we respectfully request that the Court schedule a conference to address the issues raised below in this letter.

As this Court is aware, on July 8, 2008, Quantum filed a summary judgment motion against Penn Lyon in this action. Indeed, the motion was filed prior to any discovery taking place. Within a day or two of receiving the motion, we contacted plaintiff's counsel by telephone and requested an adjournment of the motion to complete some needed discovery before we were required to file our opposition. Plaintiff's counsel advised that he needed to consult with his client before granting our request.

On July 3, 2008, we served plaintiff with Notices for the Depositions of Wilmer Russell, Maria DeSouza and Craig Sheinker of Quantum for dates in July, 2008. Then, on July 16, 2008, we served plaintiff with Penn Lyon's first set of interrogatory demands and First Set of Document Requests.

Upon receipt of our deposition notices and co-defendant National's deposition notices, on July 11, 2008, plaintiff advised us, by e-mail, that his clients would not be able to attend depositions on the noticed dates and requested that the depositions be rescheduled. Plaintiff also requested that the Amended Scheduling Order be extended by 30 days.

Having not heard back from plaintiff about our request for an extension of time, on July 14, 2008, we responded to plaintiff's July 11, 2008 e-mail by sending counsel an e-mail correspondence agreeing to adjourn the deposition and requesting that we enter into a briefing schedule to adjourn the pending motion to allow Penn Lyon sufficient time to complete the outstanding discovery before filing its opposition. Apparently, soon after we sent our e-mail, plaintiff's counsel was out of the office until July 21, 2008 and did not respond to our request for a briefing schedule/adjournment during that entire week.

Realizing that our time to get a Stipulation into the court was running short, on July 21, 2008, we followed up with plaintiff's counsel's office by e-mail requesting a response to our adjournment request.   Finally, on July 22, 2008, via e-mail correspondence, plaintiff agreed to extend Penn Lyon's time to answer the motion and allow discovery to go forward. However, in this e-mail, plaintiff's counsel was still unable to provide us with dates when Quantum's witnesses could be produced for deposition. Therefore, at that time, it was impossible for us to choose an appropriate deadline for the filing of defendants' opposition papers, because we did not yet know how much time would be needed to allow sufficient time to us to obtain and examine the deposition transcripts prior to filing our opposition to the motion.

On July 24, 2008, co-defendant National circulated a proposed Amended Scheduling Order via e-mail which sought to extend all existing dates in the initial scheduling order by one month.   In response to National's e-mail, we sent e-mail correspondence to plaintiff's counsel and National's counsel reiterating the need for a briefing schedule for the pending summary judgment motion and suggesting that it be included in the Amended Scheduling Order.

Plaintiff again did not respond to our e-mail about our request for a briefing schedule, so, as a last ditch effort, on July 29, 2008, we sent a letter to plaintiff's counsel via facsimile and a separate message via e-mail again requesting that we agree on a briefing schedule for the motion and to include said schedule in the Amended Scheduling Order. On July 30, 2008, in the late afternoon, plaintiff's counsel finally responded to us, agreed to the terms of the recently filed stipulation extending plaintiff's time to file opposition to plaintiff's summary judgment motion in order to conduct discovery until September 5, 2008 and executed the Stipulation.

At approximately 5:00 P.M. plaintiff sent us the executed stipulation via e-mail. However, before we could e-file the Stipulation, the Court notified us via e-filing notification that plaintiff's summary judgment motion had been granted on default. Now that the motion was granted on default, we contacted plaintiff and requested that he enter

BONNER
KIERNAN
TREBACH &

into a Stipulation vacating the default judgment.    However, in one day, plaintiff's position has changed and counsel has refused to consent to vacatur of the Order.

Critically, the parties, most notably Penn Lyon, had been actively working on a briefing schedule and an adjournment of the motion for several weeks and plaintiff actually executed a Stipulation extending Penn Lyon's time to respond to the motion. Penn Lyon did not ignore the pending summary judgment motion at any time and took numerous steps to finalize a briefing schedule for the motion.

On these bases, we respectfully request, in the interests of justice and fairness that the Court so Order the agreed upon Stipulation extending Penn Lyon's time to file opposition to plaintiff's motion for summary judgment and vacate the currently entered Order granting plaintiff's motion for summary judgment on default without the necessity of a motion.    In the alternative, we request that the Court schedule a conference to address the issues raised in this letter.    Indeed, as previously discussed, it is undisputed that plaintiff agreed to adjourn the motion to allow us to conduct discovery, the only issue pertains to the slight delay in filing the Stipulation because plaintiff did not respond to our numerous requests for a briefing schedule to include in the Stipulation. We could not finalize a briefing schedule until depositions were scheduled and the depositions were not scheduled until late yesterday.

Notwithstanding this letter we will be also be filing a formal motion seeking reconsideration of the Order pursuant to Rule 59(e) and and/or vacatur of the default pursuant to Rule 55(c) and Rule 60(b) 1-6 under separate cover.

Respectfully submitted,

Scott H. Goldstein (SG 8333)

Enclosure
cc:    Thomas F. Doherty, Esq.
       Bernard Kobroff, Esq.

BONNER
KIERNAN
TREBACH &
CROCIATA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

                 Plaintiff,

           -against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                 Defendants.

Docket No. 08 CV 00539(LAK) (HP)

**AFFIRMATION OF
SCOTT H. GOLDSTEIN, ESQ.**

SCOTT GOLDSTEIN, duly affirms the following under penalty of perjury:

1.    I am an Of Counsel with the law firm of BONNER KIERNAN TREBACH & CROCIATA, LLP, attorneys for Penn Lyon Homes Corporation ("PLH") in this action. I am fully familiar with the facts and circumstances of this case, the source of my knowledge being the file maintained by my office in the course of handling this matter.

2.    We submit this affirmation in support of defendant Penn Lyon Homes Corporation's ("PLH") motion to vacate the summary judgment motion granted on default as a result of defendant PLH's purported failure to file an opposition to plaintiff's motion for summary judgment despite plaintiff's express agreement via e-mail on July 22, 2008 and signed stipulation dated July 30, 2008 to extend PLH's time to respond until September 5, 2008 pursuant to Rule 60(b)(1) and (6). We further submit this affirmation in support of defendant's motion for an extension of time to file an opposition to plaintiff's motion for summary judgment, out of time, pursuant to Rule 6(b)(2).

3.    This motion to vacate the default pursuant to Rule 60(b)(1)-(6) should be granted on the grounds that there was "excusable neglect" for the alleged failure to file

opposition to the motion for summary judgment, as plaintiff and defendant were engaged
in numerous communications, via telephone, e-mail and regular mail regarding the
extension of time well before the court-imposed deadline for seeking an adjournment.
Defendant had obtained plaintiff's consent to this adjournment, but was subsequently
ignored by plaintiff in its attempt to obtain a briefing schedule as required by this Court's
individual rules. In addition, as set forth more fully below, PLH has meritorious defenses
to the motion and plaintiff will have suffered no prejudice by vacating the Order granting
summary judgment and allowing the case to proceed on the merits.

## FACTS

**A.    Westwood and Quantum's Valid and Enforceable Assignment Agreement.**

4.    In this action, plaintiff Quantum has improperly sought to recover from
defendant PLH the sum of $112,168.28 which Quantum claims that PLH either converted
and/or was unjustly enriched by when Quantum wired that sum to Penn Lyon pursuant to
the express terms of Quantum's assignment agreement with co-defendant Westwood
Design/Build Incorporated ("Westwood"). More specifically, for the total sum of
$242,900.00, Quantum had purchased from Westwood a $347,000.00 invoice (the
"Invoice") which represented monies due from Defendant National City Mortgage
Company ("National").

5.    In the Assignment agreement ("Agreement"), Westwood and Quantum
agreed to the following language:

> In consideration of the sum of $242,900.00 [$112,168.28 to Penn
> Lyon Homes Corp and $130,731.72 to Westwood Design] paid
> by purchaser to seller, receipt of which is hereby acknowledged,
> the undersigned Westwood Design Build Incorporated ("Seller")
> hereby sells, transfers and assigns to Quantum Corporate
> Funding, Ltd ("Purchaser"), its successors and assigns all Seller's

> right title and interest in and to Seller's account(s) receivable
> (including the proceeds of any surety, payment bond or guaranty
> thereof) owing by various account debtors described in Exhibit
> "A" and attached hereto . . .

A copy of the Agreement is attached hereto as Exhibit A

6.      As set forth in plaintiff's motion for summary judgment, upon information and belief, the above-described Agreement was entered into when defendant David R. Warfield ("Warfield") of Westwood approached Quantum to obtain cash by selling to Quantum an account receivable.   To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum a $347,000.00 invoice (the "Invoice") which it represented was monies due it from Defendant National City Mortgage Company ("National") pursuant to its second draw-down of a construction loan to property owners known as Mr. and Mrs. Eustace Pollydore (the "Pollydores") for construction of a new home at their premises. A copy of this invoice is annexed hereto as Exhibit B.

7.      The Assignment Agreement makes no mention of any specific PLH invoice. Likewise, nowhere within the Agreement does Westwood state that the payment to PLH is for an invoice on the "Pollydore" Project.   Nothing in the assignment agreement conditioned the purchase of the Invoice upon Westwood's request that Quantum pay the stated sum to PLH. The agreement merely designates that a portion of the money that Quantum was paying to Westwood be sent to PLH instead.

8.      Plaintiff readily concedes that it performed its due diligence before entering into the Assignment agreement with Westwood by directly contacting Mr. Christopher Washburn, a branch manager at National, to request confirmation that the invoice was valid. See Paragraph 7 in the Affidavit of Craig Sheinker, annexed hereto as Exhibit C.

9.      Mr. Washburn, indeed, confirmed that the invoice amount was valid, correct and owing by National to Westwood and executed an estoppel certificate verifying the invoice's validity. A copy of the executed estoppel certificate is annexed hereto as Exhibit D. **Significantly, plaintiff admits that it decided to purchase the invoice solely in reliance upon National's estoppel certificate.**   See Exhibit C, paragraph 9.

10.     By receiving the Invoice for a discounted sum of $242,900.00, which was confirmed and guaranteed by National, Quantum obtained the right to receive $347,000.00 from National pursuant to the Invoice, ample consideration from Westwood for entering into the assignment agreement.

11.     Moreover, when Quantum paid Westwood for the invoice, it admits that it paid a portion of the $242,900.00 to PLH at Westwood's specific direction. Payment to PLH was not a precondition for Quantum to enter into the Agreement. Rather, Westwood sought to pay its own money (as per the Agreement) to PLH and simply cut out the middle-man by having the money sent to PLH.

12.     Nowhere within its motion for summary judgment does plaintiff allege that it relied on the alleged PLH "Pollydore" invoice in any fashion in connection with its decision to purchase the National Invoice which is the subject of this litigation.

13.     It is undisputed that on December 21, 2007, pursuant to the assignment agreement, Quantum paid Westwood $242,900.00.   $112,168.28 of Westwood's money was wired by Quantum to Penn Lyon pursuant to Westwood's directions. PLH admits that it received the funds[1]. See Exhibit C, paragraph 11.

---

[1]      PLH had instituted litigation against Westwood, in Maryland, arising out of a contract between PLH and Westwood for the production and manufacture of modular custom-built home units to be

14.    When contacted by Mr. Sheinker of Quantum, David Reed of PLH advised that he never heard of the Pollydores, had not shipped anything to the Pollydore Residence and that PLH never submitted any invoice to the Pollydores. See Exhibit C, Paragraph 17.

15    On January 15, 2008, via e-mail communication, Mr. Sheinker demanded that PLH return the $112,168.12 that Quantum wired to it. PLH did not return the money to Quantum. See Exhibit C, Paragraph 18.

**B)    PLH's Numerous Efforts To Secure An Extension of Time To Respond to Plaintiff's Summary Judgment Motion and Agree To A Discovery Schedule In Accordance With the Court's Individual Rules.**

16.    As this Court is aware, on July 8, 2008, Quantum filed a summary judgment motion against Penn Lyon in this action.[2]  At the time plaintiff's motion was filed, the parties had not yet engaged in any discovery.

17.    Within days of receiving the motion, we contacted plaintiff's counsel by telephone and requested an adjournment of the motion to complete some discovery before PLH was required to file its opposition.  Plaintiff's counsel advised that he was not inclined to grant the request, but needed to consult with his client.

18.    On July 3, 2008, we served plaintiff with Notices for the Depositions of Quantum employees Wilmer Russell, Maria DeSouza and Craig Sheinker for dates in July, 2008.  Then, on July 16, 2008, we served plaintiff with Penn Lyon's first set of

---

delivered to 14101 Old Stage Road, Bowie, Maryland, owned by Mr .Samuel J. Harris.  Westwood represented to PLH that the $112,168.28 funds wired by Quantum to PLH, at issue in this case, constituted partial payment of amounts due in connection with the "Harris" Project.  To this date, PLH has not been fully compensated on the Harris Project

[2]    The motion was served late in the afternoon on July 3, 2008 (after my office was closed for the long July 4th weekend).  Due to several ECF filing errors, the motion was finally deemed "filed" on July 8, 2008.

interrogatory demands and first set of document requests.    Copies of these discovery demands are annexed hereto collectively as Exhibit E.

19.    Upon receipt of our deposition notices and co-defendant National's deposition notices, on July 11, 2008, plaintiff advised us, by e-mail, that his clients would not be able to attend depositions on the noticed dates and requested that the depositions be rescheduled. A copy of plaintiff's counsel's July 11, 2008 e-mail to all counsel is annexed hereto as Exhibit F.

20.    Given the fact that the Initial Scheduling Order called for discovery to be completed by August 9, 2008, plaintiff also requested that the Amended Scheduling Order be extended by 30 days.

21.    By refusing to produce Quantum's representatives on the noticed deposition dates, counsel assured that these individuals could not be deposed prior to the summary judgment return date.

22.    Having not heard back from plaintiff's counsel from our telephone call about the adjournment request and responding to his July 11, 2008 e-mail, we sent an e-mail correspondence to plaintiff's counsel agreeing to adjourn the deposition and again requesting that we enter into a briefing schedule to adjourn the pending motion to allow Penn Lyon sufficient time to complete the outstanding discovery before filing its opposition. A copy of our July 14, 2008 e-mail to all parties is annexed hereto as Exhibit G.

23.    On July 15, 2008, I again spoke to plaintiff's counsel by telephone. At that time he stated he would not necessarily agree to a lengthy extension of time for PLH to respond to allow us to conduct discovery for the motion, but he did express a

willingness to consent to a brief adjournment of the motion to submit opposition to the motion.[3] Plaintiff's counsel also advised that he would be out of the office until July 21, 2008 because of cataract surgery.

24.    Knowing that our time to file a either a consent stipulation with briefing schedule or a letter request for an adjournment without consent in accordance with this Court's individual practices was running short, on July 21, 2008, I sent a follow up e-mail to plaintiff's counsel e-mail requesting a response to our adjournment request and briefing schedule. A copy of my July 21, 2008 e-mail to plaintiff's counsel is annexed hereto as Exhibit H

25.    Finally, on July 22, 2008, via e-mail correspondence, plaintiff sent an e-mail correspondence addressed to both National's counsel and to me stating that he was "amenable to your requests" and "will respond to your respective discovery demands." A copy of plaintiff's counsel's July 22, 2008 e-mail correspondence is annexed hereto as Exhibit I.

26.    Since our only request was for an extension of time to file opposition to Quantum's motion for summary judgment, we interpreted the e-mail as consent for an extension of time to respond to the motion. Nonetheless, even with consent, the Court rules still required that a consent adjournment request contain a briefing schedule and, in the July 22, 2008 e-mail, plaintiff was still not able to provide us dates for Quantum's witnesses to be deposed nor did counsel agree to a briefing schedule. Therefore, at that time, it was impossible for PLH to comply with the Court's individual rules and provide a briefing schedule with the consent extension request.

---

[3]    Mr. Kobroff's letter to the Court refreshed counsel's recollection about the conversation that day, however, counsel neglected to mention that he expressed willingness to consent to a short extension of time for PLH to respond to the motion.

27.     But for our receipt of plaintiff's e-mail consenting to extend PLH's time to answer the summary judgment motion, defendant was prepared to submit correspondence to the Court requesting an extension, without consent, by letter as mandated by the Court's individual rules.

28.     In accordance with the parties' prior discussions, by e-mail dated July 24, 2008, co-defendant National circulated a proposed Amended Scheduling Order seeking to extend all existing dates in the initial scheduling order by one month. A copy of co-defendant National's July 24, 2008 e-mail correspondence is annexed hereto as Exhibit J.

29.     In response, I sent e-mail correspondence to plaintiff's counsel and National's counsel suggesting that the extension of time/briefing schedule for Quantum's pending summary judgment motion be addressed in the Amended Scheduling Order. A copy of my July 24, 2008 e-mail to National's and plaintiff's counsel is annexed hereto as Exhibit K. However, rather than promptly responding, plaintiff ignored the e-mails from both defendants.

30.     Because we did not hear from plaintiff's counsel by July 29, 2008, and becoming extremely concerned that defendant's extension request to the court had not been submitted because of plaintiff's counsel's lack of cooperation, I sent a letter to plaintiff's counsel via facsimile and a separate message via e-mail again confirming plaintiff's counsel's July 22, 2008 written consent, requesting that we agree on a briefing schedule for the motion and seeking to include said schedule in the Amended Scheduling Order. Copies of my July 29, 2008 e-mail and letter to plaintiff's counsel are annexed hereto as Exhibit L.

31.    It was not until July 30, 2008, in the late afternoon, when **plaintiff's counsel finally responded to me, and agreed to execute a stipulation extending PLH's time to file its opposition to plaintiff's summary judgment motion in order to conduct discovery until September 5, 2008.**

32.    At long last, plaintiff executed the Stipulation, but the e-mail forwarding it did not arrive until approximately 5:00 P.M. I actually received the e-mail between fifteen ("15") and thirty ("30") minutes later. A copy of plaintiff's counsel's July 30, 2008 e-mail and the fully executed Stipulation are annexed hereto as Exhibit M. However, before we could e-file the Stipulation, the Court notified us via e-filing notification that plaintiff's summary judgment motion had been granted on default. A copy this Court's Order granting plaintiff's motion for summary judgment is annexed hereto as Exhibit N.

33.    Finally, as soon as it received the decision, on July 31, 2008, defendant submitted a letter to the Court which explained the reasons for the delay, attached the consent stipulation to extend time to answer, and requested an out of time extension of defendant's time to respond to Quantum's motion for summary judgment. A copy of the July 31, 2008 letter to the Court is annexed hereto as Exhibit O.

WHEREFORE, we respectfully request that the within motions be granted, as well as such other and further relief as may be just and proper.

Dated: New York, New York
       August 5, 2008

_____
Scott H. Goldstein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

Plaintiff,

-against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

Defendants.

------------------------------------------------------------x

NATIONAL CITY MORTGAGE,

Third-Party Plaintiff

-against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

Third-Party Defendant

Docket No. 08 CV 00539(LAK) (HBP)

**DEFENDANT PENN LYON HOMES CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE JUDGMENT, FOR RECONSIDERATION AND TO EXTEND ITS TIME TO FILE OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION OUT OF TIME**

BONNER KIERNAN TREBACH & CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
Empire State Building, Suite 3304
New York, New York 10018
(212) 268-7535

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of defendant Penn Lyon Homes Corporation ("PLH") in support of its motion (1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6) (i.e. vacate entry of default judgment); (2) to alter or amend Judgment and/or for reconsideration of the Court's Order granting summary judgment against PLH and in favor of plaintiff Quantum Corporate Funding, Ltd ("Quantum") pursuant to Fed R. Civ. P. 59(e) and Local Civ. R. 6.3 (without having had an opportunity to be heard on the merits); (3) for an extension of time to file opposition to plaintiff's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of plaintiff's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

With respect to the Rule 60(b)(1) and (6) motion, the arguments set forth below along with the affidavit of Scott H. Goldstein, Esq. in support of the motion establish that (1) there was excusable neglect for PLH's failure to timely file its opposition to Quantum's motion for summary judgment, (2) PLH has meritorious defenses to Quantum's claims that PLH was unjustly enriched and/or committed conversion, and (3) Quantum will not be prejudiced by the granting of relief from this Order. On that basis and the arguments set forth below, PLH's motion to vacate the summary judgment order that was entered on default should be granted and the Court should either permit PLH to file an opposition to plaintiff's motion for summary judgment out of time or vacate the order granting summary judgment in favor of Quantum on the grounds that Quantum cannot establish a cause of action for unjust enrichment and conversion against

1

PLH at this juncture in the case. Indeed, Quantum cannot conclusively prove that it owned the funds that it claims PLH converted or was unjustly enriched by. Quantum's motion is premature pending the completion of discovery and the determination of whether Quantum actually owned the subject funds.

Likewise, PLH's motion for reconsideration of this Court's Order granting summary judgment should be granted as well. Based on a review of the undisputed facts and documents submitted by Quantum within its motion for summary judgment, PLH respectfully submits that the Court overlooked and improperly applied the facts contained in documents submitted as Exhibits to the plaintiff's original motion to the applicable law in granting plaintiff's motion for summary judgment. In short, even conceding (for the purpose of this motion only) that all of the facts contained in plaintiff's motion were undisputed, plaintiff has failed to satisfy the elements for a *prima facie* cause of action for unjust enrichment or conversion.

In the alternative, PLH also submits that its failure to timely submit an opposition to Quantum's summary judgment motion was the result of excusable neglect, and on that basis, has made a sufficient showing of entitlement to an extension of time to file opposition to plaintiff's summary judgment motion, out of time.

## STATEMENT OF FACTS

The facts in support of the instant motions to vacate the judgment pursuant to Fed R. Civ. P. 60(b)(1), for reconsideration pursuant to Local Civil Rule 6.3, and for an out of time extension of time to respond to plaintiff's motion for summary judgment motion are set forth in the affirmation of Scott H. Goldstein, Esq., affirmed on August 4, 2008, and are incorporated herein.

## ARGUMENT

### POINT ONE

**PLH'S FAILURE TO FILE OPPOSITION TO QUANTUM'S SUMMARY JUDGMENT MOTION WAS A RESULT OF EXCUSABLE NEGLECT, PLH HAS MERITORIOUS DEFENSES TO THE MOTION AND QUANTUM WILL SUFFER NO PREJUDICE FROM THE GRANTING OF THIS MOTION. THEREFORE, THIS COURT'S ORDER GRANTING SUMMARY JUDGMENT WITHOUT OPPOSITION SHOULD BE VACATED .**

**A)    PLH's Failure to File Opposition to Quantum's Summary Judgment Motion Constituted Excusable Neglect.**

As set forth at great length within the affirmation of Scott H. Goldstein, Esq. in support of the motion, PLH's counsel went to great lengths to seek an extension of time to file opposition to Quantum's summary judgment motion well before the Court's deadline for serving an extension request, **received Quantum's consent through e-mail correspondence on July 22, 2008 and obtained an executed Stipulation for adjournment of the motion for summary judgment from plaintiff on July 30, 2008.** However, after plaintiff initially consented to the extension request, and despite PLH's counsel's numerous efforts via e-mail, telephone, regular mail and facsimile, PLH's counsel was unable to reach plaintiff's counsel to finalize a briefing schedule and submit an appropriate Stipulation to the Court, as required by this Court's individual practices. As such, defendant's failure to timely file opposition was the result of "excusable neglect," inadvertence or mistake.

Rule 60(b)(1) provides that

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect....

Fed.R.Civ.P. 60(b)(1). Rule 60(b)(1) uses the word "may," and hence "[i]t is within the court's broad discretion to grant relief under Rule 60(b)." *Mazzone v. Stamler,* 157 F.R.D. 212, 214 (S.D.N.Y.1994) (citing *Nemaizer,* 793 F.2d at 61-62).

In considering whether to vacate a default judgment, courts consider "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 171 (2d Cir.2001). **In conducting this three-factor analysis, the court must resolve all doubts in favor of the party seeking relief from judgment in order to facilitate resolution of the dispute on the merits.** *Martha Stewart Living Omnimedia LLC v. Beers Flower Shop, Inc.,* 1998 U.S. Dist. LEXIS 14738, at *7 (S.D.N.Y. Sept. 21, 1998) (emphasis added). In applying the test, the court need be mindful of the Second Circuit's preference "that litigation disputes be resolved on the merits, not on default." *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995). **Indeed, since default judgment is an extreme sanction, it "must remain a weapon of last, rather than first, resort."** *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) (emphasis added).

Wilfullness, in the context of a default, typically "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *see also New York v. Green,* 420 F.3d 99, 104-05 (2d Cir.2005). "[I]t is sufficient that the defendant defaulted deliberately." *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d Cir.1998). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *See, e.g., American Alliance [Ins. Co., Ltd. v. Eagle Ins. Co.],* 92 F.3d [57]at 60-61 [(2nd Cir.1996)].

4

A district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001). "[T]he inquiry into whether a failure to abide by a specified time constraint constitutes 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. IBM Corp.,* 148 F.3d 63, 66 (2d Cir.1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

### 1)    Plaintiff Suffers No Prejudice By Vacating The Default on Summary Judgment.

Based on the facts set forth below, PLH's failure to file opposition to plaintiff's summary judgment motion was the result of "excusable neglect" and should be vacated pursuant to Rule 60(b)(1).

As an initial matter, Quantum will suffer absolutely no prejudice by vacating the default and permitting PLH to either respond to the motion on its merits or allow PLH the requested extension of time to allow the parties to complete the discovery process before responding to the summary judgment motion. **Indeed, plaintiff expressed consent to permit PLH additional time to respond to the motion on three separate occasions, most recently via signed stipulation on July 30, 2008 and also by July 22, 2008 e-mail.**    Also, plaintiff will not be prejudiced because no discovery has been taken or completed in this action and based on the recently agreed to Amended Scheduling Order, plaintiff's deadline to file summary judgment motions will be October 9, 2008.

Lastly, as set forth more fully below, defendant PLH has meritorious defenses to the plaintiff's claim. As such, for the above reasons, PLH respectfully submits that plaintiff Quantum will not be prejudiced by vacating the Order granting summary judgment that was granted without the Court having heard PLH's response, and permitting PLH an extension of time to file a reply after discovery is completed.

> **2)    PLH's Diligently Pursued An Extension of Time To File Opposition to Plaintiff's Motion Well Before the Deadline, But Failed To Receive Cooperation From Plaintiff's Counsel In Finalizing The Terms of the Extension.**

As set forth below, counsel for PLH diligently participated in discovery, made substantial efforts to request and obtain an extension of time to reply to plaintiff's summary judgment motion well before (and after) the deadline and finally obtained consent for the extension despite plaintiff's counsel's failure to cooperate with PLH's counsel to agree on a briefing schedule and finalize the extension request.

As this Court is aware, on July 3, 2008, Quantum served its motion for summary judgment against PLH in this action.[1] At the time plaintiff's motion was filed, the parties had not yet engaged in any discovery.

Also, on July 3, 2008, PLH served plaintiff with Notices for the Depositions of Quantum employees Wilmer Russell, Maria DeSouza and Craig Sheinker for dates in July, 2008. Then, on July 16, 2008, PLH served plaintiff with its first sets of interrogatory demands and document requests. See Exhibit E to Goldstein Affirmation.

Within days of receiving the motion, counsel for PLH contacted plaintiff's counsel by telephone and requested an adjournment of plaintiff's motion in order to complete some discovery before PLH was required to file its opposition. Plaintiff's

---

[1] The motion was served late in the afternoon on July 3, 2008 (after my office was closed for the long July 4th weekend). Due to several ECF filing errors, the motion was finally deemed "filed" on July 8, 2008.

6

counsel advised that he was not inclined to grant the request, but needed to consult with his client.  See Goldstein Affirmation, paragraph 17.

Thereafter, upon receipt of PLH's and co-defendant National City Mortgage's ("National") deposition notices, on July 11, 2008, plaintiff advised counsel for both defendants, by e-mail, that his clients would not be able to attend depositions on the noticed dates and requested that the depositions be rescheduled.  Also, given the fact that the Initial Scheduling Order called for discovery to be completed by August 9, 2008, plaintiff also requested that the Amended Scheduling Order be extended by 30 days.  See Exhibit F to Goldstein Affirmation.  By refusing to produce Quantum's representatives on the noticed deposition dates, counsel assured that these individuals could not be deposed prior to the summary judgment return date.  See Goldstein Affirmation, paragraphs 20, 21.

After not hearing from plaintiff's counsel since their initial telephone conversation when PLH initially requested an adjournment, and responding to plaintiffs' counsel's July 11, 2008 e-mail, counsel for PLH sent an e-mail correspondence to plaintiff's counsel agreeing to adjourn the depositions provided that the parties enter into a briefing schedule to adjourn the pending summary judgment motion to allow Penn Lyon sufficient time to complete the outstanding discovery before filing its opposition.  See Exhibit G to Goldstein Affirmation.

On July 15, 2008, PLH's counsel again spoke to plaintiff's counsel by telephone.  At that time, plaintiff's counsel advised that he would not necessarily agree to a lengthy extension of time for PLH to respond to allow it to conduct discovery for the motion, but, **he expressly consented to a brief adjournment of the motion to submit opposition to**

7

**the motion.**[2]   Plaintiff's counsel also advised that he would be out of the office until July 21, 2008 because of cataract surgery.  See Goldstein Affirmation, Paragraph 23.

Knowing that PLH's time to file a either a consent stipulation with briefing schedule or a letter request for an adjournment without consent in accordance with this Court's individual practices was running short, on July 21, 2008, PLH's counsel sent a follow up e-mail to plaintiff's counsel requesting a response to its request for an adjournment and briefing schedule.  See Exhibit H to Goldstein Affirmation.

Finally, on July 22, 2008, plaintiff's counsel sent e-mail correspondence addressed to both defendants' counsel stating that he was "amenable to your requests" and "will respond to your respective discovery demands."  See Exhibit I to Goldstein Affirmation.

Since PLH's only request to plaintiff was for an extension of time to file opposition to Quantum's motion for summary judgment, its counsel interpreted the e-mail as consent for an extension of time to respond to the motion.  Nonetheless, even with consent, this Court's individual practices still required that a consent adjournment request contain a briefing schedule and, in the July 22, 2008 e-mail, plaintiff was still not able to provide dates to PLH for Quantum's witnesses to be deposed nor did counsel agree to a briefing schedule.  Therefore, at that time, it was impossible for PLH to comply with the Court's individual rules and provide a briefing schedule with the consent extension request.  See Goldstein Affirmation, Paragraph 26.

But for PLH's receipt of plaintiff's e-mail consenting to extend its time to answer the summary judgment motion, PLH was prepared to submit correspondence to the Court

---

[2] Mr. Kobroff's August 1, 2008 letter to the Court refreshed counsel's recollection about the conversation that day, however, counsel neglected to mention that he expressed willingness to consent to a short extension of time for PLH to respond to the motion.

requesting an extension, without consent, by letter as mandated by the Court's individual rules. See Goldstein Affirmation, Paragraph 27.

In accordance with the parties' prior e-mail agreements, by e-mail dated July 24, 2008, co-defendant National circulated a proposed Amended Scheduling Order seeking to extend all existing dates in the initial scheduling order by one month. See Exhibit J to Goldstein Affirmation.   In response, PLH's counsel sent e-mail correspondence to plaintiff's counsel and National's counsel suggesting that the extension of time/briefing schedule for Quantum's pending summary judgment motion be addressed in the Amended Scheduling Order. See Exhibit K to Goldstein Affirmation.  However, instead of a prompt response, plaintiff ignored the e-mails from both defendants and evaded PLH's inquiry. See Goldstein Affirmation, Paragraph 29

PLH did not hear from plaintiff's counsel by July 29, 2008 and became extremely concerned about the delay in submitting the extension request to the Court.  Disturbed by plaintiff's counsel's lack of cooperation, and knowing that time had elapsed since the date PLH's papers were due, PLH's counsel sent correspondence to plaintiff's counsel via facsimile and e-mail again requesting that the parties agree on a briefing schedule for the motion and to include said schedule in the Amended Scheduling Order. See Exhibit L to Goldstein Affirmation.

Finally, in the late afternoon on July 30, 2008, and eight days after initially consenting to the adjournment, plaintiff's counsel finally responded to PLH and agreed to execute a stipulation extending PLH's time to file opposition to plaintiff's summary judgment motion in order to conduct discovery until September 5, 2008. See Goldstein Affirmation, Paragraph 32.  Soon thereafter, plaintiff executed the Stipulation.  However,

9

the e-mail was not sent until approximately 5:00 P.M and PLH's counsel did not receive it until approximately fifteen ("15") to thirty ("30") minutes later. See Exhibit M to Goldstein Affirmation

Unfortunately for PLH, before its counsel could e-file the Stipulation, the Court sent e-notification that plaintiff's summary judgment motion had been granted without PLH's opposition. See Exhibit N to Goldstein Affirmation.

As shown above, PLH's counsel made substantial efforts to secure the extension and comply with this Court's individual practices to submit a stipulation with a briefing schedule and to advise the Court of the extension. Moreover, PLH did not ignore the motion in any respect and fully intended to vigorously oppose the motion with the benefit of needed discovery. Plaintiff's counsel's week out of the office for cataract surgery also substantially contributed to the delay in securing consent for the extension. Lastly, but for plaintiff's counsel's mixed messages concerning his agreement to adjourn the motion but lack of clarity concerning a new scheduling order, defense counsel would have simply submitted a letter requesting the adjournment without consent as required by the Court's individual practices.

In addition, immediately upon receiving the Court's Order entering summary judgment on default, on July 31, 2008, defense counsel submitted a letter to the Court which explained the reasons for the delay, attached the consent stipulation to extend time to answer, and requested an out of time extension of defendant's time to respond to Quantum's motion for summary judgment. See Exhibit O to Goldstein Affirmation.

As explained, PLH's conduct was extremely diligent in pursuing an extension before the deadline and has a substantial satisfactory explanation for the delay in

10

obtaining an executed consent stipulation, and its conduct was merely negligent or careless and not egregious.

### 3)    The Duration of PLH's Delay In Obtaining A Consent Stipulation Was Brief.

Both parties agree that PLH's deadline to file its opposition was July 21, 2008. Plaintiff's counsel indicated he would consider consenting to a short adjournment on July 15, 2008, but was then out of the office from July 16 – July 21. On July 21, PLH followed up with plaintiff's counsel regarding his representation that he would consider granting a short extension. On July 22, 2008, PLH received plaintiff's e-mail providing consent for an extension, but the length of the extension or briefing schedule was not finalized. Then, for the next eight days, while PLH made efforts to contact plaintiff's counsel to finalize a briefing schedule, plaintiff's counsel ignored these efforts. In short, the duration of the delay was a little over one week, and during that delay, PLH was making diligent efforts to obtain an appropriate Stipulation with a briefing schedule in accordance with the Court's rules.

### 4)    PLH Acted In Good Faith In Attempting to Timely Seek An Extension of Time To Respond To Plaintiff's Summary Judgment Motion.

There cannot be a dispute that PLH made diligent efforts since the motion was filed to obtain an extension of time to respond to plaintiff's motion. These efforts began long before PLH's opposition was due and attempts to obtain the extension were doggedly and consistently pursued until plaintiff finally executed a Stipulation on July 30, 2008. PLH also was participating in the discovery process during this time by serving deposition notices, interrogatories and discovery demands and agreeing to extend the scheduling order.

11

### 5)    Conclusion

Based on the above facts, defendant has satisfied all of the elements for establishing that its failure to timely file its opposition to plaintiff's summary judgment was the result of excusable neglect. Critically, the parties, most notably Penn Lyon, had been actively working on a briefing schedule and an adjournment of the motion for several weeks and plaintiff actually executed a Stipulation extending Penn Lyon's time to respond to the motion. Penn Lyon did not ignore the pending summary judgment motion at any time and took numerous steps to finalize a briefing schedule for the motion.

### B.    PLH Has a Complete Meritorious Defense to Plaintiff's Claims of Conversion and/or Unjust Enrichment

PLH has a complete meritorious defense to plaintiff's claims of conversion and/or unjust enrichment which should have precluded a grant of summary judgment.

This Circuit has long held that it does not take much to establish a meritorious defense for purposes of vacating a default judgment. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 166 (2d Cir.2004) (quoting *McNulty,* 137 F.3d at 740) (internal quotation marks omitted); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d Cir.1993) ("A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense."); *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320-21 (2d Cir.1986) ("[T]he moving party on a motion to reopen a default must support its general denials with some underlying facts."). *Pecarsky v. Galaxiworld.com Ltd., supra,* 249 F.3d at 173. *See also*

12

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., supra,* 92 F.3d at 61, *quoting Anilina Fabrigue de Colorants v. Aakash Chemicals & Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir.1988) (" '[a] defense is meritorious if it is good at law so as to give the fact-finder some determination to make" ').

PLH's meritorious defense to plaintiff's claims of unjust enrichment and conversion turns on a determination of whether plaintiff was the "owner" of the $112,168.28 that was wired to PLH. We respectfully submit that, at this juncture of the litigation, without any discovery having been completed, the Court, as a matter of law, could not possibly determine whether Quantum owned the funds that PLH received, or whether PLH was "enriched" at Quantum's expense because this determination is contingent on the Court's determination as to whether Quantum is entitled to receive the benefit of its assignment agreement with Westwood and collect payment from National on the $347,000 invoice that it purchased.

> **1)  At This Juncture of the Case, It is Impossible for Plaintiff to Establish, as a Matter of Law, that PLH Was "Enriched" at Its Expense.**

In order to state a claim for unjust enrichment under New York law, plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Dolmetta v. Uintah Nat'l Corp.* 712 F.2d 15, 20 (2d Cir. 1983), Weisberg v. Smith, 401 F. Supp 2d. 359, 362 (S.D.N.Y 2005).

Indeed, PLH's meritorious defense involves the second element to establish a cause of action for unjust enrichment. New York law is fairly well settled that a claim for unjust enrichment will only lie where the defendant possesses money or received a

benefit which in equity and good conscience the defendant should not retain because it *belongs to the plaintiff.* See *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 79 (2d Cir. 1986), *Martes v. USLIFE Corp.*, 927 F. Supp. 146, 149 (S.D.N.Y. 1996), *Mayer v. Josiah Wedgewood & Sons, Ltd.*, 601 F. Supp. 1523, 1536 (S.D.N.Y. 1985).

Critically, plaintiff's motion for summary judgment on the grounds that PLH was unjustly enriched is premature. At this juncture of the litigation, Quantum cannot establish facts that conclusively prove that the money PLH received belonged to Quantum. The undisputed facts submitted by plaintiff in support of its motion for summary judgment reflect that, assuming Quantum is legally entitled to recover the Invoice proceeds from National, Quantum did not have a possessory interest in the money that was paid to PLH pursuant to the Agreement.

"To be enforceable, a contract must be supported by valid consideration." See *Startech, Inc. v. VSA Arts* 126 F.Supp.2d 234 (S.D.N.Y.,2000), *Banque_Arabe et Internationale D'Investissement v. Bulk Oil (USA) Inc.,* 726 F.Supp. 1411, 1419 (S.D.N.Y.1989). Valid consideration "can be either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor." *Roth v. Isomed, Inc.,* 746 F.Supp. 316, 319 (S.D.N.Y.1990); *see Holt v Feigenbaum,* 52 N.Y.2d 291, 299-300 (1981). "It can also be understood as a bargained for exchange." *Banque Arabe,* 726 F.Supp. at 1419. Even consideration of the most minimal value is valid; the "proverbial peppercorn" is sufficient. *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 445 (1982). "Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee." *Id.*

14

The money paid to PLH was properly paid to it by Westwood pursuant to Westwood's receipt of the proceeds from its valid and enforceable assignment Agreement with Quantum. As part of the Agreement, Westwood directed that part of the funds due to it ($112,168.12) under the Agreement be paid directly to PLH.[3] **Westwood was able to direct that funds be distributed in this manner because it owned the funds pursuant to the assignment Agreement which was supported by good and valid consideration, namely, the purchase of the $347,000 Invoice from National for $242,900.00 cash from Quantum.**

Plaintiff's breach of contract claims against National is still pending and no discovery has been commenced. On that basis, it has yet to be determined whether Quantum will be able to recover the $347,000 it claims is due and owing from National. Indeed, the conversion/unjust enrichment claims against PLH are merely alternative theories of liability in the event that Quantum cannot recover the benefit of its bargain from its assignment agreement with Westwood from National.

The undisputed material facts set forth in plaintiff's motion for summary judgment support this defense. Plaintiff entered into an assignment agreement with Westwood to purchase an invoice which Westwood represented was monies due it from defendant National pursuant to its second draw-down of the Pollydore's business loan. See Exhibit B to Goldstein Affirmation.

---

[3]     PLH had instituted litigation against Westwood, in Maryland, arising out of a contract between PLH and Westwood for the production and manufacture of modular custom-built home units to be delivered to 14101 Old Stage Road, Bowie, Maryland, owned by Mr .Samuel J. Harris. Westwood represented to PLH that the $112,168.28 funds wired by Quantum to PLH, at issue in this case, constituted partial payment of amounts due in connection with the "Harris" Project. To this date, PLH has not been fully compensated for the Harris Project.

Plaintiff contacted National to confirm that the invoice was correct and sent National a proposed estoppel certificate covering the Invoice. Mr. Washburn, of National signed the estoppel certificate in the amount of the $347,000 second draw-down of the Pollydore construction loan and returned it to Quantum. This verified and guaranteed to Quantum that the invoice was valid and correct. Quantum readily admits that it agreed to purchase the invoice from Westwood in reliance on the estoppel certificate signed by National. See Goldstein Affirmation, Paragraphs 8-9.

If Quantum is able to recover $347,000.00 from National on its breach of contract claim based on the assignment of the invoice and enforcement of the estoppel certificate, it cannot recover from PLH, because its assignment Agreement with Westwood was valid because it was supported by sufficient consideration, namely the $347,000.00. In that instance, pursuant to the Agreement, the $242,900.00 that Quantum paid to Westwood was lawfully Westwood's money to do with as it chose. As set forth in the Agreement and admitted by Quantum, Westwood chose to have Quantum wire $112,168.28 of Westwood's money due under the assignment agreement to PLH. Under these circumstances, plaintiff did not have a possessory interest in the funds sent to PLH and therefore could not be unjustly enriched.

In short, the plaintiff has two separate causes of action and cannot collect on both of them. It has sued National to collect on the Invoice it purchased from Westwood and has claimed that PLH has converted or been unjustly enriched by receipt of funds paid to it pursuant to a likely valid contract supported by consideration. Quantum cannot legally prevail against National and still have a valid cause of action for unjust enrichment and/or conversion against PLH because, under those circumstances, the money PLH received

16

was not owned by Quantum, but rather by Westwood, pursuant to their legally binding assignment agreement.

In other words, judgment cannot and should not be entered against PLH unless and until the issues of material fact are determined regarding Quantum's claim against National which, if proven, will establish that Quantum received valid consideration for its $242,900.00 payment to Westwood for entering into the assignment Agreement.

Accordingly, based on the above arguments, plaintiff presently has a meritorious defense to the plaintiff's unjust enrichment claim.

### 2)    Plaintiff Cannot Establish, As a Matter of Law that PLH Converted Its Funds

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Traffix, Inc. v. Herrold*, 269 F.Supp.2d 223, 228 (S.D.N.Y. 2003) (citing *Peters Griffin Woodward, Inc. v. WCSC, Inc.* 452 N.Y.S.2d 599, 600 (1st Dep't 1982)

To prevail on a claim of conversion in New York, a plaintiff must show: (1) title or right to possession in the specific property converted, (2) the denial or violation by defendant of the plaintiff's dominion, rights, or possession of that property, and (3) damages. *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415 (1983). New York law recognizes an action for the conversion of money. Plaintiff must show that it had "an immediate superior right of possession to the identifiable fund and the exercise by defendants of unauthorized dominion over the money in question to the exclusion of plaintiff's rights." *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 385, 590 N.Y.S.2d 201 (1st Dept.1992). At this juncture of the litigation, Quantum cannot establish facts that conclusively prove that it had an

17

immediate superior right of possession to the money that PLH received before the "conversion."

Like the meritorious defense for unjust enrichment, any determination of whether plaintiff owned the $112,268.28 before PLH received it is contingent upon a determination of whether Quantum is entitled to receive the benefit of its assignment agreement with Westwood, namely, payment of the $347,000.00 invoice from National. If Quantum is entitled to recover from National, it would have received valid consideration from Westwood constituting an enforceable contract. Therefore, Quantum did not own the money received by PLH. See *Traffix*, 269 F. Supp. 2d at 228 (*citing ESI, Inc. v. Coastal Power Prod, Co.*, 995 F. Supp. 419 (S.D.N.Y. 1996)). Similarly, if Quantum is able to recover from National, Quantum would be barred from also recovering from PLH too, as it would constitute a double recovery/windfall.

Conversely, the only way that plaintiff can establish that it had an immediate superior right of possession of the $112,268.28 before PLH received it is to take the position that that its assignment Agreement with Westwood is invalid and/or void as unsupported by sufficient consideration. Under those circumstances, plaintiff would be no longer be the owner of the Invoice, and could be precluded, as a matter of law from recovering the $347,000.00 owed on the Invoice by National.

As also discussed in the unjust enrichment argument, if proven at trial that plaintiff is entitled to recover the full amount of National's invoice, Quantum's agreement with Westwood would be valid and enforceable because it was supported by sufficient consideration. In that instance, Quantum transferred ownership of the $242,900.00 to Westwood in exchange for the right to collect on the $347,000.00 invoice from National.

18

Westwood, in turn, chose to distribute $112,168.28 of its proceeds from the valid and enforceable agreement to PLH. Under these facts, Westwood, not Quantum, owned the $112,168.28 before it was transferred to PLH.

Either way, because no discovery has been completed and Quantum's claim against National is still pending, there has been no determination of whether Quantum will be able to recover on National's invoice. Judgment should not, and could not be entered against PLH until there is a determination of whether Westwood's consideration for the assignment agreement with Quantum supports the validity of the agreement. In other words, issues of material fact exist regarding whether Quantum received valid consideration for its $242,900.00 payment to Westwood for entering into the assignment Agreement.

Accordingly, based on the above arguments, defendant presently has a meritorious defense to the plaintiff's conversion claim.

## POINT TWO

**PLH IS ENTITLED TO RECONSIDERATION OF THE MOTION FOR SUMMARY JUDGMENT BECAUSE THE COURT OVERLOOKED THE FACT THAT PLAINTIFF'S MOTION DID NOT CONTAIN SUFFICIENT FACTS TO ESTABLISH AS A MATTER OF LAW THAT PLH CONVERTED OR WAS UNJUSTLY ENRICHED BY ITS RECEIPT OF THE $112,168.28 WIRED TO IT BY QUANTUM IN ACCORDANCE WITH THE QUANTUM/WESTWOOD ASSIGNMENT AGREEMENT**

PLH is entitled to alteration and/or amendment of the judgment and reconsideration of this Court's Summary Judgment Order pursuant to Fed R Civ. P. 59(e) and Local Civil Rule 6.3 because the Court overlooked facts contained in the motion and the applicable law in ruling, as a matter of law, that PLH was unjustly enriched or

committed conversion when it received a wire payment in the amount of $112,168.28 from Quantum pursuant to Quantum's assignment Agreement with Westwood.

The arguments in support of reconsideration are essentially the same as those set forth within PLH's arguments to establish meritorious defenses to plaintiff's claims within its motion to vacate the judgment. In the interest of judicial economy, we will not repeat the arguments in the same level of detail as set forth above.

In short, because Quantum's claims of conversion and unjust enrichment require proof that Quantum "owned" the funds before wiring them to PLH, the Court overlooked an examination and analysis of the Quantum/Westwood Assignment Agreement and failed to consider or determine whether the Agreement was supported by sufficient consideration. Thus, Quantum's summary judgment motion was premature because this question turns on whether Quantum can enforce the Invoice it received from National. It is currently undetermined whether the Invoice is enforceable because no discovery has taken place and Quantum is still litigating this claim against National. If the invoice is enforceable, plaintiff cannot collect from PLH on an unjust enrichment or conversion theory because it would have received sufficient consideration validating the agreement. In that instance, Quantum would have no cause of action against PLH because Quantum would have received the benefit of its bargain with Westwood and Westwood would have been the rightful owner of the funds that Quantum wired to PLH per Westwood's request.

Generally, motions for reconsideration are granted when 'the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' " *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003) (quoting *Shrader,* 70 F.3d at 257). Such

motions should be granted where necessary "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004).

The Second Circuit has noted that the fact that there has been no response to a summary judgment motion does not mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed.R.Civ.P. 56(c)).

A district court also "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001). It has similar discretion also to grant extensions of time. Fed.R.Civ.P. 6(b). It is admonished by Fed.R.Civ.P. 1 to construe the rules of procedure "to secure the just, speedy, and inexpensive determination of every action

Based on the arguments set forth at great length above in our discussion of PLH's meritorious defenses to Quantum's conversion and unjust enrichment actions against PLH, reconsideration should be granted to correct a clear error of law and prevent manifest injustice to PLH. Even though PLH inadvertently failed to submit opposition papers to the motion (for the various reasons set forth above), the facts, documents and legal arguments submitted by Quantum were insufficient to establish that PLH converted or was unjustly enriched by the receipt of funds sent by Quantum to PLH in accordance with a valid Assignment Agreement between Westwood and Quantum that was supported by consideration.[4]

---

[4] PLH contends that the failure to submit opposition to plaintiff's motion was the result of excusable neglect argued in detail in the points in support of PLH's motion to vacate the judgment.

It is still as of yet undetermined whether Quantum is entitled to recover the proceeds of the National Invoice which served as consideration for the contract. If Quantum prevails against National, the consideration for the assignment agreement was valid and plaintiff cannot then seek recovery against PLH for conversion and/or unjust enrichment because it did not have an immediate superior right of possession to the identifiable fund, *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 385, 590 N.Y.S.2d 201 (1st Dept.1992), and PLH did not possess money or receive a benefit which in equity and good conscience the defendant should not retain because it *belongs to the plaintiff.* See *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 797 F.2d 70, 79 (2d Cir. 1986).     Assuming there was valid consideration for the agreement, Westwood owned the funds it received from Quantum and lawfully directed said funds to be paid directly to Penn Lyon. On that basis, the Court committed clear error in determining that Quantum submitted sufficient facts to support a finding that PLH either converted or was unjustly enriched by the funds that Quantum wired to it pursuant to the express terms of the Westwood/Quantum assignment agreement.

As such, for the foregoing reasons, as well as those set forth in support of PLH's motion to vacate the summary judgment order obtained via default, PLH's motion for reconsideration should be granted, and upon reconsideration, Quantum's summary judgment motion should be denied.

## POINT THREE

**PLH'S EXTENSION REQUEST OUT OF TIME SHOULD BE GRANTED BECAUSE THE DELAY IN SUBMITTING IT WAS THE RESULT OF "EXCUSABLE NEGLECT"**

Courts are empowered to grant extensions of time in purely procedural matters upon a showing of "excusable neglect" pursuant to Fed.R.Civ.P. 6(b)(2). Excusable neglect is an "elastic concept," which "may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 135 (2d Cir.1998). The concept is also "broad enough to encompass even those omissions caused by circumstances within movant's control," although "a movant must show good faith and a reasonable basis for noncompliance." *Id.*

As shown in extensive detail above, PLH's failure to timely submit opposition to Quantum's summary judgment motion was inadvertent. Diligent efforts were taken to secure the extension in a timely manner. Consent for the extension was received in writing on July 22, 2008, but PLH was unable to obtain a response to its numerous requests to plaintiff's counsel for a briefing schedule, which is required by this Court's individual practices to be part of any consent stipulation for an adjournment.

As also set forth above, PLH has established that it acted in good faith and has a reasonable excuse for its non-compliance. As such, we respectfully request that this court grant PLH's motion for an extension of time pursuant to Fed R. Civ. P. 6(b)(2).

## POINT FOUR

**PLH IS ENTITLED TO A STAY OF PLAINTIFF'S SUMMARY JUDGMENT MOTION TO ALLOW DISCOVERY TO PROCEED ON QUANTUM'S CLAIM AGAINST NATIONAL WHICH MAY HELP DETERMINE WHETHER QUANTUM WAS THE OWNER OF THE FUNDS IT WIRED TO PLH**

Rule 56(f) of the Federal Rules of Civil Procedure provides that,

[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

23

Fed.R.Civ.P. 56(f).

Under Fed.R.Civ.P. 56(f), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (internal quotation marks and citations omitted) (alteration in original).

As set forth in detail above, and in the Goldstein Affirmation, based on the arguments set forth herein, PLH cannot adequately oppose the motion for summary judgment because insufficient discovery has taken place.    Depositions of Quantum representatives and National representatives are necessary to determine whether the Invoice that Westwood assigned to Quantum as part of the Assignment Agreement between the parties constituted adequate consideration to bind the parties to an enforceable contract.  If the contract was enforceable, then Westwood, not Quantum was the owner of the funds and/or had immediate superior possessory interest in the funds before they were wired to PLH.

Considerable efforts were made by PLH to secure this discovery prior to and during the pendency of the motion.  Deposition notices were served on July 3, 2008, document demands and request for interrogatories were served on plaintiff on July 16, 2008.  The parties entered into a consent order extending the discovery period and plaintiff belatedly executed a stipulation adjourning the motion for summary judgment to permit PLH to conduct some discovery prior to responding to the motion.  No initial

24

disclosures were ever made by Quantum and Quantum never responded to discovery served by either PLH or National. Unfortunately, we were unsuccessful in obtaining the discovery because our Stipulation was filed belatedly as a result of excusable neglect and the Court ultimately decided plaintiff's summary judgment motion without PLH having the opportunity to submit opposition.

As such, we respectfully request that the summary judgment order be vacated, and the motion be stayed pending the completion of discovery proceedings.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Honorable Court grant PLH's motions 1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6); 2) to Alter or Amend Judgment and/or for reconsideration of the Court's July 30, 2008 Order granting summary judgment against PLH and in favor of Quantum; 3) for an extension of time to file opposition to plaintiff's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of plaintiff's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

Dated: New York, New York
     August 5, 2008

            Respectfully submitted,

By: _____
        Scott H. Goldstein, Esq. (SG 8333)
        BONNER KIERNAN TREBACH & CROCIATA, LLP
        Attorneys for Defendant,
        Penn Lyon Homes Corporation
        State Building, Suite 3304
        New York, New York 10118
        (212) 268-7535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
QUANTUM CORPORATE FUNDING, LTD

Plaintiff,

-against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

Defendants.

Docket No. 08 CV 00539(LAK) (HP)

**AFFIRMATION OF SERVICE**

I, Scott H. Goldstein, Esq. **declare under penalty of perjury** that I have served a

copy of the attached Notice of Motion, Affirmation in Support and Memorandum of Law

upon Bernard Kobroff, Esq. of Goetz Fitzpatrick, LLP whose address is One Penn Plaza,

Suite 4401, New York, New York 10119 and Thomas F. Doherty, Esq. of McCarter &

English, LLP whose address is Four Gateway Center, 100 Mulberry Street, Newark, New

Jersey 07102 via E-filing and regular mail.

Dated: New York, New York
      August 5, 2008

_____
Scott H. Goldstein, Esq.
BONNER KIERNAN TREBACH
& CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
Empire State Building – Suite 3304
New York, New York 10118
Tel # (212) 268-7535
Fax # (212) 268-4965