UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

                Plaintiff,

-against-

WESTWOOD DESIGN/BUILD INCORPORATED, DAVID R. WARFIELD, NATIONAL CITY MORTGAGE, INC. and PENN LYON HOMES CORPORATION

                Defendants.

Docket No. 08 CV 00539(LAK) (HP)

**AFFIRMATION OF SCOTT H. GOLDSTEIN, ESQ.**

SCOTT GOLDSTEIN, duly affirms the following under penalty of perjury:

1. I am an Of Counsel with the law firm of BONNER KIERNAN TREBACH & CROCIATA, LLP, attorneys for Penn Lyon Homes Corporation ("PLH") in this action. I am fully familiar with the facts and circumstances of this case, the source of my knowledge being the file maintained by my office in the course of handling this matter.

2. We submit this affirmation in support of defendant Penn Lyon Homes Corporation's ("PLH") motion to vacate the summary judgment motion granted on default as a result of defendant PLH's purported failure to file an opposition to plaintiff's motion for summary judgment despite plaintiff's express agreement via e-mail on July 22, 2008 and signed stipulation dated July 30, 2008 to extend PLH's time to respond until September 5, 2008 pursuant to Rule 60(b)(1) and (6). We further submit this affirmation in support of defendant's motion for an extension of time to file an opposition to plaintiff's motion for summary judgment, out of time, pursuant to Rule 6(b)(2).

3. This motion to vacate the default pursuant to Rule 60(b)(1)-(6) should be granted on the grounds that there was "excusable neglect" for the alleged failure to file

opposition to the motion for summary judgment, as plaintiff and defendant were engaged in numerous communications, via telephone, e-mail and regular mail regarding the extension of time well before the court-imposed deadline for seeking an adjournment. Defendant had obtained plaintiff's consent to this adjournment, but was subsequently ignored by plaintiff in its attempt to obtain a briefing schedule as required by this Court's individual rules. In addition, as set forth more fully below, PLH has meritorious defenses to the motion and plaintiff will have suffered no prejudice by vacating the Order granting summary judgment and allowing the case to proceed on the merits.

## FACTS

**A.    Westwood and Quantum's Valid and Enforceable Assignment Agreement.**

4.    In this action, plaintiff Quantum has improperly sought to recover from defendant PLH the sum of $112,168.28 which Quantum claims that PLH either converted and/or was unjustly enriched by when Quantum wired that sum to Penn Lyon pursuant to the express terms of Quantum's assignment agreement with co-defendant Westwood Design/Build Incorporated ("Westwood"). More specifically, for the total sum of $242,900.00, Quantum had purchased from Westwood a $347,000.00 invoice (the "Invoice") which represented monies due from Defendant National City Mortgage Company ("National").

5.    In the Assignment agreement ("Agreement"), Westwood and Quantum agreed to the following language:

> In consideration of the sum of $242,900.00 [$112,168.28 to Penn Lyon Homes Corp and $130,731.72 to Westwood Design] paid by purchaser to seller, receipt of which is hereby acknowledged, the undersigned Westwood Design Build Incorporated ("Seller") hereby sells, transfers and assigns to Quantum Corporate Funding, Ltd ("Purchaser"), its successors and assigns all Seller's

    right title and interest in and to Seller's account(s) receivable (including the proceeds of any surety, payment bond or guaranty thereof) owing by various account debtors described in Exhibit "A" and attached hereto . . .

A copy of the Agreement is attached hereto as Exhibit A

6. As set forth in plaintiff's motion for summary judgment, upon information and belief, the above-described Agreement was entered into when defendant David R. Warfield ("Warfield") of Westwood approached Quantum to obtain cash by selling to Quantum an account receivable. To implement this arrangement, Westwood, by Warfield, offered to assign to Quantum a $347,000.00 invoice (the "Invoice") which it represented was monies due it from Defendant National City Mortgage Company ("National") pursuant to its second draw-down of a construction loan to property owners known as Mr. and Mrs. Eustace Pollydore (the "Pollydores") for construction of a new home at their premises. A copy of this invoice is annexed hereto as Exhibit B.

7. The Assignment Agreement makes no mention of any specific PLH invoice. Likewise, nowhere within the Agreement does Westwood state that the payment to PLH is for an invoice on the "Pollydore" Project. Nothing in the assignment agreement conditioned the purchase of the Invoice upon Westwood's request that Quantum pay the stated sum to PLH. The agreement merely designates that a portion of the money that Quantum was paying to Westwood be sent to PLH instead.

8. Plaintiff readily concedes that it performed its due diligence before entering into the Assignment agreement with Westwood by directly contacting Mr. Christopher Washburn, a branch manager at National, to request confirmation that the invoice was valid. See Paragraph 7 in the Affidavit of Craig Sheinker, annexed hereto as Exhibit C.

9. Mr. Washburn, indeed, confirmed that the invoice amount was valid, correct and owing by National to Westwood and executed an estoppel certificate verifying the invoice's validity. A copy of the executed estoppel certificate is annexed hereto as Exhibit D. **Significantly, plaintiff admits that it decided to purchase the invoice solely in reliance upon National's estoppel certificate.** See Exhibit C, paragraph 9.

10. By receiving the Invoice for a discounted sum of $242,900.00, which was confirmed and guaranteed by National, Quantum obtained the right to receive $347,000.00 from National pursuant to the Invoice, ample consideration from Westwood for entering into the assignment agreement.

11. Moreover, when Quantum paid Westwood for the invoice, it admits that it paid a portion of the $242,900.00 to PLH at Westwood's specific direction. Payment to PLH was not a precondition for Quantum to enter into the Agreement. Rather, Westwood sought to pay its own money (as per the Agreement) to PLH and simply cut out the middle-man by having the money sent to PLH.

12. Nowhere within its motion for summary judgment does plaintiff allege that it relied on the alleged PLH "Pollydore" invoice in any fashion in connection with its decision to purchase the National Invoice which is the subject of this litigation.

13. It is undisputed that on December 21, 2007, pursuant to the assignment agreement, Quantum paid Westwood $242,900.00. $112,168.28 of Westwood's money was wired by Quantum to Penn Lyon pursuant to Westwood's directions. PLH admits that it received the funds[1]. See Exhibit C, paragraph 11.

---

[1] PLH had instituted litigation against Westwood, in Maryland, arising out of a contract between PLH and Westwood for the production and manufacture of modular custom-built home units to be

14. When contacted by Mr. Sheinker of Quantum, David Reed of PLH advised that he never heard of the Pollydores, had not shipped anything to the Pollydore Residence and that PLH never submitted any invoice to the Pollydores. See Exhibit C, Paragraph 17.

15 On January 15, 2008, via e-mail communication, Mr. Sheinker demanded that PLH return the $112,168.12 that Quantum wired to it. PLH did not return the money to Quantum. See Exhibit C, Paragraph 18.

**B) PLH's Numerous Efforts To Secure An Extension of Time To Respond to Plaintiff's Summary Judgment Motion and Agree To A Discovery Schedule In Accordance With the Court's Individual Rules.**

16. As this Court is aware, on July 8, 2008, Quantum filed a summary judgment motion against Penn Lyon in this action.[2] At the time plaintiff's motion was filed, the parties had not yet engaged in any discovery.

17. Within days of receiving the motion, we contacted plaintiff's counsel by telephone and requested an adjournment of the motion to complete some discovery before PLH was required to file its opposition. Plaintiff's counsel advised that he was not inclined to grant the request, but needed to consult with his client.

18. On July 3, 2008, we served plaintiff with Notices for the Depositions of Quantum employees Wilmer Russell, Maria DeSouza and Craig Sheinker for dates in July, 2008. Then, on July 16, 2008, we served plaintiff with Penn Lyon's first set of

---

delivered to 14101 Old Stage Road, Bowie, Maryland, owned by Mr .Samuel J. Harris. Westwood represented to PLH that the $112,168.28 funds wired by Quantum to PLH, at issue in this case, constituted partial payment of amounts due in connection with the "Harris" Project. To this date, PLH has not been fully compensated on the Harris Project

[2] The motion was served late in the afternoon on July 3, 2008 (after my office was closed for the long July 4th weekend). Due to several ECF filing errors, the motion was finally deemed "filed" on July 8, 2008.

interrogatory demands and first set of document requests. Copies of these discovery demands are annexed hereto collectively as Exhibit E.

19. Upon receipt of our deposition notices and co-defendant National's deposition notices, on July 11, 2008, plaintiff advised us, by e-mail, that his clients would not be able to attend depositions on the noticed dates and requested that the depositions be rescheduled. A copy of plaintiff's counsel's July 11, 2008 e-mail to all counsel is annexed hereto as Exhibit F.

20. Given the fact that the Initial Scheduling Order called for discovery to be completed by August 9, 2008, plaintiff also requested that the Amended Scheduling Order be extended by 30 days.

21. By refusing to produce Quantum's representatives on the noticed deposition dates, counsel assured that these individuals could not be deposed prior to the summary judgment return date.

22. Having not heard back from plaintiff's counsel from our telephone call about the adjournment request and responding to his July 11, 2008 e-mail, we sent an e-mail correspondence to plaintiff's counsel agreeing to adjourn the deposition and again requesting that we enter into a briefing schedule to adjourn the pending motion to allow Penn Lyon sufficient time to complete the outstanding discovery before filing its opposition. A copy of our July 14, 2008 e-mail to all parties is annexed hereto as Exhibit G.

23. On July 15, 2008, I again spoke to plaintiff's counsel by telephone. At that time he stated he would not necessarily agree to a lengthy extension of time for PLH to respond to allow us to conduct discovery for the motion, but he did express a

willingness to consent to a brief adjournment of the motion to submit opposition to the motion.[3] Plaintiff's counsel also advised that he would be out of the office until July 21, 2008 because of cataract surgery.

24. Knowing that our time to file a either a consent stipulation with briefing schedule or a letter request for an adjournment without consent in accordance with this Court's individual practices was running short, on July 21, 2008, I sent a follow up e-mail to plaintiff's counsel e-mail requesting a response to our adjournment request and briefing schedule. A copy of my July 21, 2008 e-mail to plaintiff's counsel is annexed hereto as Exhibit H

25. Finally, on July 22, 2008, via e-mail correspondence, plaintiff sent an e-mail correspondence addressed to both National's counsel and to me stating that he was "amenable to your requests" and "will respond to your respective discovery demands." A copy of plaintiff's counsel's July 22, 2008 e-mail correspondence is annexed hereto as Exhibit I.

26. Since our only request was for an extension of time to file opposition to Quantum's motion for summary judgment, we interpreted the e-mail as consent for an extension of time to respond to the motion. Nonetheless, even with consent, the Court rules still required that a consent adjournment request contain a briefing schedule and, in the July 22, 2008 e-mail, plaintiff was still not able to provide us dates for Quantum's witnesses to be deposed nor did counsel agree to a briefing schedule. Therefore, at that time, it was impossible for PLH to comply with the Court's individual rules and provide a briefing schedule with the consent extension request.

---

[3] Mr. Kobroff's letter to the Court refreshed counsel's recollection about the conversation that day, however, counsel neglected to mention that he expressed willingness to consent to a short extension of time for PLH to respond to the motion.

27. But for our receipt of plaintiff's e-mail consenting to extend PLH's time to answer the summary judgment motion, defendant was prepared to submit correspondence to the Court requesting an extension, without consent, by letter as mandated by the Court's individual rules.

28. In accordance with the parties' prior discussions, by e-mail dated July 24, 2008, co-defendant National circulated a proposed Amended Scheduling Order seeking to extend all existing dates in the initial scheduling order by one month. A copy of co-defendant National's July 24, 2008 e-mail correspondence is annexed hereto as Exhibit J.

29. In response, I sent e-mail correspondence to plaintiff's counsel and National's counsel suggesting that the extension of time/briefing schedule for Quantum's pending summary judgment motion be addressed in the Amended Scheduling Order. A copy of my July 24, 2008 e-mail to National's and plaintiff's counsel is annexed hereto as Exhibit K. However, rather than promptly responding, plaintiff ignored the e-mails from both defendants.

30. Because we did not hear from plaintiff's counsel by July 29, 2008, and becoming extremely concerned that defendant's extension request to the court had not been submitted because of plaintiff's counsel's lack of cooperation, I sent a letter to plaintiff's counsel via facsimile and a separate message via e-mail again confirming plaintiff's counsel's July 22, 2008 written consent, requesting that we agree on a briefing schedule for the motion and seeking to include said schedule in the Amended Scheduling Order. Copies of my July 29, 2008 e-mail and letter to plaintiff's counsel are annexed hereto as Exhibit L.

31. It was not until July 30, 2008, in the late afternoon, when **plaintiff's counsel finally responded to me, and agreed to execute a stipulation extending PLH's time to file its opposition to plaintiff's summary judgment motion in order to conduct discovery until September 5, 2008.**

32. At long last, plaintiff executed the Stipulation, but the e-mail forwarding it did not arrive until approximately 5:00 P.M. I actually received the e-mail between fifteen ("15") and thirty ("30") minutes later. A copy of plaintiff's counsel's July 30, 2008 e-mail and the fully executed Stipulation are annexed hereto as Exhibit M. However, before we could e-file the Stipulation, the Court notified us via e-filing notification that plaintiff's summary judgment motion had been granted on default. A copy this Court's Order granting plaintiff's motion for summary judgment is annexed hereto as Exhibit N.

33. Finally, as soon as it received the decision, on July 31, 2008, defendant submitted a letter to the Court which explained the reasons for the delay, attached the consent stipulation to extend time to answer, and requested an out of time extension of defendant's time to respond to Quantum's motion for summary judgment. A copy of the July 31, 2008 letter to the Court is annexed hereto as Exhibit O.

WHEREFORE, we respectfully request that the within motions be granted, as well as such other and further relief as may be just and proper.

Dated: New York, New York
August 5, 2008

_____
Scott H. Goldstein