UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

                           Plaintiff,

-against-

WESTWOOD DESIGN/BUILD
INCORPORATED, DAVID R. WARFIELD,
NATIONAL CITY MORTGAGE, INC. and PENN
LYON HOMES CORPORATION

                           Defendants.

------------------------------------------------------------x

NATIONAL CITY MORTGAGE,

                           Third-Party Plaintiff

-against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD
BROWN,

                           Third-Party Defendant

Docket No. 08 CV 00539(LAK) (HBP)

**DEFENDANT PENN LYON HOMES CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE JUDGMENT, FOR RECONSIDERATION AND TO EXTEND ITS TIME TO FILE OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION OUT OF TIME**

BONNER KIERNAN TREBACH & CROCIATA, LLP
Attorneys for Defendant
Penn Lyon Homes Corporation
Empire State Building, Suite 3304
New York, New York 10018
(212) 268-7535

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of defendant Penn Lyon Homes Corporation ("PLH") in support of its motion (1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6) (i.e. vacate entry of default judgment); (2) to alter or amend Judgment and/or for reconsideration of the Court's Order granting summary judgment against PLH and in favor of plaintiff Quantum Corporate Funding, Ltd ("Quantum") pursuant to Fed R. Civ. P. 59(e) and Local Civ. R. 6.3 (without having had an opportunity to be heard on the merits); (3) for an extension of time to file opposition to plaintiff's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of plaintiff's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

With respect to the Rule 60(b)(1) and (6) motion, the arguments set forth below along with the affidavit of Scott H. Goldstein, Esq. in support of the motion establish that (1) there was excusable neglect for PLH's failure to timely file its opposition to Quantum's motion for summary judgment, (2) PLH has meritorious defenses to Quantum's claims that PLH was unjustly enriched and/or committed conversion, and (3) Quantum will not be prejudiced by the granting of relief from this Order. On that basis and the arguments set forth below, PLH's motion to vacate the summary judgment order that was entered on default should be granted and the Court should either permit PLH to file an opposition to plaintiff's motion for summary judgment out of time or vacate the order granting summary judgment in favor of Quantum on the grounds that Quantum cannot establish a cause of action for unjust enrichment and conversion against

1

PLH at this juncture in the case. Indeed, Quantum cannot conclusively prove that it owned the funds that it claims PLH converted or was unjustly enriched by. Quantum's motion is premature pending the completion of discovery and the determination of whether Quantum actually owned the subject funds.

Likewise, PLH's motion for reconsideration of this Court's Order granting summary judgment should be granted as well. Based on a review of the undisputed facts and documents submitted by Quantum within its motion for summary judgment, PLH respectfully submits that the Court overlooked and improperly applied the facts contained in documents submitted as Exhibits to the plaintiff's original motion to the applicable law in granting plaintiff's motion for summary judgment. In short, even conceding (for the purpose of this motion only) that all of the facts contained in plaintiff's motion were undisputed, plaintiff has failed to satisfy the elements for a *prima facie* cause of action for unjust enrichment or conversion.

In the alternative, PLH also submits that its failure to timely submit an opposition to Quantum's summary judgment motion was the result of excusable neglect, and on that basis, has made a sufficient showing of entitlement to an extension of time to file opposition to plaintiff's summary judgment motion, out of time.

## STATEMENT OF FACTS

The facts in support of the instant motions to vacate the judgment pursuant to Fed R. Civ. P. 60(b)(1), for reconsideration pursuant to Local Civil Rule 6.3, and for an out of time extension of time to respond to plaintiff's motion for summary judgment motion are set forth in the affirmation of Scott H. Goldstein, Esq., affirmed on August 4, 2008, and are incorporated herein.

## ARGUMENT

### POINT ONE

**PLH'S FAILURE TO FILE OPPOSITION TO QUANTUM'S SUMMARY JUDGMENT MOTION WAS A RESULT OF EXCUSABLE NEGLECT, PLH HAS MERITORIOUS DEFENSES TO THE MOTION AND QUANTUM WILL SUFFER NO PREJUDICE FROM THE GRANTING OF THIS MOTION. THEREFORE, THIS COURT'S ORDER GRANTING SUMMARY JUDGMENT WITHOUT OPPOSITION SHOULD BE VACATED .**

### A)    PLH's Failure to File Opposition to Quantum's Summary Judgment Motion Constituted Excusable Neglect.

As set forth at great length within the affirmation of Scott H. Goldstein, Esq. in support of the motion, PLH's counsel went to great lengths to seek an extension of time to file opposition to Quantum's summary judgment motion well before the Court's deadline for serving an extension request, **received Quantum's consent through e-mail correspondence on July 22, 2008 and obtained an executed Stipulation for adjournment of the motion for summary judgment from plaintiff on July 30, 2008.** However, after plaintiff initially consented to the extension request, and despite PLH's counsel's numerous efforts via e-mail, telephone, regular mail and facsimile, PLH's counsel was unable to reach plaintiff's counsel to finalize a briefing schedule and submit an appropriate Stipulation to the Court, as required by this Court's individual practices. As such, defendant's failure to timely file opposition was the result of "excusable neglect," inadvertence or mistake.

Rule 60(b)(1) provides that

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect....

Fed.R.Civ.P. 60(b)(1). Rule 60(b)(1) uses the word "may," and hence "[i]t is within the court's broad discretion to grant relief under Rule 60(b)." *Mazzone v. Stamler,* 157 F.R.D. 212, 214 (S.D.N.Y.1994) (citing *Nemaizer,* 793 F.2d at 61-62).

In considering whether to vacate a default judgment, courts consider "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 171 (2d Cir.2001). **In conducting this three-factor analysis, the court must resolve all doubts in favor of the party seeking relief from judgment in order to facilitate resolution of the dispute on the merits.** *Martha Stewart Living Omnimedia LLC v. Beers Flower Shop, Inc.,* 1998 U.S. Dist. LEXIS 14738, at *7 (S.D.N.Y. Sept. 21, 1998) (emphasis added). In applying the test, the court need be mindful of the Second Circuit's preference "that litigation disputes be resolved on the merits, not on default." *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995). **Indeed, since default judgment is an extreme sanction, it "must remain a weapon of last, rather than first, resort."** *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) (emphasis added).

Wilfullness, in the context of a default, typically "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *see also New York v. Green,* 420 F.3d 99, 104-05 (2d Cir.2005). "[I]t is sufficient that the defendant defaulted deliberately." *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d Cir.1998). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *See, e.g., American Alliance [Ins. Co., Ltd. v. Eagle Ins. Co.],* 92 F.3d [57]at 60-61 [(2nd Cir.1996)].

A district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001). "[T]he inquiry into whether a failure to abide by a specified time constraint constitutes 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. IBM Corp.*, 148 F.3d 63, 66 (2d Cir.1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

### 1) Plaintiff Suffers No Prejudice By Vacating The Default on Summary Judgment.

Based on the facts set forth below, PLH's failure to file opposition to plaintiff's summary judgment motion was the result of "excusable neglect" and should be vacated pursuant to Rule 60(b)(1).

As an initial matter, Quantum will suffer absolutely no prejudice by vacating the default and permitting PLH to either respond to the motion on its merits or allow PLH the requested extension of time to allow the parties to complete the discovery process before responding to the summary judgment motion. **Indeed, plaintiff expressed consent to permit PLH additional time to respond to the motion on three separate occasions, most recently via signed stipulation on July 30, 2008 and also by July 22, 2008 e-mail.** Also, plaintiff will not be prejudiced because no discovery has been taken or completed in this action and based on the recently agreed to Amended Scheduling Order, plaintiff's deadline to file summary judgment motions will be October 9, 2008.

Lastly, as set forth more fully below, defendant PLH has meritorious defenses to the plaintiff's claim. As such, for the above reasons, PLH respectfully submits that plaintiff Quantum will not be prejudiced by vacating the Order granting summary judgment that was granted without the Court having heard PLH's response, and permitting PLH an extension of time to file a reply after discovery is completed.

2)    **PLH's Diligently Pursued An Extension of Time To File Opposition to Plaintiff's Motion Well Before the Deadline, But Failed To Receive Cooperation From Plaintiff's Counsel In Finalizing The Terms of the Extension.**

As set forth below, counsel for PLH diligently participated in discovery, made substantial efforts to request and obtain an extension of time to reply to plaintiff's summary judgment motion well before (and after) the deadline and finally obtained consent for the extension despite plaintiff's counsel's failure to cooperate with PLH's counsel to agree on a briefing schedule and finalize the extension request.

As this Court is aware, on July 3, 2008, Quantum served its motion for summary judgment against PLH in this action.[1] At the time plaintiff's motion was filed, the parties had not yet engaged in any discovery.

Also, on July 3, 2008, PLH served plaintiff with Notices for the Depositions of Quantum employees Wilmer Russell, Maria DeSouza and Craig Sheinker for dates in July, 2008. Then, on July 16, 2008, PLH served plaintiff with its first sets of interrogatory demands and document requests. See Exhibit E to Goldstein Affirmation.

Within days of receiving the motion, counsel for PLH contacted plaintiff's counsel by telephone and requested an adjournment of plaintiff's motion in order to complete some discovery before PLH was required to file its opposition. Plaintiff's

---

[1] The motion was served late in the afternoon on July 3, 2008 (after my office was closed for the long July 4th weekend). Due to several ECF filing errors, the motion was finally deemed "filed" on July 8, 2008.

counsel advised that he was not inclined to grant the request, but needed to consult with his client. See Goldstein Affirmation, paragraph 17.

Thereafter, upon receipt of PLH's and co-defendant National City Mortgage's ("National") deposition notices, on July 11, 2008, plaintiff advised counsel for both defendants, by e-mail, that his clients would not be able to attend depositions on the noticed dates and requested that the depositions be rescheduled. Also, given the fact that the Initial Scheduling Order called for discovery to be completed by August 9, 2008, plaintiff also requested that the Amended Scheduling Order be extended by 30 days. See Exhibit F to Goldstein Affirmation. By refusing to produce Quantum's representatives on the noticed deposition dates, counsel assured that these individuals could not be deposed prior to the summary judgment return date. See Goldstein Affirmation, paragraphs 20, 21.

After not hearing from plaintiff's counsel since their initial telephone conversation when PLH initially requested an adjournment, and responding to plaintiffs' counsel's July 11, 2008 e-mail, counsel for PLH sent an e-mail correspondence to plaintiff's counsel agreeing to adjourn the depositions provided that the parties enter into a briefing schedule to adjourn the pending summary judgment motion to allow Penn Lyon sufficient time to complete the outstanding discovery before filing its opposition. See Exhibit G to Goldstein Affirmation.

On July 15, 2008, PLH's counsel again spoke to plaintiff's counsel by telephone. At that time, plaintiff's counsel advised that he would not necessarily agree to a lengthy extension of time for PLH to respond to allow it to conduct discovery for the motion, but, **he expressly consented to a brief adjournment of the motion to submit opposition to**

7

**the motion.**[2]  Plaintiff's counsel also advised that he would be out of the office until July 21, 2008 because of cataract surgery.  See Goldstein Affirmation, Paragraph 23.

Knowing that PLH's time to file a either a consent stipulation with briefing schedule or a letter request for an adjournment without consent in accordance with this Court's individual practices was running short, on July 21, 2008, PLH's counsel sent a follow up e-mail to plaintiff's counsel requesting a response to its request for an adjournment and briefing schedule.  See Exhibit H to Goldstein Affirmation.

Finally, on July 22, 2008, plaintiff's counsel sent e-mail correspondence addressed to both defendants' counsel stating that he was "amenable to your requests" and "will respond to your respective discovery demands."  See Exhibit I to Goldstein Affirmation.

Since PLH's only request to plaintiff was for an extension of time to file opposition to Quantum's motion for summary judgment, its counsel interpreted the e-mail as consent for an extension of time to respond to the motion.  Nonetheless, even with consent, this Court's individual practices still required that a consent adjournment request contain a briefing schedule and, in the July 22, 2008 e-mail, plaintiff was still not able to provide dates to PLH for Quantum's witnesses to be deposed nor did counsel agree to a briefing schedule.  Therefore, at that time, it was impossible for PLH to comply with the Court's individual rules and provide a briefing schedule with the consent extension request.  See Goldstein Affirmation, Paragraph 26.

But for PLH's receipt of plaintiff's e-mail consenting to extend its time to answer the summary judgment motion, PLH was prepared to submit correspondence to the Court

---

[2] Mr. Kobroff's August 1, 2008 letter to the Court refreshed counsel's recollection about the conversation that day, however, counsel neglected to mention that he expressed willingness to consent to a short extension of time for PLH to respond to the motion.

requesting an extension, without consent, by letter as mandated by the Court's individual rules. See Goldstein Affirmation, Paragraph 27.

In accordance with the parties' prior e-mail agreements, by e-mail dated July 24, 2008, co-defendant National circulated a proposed Amended Scheduling Order seeking to extend all existing dates in the initial scheduling order by one month. See Exhibit J to Goldstein Affirmation.    In response, PLH's counsel sent e-mail correspondence to plaintiff's counsel and National's counsel suggesting that the extension of time/briefing schedule for Quantum's pending summary judgment motion be addressed in the Amended Scheduling Order. See Exhibit K to Goldstein Affirmation.  However, instead of a prompt response, plaintiff ignored the e-mails from both defendants and evaded PLH's inquiry. See Goldstein Affirmation, Paragraph 29

PLH did not hear from plaintiff's counsel by July 29, 2008 and became extremely concerned about the delay in submitting the extension request to the Court. Disturbed by plaintiff's counsel's lack of cooperation, and knowing that time had elapsed since the date PLH's papers were due, PLH's counsel sent correspondence to plaintiff's counsel via facsimile and e-mail again requesting that the parties agree on a briefing schedule for the motion and to include said schedule in the Amended Scheduling Order. See Exhibit L to Goldstein Affirmation.

Finally, in the late afternoon on July 30, 2008, and eight days after initially consenting to the adjournment, plaintiff's counsel finally responded to PLH and agreed to execute a stipulation extending PLH's time to file opposition to plaintiff's summary judgment motion in order to conduct discovery until September 5, 2008. See Goldstein Affirmation, Paragraph 32. Soon thereafter, plaintiff executed the Stipulation. However,

the e-mail was not sent until approximately 5:00 P.M and PLH's counsel did not receive it until approximately fifteen ("15") to thirty ("30") minutes later. See Exhibit M to Goldstein Affirmation

Unfortunately for PLH, before its counsel could e-file the Stipulation, the Court sent e-notification that plaintiff's summary judgment motion had been granted without PLH's opposition. See Exhibit N to Goldstein Affirmation.

As shown above, PLH's counsel made substantial efforts to secure the extension and comply with this Court's individual practices to submit a stipulation with a briefing schedule and to advise the Court of the extension. Moreover, PLH did not ignore the motion in any respect and fully intended to vigorously oppose the motion with the benefit of needed discovery. Plaintiff's counsel's week out of the office for cataract surgery also substantially contributed to the delay in securing consent for the extension. Lastly, but for plaintiff's counsel's mixed messages concerning his agreement to adjourn the motion but lack of clarity concerning a new scheduling order, defense counsel would have simply submitted a letter requesting the adjournment without consent as required by the Court's individual practices.

In addition, immediately upon receiving the Court's Order entering summary judgment on default, on July 31, 2008, defense counsel submitted a letter to the Court which explained the reasons for the delay, attached the consent stipulation to extend time to answer, and requested an out of time extension of defendant's time to respond to Quantum's motion for summary judgment. See Exhibit O to Goldstein Affirmation.

As explained, PLH's conduct was extremely diligent in pursuing an extension before the deadline and has a substantial satisfactory explanation for the delay in

obtaining an executed consent stipulation, and its conduct was merely negligent or careless and not egregious.

### 3) The Duration of PLH's Delay In Obtaining A Consent Stipulation Was Brief.

Both parties agree that PLH's deadline to file its opposition was July 21, 2008. Plaintiff's counsel indicated he would consider consenting to a short adjournment on July 15, 2008, but was then out of the office from July 16 – July 21. On July 21, PLH followed up with plaintiff's counsel regarding his representation that he would consider granting a short extension. On July 22, 2008, PLH received plaintiff's e-mail providing consent for an extension, but the length of the extension or briefing schedule was not finalized. Then, for the next eight days, while PLH made efforts to contact plaintiff's counsel to finalize a briefing schedule, plaintiff's counsel ignored these efforts. In short, the duration of the delay was a little over one week, and during that delay, PLH was making diligent efforts to obtain an appropriate Stipulation with a briefing schedule in accordance with the Court's rules.

### 4) PLH Acted In Good Faith In Attempting to Timely Seek An Extension of Time To Respond To Plaintiff's Summary Judgment Motion.

There cannot be a dispute that PLH made diligent efforts since the motion was filed to obtain an extension of time to respond to plaintiff's motion. These efforts began long before PLH's opposition was due and attempts to obtain the extension were doggedly and consistently pursued until plaintiff finally executed a Stipulation on July 30, 2008. PLH also was participating in the discovery process during this time by serving deposition notices, interrogatories and discovery demands and agreeing to extend the scheduling order.

5)    **Conclusion**

Based on the above facts, defendant has satisfied all of the elements for establishing that its failure to timely file its opposition to plaintiff's summary judgment was the result of excusable neglect. Critically, the parties, most notably Penn Lyon, had been actively working on a briefing schedule and an adjournment of the motion for several weeks and plaintiff actually executed a Stipulation extending Penn Lyon's time to respond to the motion. Penn Lyon did not ignore the pending summary judgment motion at any time and took numerous steps to finalize a briefing schedule for the motion.

**B.    PLH Has a Complete Meritorious Defense to Plaintiff's Claims of Conversion and/or Unjust Enrichment**

PLH has a complete meritorious defense to plaintiff's claims of conversion and/or unjust enrichment which should have precluded a grant of summary judgment.

This Circuit has long held that it does not take much to establish a meritorious defense for purposes of vacating a default judgment. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 166 (2d Cir.2004) (quoting *McNulty,* 137 F.3d at 740) (internal quotation marks omitted); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d Cir.1993) ("A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense."); *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320-21 (2d Cir.1986) ("[T]he moving party on a motion to reopen a default must support its general denials with some underlying facts."). *Pecarsky v. Galaxiworld.com Ltd., supra,* 249 F.3d at 173. *See also*

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., supra,* 92 F.3d at 61, *quoting Anilina Fabrigue de Colorants v. Aakash Chemicals & Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir.1988) (" '[a] defense is meritorious if it is good at law so as to give the fact-finder some determination to make" ').

PLH's meritorious defense to plaintiff's claims of unjust enrichment and conversion turns on a determination of whether plaintiff was the "owner" of the $112,168.28 that was wired to PLH. We respectfully submit that, at this juncture of the litigation, without any discovery having been completed, the Court, as a matter of law, could not possibly determine whether Quantum owned the funds that PLH received, or whether PLH was "enriched" at Quantum's expense because this determination is contingent on the Court's determination as to whether Quantum is entitled to receive the benefit of its assignment agreement with Westwood and collect payment from National on the $347,000 invoice that it purchased.

> **1)     At This Juncture of the Case, It is Impossible for Plaintiff to Establish, as a Matter of Law, that PLH Was "Enriched" at Its Expense.**

In order to state a claim for unjust enrichment under New York law, plaintiff must show that (1) defendant was enriched, (2) the enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Dolmetta v. Uintah Nat'l Corp.* 712 F.2d 15, 20 (2d Cir. 1983), Weisberg v. Smith, 401 F. Supp 2d. 359, 362 (S.D.N.Y 2005).

Indeed, PLH's meritorious defense involves the second element to establish a cause of action for unjust enrichment. New York law is fairly well settled that a claim for unjust enrichment will only lie where the defendant possesses money or received a

benefit which in equity and good conscience the defendant should not retain because it *belongs to the plaintiff.* See *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 797 F.2d 70, 79 (2d Cir. 1986), *Martes v. USLIFE Corp.,* 927 F. Supp. 146, 149 (S.D.N.Y. 1996), *Mayer v. Josiah Wedgewood & Sons, Ltd.,* 601 F. Supp. 1523, 1536 (S.D.N.Y. 1985).

Critically, plaintiff's motion for summary judgment on the grounds that PLH was unjustly enriched is premature. At this juncture of the litigation, Quantum cannot establish facts that conclusively prove that the money PLH received belonged to Quantum. The undisputed facts submitted by plaintiff in support of its motion for summary judgment reflect that, assuming Quantum is legally entitled to recover the Invoice proceeds from National, Quantum did not have a possessory interest in the money that was paid to PLH pursuant to the Agreement.

"To be enforceable, a contract must be supported by valid consideration." See *Startech, Inc. v. VSA Arts* 126 F.Supp.2d 234 (S.D.N.Y.,2000), *Banque_Arabe et Internationale D'Investissement v. Bulk Oil (USA) Inc.,* 726 F.Supp. 1411, 1419 (S.D.N.Y.1989). Valid consideration "can be either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor." *Roth v. Isomed, Inc.,* 746 F.Supp. 316, 319 (S.D.N.Y.1990); *see Holt v Feigenbaum,* 52 N.Y.2d 291, 299-300 (1981). "It can also be understood as a bargained for exchange." *Banque Arabe,* 726 F.Supp. at 1419. Even consideration of the most minimal value is valid; the "proverbial peppercorn" is sufficient. *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 445 (1982). "Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee." *Id.*

14

The money paid to PLH was properly paid to it by Westwood pursuant to Westwood's receipt of the proceeds from its valid and enforceable assignment Agreement with Quantum. As part of the Agreement, Westwood directed that part of the funds due to it ($112,168.12) under the Agreement be paid directly to PLH.[3] **Westwood was able to direct that funds be distributed in this manner because it owned the funds pursuant to the assignment Agreement which was supported by good and valid consideration, namely, the purchase of the $347,000 Invoice from National for $242,900.00 cash from Quantum.**

Plaintiff's breach of contract claims against National is still pending and no discovery has been commenced. On that basis, it has yet to be determined whether Quantum will be able to recover the $347,000 it claims is due and owing from National. Indeed, the conversion/unjust enrichment claims against PLH are merely alternative theories of liability in the event that Quantum cannot recover the benefit of its bargain from its assignment agreement with Westwood from National.

The undisputed material facts set forth in plaintiff's motion for summary judgment support this defense. Plaintiff entered into an assignment agreement with Westwood to purchase an invoice which Westwood represented was monies due it from defendant National pursuant to its second draw-down of the Pollydore's business loan. See Exhibit B to Goldstein Affirmation.

---

[3]      PLH had instituted litigation against Westwood, in Maryland, arising out of a contract between PLH and Westwood for the production and manufacture of modular custom-built home units to be delivered to 14101 Old Stage Road, Bowie, Maryland, owned by Mr .Samuel J. Harris. Westwood represented to PLH that the $112,168.28 funds wired by Quantum to PLH, at issue in this case, constituted partial payment of amounts due in connection with the "Harris" Project. To this date, PLH has not been fully compensated for the Harris Project.

Plaintiff contacted National to confirm that the invoice was correct and sent National a proposed estoppel certificate covering the Invoice. Mr. Washburn, of National signed the estoppel certificate in the amount of the $347,000 second draw-down of the Pollydore construction loan and returned it to Quantum. This verified and guaranteed to Quantum that the invoice was valid and correct. Quantum readily admits that it agreed to purchase the invoice from Westwood in reliance on the estoppel certificate signed by National. See Goldstein Affirmation, Paragraphs 8-9.

If Quantum is able to recover $347,000.00 from National on its breach of contract claim based on the assignment of the invoice and enforcement of the estoppel certificate, it cannot recover from PLH, because its assignment Agreement with Westwood was valid because it was supported by sufficient consideration, namely the $347,000.00. In that instance, pursuant to the Agreement, the $242,900.00 that Quantum paid to Westwood was lawfully Westwood's money to do with as it chose. As set forth in the Agreement and admitted by Quantum, Westwood chose to have Quantum wire $112,168.28 of Westwood's money due under the assignment agreement to PLH. Under these circumstances, plaintiff did not have a possessory interest in the funds sent to PLH and therefore could not be unjustly enriched.

In short, the plaintiff has two separate causes of action and cannot collect on both of them. It has sued National to collect on the Invoice it purchased from Westwood and has claimed that PLH has converted or been unjustly enriched by receipt of funds paid to it pursuant to a likely valid contract supported by consideration. Quantum cannot legally prevail against National and still have a valid cause of action for unjust enrichment and/or conversion against PLH because, under those circumstances, the money PLH received

was not owned by Quantum, but rather by Westwood, pursuant to their legally binding assignment agreement.

In other words, judgment cannot and should not be entered against PLH unless and until the issues of material fact are determined regarding Quantum's claim against National which, if proven, will establish that Quantum received valid consideration for its $242,900.00 payment to Westwood for entering into the assignment Agreement.

Accordingly, based on the above arguments, plaintiff presently has a meritorious defense to the plaintiff's unjust enrichment claim.

### 2) Plaintiff Cannot Establish, As a Matter of Law that PLH Converted Its Funds

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Traffix, Inc. v. Herrold*, 269 F.Supp.2d 223, 228 (S.D.N.Y. 2003) (citing *Peters Griffin Woodward, Inc. v. WCSC, Inc.* 452 N.Y.S.2d 599, 600 (1st Dep't 1982)

To prevail on a claim of conversion in New York, a plaintiff must show: (1) title or right to possession in the specific property converted, (2) the denial or violation by defendant of the plaintiff's dominion, rights, or possession of that property, and (3) damages. *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415 (1983). New York law recognizes an action for the conversion of money. Plaintiff must show that it had "an immediate superior right of possession to the identifiable fund and the exercise by defendants of unauthorized dominion over the money in question to the exclusion of plaintiff's rights." *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 385, 590 N.Y.S.2d 201 (1st Dept.1992). At this juncture of the litigation, Quantum cannot establish facts that conclusively prove that it had an

17

immediate superior right of possession to the money that PLH received before the "conversion."

Like the meritorious defense for unjust enrichment, any determination of whether plaintiff owned the $112,268.28 before PLH received it is contingent upon a determination of whether Quantum is entitled to receive the benefit of its assignment agreement with Westwood, namely, payment of the $347,000.00 invoice from National. If Quantum is entitled to recover from National, it would have received valid consideration from Westwood constituting an enforceable contract. Therefore, Quantum did not own the money received by PLH. See *Traffix*, 269 F. Supp. 2d at 228 (*citing ESI, Inc. v. Coastal Power Prod, Co.*, 995 F. Supp. 419 (S.D.N.Y. 1996)). Similarly, if Quantum is able to recover from National, Quantum would be barred from also recovering from PLH too, as it would constitute a double recovery/windfall.

Conversely, the only way that plaintiff can establish that it had an immediate superior right of possession of the $112,268.28 before PLH received it is to take the position that that its assignment Agreement with Westwood is invalid and/or void as unsupported by sufficient consideration. Under those circumstances, plaintiff would be no longer be the owner of the Invoice, and could be precluded, as a matter of law from recovering the $347,000.00 owed on the Invoice by National.

As also discussed in the unjust enrichment argument, if proven at trial that plaintiff is entitled to recover the full amount of National's invoice, Quantum's agreement with Westwood would be valid and enforceable because it was supported by sufficient consideration. In that instance, Quantum transferred ownership of the $242,900.00 to Westwood in exchange for the right to collect on the $347,000.00 invoice from National.

Westwood, in turn, chose to distribute $112,168.28 of its proceeds from the valid and enforceable agreement to PLH. Under these facts, Westwood, not Quantum, owned the $112,168.28 before it was transferred to PLH.

Either way, because no discovery has been completed and Quantum's claim against National is still pending, there has been no determination of whether Quantum will be able to recover on National's invoice. Judgment should not, and could not be entered against PLH until there is a determination of whether Westwood's consideration for the assignment agreement with Quantum supports the validity of the agreement. In other words, issues of material fact exist regarding whether Quantum received valid consideration for its $242,900.00 payment to Westwood for entering into the assignment Agreement.

Accordingly, based on the above arguments, defendant presently has a meritorious defense to the plaintiff's conversion claim.

**POINT TWO**

**PLH IS ENTITLED TO RECONSIDERATION OF THE MOTION FOR SUMMARY JUDGMENT BECAUSE THE COURT OVERLOOKED THE FACT THAT PLAINTIFF'S MOTION DID NOT CONTAIN SUFFICIENT FACTS TO ESTABLISH AS A MATTER OF LAW THAT PLH CONVERTED OR WAS UNJUSTLY ENRICHED BY ITS RECEIPT OF THE $112,168.28 WIRED TO IT BY QUANTUM IN ACCORDANCE WITH THE QUANTUM/WESTWOOD ASSIGNMENT AGREEMENT**

PLH is entitled to alteration and/or amendment of the judgment and reconsideration of this Court's Summary Judgment Order pursuant to Fed R Civ. P. 59(e) and Local Civil Rule 6.3 because the Court overlooked facts contained in the motion and the applicable law in ruling, as a matter of law, that PLH was unjustly enriched or

committed conversion when it received a wire payment in the amount of \$112,168.28 from Quantum pursuant to Quantum's assignment Agreement with Westwood.

The arguments in support of reconsideration are essentially the same as those set forth within PLH's arguments to establish meritorious defenses to plaintiff's claims within its motion to vacate the judgment. In the interest of judicial economy, we will not repeat the arguments in the same level of detail as set forth above.

In short, because Quantum's claims of conversion and unjust enrichment require proof that Quantum "owned" the funds before wiring them to PLH, the Court overlooked an examination and analysis of the Quantum/Westwood Assignment Agreement and failed to consider or determine whether the Agreement was supported by sufficient consideration. Thus, Quantum's summary judgment motion was premature because this question turns on whether Quantum can enforce the Invoice it received from National. It is currently undetermined whether the Invoice is enforceable because no discovery has taken place and Quantum is still litigating this claim against National. If the invoice is enforceable, plaintiff cannot collect from PLH on an unjust enrichment or conversion theory because it would have received sufficient consideration validating the agreement. In that instance, Quantum would have no cause of action against PLH because Quantum would have received the benefit of its bargain with Westwood and Westwood would have been the rightful owner of the funds that Quantum wired to PLH per Westwood's request.

Generally, motions for reconsideration are granted when 'the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' " *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003) (quoting *Shrader,* 70 F.3d at 257). Such

motions should be granted where necessary "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004).

The Second Circuit has noted that the fact that there has been no response to a summary judgment motion does not mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed.R.Civ.P. 56(c)).

A district court also "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001). It has similar discretion also to grant extensions of time. Fed.R.Civ.P. 6(b). It is admonished by Fed.R.Civ.P. 1 to construe the rules of procedure "to secure the just, speedy, and inexpensive determination of every action

Based on the arguments set forth at great length above in our discussion of PLH's meritorious defenses to Quantum's conversion and unjust enrichment actions against PLH, reconsideration should be granted to correct a clear error of law and prevent manifest injustice to PLH. Even though PLH inadvertently failed to submit opposition papers to the motion (for the various reasons set forth above), the facts, documents and legal arguments submitted by Quantum were insufficient to establish that PLH converted or was unjustly enriched by the receipt of funds sent by Quantum to PLH in accordance with a valid Assignment Agreement between Westwood and Quantum that was supported by consideration.[4]

---

[4] PLH contends that the failure to submit opposition to plaintiff's motion was the result of excusable neglect argued in detail in the points in support of PLH's motion to vacate the judgment.

It is still as of yet undetermined whether Quantum is entitled to recover the proceeds of the National Invoice which served as consideration for the contract. If Quantum prevails against National, the consideration for the assignment agreement was valid and plaintiff cannot then seek recovery against PLH for conversion and/or unjust enrichment because it did not have an immediate superior right of possession to the identifiable fund, *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 385, 590 N.Y.S.2d 201 (1st Dept.1992), and PLH did not possess money or receive a benefit which in equity and good conscience the defendant should not retain because it *belongs to the plaintiff.* See *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 797 F.2d 70, 79 (2d Cir. 1986). Assuming there was valid consideration for the agreement, Westwood owned the funds it received from Quantum and lawfully directed said funds to be paid directly to Penn Lyon. On that basis, the Court committed clear error in determining that Quantum submitted sufficient facts to support a finding that PLH either converted or was unjustly enriched by the funds that Quantum wired to it pursuant to the express terms of the Westwood/Quantum assignment agreement.

As such, for the foregoing reasons, as well as those set forth in support of PLH's motion to vacate the summary judgment order obtained via default, PLH's motion for reconsideration should be granted, and upon reconsideration, Quantum's summary judgment motion should be denied.

## POINT THREE

## PLH'S EXTENSION REQUEST OUT OF TIME SHOULD BE GRANTED BECAUSE THE DELAY IN SUBMITTING IT WAS THE RESULT OF "EXCUSABLE NEGLECT"

Courts are empowered to grant extensions of time in purely procedural matters upon a showing of "excusable neglect" pursuant to Fed.R.Civ.P. 6(b)(2). Excusable neglect is an "elastic concept," which "may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 135 (2d Cir.1998). The concept is also "broad enough to encompass even those omissions caused by circumstances within movant's control," although "a movant must show good faith and a reasonable basis for noncompliance." *Id.*

As shown in extensive detail above, PLH's failure to timely submit opposition to Quantum's summary judgment motion was inadvertent. Diligent efforts were taken to secure the extension in a timely manner. Consent for the extension was received in writing on July 22, 2008, but PLH was unable to obtain a response to its numerous requests to plaintiff's counsel for a briefing schedule, which is required by this Court's individual practices to be part of any consent stipulation for an adjournment.

As also set forth above, PLH has established that it acted in good faith and has a reasonable excuse for its non-compliance. As such, we respectfully request that this court grant PLH's motion for an extension of time pursuant to Fed R. Civ. P. 6(b)(2).

## POINT FOUR

**PLH IS ENTITLED TO A STAY OF PLAINTIFF'S SUMMARY JUDGMENT MOTION TO ALLOW DISCOVERY TO PROCEED ON QUANTUM'S CLAIM AGAINST NATIONAL WHICH MAY HELP DETERMINE WHETHER QUANTUM WAS THE OWNER OF THE FUNDS IT WIRED TO PLH**

Rule 56(f) of the Federal Rules of Civil Procedure provides that,

[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

23

Fed.R.Civ.P. 56(f).

Under Fed.R.Civ.P. 56(f), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (internal quotation marks and citations omitted) (alteration in original).

As set forth in detail above, and in the Goldstein Affirmation, based on the arguments set forth herein, PLH cannot adequately oppose the motion for summary judgment because insufficient discovery has taken place. Depositions of Quantum representatives and National representatives are necessary to determine whether the Invoice that Westwood assigned to Quantum as part of the Assignment Agreement between the parties constituted adequate consideration to bind the parties to an enforceable contract. If the contract was enforceable, then Westwood, not Quantum was the owner of the funds and/or had immediate superior possessory interest in the funds before they were wired to PLH.

Considerable efforts were made by PLH to secure this discovery prior to and during the pendency of the motion. Deposition notices were served on July 3, 2008, document demands and request for interrogatories were served on plaintiff on July 16, 2008. The parties entered into a consent order extending the discovery period and plaintiff belatedly executed a stipulation adjourning the motion for summary judgment to permit PLH to conduct some discovery prior to responding to the motion. No initial

24

disclosures were ever made by Quantum and Quantum never responded to discovery served by either PLH or National. Unfortunately, we were unsuccessful in obtaining the discovery because our Stipulation was filed belatedly as a result of excusable neglect and the Court ultimately decided plaintiff's summary judgment motion without PLH having the opportunity to submit opposition.

As such, we respectfully request that the summary judgment order be vacated, and the motion be stayed pending the completion of discovery proceedings.

### CONCLUSION

For the foregoing reasons, we respectfully request that this Honorable Court grant PLH's motions 1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6); 2) to Alter or Amend Judgment and/or for reconsideration of the Court's July 30, 2008 Order granting summary judgment against PLH and in favor of Quantum; 3) for an extension of time to file opposition to plaintiff's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of plaintiff's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

Dated: New York, New York
    August 5, 2008

             Respectfully submitted,

By: _____
          Scott H. Goldstein, Esq. (SG 8333)
          BONNER KIERNAN TREBACH & CROCIATA, LLP
          Attorneys for Defendant,
          Penn Lyon Homes Corporation
          State Building, Suite 3304
          New York, New York 10118
          (212) 268-7535