UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANTUM CORPORATE FUNDING, LTD

               Plaintiff,

-against-

WESTWOOD DESIGN/BUILD INCORPORATED, DAVID R. WARFIELD, NATIONAL CITY MORTGAGE, INC. and PENN LYON HOMES CORPORATION

               Defendants.
--------------------------------------------------------x
NATIONAL CITY MORTGAGE,

               Third-Party Plaintiff

-against-

MICHAEL CONRAD, a/k/a MICHAEL CONRAD BROWN,

               Third-Party Defendant

Docket No. 08 CV 00539(LAK) (HBP)

**DEFENDANT PENN LYON HOMES CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE JUDGMENT, FOR RECONSIDERATION AND TO EXTEND ITS TIME TO FILE OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION OUT OF TIME**

                                BONNER KIERNAN TREBACH & CROCIATA, LLP
                                Attorneys for Defendant
                                Penn Lyon Homes Corporation
                                Empire State Building, Suite 3304
                                New York, New York 10018
                                (212) 268-7535

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted on behalf of defendant Penn Lyon Homes Corporation ("PLH") in further support of its motion (1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6) (i.e. vacate entry of default judgment); (2) to alter or amend Judgment and/or for reconsideration of the Court's Order granting summary judgment against PLH and in favor of plaintiff Quantum Corporate Funding, Ltd. ("Quantum") pursuant to Fed R. Civ. P. 59(e) and Local Civ. R. 6.3 (without having had an opportunity to be heard on the merits); (3) for an extension of time to file opposition to Quantum's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of Quantum's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

Based on the arguments set forth below and in its initial moving papers, PLH respectfully submits that Quantum has not set forth a prima facie case of unjust enrichment or conversion against it and that it therefore has meritorious defenses to Quantum's claims. Quantum was not the owner of and did not have a superior right of ownership over the funds that it wired to PLH in connection with its Assignment Agreement with Westwood ("Assignment Agreement") for the purchase/assignment of a construction loan Invoice (the "Invoice") representing funds purportedly due to Westwood for the construction of a home for the following reasons: (1) The Quantum/Westwood Assignment Agreement was supported by valid consideration and was enforceable because, in deciding to purchase the Invoice, Quantum relied only on its receipt of a signed estoppel certificate from co-defendant National which guaranteed the

1

Invoice's payment and (2) assuming, *arguendo,* that Quantum was fraudulently induced to enter the Assignment Agreement, it has ratified and affirmed the contract by continuing to seek enforcement of the Invoice as Westwood's assignee. Therefore, to the extent that Quantum is unable to recover the full value of the invoice from National as a result of Westwood's purported fraudulent inducement, its remedy is to seek indemnification for the lost value of the Invoice from Westwood, not PLH.

Lastly, Quantum has not opposed PLH's argument that its failure to timely file opposition papers was the result of excusable neglect. Quantum has also confirmed that PLH took considerable efforts to obtain an extension of time to file opposition to Quantum's summary judgment motion before the opposition was due, and that PLH obtained Quantum's express consent to the extension via e-mail correspondence from plaintiff's counsel and a Stipulation signed by all parties agreeing to adjourn the motion and set a briefing schedule for the motion.

## LEGAL ARGUMENT

### POINT ONE

**QUANTUM DOES NOT CONTEST THAT PLH'S FAILURE TO TIMELY FILE ITS OPPOSITION TO QUANTUM'S MOTION FOR SUMMARY JUDGMENT WAS THE RESULT OF EXCUSABLE NEGLECT.**

Quantum's memorandum of law in opposition to PLH's motion seeking vacatur of the Judgment does not contain any arguments in opposition to PLH's position that its failure to timely file opposition to Quantum's motion for summary judgment was the result of excusable neglect.

Likewise, Quantum does not specifically dispute PLH's recitation of the facts supporting its excusable neglect argument regarding its failure to file opposition to

Quantum's summary judgment motion. To the extent that Quantum submitted a copy of a letter that it had previously sent to the Court on this issue, that letter (1) confirms the numerous efforts taken by PLH to obtain an extension of time to file opposition to the motion and (2) confirms that Quantum's counsel agreed via written signed Stipulation to provide PLH with an extension of time to respond to the motion. Quantum's opposition also does not dispute the additional facts raised in PLH's papers that were not addressed in the letter.

As such, for the above reasons and those set forth in PLH's initial moving papers, PLH respectfully submits that its failure to timely file opposition to Quantum's motion for summary judgment was the result of excusable neglect.

## POINT TWO

## PLH HAS MERITORIOUS DEFENSES TO QUANTUM'S MOTION FOR SUMMARY JUDGMENT

### A. PLH Has Meritorious Defenses To Quantum's Claim Alleging Unjust Enrichment Or Conversion Against It Because Quantum's Assignment Agreement With Westwood Was Valid And Enforceable

Despite Quantum's arguments to the contrary, PLH's motion papers set forth meritorious defenses to Quantum's unjust enrichment and conversion claims. Based on the facts presented by Quantum in its summary judgment motion, and those developed during the course of discovery as well as the relevant case law set forth in both PLH's initial moving papers and below, PLH would prevail at trial. Indeed, the undisputed facts reflect that Quantum entered into a valid and enforceable Assignment agreement with Westwood because it knew that the consideration would be sufficient. Quantum readily concedes that receiving an estoppel certificate signed by co-defendant National, essentially guaranteeing that the Invoice would be paid, was a mandatory precondition

3

for Quantum to enter into the Assignment agreement with Westwood. For that reason, the Assignment agreement between Quantum and Westwood was valid and enforceable because it was supported by sufficient consideration on both sides, and Westwood, as owner of the funds, lawfully directed that certain funds be paid to PLH.

As set forth in PLH's initial moving papers "To be enforceable, a contract must be supported by valid consideration." See *Startech, Inc. v. VSA Arts* 126 F.Supp.2d 234 (S.D.N.Y.,2000), *Banque Arabe et Internationale D'Investissement v. Bulk Oil (USA) Inc.*, 726 F.Supp. 1411, 1419 (S.D.N.Y.1989). Valid consideration "can be either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor." *Roth v. Isomed, Inc.*, 746 F.Supp. 316, 319 (S.D.N.Y.1990); *see Holt v Feigenbaum*, 52 N.Y.2d 291, 299-300 (1981). "It can also be understood as a bargained for exchange." *Banque Arabe*, 726 F.Supp. at 1419. Even consideration of the most minimal value is valid; the "proverbial peppercorn" is sufficient. *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 445 (1982). "Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee." *Id.*

The facts set forth below reflect that Quantum unequivocally negotiated and bargained for consideration that it believed, with a large degree of certainty, would be valid. In fact, Quantum assured that it would receive the benefit of its bargain when it cajoled National into signing an estoppel certificate and relied on the estoppel before entering into the Assignment Agreement. Critically, the evidence adduced during the course of discovery and submitted in support of its summary judgment motion against

4

PLH shows that Quantum knew the estoppel certificate would guarantee payment of the invoice and relied on it before entering into the Assignment agreement with Westwood. Quantum explicitly admitted that it would not have entered into the Agreement without an estoppel certificate signed by National guaranteeing the validity of the Invoice.

In the "estoppel," Defendant National acknowledged that ". . . all payments on the captioned invoices are to be sent directly and solely to Quantum Corporate Funding, Ltd." and that "there are not now, nor will there be, any claims, setoffs, or defenses beyond 20% of the invoice amount(s)" See Exhibit A to Goldstein Reply Aff.

New York courts have held that assurances like this one made by National ". . . give rise to an estoppel predicated upon the actor's reliance on that assurance in purchasing the assignment." (*Quantum Corporate Funding v. L.P.G. Assocs.*, 246 A.D.2d 320, 323, 667 N.Y.S.2d 702, *lv. denied* 91 N.Y.2d 814, 676 N.Y.S.2d 127, 698 N.E.2d 956 citing *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 587-588, 446 N.Y.S.2d 917, 431 N.E.2d 278 [estoppel in pais] ).

At their depositions, two Quantum employees, Ms. Maria DeSouza, the junior account executive who handled the day to day aspects of the Westwood/Quantum Assignment agreement and Mr. Craig Sheinker, Quantum's president, both unmistakably admitted that Quantum would not have entered into the transaction with Westwood but for National executing an estoppel certificate guaranteeing that the Invoice was valid, due and owing. Ms. DeSouza's testimony was specific in this regard. She testified as follows:

Q.    ... I'm going to show you what has been previously marked as D-9 for identification, which is the December 18th letter to Mr. Washburn. Why does Quantum send this letter out?

A.    This is verification letter to – for the debtors, which in this case is National City Mortgage, for them to have something in writing letting us know that, yeah, in fact, the merchandise has been delivered, the amount shown on the letter along with the invoice is okay and it's due and owed and will be paid to Quantum Corporate Funding within the terms that shows on the letter.

Q.    And why do you have National sign the letter?

A.    Because they were the one that owed Quantum the money.

Q.    And if you didn't get someone from National to sign the letter, what would you do with respect to the agreement with Westwood?

A.    Not fund them.

Q.    You'd not fund the agreement?

A.    Correct.

Q.    And why is that?

A.    Because we need someone with an authority to let – to verify to Quantum that, in fact, merchandise has been delivered and, in fact, we will receive the money.

See Exhibit B to Goldstein Reply Aff, p. 119:24 – 121:3

Ms. DeSouza also revealed that Quantum refused to enter another Agreement with Westwood because National refused to execute an estoppel certificate for that particular transaction. She testified as follows:

Q.    And did they also do an agreement for Harris?

6

A. For Harris, which we never funded, correct.

Q. You never funded the Harris agreement?

A. Correct.

Q. With respect to the Harris Agreement, why didn't you fund the Harris Agreement?

A. Because Christopher never authorized the letter.

Q. Is there any reason why Christopher never authorized the letter – do you know why Christopher didn't authorize the letter in the Harris case?

A. No, I don't.

Q. Based on the fact that Christopher did not sign the letter, is it your testimony that that's the reason why you didn't enter into an agreement on the Harris Project?

A. Correct.

See Exhibit B to Goldstein Reply Affirmation, p. 123:17 – 124:11.

Likewise, Mr. Sheinker explicitly admitted that Quantum uses estoppel certificates to create a binding obligation upon the account debtor to make payment. See Exhibit C to Goldstein Reply Affirmation, p. 87:13-16. Mr. Sheinker further conceded that if Quantum had not received an estoppel certificate executed by National, it would not have done the transaction. See Exhibit C to Goldstein Reply Affirmation, p. 87:17 – 88:12. These admissions are consistent with and corroborate the assertions set forth in Mr. Sheinker's affidavit in support of Quantum's motion for summary judgment, in which he plainly stated that "[i]n reliance upon defendant National's estoppel certificate, Quantum agreed to purchase the invoice." See Exhibit C to Goldstein Affirmation, ¶ 9.

Throughout Quantum's entire summary judgment motion, no reference is made to Quantum's purported reliance on the PLH invoice to enter to the transaction.

As shown above, the facts establish that National's execution of the estoppel certificate was the only mandatory precondition for Quantum to enter into the Assignment Agreement with Westwood. By National signing the estoppel certificate, Quantum was satisfied that National was sufficiently obligated to make payment on the Invoice and Quantum was assured that it would receive the benefit of its bargain with Westwood. Accordingly, Quantum knew when it entered into the Assignment Agreement that it was going to be able to obtain the benefit of its bargain and was guaranteed to obtain the full value of the Invoice irrespective of any problems or fraud that may arise with respect to receiving payment on the Invoice. Along these lines, PLH's invoice had no impact upon whether Quantum purchased the National Invoice.

In addition, Quantum claims that PLH does not dispute that Quantum has made a *prima facie* showing that (i) Penn was enriched, and (ii) the circumstances are such that equity and good conscience require PLH to make restitution. That statement is inaccurate. PLH has argued here and in its initial moving papers that the Westwood/Quantum Assignment agreement was valid. To the extent that the Court agrees, and the finds that the Assignment agreement was valid and enforceable and was supported by sufficient consideration, it is self evident as PLH initially argued in its moving papers and respectfully submits again herein that because of this PLH was neither "enriched" nor required to make restitution to Quantum.

For the above reasons, PLH has offered complete meritorious defenses to the claims of unjust enrichment and/or conversion, namely that the Westwood/Quantum

8

contract was valid and enforceable because it was supported by sufficient consideration. Quantum was not fraudulently induced to enter the contract because it only entered the contract once National guaranteed the consideration by executing the estoppel certificate. Accordingly, because the Westwood/Quantum Assignment Agreement was supported by valid consideration and was not fraudulently induced, Quantum was not the owner of, nor had an immediate superior right of possession to the funds it paid to PLH.

> **B.   Even Assuming that The Assignment Agreement was Found To Have Been Fraudulently Induced by Westwood, Quantum Has Never Rescinded or Voided the Contract and Therefore Neither an Unjust Enrichment Nor Conversion Claim Lies Against PLH**

The crux of Quantum's opposition to PLH's motions is that Quantum has established *prima facie* causes of action for conversion and/or unjust enrichment against PLH because it has an immediate superior right to and/or was the owner of the funds that it sent to PLH as a result of Westwood showing it a fraudulent invoice in connection with the negotiation of the Assignment agreement between the parties. However, Quantum's legal analysis is flawed in its attempt to impose liability against PLH. In order to establish that Quantum owned or had an immediate superior right to ownership of the funds it wired to PLH, it must establish (1) that it was fraudulently induced by Westwood to enter into the Assignment agreement and (2) that it chose to rescind or void the contract. Even assuming, *arguendo*, that Quantum has satisfied the elements to establish that it was fraudulently induced to enter into the Assignment Agreement (which, as shown above, PLH respectfully and vigorously denies) Quantum has not voided or rescinded the contract and therefore has accepted the benefits of the Assignment Agreement and, therefore, can only seek damages against Westwood in the event that it does not obtain recovery of the full amount of the Invoice from National.

9

It is well-settled in New York that where a party is fraudulently induced to enter into a contract, the contract is voidable at the instance of the defrauded party. *See Kamerman v. Curtis,* 285 N.Y. 221, 225-26, 33 N.E.2d 530, 532 (1941); *Ettlinger v. National Surety Co.,* 221 N.Y. 467, 469, 117 N.E. 945, 946 (1917); *Adams v. Gillig,* 199 N.Y. 314, 317, 92 N.E. 670, 671 (1910); *Dalessio v. Kressler,* 6 AD3d 57 (2nd Dept.2004), *Mix v. Neff,* 99 A.D.2d 180, 182-83, 473 N.Y.S.2d 31, 33 (3d Dept.1984).

A "voidable contract" is one where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement Contracts § 13. Quantum, as the purportedly defrauded party would have two options: (1) it may choose to avoid the contract and return any consideration it has already received pursuant to the contract; or, (2) it may choose to affirm the contract, and sue for damages for any loss in value of the consideration received. *Ettlinger,* 221 N.Y. at 470, 117 N.E. at 946. Quantum cannot retain the consideration it has received and refuse to perform the obligations imposed upon it by the contract. *Merry Realty Co. v. Shamokin & Hollis Real Estate Co.,* 230 N.Y. 316, 130 N.E. 306. *Ferguson v. Lion Holding, Inc.,* 312 F.Supp.2d 484, 498-500 (S.D.N.Y.2004) (holding that a contract induced by fraud is voidable and that an aggrieved party must either affirm or disaffirm the contract and that the aggrieved party may not both retain benefit of contract while ignoring its obligations thereunder); *cf. Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir.1994) ("A party who has been fraudulently induced to settle a claim may either (1) rescind the settlement or (2) ratify the settlement, retain the proceeds, and institute an action to recover fraud damages."). Essentially, Quantum may rescind its purchase and sue to get its money back, or it may

10

keep the Invoice and its potential value and sue to recover loss in the value of the invoice occasioned by the purported fraud to the extent Quantum suffered any loss. Quantum cannot do both.

If Quantum chose the first option, it could have sought, *inter alia,* to recover the consideration it has paid to Westwood, which purportedly committed the fraud, pursuant to the quasi-contract theory of unjust enrichment. *Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1272 (S.D.N.Y.1991). If Quantum chose the latter option, the measure of damages is governed by the out-of-pocket rule: the loss occasioned by the fraud or the consideration paid to the party responsible for the fraud, less the value of the goods, funds or services received or, in other words, indemnity for the loss suffered through the inducement. *See Bausch & Lomb Inc. v. Bressler,* 977 F.2d 720, 729 (2d Cir.1992); *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.,* 68 N.Y.2d 954, 956 (1986), *Bazzano v. L'Oreal, No. 93 Civ. 7121, 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996)* (holding that defrauded party may either choose to void the contract and recover paid consideration on an unjust enrichment theory or affirm the contract and pursue a breach of contract remedy). *G.D. Searle & Co. v. Medicore Communications, Inc.,* 843 F.Supp. 895, 907 (S.D.N.Y.1994). Significantly, 'a party may not avoid an agreement on grounds of fraud if, after acquiring knowledge of the fraud, he affirms the contract by accepting a benefit under it.' *Barrier Sys., Inc. v. A.F.C. Enters., Inc.,* 264 A.D.2d 432, 433, 694 N.Y.S.2d 440, 442 (2d Dep't 1999)

Plaintiff Quantum's arguments and analysis in opposition to the instant motion seem to be contrary to the specific remedies for fraudulent inducement that were available to it, as set forth above. While well-settled New York law bars Quantum from

11

both rescinding the contract and seeking the return of consideration it paid and affirming the contract while retaining the proceeds, Quantum's arguments lead to no other conclusion but that it is attempting to do just that.

Quantum has alleged that it is the owner of the funds that were transferred to PLH and thus, because Westwood showed Quantum a fraudulent invoice in connection with entering into the Assignment Agreement, under a conversion theory, Quantum's right to the funds is superior to that of PLH. This argument requires the Court to infer that Quantum chose to rescind the contract and seeks the return of the consideration it paid to Westwood. If the contract were "void" or rescinded, Quantum may have had an immediate superior right to ownership of the funds over as against PLH.

However, Quantum, by virtue of its continued attempts to enforce the Invoice that was the benefit of its bargain with Westwood, has affirmed and ratified the contract by accepting the benefit of its Agreement with Westwood (the Invoice). In that regard, Quantum has argued in its Memorandum of Law in opposition to this motion that it is an assignee of the Invoice that it received from Westwood pursuant to the Agreement and would stand in the shoes of Westwood vis a vis its attempts to recover the proceeds of the Invoice from National. See Quantum Memo of Law, p. 6. Significantly, the remedies available to Quantum under a fraudulent inducement theory do not permit it to both void the contract and affirm the contract, and once Quantum accepted the benefit of the contract it cannot rescind or void it.

Irrespective of Quantum's attempts to obtain a double recovery, the record reflects that Quantum has never explicitly rescinded or sought to "void" the Assignment Agreement with Westwood. There is no evidence of any oral or written communications

12

between Quantum and Westwood where Quantum notified Westwood that it wished to rescind or void its contract, return the Invoice to them and recover the consideration it paid for the Invoice. On the contrary, Quantum has clearly retained the benefits of the Agreement and is vigorously litigating its remedies as assignee of the Invoice and seeking recovery of the full amount of the Invoice from co-defendant National by virtue of its estoppel certificate. Given the measure of damages for fraudulent inducement of a contract, if Quantum is able to recover the full value of the $347,000.00 Invoice from National, it would have no recovery against Westwood or PLH because the purported fraud did not cause Quantum any damages.

As such, even assuming for the purposes of this argument (which PLH respectfully and vigorously disputes) that Quantum has established that it was fraudulently induced into entering the Westwood/Quantum agreement, it cannot obtain the double recovery of seeking restitution of the funds it paid to Westwood and PLH and retain the benefit of owning and seeking enforcement from National related to the Invoice which was the subject of the Assignment Agreement.

Because Quantum has never specifically sought recision of or to void the Assignment agreement, PLH respectfully submits that Quantum has chosen the remedy of ratifying the Assignment Agreement and seeking enforcement from National. Under those circumstances, it can only look to Westwood for indemnity to the extent that Westwood's fraudulent inducement caused it to recover less than full value of the Invoice. Only then can Quantum seek recovery of the difference from Westwood. Consequently, under this analysis, PLH has meritorious defenses to the Quantum's causes of action for unjust enrichment and conversion, namely that Westwood's

purported fraudulent inducement did not cause Quantum any loss and to the extent that any loss was caused, Quantum's remedy is against Westwood for indemnity for the contract, not PLH for unjust enrichment or conversion.

## POINT THREE

## PLH IS ENTITLED TO RECONSIDERATION OF THE SUMMARY JUDGMENT ORDER AGAINST IT AND, UPON RECONSIDERATION, THE JUDGMENT ENTERED AGAINST IT SHOULD BE VACATED

The arguments in support of reconsideration of the grant of summary judgment in favor of Quantum are substantially similar to those set forth above and in PLH's moving papers regarding PLH's meritorious defenses to Quantum's claims of unjust enrichment and conversion.

While Quantum argues in opposition to the motions that PLH does not dispute any of the facts contained in Quantum's Rule 56.1 Statement, PLH is compelled to point out that the Rule 56.1 statement is deemed admitted as a result of its failure to submit timely opposition to the motion. With respect to its motion to vacate the judgment, PLH disputes the facts as noted above and in its initial moving papers.

PLH respectfully submits that even using the facts submitted by Quantum in support of its motion for summary judgment, Quantum cannot establish a cause of action for conversion and/or unjust enrichment against PLH. In the interest of judicial economy PLH refers the Court to its arguments above and in its initial moving papers in support of its motion for reconsideration, and incorporates them therein.

## CONCLUSION

For the foregoing reasons and the reasons set forth in PLH's initial moving papers, it is respectfully requested that this Honorable Court grant PLH's motions 1) for relief from final judgment without having filed opposition pursuant to Fed. R. Civ. P. 60(b)(1) and (6); 2) to Alter or Amend Judgment and/or for reconsideration of the Court's July 30, 2008 Order granting summary judgment against PLH and in favor of Quantum; 3) for an extension of time to file opposition to Quantum's summary judgment motion out of time pursuant to Fed R. Civ. P. 6(b)(2); and (4) for an adjournment of Quantum's motion for summary judgment to allow the parties to engage in discovery before PLH has to file its substantive opposition to the motion.

Dated: New York, New York  
       August 25, 2008

Respectfully submitted,

_[signature]_

Scott H. Goldstein, Esq. (SG 8333)  
BONNER KIERNAN TREBACH & CROCIATA, LLP  
Attorneys for Defendant,  
Penn Lyon Homes Corporation  
State Building, Suite 3304  
New York, New York 10118  
(212) 268-7535

15