UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
QUANTUM CORPORATE FUNDING , LTD.,

               Plaintiff,


      -against-                            08 Civ. 0539 (LAK)


WESTWOOD DESIGN/BUILD INCORPORATED, et al.,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


        Appearances:


               Bernard Kobroff
               GOETZ FITZPATRICK LLP
               *Attorneys for Plaintiff*


               Scott H. Goldstein
               BONNER KIERNAN TREBACH & CROCIATA, LLP
               *Attorneys for Defendant Penn Lyon Homes Corporation*


LEWIS A. KAPLAN, *District Judge.*

        On July 30, 2008, this Court granted plaintiff's unopposed motion for summary

judgment against defendant Penn Lyon Homes Corporation ("PLH"). Judgment was entered the

following day in the amount of $112,168.28 plus interest. PLH now moves to vacate the judgment

and for an extension of time within which to respond to the motion for summary judgment or for

reconsideration on the grounds that (a) its default on the motion was excusable, and (2) plaintiff in

any event did not make out a *prima facie* case for summary judgment even in the absence of responsive papers.

*Facts*

The pertinent facts here concern both the merits and the events leading to PLH's failure to file papers in opposition to plaintiff's motion.

*The Merits*

While there doubtless are factual issues as between and among various of the parties, the facts that are material to the present motion are undisputed.

Plaintiff Quantum Corporate Funding, Ltd. ("Quantum") is in the business of accounts receivable factoring and is one of the largest purchasers of contractor receivables in the United States.[1]

In or about January 2007, Mr. and Mrs. Eustace Pollydore, as owners, entered into contracts with defendants Westwood Design/Build Incorporated ("Westwood"), as contractor, and National City Mortgage, Inc. ("National"), as construction lender, for the purchase and erection of a new modular home in Lanham, Maryland.[2] Later in the year, Westwood's principal, one Warfield, approached Quantum for the purpose of attempting to raise cash by selling to it an account receivable – a purported Westwood invoice to National for a construction draw in the amount of

---

[1] Sheinker Aff. (DI 38) ¶ 3.

[2] *Id.* ¶ 4.

$347,000 said to have been payable upon the delivery of the modular home to the Pollydore site (the "Westwood Invoice").[3]  Quantum contacted National, an employee of which confirmed that the invoice was correct and executed what Quantum describes as an estoppel certificate in alleged reliance upon which Quantum agreed to take an assignment of the invoice in exchange for $242,900.[4]  In accordance with instructions from Westwood, Quantum wired $130,731.72 to Westwood and $112,168.28 to PLH, which was said to be the balance due from Westwood to PLH in respect of the Pollydore residence.[5]

In due course, Quantum sought confirmation from National that the $347,000 payment would be made to it rather than Westwood and to advise Westwood to remit to Quantum any payment it might receive from National.[6]  It proved unable, however, to contact Westwood. Further investigation revealed that no work had been done on the Pollydore residence, that PLH never had heard of the Pollydores, and that the $112,168.28 PLH Invoice was fraudulent.[7]  PLH,

---

[3]

*Id.* ¶ 5 & Ex. C.

[4]

*Id.* ¶¶ 6-8

National claims, among other things, that the "estoppel certificate" was obtained by fraud.

[5]

*Id.* ¶¶ 10-11.

Quantum suggests that the $112,268.28 was in payment of PLH invoice no. 850 to Westwood, a copy of which is attached to the Sheinker affidavit (the "PLH Invoice").  It does not, however, state explicitly where and in what circumstances it obtained this document.  In any case, PLH asserts that it never entered into any contract with Westwood in relation to a home for the Pollydores and that the PLH Invoice is bogus.

[6]

*Id.* ¶¶ 12-13.

[7]

*Id.* ¶¶ 14-17.

however, nevertheless refused to return the $112,168.28 to Quantum.[8]  Its cross-claim against Westwood contends – though it has provided no evidence of this fact – that the money was applied to a debt owed to PLH by Westwood with respect to another transaction altogether.[9]

*Prior Proceedings*

Quantum brought this action against Westwood, Warfield, National and PLH.  Insofar as it proceeded against PLH, it sought recovery of the $112,168.28 on theories of unjust enrichment and conversion.

On July 8, 2008, Quantum moved for summary judgment against PLH.  Giving effect to Fed. R. Civ. P. 6(d), answering papers were due on July 25, but none were filed.  On July 30, 2008, the Court granted Quantum's motion.  Judgment was entered accordingly.

PLH now claims, *inter alia,* that its failure to respond to the motion was a product of excusable neglect, that it has a meritorious defense and that the judgment should be vacated.  It focuses in particular on the contention that it diligently sought an adjournment of the summary judgment motion and ultimately obtained plaintiff's agreement to an extension, albeit not until it already was in default and the motion ruled upon.[10]

---

[8]

*Id.* ¶¶ 18-19.

[9]

DI 28, ¶¶ 38-43.

[10]

According to PLH's attorney, he sought an extension from plaintiff's counsel shortly after service of the motion.  Plaintiff's counsel responded that he was not inclined to agree, but that he would consult his client.  Almost two weeks later, PLH's attorney sent an e-mail to his opposite number soliciting a briefing schedule for the motion.  A few days later, Quantum's attorney expressed willingness to consent to a brief adjournment, but no agreement was concluded before the expiration of PLH's time to respond.  On July 29,

*Discussion*

PLH seeks relief from the judgment principally under Rule 60(b)(1), which provides for discretionary relief from a judgment entered as a result of, *inter alia,* excusable neglect. The pertinent factors are "whether the default was wilful, whether the moving party has a meritorious defense, and the extent of any prejudice to the non-moving party."[11] As there is no serious claim of prejudice here, the focus is on wilfulness and the existence or lack of a meritorious defense.

A.      *Wilfulness*

PLH's counsel quite plainly did not wilfully default on the summary judgment motion in the sense of wishing to have the motion decided in the absence of opposing papers. In this context, moreover, wilfullness typically "refer[s] to conduct that is more than merely negligent or careless."[12] But that does not dispose of the question.

In this case, PLH's counsel was well aware that the motion had been served and was chargeable with knowledge of when his response was due. Yet he deliberately did not file any response or, for that matter, a request that the Court grant an extension, choosing instead to pursue opposing counsel for consent that he had been warned might not be forthcoming. Thus, the failure

---

2008, by which time PLH was in default, its counsel again wrote to Quantum's attorney, who finally signed a stipulation late in the afternoon of July 30, 2008. Goldstein Aff. (DI 57) ¶¶ 16-32. By that time, the motion for summary judgment had been granted. The stipulation was filed on the following day, albeit not approved.

[11]     *Hartford Fire Ins. Co. v. Evergreen Org., Inc.,* 410 F. Supp. 2d 180, 185 (S.D.N.Y. 2006) (citing *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001)).

[12]     *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998).

to respond to the motion in a timely fashion was wilful in the sense relevant here.[13]  This conclusion, moreover, is supported by *Canfield v. Van Atta Buick/GMC Truck, Inc.,* where the Circuit held that counsel's failure to follow clear rules does not constitute excusable neglect for Rule 60(b)(1) purposes.[14]  In failing to respond to the motion or to obtain an extension before the time expired, PLH intentionally ignored perfectly clear and unambiguous requirements of civil practice.

### B.    Meritorious Defense

Turning to the remaining branch of the Rule 60(b)(1) standard, it does not take much to establish a meritorious defense for purposes of vacating a default judgment. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."[15]

PLH argues that Quantum was not entitled to summary judgment, either on the basis of unjust enrichment or conversion, for two reasons.  First, it contends that Quantum neither owned nor had a right superior to PLH's in the disputed $112,168.28, which was the property of Westwood pursuant to its contract with Quantum.  Second, it contends that Quantum, even assuming that its

---

[13]  *Hartford Fire Ins. Co.,* 410 F. Supp. 2d at 185.

[14]  127 F.3d 248, 250-51 (2d Cir. 1997); *accord In re Lynch,* 430 F.3d 600, 603-04 (2d Cir.2005).

[15]  *State Street Bank & Trust Co. v. Inversiones Errazuriz Ltda.,* 374 F.3d 158, 166 (2d Cir. 2004) (quoting *McNulty,* 137 F.3d at 740) (internal quotation marks omitted).

assignment agreement with Westwood was voidable by reason of Westwood's fraud,[16] ratified and affirmed that contract by proceeding against National. In substance, then, its position is that the $112,168.28 that Quantum wired to PLH belonged to Westwood, that Quantum did no more than deliver Westwood's property to PLH, and that Quantum is not entitled to recover those funds from PLH even if it was defrauded by Westwood. As PLH's motion presupposes that Westwood defrauded Quantum, the merit or lack of merit of PLH's defense turns on the legal sufficiency of its arguments.

### 1.    Unjust Enrichment and the Comparative Interests of these Parties

It of course is hornbook law that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other."[17] In this case, it is undisputed that Quantum, by reason of Westwood's fraud, transferred $112,268.12 to PLH for which Quantum received no benefit. As the Restatement says,

> Where the owner of property transfers it to another, being induced by fraud . . . , the transferee holds the property upon a constructive trust for the transferor, unless

---

[16]

At one point in its reply memorandum, PLH asserts that it denies that Quantum was defrauded by Westwood "[a]s shown above." DI 70, at 9. The preceding argument, however, was only that Quantum would not have gone forward with the factoring transaction but for National's estoppel certificate. PLH thus apparently implies that there could have been no fraud by Westwood because Quantum relied only on National. But that argument, if that is what is intended, is flawed. For one thing, it presupposes that reliance on National necessarily would be inconsistent with reliance on Westwood, which makes little sense. Moreover, the National estoppel certificate acknowledged only that "there are not now, nor will there be, any claims, setoffs, or defenses beyond 20% of the Invoice Amount(s)." Thus, even if PLH's premise were correct, and it is not, Quantum obviously relied upon Westwood with respect to 20 percent of the invoice amount. In short, Westwood's fraud on Quantum is plain.

[17]

RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937).

before notice of the fraud . . . , the transferee has given or promised to give value.[18] Thus, in the absence of evidence that PLH gave or promised to give value before notice of the fraud, it holds the $112,268.12 as constructive trustee for the benefit of Quantum.

A party seeking to vacate a default must present "evidence of facts that, if proven at trial, would constitute a complete defense."[19] PLH has offered no evidence that it gave value for the $112,268.12, let alone that it did so prior to notice of the fraud. The unsubstantiated assertion in its answer – that it applied the money to an unrelated debt owed to it by Westwood – is just that, an unsubstantiated assertion. In consequence, assuming *arguendo* that receipt of the funds without notice in satisfaction of an antecedent debt would have been a legally sufficient defense here, the lack of evidence that the funds were received without notice, that they were applied to another debt, and that the other debt was antecedent, precludes a conclusion that PLH on this basis has established that it has a meritorious defense.

---

[18]

*Id.* § 167; *accord,* V William F. Fratcher, Scott on Trusts § 469, at 358-59 (4th ed. 1989).

Illustration 1 to the quoted section of the Restatement states:

"A, the owner of Blackacre, is induced by fraudulent representations made by B to transfer Blackacre as a gift to C. *Whether or not C had notice of the fraud, A can charge him as constructive trustee of Blackacre and compel him to reconvey Blackacre to A."* (Emphasis added).

[19]

*McNulty,* 137 F.3d at 740 (internal quotation marks omitted). *See also, e.g., Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993) ("A defendant seeking to vacate an entry of a default must present some evidence beyond conclusory denials to support his defense."); *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320-21 (2d Cir. 1986); *Lowey Dannenberg Cohen PC v. Dugan,* 249 F.R.D. 67, 70 (S.D.N.Y. 2008).

## 2.     *The Alleged Ratification*

PLH next posits that Quantum, as assignee of National's alleged obligation to pay the Westwood Invoice, is suing National on the Westwood Invoice,[20] that it thereby has ratified and affirmed the contract, and that it in any case is impossible to determine whether PLH has been enriched unjustly until that claim is determined.

The amended complaint contains two claims by Quantum against National, the first on the Westwood Invoice as assignee and the second on the estoppel certificate. And it certainly is true, as PLH argues, that a party to a contract voidable for fraud (or other cause) either may affirm the transaction and sue on the contract or rescind and seek to recover any consideration paid. But that does not mean that PLH is right in concluding that the existence of Quantum's claims against National forecloses restitutionary relief against PLH.

As an initial matter, Quantum now accepts that it has no claim against National on the Westwood Invoice[21] because conditions to Westwood's right to draw down the $347,000 installment on the construction loan – most notably, the delivery of the modular home to the Pollydore site – never were satisfied. It expressly concedes that "Westwood cannot enforce its $347,000.00 invoice against National" and that "neither can Westwood's assignee," Quantum.[22] The fact that Quantum's complaint, insofar as it rested on its rights as assignee of the right to draw the $347,000 under the construction loan, contained a worthless claim is not inconsistent with its

---

[20]

        The amended complaint contains two claims against National, one as assignee of the Westwood Invoice and the other on the so-called estoppel certificate.

[21]

        More properly, on the construction loan agreement.

[22]

        DI 66, at 7.

right to pursue to proceeds of Westwood's fraud into the hands of PLH.

To be sure, Quantum's second claim against National, as pled in the amended complaint, sought recovery of the entire $347,000 on the basis of the estoppel certificate and was denominated a claim for breach of contract. Even assuming, however, that the claim based on the estoppel certificate was the equivalent of a claim to enforce the Westwood Invoice against National, a matter I need not decide, the fact remains that the Federal Rules permit a plaintiff to assert all of the claims it has, regardless of consistency.[23] Thus, I see no reason why Quantum's mere *pleading* of a claim against National for the full amount of the invoice forecloses it from seeking restitutionary relief against PLH. What it may not do, it would appear, is ultimately *recover* relief that includes some elements that presuppose enforcement of the assignment and others that presuppose its disavowal.

Further, Quantum's answering memorandum on the present motion appears to have changed its position. It now says that "[t]he predicate for Quantum's claim against National is not the Westwood-assigned invoice [or, more properly, Westwood's right, if any, to draw down $347,000 under the construction loan] but rather Quantum's reliance on the Estoppel Certificate that National issued to it . . . in deciding to purchase the invoice."[24] In other words, it seeks not the benefit of its bargain, but the out-of-pocket damages it sustained by reliance on the estoppel certificate. Any recovery here against PLH will diminish its claim against National *pro tanto.* Accordingly, there is no inconsistency between Quantum's present position vis-a-vis National and

---

[23] FED. R. CIV. P. 8(d)(3); *see also* N.Y. CPLR §§ 3002(e)

[24] *Id.* at 6-7.

recovery of the amount it paid PLH.[25]  And even if there were, it would not preclude relief against PLH.  If anything, Quantum's judgment against PLH, based as it is on the implicit premise that it has elected to void the assignment based on Westwood's fraud, may reflect an election that would foreclose it from recovering against National or any of the other defendants based on the premise that the assignment was valid, although this too is a question that need not now be determined.

*Conclusion*

For the foregoing reasons, PLH's motion for relief from the judgment and other relief is denied.  Relief is not warrant under Rule 60(b) because the failure to submit answering papers on the motion for summary judgment was wilful in the relevant sense and PLH has failed to show the existence of a meritorious defense.  Reconsideration of the decision granting the motion for summary judgment against PLH is denied because it has failed to demonstrate that the Court overlooked or misapprehended any material fact or controlling law.  I have considered PLH's other arguments and concluded that they are without merit.

SO ORDERED.

Dated:          September  , 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[25] There is no need at present to address the question whether PLH and National have any claims *inter se.*